

ORIGINAL



VAN ETTEN SUZUMOTO & BECKET LLP
Eliot G. Disner (Bar No. CA 68832)
A Professional Corporation
Sidney Kanazawa (Bar No. CA 84608)
Colleen M. Regan (Bar No. CA 120284)
Noah E. Jussim (Bar No. CA 194103)
1620 26th Street Suite 6000N
Santa Monica, CA 90404
Telephone:  (310) 315-8200
Facsimile:  (310) 315-8210
edisner@vsblaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN RODRIGUEZ, REENA B. FRAILICH, LOREDANA NESCI, JENNIFER BRAZEAL and LISA GINTZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WEST PUBLISHING CORPORATION, a Minnesota Corporation dba BAR/BRI, and KAPLAN, Inc., a Delaware corporation,<br><br>Defendants. | CASE NO.  CV 05-3222 R(MCx)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE U.S. ANTITRUST LAWS (15 U.S.C. § 1, ET SEQ.)**<br><br>**JURY TRIAL DEMANDED** |



Plaintiffs Ryan Rodriguez ("Rodriguez"), Reena B. Frailich ("Frailich"),

Loredana Nesci ("Nesci"), Jennifer Brazeal ("Brazeal"), and Lisa Gintz ("Gintz") on

their own behalf and on behalf of all others similarly situated, bring this action for

treble damages and injunctive relief under the antitrust laws of the United States.



234956.1

**INTRODUCTION**

1.    Defendant West Publishing Corporation is a wholly-owned subsidiary of Thomson Company ("Thomson") and is also known as "West Group" (collectively, "West Publishing"). In or about 1995, West Publishing formed West Bar Review ("West Bar") for the purpose of competing in the market for the provision of full-service bar review courses to candidates for admission to the bar of the several states. It then commenced operations in some 43 states throughout the United States, in part by purchasing and consolidating several other regional and local bar review courses.

2.    West Bar then began to compete vigorously against long-time dominant competitor, BAR/BRI, then an assumed name of Harcourt General, Inc., a publicly-traded company ("Harcourt"). (Hereinafter, unless otherwise indicated, "BAR/BRI" refers collectively to the business operated under that name, whoever was its owner at the time.) BAR/BRI has provided basic, i.e., full-service, and supplemental bar review courses for would-be lawyers in most, if not all, 50 states for decades, and also has provided other examination preparation courses over many years. BAR/BRI represents that it now prepares more than 95 percent of all students annually sitting for a bar exam.

3.    West Publishing was acquired by Thomson in 1996. Shortly thereafter, Thomson decided to sell West Bar. West Publishing then negotiated, and agreed to a letter of intent, to transfer assets of West Bar to Defendant Kaplan, Inc. ("Kaplan"). Kaplan was then, and still is, the largest test preparation company in the United States. It provides preparation courses for virtually all college, professional school and related licensing examinations. However, at all pertinent times, Kaplan has offered no full-service bar review course. Kaplan is a wholly-owned subsidiary of the Washington Post Company.

4.    On information and belief, when BAR/BRI learned of this planned divestiture of West Bar to Kaplan, an executive of BAR/BRI contacted an executive

234956.1

2

1  at Kaplan, wherein they secretly agreed to a per se illegal market division in which,
2  inter alia, BAR/BRI agreed to withdraw certain exam preparation courses, including
3  at least its Law School Aptitude Test ("LSAT") exam preparation course, from the
4  market in which Kaplan was the dominant competitor. Kaplan, in turn, agreed not
5  to enter the full-service bar review business, i.e., to withdraw promptly from its
6  agreement to acquire the pertinent assets of West Bar. At all pertinent times, this
7  market division was kept secret from the general public, including the members of
8  the Class herein.

9      5.     After said secret agreement was entered into, West Publishing
10  transferred West Bar's pertinent assets to BAR/BRI, including various bar review
11  course materials. Absorption of West Bar's business into the already dominant
12  BAR/BRI eliminated substantial actual competition from the bar review course
13  market, and, in fact, made BAR/BRI the only company providing bar review
14  courses preparing for virtually every state in the United States. Without substantial
15  competition, BAR/BRI's net prices per student then increased substantially in most
16  states.

17     6.     In or about 2001, Thomson and West Publishing re-entered the bar
18  review course business by purchasing BAR/BRI, which by that time had eliminated
19  West Bar as its most substantial competitor. This lawsuit seeks to remedy
20  BAR/BRI's continuing wrongdoing inflicted on some 300,000 law students and law
21  school graduates who have suffered under the supra-competitive pricing regime of
22  BAR/BRI from August 1997 to the date of filing hereof, as a consequence of such
23  wrongdoing.

24                    **JURISDICTION AND VENUE**

25     7.     This Complaint is filed and these proceedings are instituted under
26  Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive
27  relief and to recover treble damages and the cost of suit, including reasonable
28  attorneys' fees, against Defendants for the injuries Plaintiffs and members of the

234956.1                              3

Class sustained by reason of Defendants' violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. § 1 and Section 7 of the Clayton Act, 15 U.S.C. § 18, as alleged herein.

8.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1337, and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

9.      Defendants transact business, maintain offices, or are found within this Judicial District.  The interstate commerce described hereinafter is also carried on, in part, within this Judicial District.  Venue is proper in this District pursuant to the provisions of 15 U.S.C. § 22 and 28 U.S.C. § 1391.

### PLAINTIFFS

10.      Rodriguez is an individual who resides in Los Angeles, California. During the time period covered by this Complaint, Rodriguez purchased the California BAR/BRI bar review course at a price of $2,775.

11.      Frailich is an individual who resides in Los Angeles, California. During the time period covered by this Complaint, Frailich purchased the California BAR/BRI bar review course at a price of $2,519.25.

12.      Nesci is an individual who resides in Los Angeles, California.  During the time period covered by this Complaint, Nesci purchased the Connecticut BAR/BRI bar review course at a price of $1,825.

13.      Brazeal is an individual who resides in Westland, Michigan.  During the time period covered by this Complaint, Brazeal purchased the Michigan BAR/BRI bar review course at a price of $1,743.

14.      Gintz is an individual who resides in Baton Rouge, Louisiana.  During the time period covered by this Complaint, Gintz purchased the Louisiana BAR/BRI bar review course at a price of $858.

### DEFENDANTS

15.      Kaplan is a corporation organized under the laws of Delaware, with its principal place of business in New York, New York.  It formerly did business as the

1  Stanley H. Kaplan Test Centers. Kaplan is the largest provider of preparatory
2  courses for numerous college and graduate school courses of study, including SAT,
3  GMAT, LSAT, MCAT, TOEFL, GRE, CPA and others, but at all pertinent times
4  including no full-service bar review courses.

5      16.    Defendant West Publishing is a Minnesota corporation headquartered
6  in Eagan, Minnesota, and a subsidiary of Thomson. Thomson is a Canadian
7  corporation with its principal place of business in Toronto, Ontario, and substantial
8  offices in the U.S. Thomson calls itself the "World's Leading Information
9  Resource." In or about 2001, Thomson's competitor, Reed Elsevier, Inc., purchased
10 BAR/BRI, among other businesses, from Harcourt, which owned BAR/BRI at the
11 time. After Reed Elsevier purchased BAR/BRI, it promptly sold it to its competitor
12 Thomson, which now operates BAR/BRI through West Publishing. Thomson also
13 acquired MicroMash Bar Review ("MicroMash"), a full-service home study bar
14 review course.

15     17.    BAR/BRI is the only full-service bar review course operating
16 throughout the United States that offers courses for virtually all jurisdictions therein.
17 Until 1997, prior to its acquisition of West Bar's assets from Thomson, BAR/BRI
18 also operated LSAT and other test preparation courses. Prior to and immediately
19 after 1997, BAR/BRI continued to operate a CPA test preparation course in
20 competition with Kaplan.

21                              **CO-CONSPIRATORS**

22     18.    Various other persons, firms and corporations, the identities of which
23 are presently unknown, have participated as co-conspirators with the Defendants in
24 the violations alleged herein and have performed acts and made statements in
25 furtherance thereof.

26                          **TRADE AND COMMERCE**

27     19.    At all pertinent times, BAR/BRI has regularly sold and shipped bar
28 review and LSAT course volumes, books, audio tapes and other materials, among

234956.1                                  5

1    other things, across state lines. It is also continuously engaged in soliciting students
2    in one state to take courses in other states. Therefore, BAR/BRI's activities,
3    including the anticompetitive activities described herein, are in and substantially
4    affect interstate commerce.

5    20.    Kaplan operates its various courses throughout the United States. It
6    also regularly ships its course materials throughout the United States. Also, the
7    conspiracy entered into between Kaplan and BAR/BRI was accomplished through
8    the use of, at least, the wire and mails across state lines. Therefore, the activities of
9    Kaplan, including the anticompetitive activities described herein, are in and
10   substantially affect interstate commerce.

## RELEVANT MARKETS

12   21.    The provision of bar review courses to individuals preparing to take a
13   bar examination generally is a relevant product market for purposes of enforcement
14   of the antitrust laws. The provision of full-service bar review courses to such
15   individuals, which in dollar volume accounts for the vast preponderance of sales in
16   the overall market, is a relevant product submarket for purposes of enforcement of
17   the antitrust laws. Here, West Bar and BAR/BRI, until the fall of 1997, competed in
18   the relevant market, and more particularly, in the full-service submarkets thereof.

19   22.    There are also relevant markets for each test preparation course
20   provided by Kaplan, most particularly pertinent here for its courses for the LSAT
21   and other exams.

22   23.    A relevant geographic market for purposes of enforcement of the
23   antitrust laws here is the United States. Other relevant geographic markets for
24   antitrust law enforcement purposes may include each jurisdiction in the U.S., i.e.,
25   state or the District of Columbia, in which full-service bar review courses are
26   provided, and the venues of each national law school, i.e., ABA accredited law
27   schools in which a substantial percentage of students attend who emanate from, or
28   migrate to, other states. Boalt Hall, Boston University, Columbia, Cornell, Duke,

234956.1                                    6

1  Georgetown, George Washington, Harvard, Northwestern, Notre Dame, NYU,
2  Stanford, UCLA, University of Chicago, University of Illinois, University of
3  Michigan, University of Minnesota, University of Pennsylvania, University of
4  Virginia, University of Southern California, University of Wisconsin and Yale are
5  principal examples of such schools.

6                              **PERTINENT FACTS**

7      24.    The business engaged in by West Publishing that is principally relevant
8  here consists of training law school graduates to master the bar examination each
9  needs to pass before receiving a license to practice law in every U.S. state, plus the
10 District of Columbia.

11      25.    The bar examination in most jurisdictions in the United States consists
12 of at least the following two parts.  One part is the Multistate Bar Examination
13 ("MBE").  The MBE is prepared by the National Conference of Bar Examiners.  It
14 is required by nearly all jurisdictions in the United States.  The second part of the
15 bar examination consists of a test prepared under the control of each state's Board of
16 Bar Examiners or similarly-titled state license-issuing body, which may incorporate
17 the Multistate Essay Examination and/or the Multistate Performance Test.  This part
18 is designed to test local law and/or general legal concepts and the application
19 thereof, typically in an essay format.

20      26.    BAR/BRI provides a full-service bar review course, typically about
21 seven weeks in duration, in which substantive law is reviewed, test-taking
22 techniques are taught, and pertinent skills honed for the grueling multi-day exam
23 that awaits each would-be attorney.  This is the principal means employed by law
24 school graduates to prepare for the bar examination.  BAR/BRI provides to students,
25 among other things, a set of written review materials which are specific to that
26 jurisdiction, lectures on the subjects and points of substantive law that are tested in
27 that jurisdiction and review questions that are similar to those asked previously, or
28 have actually been asked previously, by the bar examiners therein.

1    27.    MicroMash offers courses in about 21 states, plus the District of
2  Columbia. It too has prepared thousands of law students to pass a state bar
3  examination.

4    28.    Because of the grueling nature and obvious importance of the
5  examination process, a person desiring to take a bar examination in a given state for
6  the first time is almost certain to take a full-service bar review course, designed to
7  prepare him or her for the challenge that lies ahead. Even persons who have
8  previously failed one or more bar exams frequently attend full-service bar review
9  courses as often as they sit for an exam. The full-service bar review course proves
10  then to be the principal way to specifically prepare for such a bar examination.
11  There is little, if any, cross-elasticity of demand between or among full-service bar
12  courses, on the one hand, and supplementary specialty courses and generalized texts
13  dealing with the substantive topics which happen to be covered on the bar
14  examination, on the other.

15    29.    BAR/BRI has been the dominant provider of bar review courses in the
16  United States for decades. In or about 1995 West Publishing Company, a multi-
17  billion dollar company, through its then newly launched West Bar Review, scooped
18  up many of the remaining full-service bar review course regional competitors in the
19  country, including, in California, American Professional Testing Services, doing
20  business as BarPassers, plus amassed a set of other local course materials, staff and
21  know-how sufficient to compete in the bar review business across the United States
22  against BAR/BRI.

23    30.    In the bar review business, marketing is principally trained on first-year
24  law students. At that time, law students sign up for a bar review by paying a
25  deposit. They then obtain, at least, a non-refundable option for a lock-in guaranteed
26  price two to three years later when they actually purchase the course. In order for
27  West Bar or any potential competitor to succeed, it would have taken several years
28  to do so. The staying power needed to turn needed revenues, plus high fixed costs

234956.1                                    8

(for competent faculty, current course materials, limited-availability classrooms, etc.) has made successful entry extraordinarily unlikely in the full-service bar review course relevant submarket.

31.    Successful entry has been made even more difficult since the combination of BAR/BRI and West Publishing. West Publishing provides its powerful data and legal research retrieval service, Westlaw, free of charge to law students who, of course, generally employ it on a virtually constant basis. At pertinent times herein, Westlaw's user screens have contained regular pop-up and other advertising to promote BAR/BRI. A substantial number of law students are, in fact, required to view the Westlaw website and its advertising because their professors post homework and related assignments on "The West Education Network," access to which is available by traversing said Westlaw website. No other full-service bar review course competitor has any access to such a powerful promotional vehicle.

32.    Because of the practice of signing up law students for the bar exam during their first year, it is important that the bar review course offer courses for multiple states, as such students frequently are unsure of the particular state in which they will ultimately sit for an exam, then practice law. BAR/BRI is now the only bar review course in the U.S. that offers full-service bar review courses in virtually every state, as well as in other U.S. jurisdictions, and, therefore, has an insurmountable advantage in tying up most law students in their first year of law school, so that those students are unlikely to be available to purchase another bar review course thereafter.

33.    On information and belief, West Bar, a uniquely deep-pocketed, well-positioned, and determined entrant performed well beyond its own expectations. By early 1997 it had commenced operations in some 43 states, had achieved in excess of 20 percent of the full-service bar review market and had signed up some 50 percent of first year law students. Moreover, West Bar could presumably have

1 employed Westlaw as its own powerful marketing tool to compete against
2 BAR/BRI.

3       34.    In 1996, West Publishing Company was acquired by Thomson. Also in
4 1996, West Publishing Company's management announced publicly how happy it
5 was with the early success of West Bar. By 1997, however, Thomson decided to
6 sell West Bar's assets, including its course materials, curriculum and student-
7 enrollment contacts. Its stated desire at that time was to exit the bar review course
8 business.

9       35.    Kaplan puts on training courses for almost every standardized exam
10 given to high school, college and graduate students and others seeking licenses of
11 one kind or another, as noted above. One of the few professional training exams, if
12 not the only exam, for which Kaplan did not have a preparation course in 1997 was
13 for the various state bar exams, although it did attempt to compete in that market in
14 the late 1980s to early 1990s in a failed joint venture with a then-extant bar review
15 course provider, S.M.H.

16       36.    On information and belief, Kaplan was well-suited to succeed West Bar
17 as a full-service bar review course operator in the U.S. As of 1997, for example,
18 Kaplan was the largest provider in the live Law School Aptitude Test ("LSAT")
19 preparation course market, with classrooms and related facilities for such courses
20 located around the U.S. Kaplan also occupies a similar position in providing
21 preparation courses for other exams, in markets in which BAR/BRI was a
22 competitor or potential competitor at the time. As the largest purveyor of LSAT
23 courses, Kaplan offered a natural audience to market a full-service bar review
24 course. Plus, Kaplan possessed a deep pocket and classrooms throughout the
25 country, along with the infrastructure in place to easily manage one more "training
26 course." BAR/BRI controlled about seven percent of the LSAT course market at
27 that time.

28

37.     On information and belief, by early August 1997, Kaplan had entered into an agreed letter of intent with West Publishing to purchase West Bar. However, during the weekend of August 9-10, 1997, an executive of Kaplan communicated with an executive of BAR/BRI in which BAR/BRI proposed that if Kaplan stayed out of the bar review business, BAR/BRI would exit at least the LSAT market in which it competed, plus pay to Kaplan a sum in excess of $500,000 per year, on the pretext that it would be compensation for some service Kaplan would be providing for BAR/BRI, but which, in fact, was part of the continuing consideration to be provided to Kaplan, on the condition that it stay out of the full-service bar review course market so long as such payments are made. Kaplan accepted this proposal. At the same time, both Kaplan and BAR/BRI also competed in the sale of CPA preparation courses. As to this line of commerce, the parties agreed to continue competing against each other. They then also agreed to "strategically" work together in the future to promote their complementary businesses. Within the past four years, BAR/BRI has made, in connection with the aforesaid ongoing agreements, similar annual payments to Kaplan.

38.     On information and belief, on or about August 11, 1997, Kaplan unilaterally backed out of its agreed letter of intent with West Publishing to purchase West's assets sufficient to operate a full-service bar review course. About one month later, West Publishing announced it was divesting West Bar because it did not fit within its "long term strategic direction." It then divested its operative bar review assets to BAR/BRI, and BAR/BRI also acquired all or substantially all of its competitor West Bar's students' commitments to purchase and complete a bar review course. Shortly thereafter, BAR/BRI quietly wound down at least its LSAT preparation course. In November 1997, Kaplan and BAR/BRI publicly announced their "partnership," the essence of which was that they would co-market their respective courses.

39.    On information and belief, this was not the first time that BAR/BRI had agreed to a per se unlawful market division in order to preserve its monopoly in the full-service bar review course market throughout the United States. Earlier in the 1990s, a company called PMBR offered the "Multistate" supplemental bar review course, that is, a course focused on only the multiple-choice multistate bar exam given throughout the U.S. At that time, BAR/BRI offered a competing multistate course sometimes referred to as "Gilbert," also sometimes referred to as "HBJ Multistate Workshop." At or about that time, PMBR commenced operating a full-service bar review course, principally in California and in the southeast U.S. After PMBR made substantial inroads against monopolist BAR/BRI in at least some of those states which it entered, BAR/BRI and PMBR entered into an agreement, as follows: BAR/BRI would drop its multi-state supplemental courses, and PMBR would drop its full-service bar review course. That would leave BAR/BRI once again with an uncontested national monopoly in the provision of full-service bar review courses. To this day, PMBR does not offer a full-service course, and BAR/BRI does not offer a multistate supplemental course. To this day, PMBR and BAR/BRI have agreed not to speak of each other in any critical or comparative way and to freely refer students from one program to the other.

40.    On information and belief, in past years, BAR/BRI or its predecessors have entered into repeated market division agreements with erstwhile competitors in the full service bar review course market, each of which had the effect of further consolidating, and deepening BAR/BRI's monopoly grip on said market.

41.    On information and belief, in or about 2001, West Publishing returned to the full-service bar review business when West Publishing purchased the BAR/BRI business for a sum believed to be more than $200 million, a far higher price than BAR/BRI paid for West Bar's burgeoning, competitive, bar review course assets in 1997. The substantial price difference is due to the fact that the acquisition of West Bar's assets by BAR/BRI eliminated the only viable competitor

234956.1

12

1 in the market, or likely to be in the market for the foreseeable future. (Boardwalk
2 and Park Place are, of course, worth far, far more when owned by one player than
3 by two in the Monopoly game, which explains the greater value attached to a
4 consolidated bar review course business by West Publishing when it re-entered this
5 market.) Notwithstanding West Publishing's claim of its erstwhile bar review
6 course business's purported lack of "fit" within Thomson's "long term strategic
7 direction" as of 1997, BAR/BRI is now an extremely profitable business of West
8 Publishing.

9       42.    At all pertinent times hereto, BAR/BRI's share of the national
10 submarket for the provision of full-service bar review courses has been in excess of
11 90 percent. It now boasts on its website: "BAR/BRI Review is the largest bar
12 review company in the United States, preparing more than 95 percent of all students
13 sitting for the bar exam in any given year." In many states, its share of the
14 submarket is virtually 100 percent. As a practical matter, in most states, the claimed
15 Class herein has been literally trapped into taking the BAR/BRI course to assure its
16 members of a reasonable likelihood they will pass the subsequently-given state bar
17 examination. BAR/BRI is now the entrenched monopolist in the full-service bar
18 review submarket with no significant likelihood of its offering reasonable,
19 competitive prices or of meaningful new entry without the assistance of this Court.

20      43.    Beginning in 1997, and continuing to this date, Kaplan and BAR/BRI
21 have concealed their conspiracy to divide the market. In fact, the concealment here
22 is particularly striking since it was engaged in by the wholly-owned subsidiary of
23 the Washington Post Company, which is also the parent company of well-known
24 national newspaper *The Washington Post*, famous for exposing corruption and
25 speaking the truth—except when it came to Kaplan, as it happens, its most
26 profitable subsidiary. To this date, BAR/BRI and Kaplan have yet to publicly
27 disclose the anticompetitive events, described herein, that occurred in August 1997.

28

234956.1                                    13

1      44.     On information and belief, separate from its acquisition of West Bar's

2   assets and its agreement with Kaplan to keep it out of the relevant market here,

3   BAR/BRI has continued to engage in wrongful conduct to maintain and preserve its

4   monopoly, including, at least, the following:

5          (a)     BAR/BRI made a deal in the late 1990s to eliminate a significant

6   bar review competitor in New York State and elsewhere, Marino Bar Review

7   ("Marino"). BAR/BRI provided to Marino's owner a lucrative contract to work

8   with it, if he closed down the Marino course, which he did;

9          (b)     BAR/BRI unreasonably insists on, and has routinely obtained,

10   numerous agreements from faculty and staff prohibiting their working for or

11   otherwise assisting any other bar review course provider should they depart

12   BAR/BRI;

13          (c)     BAR/BRI has engaged in the continuing practice of tearing

14   down, otherwise removing, or preventing the posting of, the signs, placards and

15   related promotional materials of local bar review course competitors at various law

16   schools in the U.S.;

17          (d)     BAR/BRI has paid so-called "consulting" fees to various law

18   school administrators at least, in part, to assure that it maintains access to the use of

19   such law schools' assembly and common areas for marketing and related purposes

20   and to further assure that any potential competitors will be unable to obtain such

21   access;

22          (e)     BAR/BRI has anticompetitively implemented the so-called

23   "American Bar Association–BAR/BRI Scholarship" program. Endorsed by the

24   ABA, BAR/BRI provides financial assistance ostensibly to students with economic

25   need. Thus, in certain states where BAR/BRI competes against a local bar review

26   course provider, it issues such "scholarships" not only to those in need, but also to

27   students considering taking a competitor's lower-priced course, irrespective of need.

28   The cost of all such "scholarships" is absorbed by BAR/BRI. However, the

234956.1                                       14

anticompetitive use of such scholarships trading on the ABA's name is not endorsed by the ABA; and

(f)     As a further example of BAR/BRI consolidating its national monopoly in the provision of full service bar review courses, in Louisiana, for several years through 2003, there has operated a full-service classroom bar review preparation course in competition with BAR/BRI's, one of the very few states in which a competitor to BAR/BRI even existed at the time.  That course, operated by Louisiana State University ("LSU"), most recently charged $545 per student, thus helped to keep down BAR/BRI's course pricing in Louisiana at the time to $695, a sum slightly in excess of that sum but far less than it charges elsewhere.  However, in 2004, BAR/BRI secretly agreed to pay sums in excess of $50,000 per year to LSU, conditioned on LSU's agreement to stop offering its competitive course for at least three years.  BAR/BRI has made at least the first such payment.  Thereafter, BAR/BRI became the only provider of a classroom bar review course for the Louisiana Bar exam.  It then immediately increased its bar review course price in Louisiana, charging $1095 for new bar course registrants, with plans to substantially increase its prices annually thereafter, unrestrained by competition.  By its first increase in 2004, BAR/BRI more than doubled the price for which courses were available in Louisiana immediately prior to the date of said agreement.  BAR/BRI's agreement to oust LSU as a competitor has been to the detriment of Gintz and other class members therein.

## INJURY TO PLAINTIFFS AND MEMBERS OF THE CLASS

45.     During the period covered by this Complaint, Plaintiffs and members of the Class purchased at least one bar review course from BAR/BRI.  As a direct result of Defendants' combination, conspiracy and monopolization, Plaintiffs and members of the Class paid far more for the course(s) they purchased than they would have paid in the absence of such wrongful acts, frequently substantially in excess of $1,000 above a competitive price.  For example, in the recent past,

234956.1

15

1 BAR/BRI's course has cost each paying student about the following amounts:
2 $2,850 in California, $2,445 in Florida, $2,295 in Illinois, $2,370 in Maryland,
3 $2,500 in New York, $2,195 in Pennsylvania, $2,275 in Texas, $2,470 in Virginia,
4 and comparably supra-competitive price levels elsewhere in the United States,
5 except in those few states where state bar or similar rules put a cap on BAR/BRI's
6 pricing (i.e., Iowa) or isolated local competition remains (such as in Indiana). In
7 addition, BAR/BRI imposes an effectively non-refundable book charge, repeat fees,
8 add-on (second state preparation) fees, plus other penalties and charges that have
9 increased substantially over the last several years and now average hundreds of
10 additional dollars of cost per student per year.

11 46. Competitive and copyrighted course materials and instructional
12 approaches have been acquired by BAR/BRI, which have then been suppressed by
13 it, then unavailable to, and unused by, others. The effect of this is that students are
14 deprived of the right to choose among such alternative materials and approaches.
15 Plus, a potential competitor faces a possible copyright infringement claim if it
16 prepares such materials for its own use, as it must. This has further suppressed
17 competitive choices to members of the class.

18 47. Consistent with its monopoly status and the behavior of other
19 monopolists, BAR/BRI has also cut the quality of the course services it provides to
20 plaintiffs and other members of the class, by, for example, increasingly replacing
21 live lectures with video lectures, then barring all student questions even at such live
22 lectures.

23 48. By reason of the violations of the federal antitrust laws alleged herein,
24 Plaintiffs and members of the Class have been injured in their business and property
25 and suffered damages in an amount presently undetermined, but estimated to be not
26 less than $300 million.

27
28

234956.1

16

1    **CLASS ACTION ALLEGATIONS**

2    49.    Plaintiffs bring this action on their own behalf and as a Class Action

3  under the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil

4  Procedure on behalf of all members of the following classes:

5                    All persons who purchased a bar review course from BAR/BRI

6                    in the United States from August 1997 to the present.

7    50.    Irrespective of any otherwise applicable statutes of limitation, because

8  of the fraudulent concealment alleged herein, the Class Period commences in

9  August 1997, at or about the time the heretofore-concealed antitrust violations

10  necessitated the transfer of West Bar's assets to BAR/BRI.

11    51.    Plaintiffs do not know the exact number of Class members, because

12  such information is in the exclusive control of Defendants, but believe them, on

13  information and belief, to average 40,000-plus per year, or 300,000 over the past

14  seven years.  Due to the nature of the trade and commerce involved, the Class

15  members here are sufficiently numerous and geographically dispersed throughout

16  the United States, so that the joinder of all Class members is impracticable.

17    52.    Except as to the amount of damages each member of the Class has by

18  himself or herself sustained, as to which there is considerable commonality or

19  readily quantifiable differences, all other questions of law and fact are completely

20  common to the Class, including but not limited to:

21            (a)    whether Defendants engaged in a combination and conspiracy

22  and/or unlawful acquisition to prevent competition in, and/or unlawfully

23  monopolized, the full-service bar review course market;

24            (b)    the duration and extent of the combination, conspiracy and

25  monopolization alleged in this Complaint;

26            (c)    whether the alleged wrongful acts violate Sections 1 and 2 of the

27  Sherman Act and/or Section 7 of the Clayton Act;

28

234956.1

17

(d)    whether the market division that eliminated Kaplan as a competitor to BAR/BRI in the full-service bar review submarket was fraudulently concealed;

(e)    the adverse effect of Defendants' wrongful acts on the prices of bar review courses sold in the United States during the Class Period; and

(f)    that Plaintiffs and other members of the Class have been damaged by Defendants' wrongful acts.

53.    Plaintiffs are members of the Class. Plaintiffs' claims are typical of the claims of all Class members. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are typical purchasers of bar review courses sold by BAR/BRI in the United States and their interests are coincident with and not antagonistic to those of the other members of the Class. In addition, Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

54.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

55.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

56.    A class action is superior to other methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of claims by many Class members who could not afford individually to litigate an antitrust claim such as is asserted in this Complaint. This

1 | class action likely presents no difficulties in management that would preclude

2 | maintenance as a class action. Finally, the Class is readily ascertainable.

3

## CLAIM ONE
## (AGAINST WEST PUBLISHING)
## UNLAWFUL ACQUISITION; VIOLATION OF SECTION 7
## OF THE CLAYTON ACT

6 | 57.    Paragraphs 1 to 56 are incorporated by reference herein.

7 | 58.    BAR/BRI unlawfully acquired the assets of its direct competitor, West

8 | Bar, as detailed above, and may thereby tend to substantially lessen competition in

9 | the full-service bar review course submarket market in the United States, if it has

10 | not already done so. This acquisition thereby violates Section 7 of the Clayton Act,

11 | 15 U.S.C. § 18.

12 | 59.    Plaintiffs and other members of the Class have been injured in their

13 | business or property by reason of the antitrust violations of BAR/BRI alleged

14 | herein, as follows:

15 | (a)    the prices of the full-service bar review courses they purchased

16 | were far higher than they would have been but for BAR/BRI's violation of the

17 | antitrust laws;

18 | (b)    opportunities to choose among various courses, each with its

19 | own unique attributes, that would have been available in the absence of the unlawful

20 | course of conduct alleged herein, have been lost to Plaintiffs and the members of the

21 | Class; and

22 | (c)    they have been required to retain the law firm of Van Etten

23 | Suzumoto & Becket LLP to prosecute this claim and to suffer all the burdens that

24 | accrue to them from the prosecution of this case.

25 | 60.    Plaintiffs and the other members of the Class, as a result of the

26 | foregoing, have been damaged at least to the extent they have expended sums for the

27 | full-service bar review courses they purchased from BAR/BRI far in excess of what

28 | they would have paid in a market uncontaminated by the wrongful acts of West

234956.1                    19

1  Publishing, asserted hereinabove.  They have sustained damages in a sum presently
2  not ascertained, but which is, in any event, in excess of $1,000 each, and which will
3  be proven with greater exactitude, as the record permits at the time of trial, such sum
4  to be trebled, pursuant to 15 U.S.C. § 15(a).

5      61.    Future bar exam candidates who will also be required to complete a bar
6  review course will be similarly damaged unless the Court orders appropriate
7  injunctive relief herein, including but not limited to the creation by BAR/BRI of a
8  fully-operational, competitive, full-service bar review business capable of
9  competing successfully against it throughout the United States, pursuant to
10  15 U.S.C. § 26.

11     62.    Should Plaintiffs and the Class prevail herein, they are also entitled to
12  the reasonable attorneys' fees accrued by them herein, pursuant to 15 U.S.C. §
13  15(a).

14                          **CLAIM TWO**
15                    **(AGAINST BOTH DEFENDANTS)**
    **CONSPIRACY TO RESTRAIN TRADE; VIOLATION OF SECTION 1 OF**
16                        **THE SHERMAN ACT**

17     63.    Paragraphs 1 to 62 are incorporated by reference herein.

18     64.    Defendants combined, conspired and contracted among themselves and
19  with co-conspirators to eliminate competition in the full-service bar review course
20  market throughout the United States, a transaction which was kept secret from the
21  public and thereby fraudulently concealed from the Class, among others.

22     65.    On information and belief, in furtherance of this conspiracy, the
23  Defendants agreed to the aforementioned market division, the effect of which, inter
24  alia, eliminated the only viable actual competitor in the sale of full-service bar
25  review courses throughout the United States, and also a substantial competitor in the
26  LSAT course market in the United Sates, in which Defendant Kaplan is and remains
27  dominant.

28

234956.1
CLASS ACTION COMPLAINT

66. This action violates 15 U.S.C. § 1 et seq., in that it serves to restrain trade and to fix, raise, maintain or stabilize, at least, the retail price of full-service bar review courses sold in the United States during the Class Period.

67. Plaintiffs and other members of the Class have been injured in their business or property by reason of Defendants' antitrust violations at least as follows:

(a) the prices of the full-service bar review courses they purchased were far higher than they would have been, but for BAR/BRI's violation of the antitrust laws;

(b) opportunities to choose among various courses, each with its own unique attributes, that would have been available in the absence of the unlawful course of conduct alleged herein, have been lost to Plaintiffs and the members of the Class; and

(c) they have been required to retain the law firm of Van Etten Suzumoto & Becket LLP to prosecute this claim and to suffer all the burdens that accrue to them from the prosecution of this case.

68. Plaintiffs and the other members of the Class, as a result of the foregoing, have been damaged at least to the extent they have expended sums for the full-service bar review courses they purchased from BAR/BRI far in excess of what they would have paid in a market uncontaminated by the wrongful acts of BAR/BRI, asserted hereinabove. They have sustained damages in a sum presently not ascertained, but which is, in any event, in excess of $1,000 each, and which will be proven with greater exactitude, as the record permits, at the time of trial, such sum to be trebled, pursuant to 15 U.S.C. § 15(a).

69. Should Plaintiffs and the Class prevail herein, they are also entitled to the reasonable attorneys' fees accrued by them herein, pursuant to 15 U.S.C. § 15(a).

1

## CLAIM THREE
## (AGAINST WEST PUBLISHING)
## MONOPOLIZATION; VIOLATION OF SECTION 2
## OF THE SHERMAN ACT

2

3

4    70.    Paragraphs 1 to 69 are incorporated by reference herein.

5    71.    BAR/BRI has monopolized the full-service bar review course market in

6   the United States in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

7    72.    BAR/BRI has unlawfully acquired and/or maintained a monopoly of

8   the full-service bar review course market through at least the following unlawful

9   acts:

10           (a)    agreeing to a market division with Defendant Kaplan;

11           (b)    engaging in other anticompetitive activities to preserve and

12   maintain its monopoly, and

13           (c)    on a continuing basis to the present, charging excessive, supra-

14   competitive prices for its full-service bar review courses.

15    73.    As a direct and proximate result of BAR/BRI's abuse of its monopoly

16   power, competition in the full-service bar review course market has been

17   substantially restrained, and meaningful new entry is substantially unlikely to occur.

18    74.    Unless BAR/BRI's anticompetitive acts as alleged herein are enjoined

19   by this Court, there is a reasonable probability that it will continue to monopolize

20   the full-service bar review course submarket and will continue to unreasonably

21   restrict and eliminate competition therein.

22    75.    BAR/BRI's monopolization of the full-service bar review course

23   market has injured Plaintiffs in at least the following ways:

24           (a)    the prices of the full-service bar review courses they purchased

25   were far higher than they would have been but for its violation of the antitrust laws;

26           (b)    opportunities to choose among various courses, each with its

27   own unique attributes, that would have been available in the absence of the unlawful

28

1  course of conduct alleged herein, have been lost to Plaintiffs and the members of the

2  Class; and

3            (c)    they have been required to retain the law firm of Van Etten

4  Suzumoto & Becket LLP to prosecute this claim and to suffer all the burdens that

5  accrue from the prosecution of this case.

6      76.    Plaintiffs and the other members of the Class, as a result of the

7  foregoing, have been damaged at least to the extent they have expended sums for the

8  full-service bar review courses they purchased from BAR/BRI far in excess of what

9  they would have paid in a market uncontaminated by the wrongful acts of

10  BAR/BRI, asserted hereinabove. The damages are presently not ascertained, but are

11  believed to exceed $1,000 each, which will be proven with greater exactitude, as the

12  record permits, at the time of trial, such sum to be trebled, pursuant to 15 U.S.C.

13  § 15(a).

14      77.    Future bar exam candidates who will also be required to complete a bar

15  review course will be similarly damaged unless the Court orders appropriate

16  injunctive relief herein, including but not limited to the creation by BAR/BRI of a

17  fully-operational, competitive, full-service bar review business capable of

18  competing successfully against it throughout the United States, pursuant to

19  15 U.S.C. § 26.

20      78.    Should Plaintiffs and the Class prevail herein, they are also entitled to

21  the reasonable attorneys' fees accrued by them herein, pursuant to 15 U.S.C.

22  § 15(a).

23      WHEREFORE, Plaintiffs pray for judgment as follows:

24      1.    In accordance with their Complaint on file herein.

25      2.    As to Claim One for violation of Section 7 of the Clayton Act, that

26  BAR/BRI be found liable, that Plaintiffs and other members of the Class

27  accordingly be awarded their damages according to proof, but not less than $1,000

28  each, or in excess of $300 million for all Plaintiffs believed to be eligible and

234956.1                                23

1    members of the Class, that amount to be trebled, their reasonable attorneys' fees,
2    and that appropriate injunctive relief be entered, including the creation by BAR/BRI
3    of a fully-operational, competitive, full-service bar review business capable of
4    competing successfully against BAR/BRI throughout the United States, and a
5    further order that:

6        (a)    all non-compete clauses BAR/BRI has with faculty members and
7    related staff be canceled in California and otherwise reasonably limited in duration,
8    scope and geography (pursuant to 15 U.S.C. § 26);

9        (b)    all non-compete agreements between BAR/BRI and ertswhile or
10   potential competitors be canceled forthwith;

11       (c)    BAR/BRI be enjoined from paying or providing anything of
12   value to any law school administrator or other staff member;

13       (d)    West make access to Westlaw for advertising purposes
14   reasonably available to any bar review course provider on reasonable terms and
15   conditions;

16       (e)    BAR/BRI be enjoined from engaging in the practice of tearing
17   down, otherwise removing, or preventing the posting of, the signs, placards and
18   related promotional materials of bar review course competitors; and

19       (f)    BAR/BRI may not provide any American Bar Association–
20   BAR/BRI Scholarships other than based on genuine, demonstrable student need. It
21   may not, therefore, employ any such scholarship to accomplish any anticompetitive
22   effect.

23       3.    As to Claim Two for violation of Section 1 of the Sherman Act, that
24   BAR/BRI and Kaplan be found liable and that Plaintiffs be awarded their damages
25   according to proof, but not less than $1,000 each, or in excess of $300 million for all
26   Plaintiffs believed to be eligible and members of the Class, that amount to be
27   trebled, and for their reasonable attorneys' fees and costs (pursuant to U.S.C. §
28   15(a)).

234956.1                                24

1    4.    As to Claim Three for violation of Section 2 of the Sherman Act, that

2   BAR/BRI be held liable and that Plaintiffs be awarded their damages according to

3   proof, but not less than $1,000 each, or in excess of $300 million for all Plaintiffs

4   believed to be eligible and members of the Class, that amount to be trebled, and for

5   their reasonable attorneys' fees and costs (pursuant to U.S.C. § 15(a)); and that

6   appropriate injunctive relief be entered, including the creation by BAR/BRI of a

7   fully-operational, competitive, full-service bar review business capable of

8   competing successfully against it throughout the United States, and a further order

9   that:

10    (a)    all non-compete clauses BAR/BRI has with faculty members and

11   related staff be canceled in California and otherwise reasonably limited in duration,

12   scope and geography (pursuant to 15 U.S.C. § 26);

13    (b)    all non-compete agreements between BAR/BRI and ertswhile or

14   potential competitors be canceled forthwith;

15    (c)    BAR/BRI be enjoined from paying or providing anything of

16   value to any law school administrator or other staff member;

17    (d)    West make access to Westlaw for advertising purposes

18   reasonably available to any bar review course provider on reasonable terms and

19   conditions;

20    (e)    BAR/BRI is enjoined from engaging in the practice of tearing

21   down, otherwise removing, or preventing the posting of, the signs, placards and

22   related promotional materials of bar review course competitors; and

23    (f)    BAR/BRI may not provide any American Bar Association–

24   BAR/BRI Scholarships other than based on genuine, demonstrable student need. It

25   may not, therefore, employ any such scholarship to accomplish any anticompetitive

26   effect.

27

28

234956.1                            25

5.    That Plaintiffs have the costs of suit incurred herein by them and such other further relief as the Court deems just and proper.

DATED: May 26, 2005          VAN ETTEN SUZUMOTO & BECKET LLP


By: _____

Eliot G. Disner
A Professional Corporation
*Attorneys for Plaintiffs*
RYAN RODRIGUEZ, REENA B.
FRAILICH, LOREDANA NESCI,
JENNIFER BRAZEAL and LISA GINTZ

26

1

**TRIAL BY JURY**

2

Please take notice that a trial by jury is hereby requested.

3

4   DATED: May 26, 2005                    VAN ETTEN SUZUMOTO & BECKET LLP

5

6                                          By: _____

7                                          Eliot G. Disner
                                           A Professional Corporation
8                                          *Attorneys for Plaintiffs*
                                           RYAN RODRIGUEZ, REENA B.
9                                          FRAILICH, LOREDANA NESCI,
                                           JENNIFER BRAZEAL and LISA GINTZ
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

234956.1                          27

1    **SERVICE LIST**

2

3    James P. Tallon, Esq.                            Attorneys for *West Publishing Corporation*
     Shearman & Sterling, LLP
4    599 Lexington Avenue
     New York, NY  10022-6069
5    Tel:  (212) 848-4650
     Fax:  (212) 848-7179
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

239007.1                                         -2-