

ENTERED
CLERK. U.S. DISTRICT COURT
SEP 12 2007
CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
SEP 10 2007
CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT
AUG 20 2007
3:08
CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

ENTER
NO JS6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORIGINAL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

RYAN RODRIGUEZ, REENA B. FRAILICH, LOREDANA NESCI, JENNIFER BRAZEAL, and LISA GINTZ, on behalf of themselves and all others similarly situated,

                        Plaintiffs,

    v.

WEST PUBLISHING CORPORATION, a Minnesota Corporation d/b/a BAR/BRI, and KAPLAN, Inc., a Delaware Corporation,

                        Defendants.

AND CONSOLIDATED ACTION

Case No.: CV-05-3222 R(MCx)

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

-1-
FINDINGS OF FACT AND CONCLUSIONS OF LAW

433

1    Representative Plaintiffs[1] and Defendants have submitted for approval a
2    Settlement of this Action that is memorialized in the Settlement Agreement. For the
3    reasons set forth below, the Court has determined that the Settlement is fair, reasonable
4    and adequate, and should therefore be approved. As the Court is contemporaneously
5    issuing a Judgment and an Order Approving Settlement, the Court makes the following
6    findings of fact and conclusions of law:

7    **I. BACKGROUND**
8        **A.    Materials Considered by the Court**
9            1.    In coming to its decision, this Court has considered the written
10   memoranda and other material submitted by the Settling Parties, as well as those
11   submitted by objectors to the Settlement (the "Objectors"). In addition, this Court
12   has relied upon its familiarity with this case resulting from motion hearings and the
13   documents submitted in connection therewith, and its general case management
14   duties. As discussed below, Class Counsel and counsel for Defendants have fully
15   briefed the request for approval, and they have supported the request with
16   declarations of fact. Class Counsel and counsel for Defendants were present at the
17   June 18 and July 9, 2007 Final Settlement Hearing and addressed issues that were
18   raised at the time by the Court and the Objectors.

19       **B.    History of the Litigation**
20           2.    After an extensive pre-filing factual investigation, plaintiffs
21   Ryan Rodriguez ("Rodriguez") and Reena B. Frailich (the "Initial Plaintiffs") filed
22   the first complaint in this Action in April 2005 against Defendants alleging claims
23   for violation of the federal antitrust laws (the "Initial Complaint").
24           3.    The Initial Plaintiffs later filed a First Amended Complaint
25
26   _____
     [1] Unless otherwise specifically defined herein, the capitalized terms in the Findings
27   of Fact and Conclusions of Law have the same meaning as attributed to them in the
     Stipulation and Settlement Agreement, dated February 2, 2007 (the "Settlement
28   Agreement").

1  ("FAC"), in which plaintiffs Jennifer Brazeal, Loredana Nesci ("Nesci") and Lisa

2  Gintz ("Gintz") joined.

3         4.     Plaintiffs Kari Brewer and Lorraine Rimson filed a related action

4  against Defendants in this Court entitled, *Brewer v. West Publishing Corp.*, Case

5  No. CV-05-06211. The Court consolidated the two actions after motion practice on

6  October 17, 2005.

7  **C.    Plaintiffs' Allegations**

8         5.     The FAC, the operative complaint which seeks monetary

9  damages and injunctive relief, alleges claims for violation of Sections 1 and 2 of the

10 Sherman Act, and violation of Section 7 of the Clayton Act.

11 **D.    Defendants' Response**

12        6.     Defendants answered the FAC in July 2006, raising numerous

13 defenses, including statute of limitations, laches, proximate cause, standing, and

14 *bona fide* business competition.

15 **E.    Discovery**

16        7.     The Action entered the discovery phase in August 2005.

17 Plaintiffs took substantial factual and expert discovery relating to liability, damages

18 and class certification issues.

19        8.     Plaintiffs reviewed and analyzed over 400,000 pages of

20 documents produced by Defendants and third parties, conducted one deposition

21 pursuant to Fed. R. Civ. Proc. Section 30(b)(6), and deposed fourteen fact witnesses

22 as follows:

23

24

| Date | Deponent | Description of Deponent |
|------|----------|------------------------|
25 | 07/14/06 | Trent Anderson | Former employee of Kaplan |
26 |  |  |  |
27 |  |  |  |
28 | 02/22/06, | Richard Conviser | CEO of BAR/BRI |

| 2/23/06 | ("Conviser") | |
|---------|--------------|---|
| 07/11/06 | John Costonis | Chancellor of Louisiana State University |
| 01/06/06 | Robert Feinberg | President and CEO of PMBR |
| 06/20/06 | Jonathan Grayer | Chairman and CEO of Kaplan |
| 06/13/06 | Kandace Kukas | Marketing director for the North Atlantic region of Kaplan |
| 07/20/06 | Ian MacDiarmid | Former employee of Kaplan |
| 06/21/06 | David Oliveiri | Former employee of Thomson Corporation |
| 02/14/06 | John Perovich | Former employee of Thomson Corporation. |
| 7/14/06 | John Polstein | CEO of the Test Prep Division at Kaplan. |
| 07/07/06 | Andrew Rosen | COO at Kaplan. |
| 02/07/06 | Brian Sacks | Western regional director at BAR/BRI. |
| 06/14/06 | Donna Skibbe | Employee of Kaplan and a former employee of BAR/BRI and West Bar Review ("West Bar"). |
| 06/23/06 | Michael Suchsland | Executive at BAR/BRI |

9.    Defendants deposed the seven Plaintiffs as well as non-party

witnesses Jack Goetz, Hugh Reed and Stanley Chess.

10.     The Settling Parties also conducted extensive expert discovery, including eight depositions of five different expert witnesses.

11.     Plaintiffs and Defendants had a series of discovery disputes. These discovery disputes resulted in a number of motions to compel before this Court and Special Discovery Master John Francis Carroll, whose appointment was also the subject of motion practice.

**F.     Class Certification**

12.     On March 13, 2006, Plaintiffs filed their motion for class certification. Defendants raised many challenges, including the relevant market definition, antitrust impact and the existence of a formulaic approach to damages.

13.     On May 15, 2006, after comprehensive briefing, including the submission of detailed expert declarations and exhibits as well as extended oral argument, the Court certified a national class defined as: "All persons who purchased a bar review course from BAR/BRI in the United States from 1997 to the present." *See* Order filed May 15, 2006 (the "Class Certification Order").

14.     The Court appointed Plaintiffs as the Class Representatives.

15.     On June 29, 2006, after reviewing submissions from Plaintiffs and Defendants concerning the proposed plan of notice to the Class, the Court issued an Order Re Class Notice (the "Class Notice Order") which approved the proposed form of notice, and provided for dissemination by: (a) first-class mail; (b) in national publications; and (c) over the Internet. In accordance with the Class Notice Order, the Class Action Notice was disseminated in July 2006. The Class Action Notice provided Class Members the opportunity to request exclusion from the Class.

16.     Defendants filed a petition with the Court of Appeals for the Ninth Circuit for leave to file an appeal regarding the Class Certification Order.

Plaintiffs filed an extensive opposition.  The Ninth Circuit denied Defendants' petition on August 11, 2006.

### G.    Trial

17.    The original trial date for this Action was set for June 20, 2006.

18.    At the request of the parties the trial date was continued to September 12, 2006.  The Court later continued the trial date to February 13, 2007 *sua sponte* .

### H.    Summary Judgment

19.    On July 17, 2006, Kaplan filed a motion for summary judgment seeking to dismiss Count II of the FAC (the only count against Kaplan).  Plaintiffs opposed the motion and subsequently sought leave to file two supplemental opposition briefs to the motion, which the Court granted.  The Court denied Kaplan's motion for summary judgment. *See* Order filed September 18, 2006.

### I.    Negotiation of the Settlement Agreement

20.    After completion of discovery and with the February trial date approaching, the Settling Parties together with Rodriguez, Nesci, and Gintz (the "Objecting Plaintiffs") engaged in a formal mediation in New York City on November 29, 2006.  The Honorable Daniel Weinstein (Ret.) of JAMS, who has substantial experience in resolving antitrust and class action cases, served as mediator.  Plaintiffs were represented by Class Counsel; plaintiff Gintz was also present.  BAR/BRI was represented by Shearman & Sterling, LLP and Kaplan was represented by Munger, Tolles & Olson LLP.  Also present were in-house counsel for Defendants and Conviser.

21.    The record reflects that at all times, the negotiations were at arm's-length and hard fought.  The Settling Parties were unable to reach a resolution on November 29, 2006.

22.    Negotiations continued for the next several weeks with the

assistance of the mediator. Throughout this time, Class Counsel continued to prosecute discovery disputes and prepare for trial. After several weeks of negotiations, an agreement was reached on all Settlement terms (which was supported by the mediator); the Settlement Agreement was executed on February 2, 2007.

23.    The Objecting Plaintiffs refused to authorize the execution of the Settlement Agreement on their behalf.

## II.    THE TERMS OF THE SETTLEMENT

### A.    The Settlement Fund

24.    Consistent with the terms of the Settlement Agreement, Defendants paid forty-nine million dollars into an interest-bearing account for the benefit of the Class, which amount, plus interest (hereinafter, "Gross Settlement Fund"), has or will be used to pay for the costs of notice, settlement administration, taxes and attorneys' fees and expenses pursuant to the orders of this Court. After such payments from the Gross Settlement Fund, the balance will be distributed to the Class ("Net Settlement Fund") pursuant to the Plan of Allocation.

### B.    Plan of Allocation

25.    Under the terms of the Plan of Allocation, the Net Settlement Fund will be distributed *pro rata* based on the amount each Class Member who submits a timely and valid Claim Form ("Authorized Claimant") paid BAR/BRI for the bar review course in relation to the amounts paid by all other Authorized Claimants. For example, if the amount paid for a bar review course by an Authorized Claimant equals 1/100,000 of the aggregate of such amounts paid by all other Authorized Claimants, then the Authorized Claimant will receive 1/100,000 of the Net Settlement Fund. The maximum amount of payment that any Authorized Claimant shall be entitled to receive from the Net Settlement Fund, however, shall not exceed thirty-percent (30%) of the amount the Authorized Claimant paid for the

bar review course (the "Maximum Payment").

26.     Class Members also have the option of donating their portion of the Net Settlement Fund to the National Legal Aid and Defender Association ("NLADA"), for the purpose of providing training opportunities for young lawyers nationwide. NLADA, founded in 1911, is the oldest and largest national, nonprofit membership organization devoting all of its resources to advocating equal access to justice for all people.

27.     Defendants are not entitled to a reversion of any money remaining in the Net Settlement Fund after distribution of the Maximum Payments to all Authorized Claimants. If any funds remain in the Net Settlement Fund after distributing the Maximum Payments to all Authorized Claimants, Class Counsel will make an application to the Court for a *cy pres* distribution of the residual amount of the Net Settlement Fund.

**C.     Provisions to Promote Competition in the Bar Review Market**

28.     For purposes of Settlement, BAR/BRI and Kaplan agreed to terminate the marketing agreement that Plaintiffs allege is unlawful and has allowed BAR/BRI to maintain a monopoly and Defendants to divide the market. Further, for a period of five years following the Effective Date, BAR/BRI will include the following statement on the forms it uses to enroll law students into its review courses:

> NOTE: By signing this Enrollment Form and making an initial payment to BAR/BRI, you are not committing yourself to taking the BAR/BRI Bar Review course or making full payment to BAR/BRI for such course.

29.     Finally, in the Settlement Agreement, BAR/BRI expressly states "that it is committed to accurate advertising as required by the Lanham Act, the Federal Trade Commission Act and similar laws, regulations and rules."

Settlement Agreement ¶ 39.

### D.    Release

30.    Paragraphs 56 and 57 of the Settlement Agreement contain a proposed Release, which is incorporated in the Judgment and Order Approving Settlement, signed contemporaneously with these Findings of Fact and Conclusions of Law (the "Settlement Order"). The Settlement Order provides that all Class Members (including any of their past, present or future officers, directors, agents, employees, legal representatives, trustees, parents, associates, affiliates, licensees, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors, and assigns), with the exception of those who exercised their right to opt out (identified in Exhibit A to the Settlement Order), whether or not he, she or it objects to the Settlement and whether or not he, she or it makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity, ever had, now has or hereafter can, shall or may have concerning or relating to any conduct alleged in the FAC in this Action, and including without limitation all claims that have been asserted or could have been asserted in any litigation against the Released Parties or any of them for any conduct alleged in the FAC in this Action (collectively with all claims referenced in the next paragraph, the "Released Claims"), are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration or other proceeding against any or all Released Parties, or order in any jurisdiction entered against any or all Released Parties that is based upon, arises out of or relates to any Released Claims.

31.    Notwithstanding the foregoing, the Released Claims shall not include claims asserted against the named defendants as of February 2, 2007, in the putative class actions, entitled *Park v. Thomson Corp., et al.*, Case No. 05 Civ. 2931

(WHP) and *Arendas v. Thomson Corp., et al.*, Case 6:06-cv-1113-Orl-28JGG, currently pending in the United States District Court, Southern District of New York (the "New York Actions").

## III.    JURISDICTION

32.    This Court has jurisdiction over the claims of Class Members because Plaintiffs have alleged violations of federal laws, specifically the Sherman Act, 15 U.S.C. § 1 and the Clayton Act, 15 U.S.C. § 18.

33.    This Court can also exercise personal jurisdiction over all absentee Class Members because Class Members received proper notice of the Action.

34.    The Class Action Notice informed potential Class Members of the pendency of this Action and provided them with the opportunity to exclude themselves from the Class.

35.    The  Notice informed Class Members of their opportunity to object to the Settlement and to be heard at the Final Settlement Hearing.  Such notice satisfies the due process requirements of the Fifth Amendment. *Brown v. Ticor Title Inc.,* 982 F2d 386, 392 (9th Cir. 1992).

## IV.    PRELIMINARY APPROVAL

36.    On March 19, 2006, over the objections of the Objecting Plaintiffs, this Court entered an Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Directing Dissemination of Notice to Class (the "Preliminary Approval Order") that, among other things: (a) found that the Settlement Agreement was negotiated in good faith, under the supervision of a well-respected mediator, resulted from extensive arm's length negotiations, was concluded after Class Counsel conducted broad discovery and was sufficiently fair, reasonable and adequate to warrant sending notice of the Settlement to Class Members and holding a full hearing on the Settlement; (b) modified the definition

of the previously certified class to: "All Persons who purchased a bar review course from BAR/BRI in the United States from August 1, 1997 through and including July 31, 2006"; (c) found that the proposed forms and methods of notice met the requirements of the Federal Rules of Civil Procedure, the United States Constitution, the Rules of the Court and any other applicable law; (d) appointed Complete Claim Solutions, LLC ("CCS") as Claims Administrator; (e) established procedures for Class Members to object to the Settlement; and (f) established the date for the Final Settlement Hearing.

## V.    NOTICE TO THE CLASS OF THE SETTLEMENT

37.    The Settling Parties have provided extensive individual notice to Class Members. Pursuant to the Preliminary Approval Order, CCS caused a copy of the Notice and Claim Form to be sent *via* first-class mail to the last known postal address of each Class Member, as updated through the United States Postal Service National Change of Address service. A total of approximately 376,000 Notices were sent.

38.    The Summary Notice was published in: (a) *The National Law Journal* on April 23 and 30, 2007; (b) *Lawyers Weekly USA* on April 23, May 7 and 21, 2007; and (c) *USA Today* on April 18, 2007. The Summary Notice was also distributed through PR Newswire on May 8, 2007 and was sent *via* first-class mail to the office manager of each law firm listed on the most recent "*AmLaw* 200 list". In addition, the Notice and Summary Notice  were posted on Class Counsel's websites.

39.    Under Class Counsel's direction and supervision, CCS updated the official BAR/BRI class action website at *www.barbri-classaction.com* to provide Class Members information about the Settlement. The website provided Class Members with important dates regarding the Settlement, answers to "frequently asked questions," copies of the Notice and Claim Form, the Settlement

Agreement, the Plan of Allocation, as well as certain other relevant pleadings in the Action.

40.    Under Class Counsel's direction and supervision, CCS established a toll-free interactive voice response system which also provided answers to frequently asked questions.  Class Members were also able to speak with a live operator at CCS.  Additionally, CCS established an email box for Class members who wish to request additional information by email.

41.    Finally, Class Counsel set up a response team comprised of several attorneys and paralegals to respond to questions from Class Members about the Settlement.

42.    The Notice included summaries of the Release and the Plan of Allocation, and provided detailed information about the Settlement benefits available to the Class Members, including their right to object to the Settlement and to appear at the Final Settlement Hearing.

## VI.    THE NOTICE SATISFIED ALL APPLICABLE REQUIREMENTS

43.    The Preliminary Approval Order approved the procedures for notifying Class Members about the Settlement Agreement, as well as the form of the Notice and the Summary Notice.  The form of such an order is within this Court's discretion. *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("Rule 23(d)(2), of course, does not provide for a specific manner of notice or the form of the notice. These are matters left to the court's discretion to be dictated by the circumstances of each case.)  The Settling Parties provided extensive and sufficient notice to Class Members, and the methodology by which it was provided not only meets, but exceeds, all requirements for notice in a class action settlement.

44.    In order to satisfy due process requirements, notice to Settlement Class Members must generally describe the terms of the settlement in sufficient

detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993) (quoting *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir.1977)); *In re Aetna Inc. Secs. Litig.*, MDL No. 1219, 2001 WL 20928 at * 5 (E.D. Pa. Jan. 4, 2001) ( Notice must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950) (citation omitted)).

**A.    The Contents of the Notice Satisfy Due Process**

45.    A settlement notice is a summary, not a complete source of information.  This circuit requires a very general description of the proposed settlement in such a notice. *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d at 575 (9th Cir. 2004) ("[N]otice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard'") (quoting *Mendoza v. Tucson School Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980)); *Torrisi*, 8 F.3d at, 1374.

46.    Proper notice should provide:  (a) the material terms of the proposed settlement; (b) disclosure of any special benefit to the class representatives; (c) disclosure of the attorneys' fees provisions; (d) the time and place of the final approval hearing and the method for objecting to the settlement; (e) an explanation regarding the procedures for allocating and distributing the settlement funds; and (f) the address and phone number of class counsel and the procedures for making inquiries. *See Marshall v. Holiday Magic*, 550 F.2d at 1178.

47.    The Notice and the Summary Notice provided all of the required information: a description of the material terms of the Settlement; a description of the monetary and non-monetary relief and the Plan of Allocation; the applications for the Incentive Awards and the amounts; Class Counsel's intent to apply for a Fee

Award in the amount of twenty-five percent (25%) of the Gross Settlement Fund and for reimbursement of expenses; and the contact information for Class Counsel, including how to make inquiries. The Notice also included the date, time, and place of the Final Settlement Hearing, described how to object, and informed Class Members that any objection must be filed with the Court and delivered to Class Counsel and counsel for Defendants no later than May 21, 2007.

48.    The Notice further advised Class Members that if the Settlement is approved, Defendants will be released of any liability to the Class Members arising out of the conduct alleged or which could have been alleged in this Action, with the exception of the claims asserted in the New York Actions.

49.    The Notice's content advised Class Members of the information that is material to making an informed and intelligent decision respecting whether to participate in the Settlement or not. *See In re Equity Funding Corp. of America Securities Litigation*, 603 F.2d 1353, 1361 (9th Cir. 1979) (approving notice because "the Notice informed the appellants of the subject matter and terms of the proposed settlements and Plan of Allocation at the time the Notice was sent out"); *Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 332 (E.D. Pa. 1993) ("The standard then is that the notice required by [Rule 23](c)(2) must contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment.") (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

50.    The Notice and Summary Notice provided sufficient information for Class Members to understand the proposed Settlement Agreement and their options. See *In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 235, 254 (D.N.J. 2000) (finding due process satisfied where the notice informs class members of (a) the nature of litigation; (b) general terms of the settlement; (c) where to locate

complete information; and (d) the place and time of the hearing where objections may be heard).

### B.    The Dissemination Plan Satisfies Due Process

51.    There is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those Class Members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974). "Rule 23(e) gives the Court 'virtually complete' discretion as to the manner of service of settlement notice." *Colesberry v. Ruiz Food Products, Inc.*, No. CV F 04-5516, 2006 WL 1875444, at *7 (E.D. Cal. Jun. 30, 2006) (*citing Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981)). Here, the Notice was disseminated *via* individual mailing and publication. As the highest standard of notice, the Notice satisfies the due process requirement.

52.    In this Action, as stated above, the Notice was mailed by first class mail to each Class Member identified from Defendants' records, which CCS reviewed and formatted to ensure standardization and removal of duplicate and non-mailable records. The Notice was also made available on a variety of internet sites – including that of the Claims Administrator and Class Counsel. In addition, the Summary Notice describing the principal terms of the Settlement Agreement and providing information respecting how a more detailed description of the Settlement Agreement could be obtained was published in *The National Law Journal* (two insertions), *Lawyers Weekly USA* (three insertions) and *USA Today*. The Summary Notice was sent by first-class mail to the largest 200 law firms in the United States as listed in *American Lawyer*. These publications and the mailing to the 200 largest law firms specifically targeted the Class.

53.    The procedures used for providing notice in this case satisfy the Federal Rules and due process requirements. *See, e.g., Silber v. Mobon,* 18 F. 33

1449, 1452-54 (9th Cir. 1994)(approving notice sent by first class mail as the "best notice practicable"); *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the Notice requirement of both Fed. R. Civ. 23 and the due process clause.") (citations omitted); *Montgomery v. Beneficial Consumer Disc. Co.*, No. 04- 2114, 2005 WL 497776, at * 6 (E.D. Pa. Mar. 2, 2005) (individual mailing accompanied by publication in USA Today was best practicable notice under the circumstances; "[d]ue process does not require actual notice, but rather a good faith effort to provide actual notice") (quoting Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* § 11:53 (4th ed. 2002) (hereafter "*Newberg*").

54.    The Court thus affirms its findings in the Preliminary Approval Order that the notice in this case and the notice methodology are the best practicable notice and meet the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23), the United States Constitution (including the Due Process Clause), the Rules of this Court and any other applicable law.

## VII.    FINAL APPROVAL OF THE SETTLEMENT

### A.    Written Submissions

55.    Class Counsel and Defendants filed submissions in support of the Settlement Agreement and the Objecting Plaintiffs filed submissions in opposition to the Settlement Agreement as follows:

(a)    On May 17, 2007, Class Counsel filed: (i) Notice of Motion and Motion and Motion For Final Approval of Class Action Settlement; (ii) Declaration of Sidney K. Kanazawa; and (iii) Memorandum of Points and Authorities in Support of Final Approval;

(b)    On May 17, 2007, the Objecting Plaintiffs filed an

FINDINGS OF FACT AND CONCLUSIONS OF LAW

objection, *inter alia* objecting to entry of the Preliminary Approval Order (the "May 17 Objections");

(c)    On May 18, 2007, Class Counsel filed a response to the May 17 Objections;

(d)    On May 31, 2007, the Objecting Plaintiffs filed an *ex parte* application, memorandum and declaration for an order to: (i) allow Eliot Disner, Esq. ("Disner") to "speak freely" on their behalf; (ii) allow access to certain files; and (iii) clarify the status of Disner as a "co-lead counsel" (the "*Ex Parte* Application");

(e)    On June 1, 2007, Class Counsel filed an Opposition to the *Ex Parte* Application and Defendants filed objections to the *Ex Parte* Application (the "*Ex Parte* Oppositions"); and

(f)    On June 7, 2007, the Objecting Plaintiffs filed a reply to the *Ex Parte* Oppositions.

56.    In addition to the May 17 Objections, the purported Class Members listed in the following table filed Objections to the Settlement on the dates indicated (together with the May 17 Objections, the "Objections"):

| Date Filed | Class Member |
|---|---|
| May 21, 2007 | David Oriol (the "Oriol Objector") |
| May 21, 2007 | Jason Tingle |
| | Oliver Gutierrez  (the "Tingle Objections") |
| May 21, 2007 | David Feldman |
| | Cameron Gharabiklou |
| | Emily Grant |
| | Jeff Lang |
| | Sarah McDonald |

| Date Filed | Class Member |
|---|---|
| | Cara Patton<br>Rachel Schwartz<br>Greg Thomas (the "Feldman Objectors") |
| May 21, 2007 | Joseph J. Angersola |
| May 21, 2007 | Anthony Valach |
| May 21, 2007 | Jay M. Wolman (the "Wolman Objector") |
| May 21, 2007 | Joan E. Shreffler |
| May 21, 2007 | Robert Gaudet,<br>Sandeep Gopalan<br>Elizabeth De Long<br>Andrea Boggio (the "Gaudet Objectors") |
| May 21, 2007 | Justin Head<br>Ryan Helfrich (the "Head Objectors") |
| May 21, 2007 | George Schneider<br>Jonathan Slomba<br>James Puntumapanitch (the "Schneider Objectors") |
| May 21, 2007 | James Juranek<br>Audrey Juranek<br>Richard P. Le Blanc, III. (the "Juranek Objectors") |
| May 12, 2007 | Arcelia Trevino (the "Trevino Objector") |
| May 21, 2007 | Aaron Lukoff<br>John Prendergast<br>David Orange (the "Lukoff Objectors") |

| Date Filed | Class Member |
|------------|--------------|
| May 22, 2007 | Daryl Chilimidos (the "Chilimidos Objector") |
| May 22, 2007 | Nikki Love<br>John Bernitz (the "Love Objectors") |
| May 22, 2007 | Daniel M. Schaefer (the "Schaefer Objector") |
| May 22, 2007 | Evans & Mullinix, P.A. (the "Evans & Mullinix Objectors") |
| May 22, 2007 | Sarah Siegel (the "Siegel Objector") |
| May 22, 2007 | Jennifer Brown McElroy (the "McElroy Objector") |
| May 22, 2007 | Andrew Gilman<br>Stephen M. Vasil |
| May 23, 2007 | David Harris<br>Kareem Kamal<br>Matthew Kavanaugh<br>Simon Newfield<br>Jonathan Ricasa<br>Abigail Treanor<br>David Zelenski (the "Harris Objector") |
| May 23, 2007 | Pamela Collins (the "Collins Objector") |
| April 10, 2007 | Craig Walenta |
| May 28, 2007 | Richard A. Bodmer |
| June 12, 2007 | Stephen Lindholm |

57.    On June 11, 2007, Class Counsel filed:  (a) a reply memorandum in support of the Settlement which addressed the Objections; and (b) the

declarations of: (i) Sidney K. Kanazawa; (ii) Christine Pedigo Bartholomew; (iii) Richard Sartory of CCS; and (iv) Hon. Daniel Weinstein.

58.    On June 11, 2007, Defendants filed Defendants' Combined Response To Various Class Members' Objections To Stipulation And Settlement Agreement ("Defendants' Combined Response"). Also on June 11, 2007, BAR/BRI filed a reply memorandum to the May 17 Objections.

59.    On June 15, 2007, Kaplan filed:  (a) Notice of Filing of Declaration of Lee S. Taylor in Support of Motion for Final Approval of Settlement, Regarding Kaplan's Compliance with the Requirements of the Class Action Fairness Act; and (b) Declaration of Lee S. Taylor, and subsequently filed: (a) Notice of Filing of Revised Declaration of Lee S. Taylor in Support of Motion for Final Approval of Settlement, Regarding Kaplan's Compliance with the Requirements of the Class Action Fairness Act; (b) Revised Declaration of Lee S. Taylor; Notice of Filing Under Seal; and (c) Declaration of Lee S. Taylor Authenticating and Attaching Documents.

60.    On June 18, 2007, BAR/BRI filed the Declaration of James P. Tallon Regarding the Class Action Fairness Act.

61.    On June 18, 2007, the Court ordered additional briefing to be submitted with regard to the issue of a *cy pres* distribution (the "June 18 Order").

62.    Pursuant to the Court's June 18 Order, on June 26, 2007, Class Counsel filed:  (a) Settling Plaintiffs' Supplemental Briefing In Support of Motion for Final Approval Re:  30% Distribution Limit To Authorized Claimants and Cy Pres Fund for Remainder; (b) Declaration of Sidney K. Kanazawa; and (c) Declaration of Richard L. Sartory of CCS. Also, on that date, Defendants filed: (a) Defendants' Supplemental Brief Regarding Approval of Proposed Settlement, Addressing Cy Pres Provision of Proposed Settlement; and (b) the Declaration of Stuart N. Senator.

63.    In addition, on June 26, 2007, several Objectors including the Juranek Objectors and the Harris Objectors, submitted additional briefing in further opposition to final approval of the Settlement.

64.    On July 5, 2007, Disner filed a Summary of Evidence Regarding Defendant West Publishing Co.'s Violation of Section 2 of the Sherman Act (15 U.S.C. § 2) and a Re-Notice of Appearance of Counsel.

65.    As noted above, the number of Objections was small.  The Objectors raised issues regarding the following topics:  (a) the Objecting Plaintiffs opposed the Settlement; (b) Plaintiffs' Section 7 claim should be bifurcated from the Sherman Act claims; (c) Plaintiffs' case against the Defendants is too strong; (d) the Settlement Fund is insufficient; (e) the lack of a provision prohibiting future misconduct or dissolution; (f) the scope of the Release; (g) the possibility of a cap on individual Class Member's recovery and a *cy pres* award; (h) the failure to provide for a second opt-out chance; (i) the sealing of certain confidential documents obtained in discovery; (j) the Claim Form procedure renders the Settlement unfair; (k) the sufficiency of the Notice; and (l) the adequacy of Class Counsel.

**B.    The Final Approval Hearing**

66.    On June 18, 2007 and July 9, 2007, the Court conducted hearings on the fairness, reasonableness, and adequacy of the Settlement.

67.    Twelve groups of Objectors were represented at the Final Approval Hearing (through counsel).  Two of the three Objecting Plaintiffs - Nesci and Rodriguez - were also present.

68.    The Objectors (other than the Objecting Plaintiffs) were represented at the Final Approval Hearing by:  (a) Alan Harris, Esq. (on behalf of the Harris Objectors); (b) Howard Steele, Esq., Charles Steiner, Esq., and Ron Rosengarten, Esq. (on behalf of the Juranek Objectors); (c) Alexandra Steinberg,

Esq. (on behalf of the Trevino Objector); (d) John Davis, Esq. (on behalf of the Feldman Objectors); (e) Robert Gaudet, Jr., Esq. (on behalf of the Gaudet Objectors); (f) Ben Nutley, Esq. (on behalf of Head Objectors); (g) Robert Chojnakci, Esq. (on behalf of the Oriol Objectors); (h) Ken Nelson, Esq. (on behalf of the Evans & Mullinix Objectors); (i) Emily Greer, Esq. (on behalf of the Love Objectors); (j) Leo Collins, Esq. (on behalf of the Collins Objector); and (k) Darnell Palmer, Esq. (on behalf of the Evans & Mullinix Objectors, the McElroy Objector and the Schaefer Objector). In addition, Perrin Disner, the son of Disner appeared *pro se* as an objector, although he did not comply with the procedure for objecting set forth in the Preliminary Approval Order.

## VIII. FAIRNESS OF THE SETTLEMENT AGREEMENT

### A. The Settlement Agreement Enjoys a Presumption of Fairness

69. In the Ninth Circuit, a court affords a presumption of fairness to a settlement, if: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Young v. Polo Retail*, No. C-02-4546 VRW, 2006 WL 3 050861, at 5 (N.D. Ca. Oct. 25, 2006); *Newberg* at § 11.41. As described above, the Settlement was reached only after extensive discovery had been conducted. Settlement negotiations occurred at arm's length for three months with the assistance of a mediator and on the eve of trial.

70. Both Class Counsel and Defendants' counsel are experienced in class actions, including antitrust class actions. Moreover, the Class' reaction to the Settlement Agreement has been overwhelmingly positive, and only a small fraction of the Class has objected to the Settlement. The Settlement Agreement thus enjoys a presumption of fairness.

### B. The Settlement Agreement is Fair, Adequate and Reasonable

71. The Ninth Circuit has articulated eight factors to evaluate a

settlement's fairness, adequacy, and reasonableness:

    (a)  The strength of plaintiffs' case;

    (b)  The risk, expense, complexity, and likely duration of further litigation;

    (c)  The risk of maintaining class action status throughout the trial;

    (d)  The amount offered in settlement;

    (e)  The extent of discovery completed, and the stage of the proceedings;

    (f)  The experience and views of counsel;

    (g)  The presence of a governmental participant,[2] and

    (h)  The reaction of the class members to the proposed settlement.

*Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

**1.    The Strength of Plaintiffs' Case**

72.    Plaintiffs prevailed on Kaplan's motion for summary judgment and believe they would prevail on any motion for summary judgment filed by BAR/BRI. Nevertheless, defeating these motions does not mean that Plaintiffs established Defendants' *prima facie* liability; whether they would obtain a favorable, unanimous jury verdict as required by Fed. R. Civ. P. 48 is far from guaranteed. *See, e.g.*, *In re Airline Ticket Com'n Antitrust Litig.*, 953 F.Supp. 280, 283 (D. Minn. 1997) (approving settlement although it did not provide a full recovery of the potential losses and noting that objectors failed to appreciate that on summary judgment, the court only decided that defendants did not prevail as a

---

[2] There was no governmental presence with respect to the claims set forth in the Action.

matter of law, not that plaintiffs had a winning case).

73. To prove their claim for violation of Section 1 of the Sherman Act, Plaintiffs have to show that Defendants combined, conspired and contracted among themselves to eliminate competition in the bar review course market throughout the United States for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate commerce. *See Palmer v. BRG,* 498 U.S. 46, 48 (1990). Plaintiffs' Section 1 claim is based on Kaplan's withdrawal from a letter of intent to purchase West Bar and its subsequent agreement with BAR/BRI. Kaplan and BAR/BRI, however, point to documentary and testimonial evidence to support their defense that the 1997 agreement between them was not an illegal market allocation agreement, but a *bona-fide* co-marketing agreement executed after Kaplan made a legitimate business decision not to go forward with acquiring West Bar due to its poor financial forecast for the business. While Plaintiffs claim to have evidence to rebut Defendants' defenses, litigation is uncertain and Plaintiffs could lose on this point as equally as they could prevail. *See In re Superior Beverage/Glass Container Consolidated Pretrial,* 133 F.R.D. 119, 127 (N.D. Ill. 1990) (stating that "[t]he 'best' case can be lost and the 'worst' case can be won . . . .").

74. There is also no guarantee that Plaintiffs would prevail on their Section 2 claim. To establish their Section 2 claim, Plaintiffs would have to prove that BAR/BRI has significant market power and engaged in wrongful conduct to obtain and preserve its monopoly power on a national scale, thereby injuring Plaintiffs and the Class. *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 596 (1985). BAR/BRI, however, argues that its market position is the result of innovation and high-quality products and services, not illegal conduct. Further, BAR/BRI has proffered evidence showing that the relevant product market is not national, but state specific, and the geographic markets are local and

-24-
FINDINGS OF FACT AND CONCLUSIONS OF LAW

metropolitan areas. BAR/BRI also argued that the conduct alleged in the FAC to support the Section 2 claim was (i) not substantiated in discovery, (ii) local and limited in impact, and (iii) too remote in time. Again, while Plaintiffs believe they have strong evidence to the contrary, it is not inconceivable that a jury could agree with and decide in favor of BAR/BRI.

75.    Similarly, there is no guarantee that Plaintiffs would prevail on their Section 7 claim under the Clayton Act, which prohibits mergers, acquisitions and joint ventures "that may substantially lessen competition or tend to create a monopoly in a market." 15 U.S.C. § 18. BAR/BRI claims it did not violate Section 7 by acquiring West Bar as Plaintiffs allege. Rather, BAR/BRI claims its conduct was pro-competitive and did not diminish competition. BAR/BRI claims it had both testimony and documentary evidence showing that West Bar was already defunct when BAR/BRI agreed to provide bar review courses to West Bar's customers so that BAR/BRI did not acquire West Bar or diminish competition. Again, while Plaintiffs claim to have rebuttal evidence, they have no crystal ball to allow them to foresee which way the Court and/or a jury would find on this issue.

76.    Defendants also raise the statute of limitations defense. If the Court or the jury determined that the statute precluded the claims of certain Class Members, thereby decreasing the size of the Class and impacting the damages analysis relied upon by Class Counsel in negotiating the Settlement, then the Class may recover significantly less than what was achieved by the Settlement.

## 2.    The Risk, Expense, Complexity and Duration of Continued Litigation

77.    These factors consider "the probable costs, in both time and money, of continued litigation." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002). In most cases, "unless the settlement is clearly inadequate,

its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting *Newberg,* § 11:50 at 155). Indeed, it has been held proper "to take the bird in hand instead of a prospective flock in the bush." *DIRECTV,* 221 F.R.D. at 526 (quoting *Oppenlander v. Standard Oil Co.,* 64 F.R.D. 597, 624 (D. Colo. 1974)).  Settlement is encouraged in class actions where possible. *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir.1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense.").

78.    There is no question that this Action is complex and, if not settled, its potential to result in enormous expense and lengthy duration is great. Antitrust class actions "are notoriously complex, protracted, and bitterly fought" and "arguably the most complex actions to prosecute." *In re Visa Check/MasterMoney Antitrust Litig.,* 297 F.Supp.2d 503, 510 (E.D.N.Y. 2003) (quoting *Weseley v. Spear, Leeds & Kellogg,* 711 F.Supp.713, 719 (E.D.N.Y. 1989)); *In re Motorsports Merch. Antitrust Litig.,* 112 F.Supp.2d 1329, 1337 (N.D. Ga. 2000).

79.    This antitrust case is no different; it would surely involve further expense in addition to the amounts already expended if the Action proceeded to trial.  For instance, proceeding to trial would require additional discovery, including the resolution of a number of motions to compel that were pending at the time the Settling Parties reached Settlement; the briefing and resolution of numerous motions *in limine* yet to be filed; and cross-*Daubert* motions would certainly be filed.  Plaintiffs would also have to oppose BAR/BRI's motion for summary judgment and motion to bifurcate the trial.  These costs would substantially increase

FINDINGS OF FACT AND CONCLUSIONS OF LAW

the significant costs and fees already incurred.

80. Additionally, the litigation would most likely take several years to finally resolve, considering the length of trial and appeals. Accordingly, avoiding a trial and inevitable appeals in this complex, antitrust suit strongly weigh in support of approval of the Settlement, rather than prolonged and uncertain litigation. *See DIRECTV*, 221 F.R.D. at 527 ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation").

### 3. The Risks of Maintaining Class Certification throughout Trial

81. This Court certified a nationwide Class. Although Plaintiffs believe it is unlikely, there is no guarantee that Defendants would not move for and obtain decertification of the Class before or during trial. *See In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998). As noted by one court, if "insurmountable management problems were to develop at any point, class certification can be revisited at any time under Fed.R.Civ.P. 23(c)(1)." *Id.* Further, even if the Class remained certified throughout the trial and Plaintiffs prevailed, Defendants would surely challenge class certification on appeal. If at any point the Class were decertified or certification were reversed on appeal, the Class would recover nothing. Thus, this factor also weighs in favor of the Settlement.

### 4. The Relief Offered in Settlement

82. The Settlement provides a significant Settlement Fund of $49 million as well as valuable non-monetary relief. Defendants deposited this money into an escrow account on April 6, 2007 where it is currently earning interest for the benefit of the Class.

83. When compared to Defendants' expert's estimated damages, the $49 million is an excellent result. According to Defendants' experts, the Class

suffered no antitrust impact or damages respecting Plaintiffs' Section 2 claim under the Sherman Act or Section 7 claim under the Clayton Act. Defendant's expert further opined that Plaintiffs suffered no antitrust impact or damages with respect to Plaintiffs' Section 1 claim under the Sherman Act, but if they did, it was limited to at most, approximately $7 million. Therefore, the $49 million represents seven times more than Defendants' expert's most generous estimate of damages.

84.     While the $49 million does not represent Plaintiffs' expert's full amount of estimated damages, "settlement is about compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In reWarfarin*, 212 F.R.D. at 257. The $49 million does, however, represent approximately thirty-percent (30%) of Plaintiffs' damages, estimated by their expert to be in the range of $158 million to $168 million. Thus, the $49 million represents a significant portion of Plaintiffs' expert's estimated damages. Moreover, Defendants made clear their intention to mount a substantial attack on Plaintiffs' damages expert on multiple grounds as set forth in Defendants' Combined Response. While Plaintiffs believe that they could have overcome these anticipated attacks, the outcome was uncertain.

85.     Courts have routinely approved class action settlements where the settlement amount is in the percentage range of the claimed amount of damages here, as well as where the settlement amount was a substantially lower percentage of the claimed amount of damages. *See In re Cendant Corp. Litig.*, 264 F.3d at 241(noting that recoveries can range from 1.6% to 14% and affirming settlement representing 36% of recovery); *Nichols v. Smithkline Beecham Corp.*, No. 00-6222, 2005 WL 950616, at *16 (E.D. Pa. April 22, 2005) (approving settlement that represented between 9.3% and 13.9% of the claimed damages); *In re Warfarin*, 212 F.R.D. at 258 (finding settlement amount representing 33% of maximum possible recovery was well within a reasonable range when compared with recovery percentages in other class action settlements).

86. Although Plaintiffs believe their case is strong and that they could recover damages at trial, there is always the risk that Plaintiffs may not recover anything. "The history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or negligible damages, at trial or on appeal." *In re Nasdaq*, 187 F.R.D. at 476.

87. Further, if the case did not settle, Plaintiffs risk the valuable non-monetary relief that Class Counsel negotiated. This relief addresses many of the concerns that prompted the filing of this lawsuit, such as the "market allocation" agreement between BAR/BRI and Kaplan that Plaintiffs allege is illegal and other barriers to entry. This valuable non-monetary relief, in addition to the significant fund of $49 million, weigh heavily in favor of Settlement.

### 5. The Extent of Discovery Completed and the Stage of Proceedings When the Parties Reached the Settlement

88. "To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery." *In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 176 (S.D.N.Y. 2000). However, "the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of trial." *Id.* (quoting *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 263 (S.D.N.Y. 1998)). What is required is that "sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently." *Newberg* at § 11:41.

89. The record here supports final approval of the Settlement. Class Counsel conducted extensive discovery regarding each of the relevant issues in the case, such as: (a) the negotiation, terms and impact of the co-marketing agreement between BAR/BRI and Kaplan; (b) BAR/BRI's competitive activities and interactions with competitors; (c) BAR/BRI's purchase of West Bar's assets; (d) the

geographic market for bar review courses; (e) market shares; and (f) barriers to entry and market conditions. Plaintiffs also deposed fourteen fact witnesses, deposed each of Defendants' experts on issues relating to liability, damages, and class certification, and reviewed and analyzed more than 400,000 pages of documents.

90.     Further, at the time Class Counsel negotiated the Settlement, the Settling Parties had the benefit of key briefing and rulings on class certification and Kaplan's motion for summary adjudication. Accordingly, when Class Counsel negotiated the Settlement, they had more than sufficient information to adequately assess the strengths and weaknesses of the case. The amount of discovery taken in this case and the stage of the proceedings weighs heavily in favor of the Settlement. *See DIRECTV*, 221 F.R.D. at 528 ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair").

**6.     The Experience and Views of Counsel Favor Final Approval**

91.     In assessing the adequacy of the terms of a settlement, the trial court is entitled to and should rely upon the judgment of experienced counsel for the parties. *See DIRECTV*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation" (internal quotations and citations omitted)); *see also Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). The basis for such reliance is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Indeed, when evaluating a proposed settlement, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel. *See Flinn v. FMC Corporation*, 528 F.2d 1169, 1173 (4th Cir. 1975); *Hanrahan v. Britt*, 174 F.R.D. 356, 366-368 (E.D. Pa. 1997) (presumption of

correctness applies to a class action settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery, citing *Manual for Complex Litigation* § 30.41 (2nd ed. 1985)).

92.    Class Counsel have considerable experience in litigating antitrust matters, class actions, and other complex litigation, as their firm resumés show.

93.    After thorough consideration, Class Counsel concluded that the Settlement terms are fair, adequate and reasonable and in the best interests of the Class as a whole, and recommended that it be granted final approval.  In negotiating the terms of the Settlement, Class Counsel represented that they considered a multitude of factors, including: (a) the nature and complexity of the alleged offenses; (b) the availability and admissibility of evidence to support each of the required elements of the alleged causes of action; (c) the nature and idiosyncrasies of the bar review business; (d) the extent to which Class Members were damaged by the alleged conduct of Defendants; (e) the defenses asserted; (f) the anticipated motions to be filed by Defendants; and (g) the benefit of obtaining a settlement on the proposed terms now, as opposed to awaiting a potentially greater settlement or judgment at some unknown time in the future.

94.    Moreover, Class Counsel have demonstrated a high degree of competence in the litigation of this case.  With the benefit of extensive factual and expert discovery and arduous motion practice, including class certification and summary judgment, Class Counsel strongly believe that the Settlement is a fair, adequate, and reasonable resolution of the Class' dispute with Defendants, and is preferable to continued litigation and the costs and uncertainties associated therewith. Accordingly, this factor weighs in favor of approval of the Settlement.

7.     **The Settlement Enjoys Overwhelming Class Support**

95.     The last criterion for final approval is the reaction of the Class. *See Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). In any class action of significant size, the absence of any objections would be "extremely unusual." *See In re Anthracite Coal Antitrust Litigation*, 79 F.R.D. 707, 712-13 (M.D. Pa. 1978). *DIRECTV*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

96.     The Settlement enjoys the overwhelming support of the Class. The Notice was delivered by first class U.S. mail to approximately 376,000 Class members. As of August , 2007, more than 52,000 claims have been filed. In contrast, only 54 Class Members have submitted Objections. The reaction from the Class warrants final approval of the Settlement. *See e.g., Boyd v. Cechtle Corp.*, 485 F.Supp. 610, 624 (N.D. Cal. 1979) (objections from only 16 percent of the class was persuasive that the settlement was adequate).

C.     **The Objections Are Overruled**

(1)     **The Adequacy of the Settlement Does Not Depend on the Individual Desires of the Objecting Plaintiffs**

97.     The Court rejects the arguments by four Objectors or groups of Objectors that the Settlement should not be approved because the Objecting Plaintiffs object to the terms of the Settlement. To the contrary, "agreement of the named plaintiffs is not essential to approval of a settlement which the trial court finds to be fair and reasonable." *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982); *see also Lazy Oil Co  v. Witco Co.*, 95 F. Supp. 2d 290, 334 (W.D. Pa. 1997).

98.     Multiple courts have approved class action settlements notwithstanding the objections of the class representatives. *See, e.g. Officers for*

-32-
FINDINGS OF FACT AND CONCLUSIONS OF LAW

*Justice,* 688 F.2d at 631; *Parker,* 667 F.2d at 1204 (affirmed the approval of a settlement of an employment discrimination class action over the objections of 10 of the 11 named plaintiffs); *Maywalt v. Parker & Parsley Petroleum,* 864 F. Supp. 1422 (S.D.N.Y. 1994), *aff'd* 67 F.3d 1072 (2d. Cir. 1995) (granting final approval of a securities fraud class action over some 2,700 objections, including certain of the class representatives).[3] The rationale is that "[t]o empower the Class Representatives with what would amount to an automatic veto over the Proposed Settlement does not appear to serve the best interests of Rule 23 and would merely encourage strategic behavior 'designed to maximize the value of the veto rather than the settlement value of the claims.'" *Maywalt,* 864 F. Supp. at 1430, quoting *In re Ivan F. Boesky Sec. Litig.,* 948 F.2d 1358, 1366 (2d Cir. 1991).

99.    This Court is not required to give any special deference to the Objecting Plaintiffs. *See In re Airline Ticket,* 953 F. Supp. At 282 n.3 (considering but giving "no special deference based merely on [objector's] status as a class representative" and approving settlement). The Representative Plaintiffs support approval of the Settlement.

(2)    **The Risks Associated With The Clayton Act Section 7 Claim Weigh In Favor Of The Settlement**

(i)    **Objectors Ignore the Hurdles Facing Plaintiffs at Trial**

100.    Certain Objectors argue that the case against Defendants is too strong to settle. These Objectors, however, fail to provide the Court with any

---

[3] *See also, Olden v. LaFarge Corp.,* 2007 U.S. Dist. LEXIS 5954 at *40-41 (E.D. Mich. 2007) (approving settlement without the support of any of the class representatives); *Lazy Oil,* 95 F. Supp. 2d. at 333-34 (approving settlement and noting that "agreement of the named plaintiffs is not essential to approval of a settlement which the trial court finds to be fair and reasonable"); *Boyd,* 485 F. Supp. at 624 (approving consent decree in an employment discrimination class action, despite the fact that "[a]pproximately sixteen percent of the class, including three of the four named plaintiffs, have filed some opposition to the settlement").

evidence or analysis. Their argument is based more on the unsubstantiated optimism of Disner, than on the facts of the case and the risks associated with trial.

101. The Objecting Plaintiffs argue that the strength of the Section 7 claim weighs in favor of rejecting the Settlement against BAR/BRI, but not Kaplan. Notwithstanding the impropriety of this request, the position is contrary to the position that the Objecting Plaintiffs and Disner previously advocated in early December 2006, when they all supported the monetary terms of the Settlement. Moreover, it directly contradicts statements Disner made under oath in a declaration filed with this Court on March 12, 2007. Furthermore, this Court finds this argument is without merit.

102. The Objecting Plaintiffs urged the Court to approve Kaplan's agreement to pay $13 million of the Settlement and its release from the Action, but urge the Court to reject the remainder of the Settlement (involving BAR/BRI). The Settlement Agreement does not specify how much either Defendant is paying; nor does it allow for the Court to approve parts of the Settlement, while disapproving others. The Settlement "must stand or fall in its entirety." *Hanlon,* 150 F.3d at 1026 ("Neither the district court nor this court ha[s] the ability to delete, modify or substitute certain provisions"). In *Evans v. Jeff D.,* 475 U.S. 717, 726 (1986), the Supreme Court noted that a district court is only permitted to "accept the proposal, reject it and postpone the trial date to see if a different settlement can be achieved, or reject it and try the case." Since the Settlement as a whole is fair, reasonable and adequate, it is approved in its entirety.

103. As with the Sherman Act claims, Class Counsel thoroughly considered the strengths of the Section 7 claim and concluded that Plaintiffs faced many hurdles, including:

(a)    Application of the four-year statute of limitations and/or the doctrine of laches, possibly defeating or diminishing the claim all

together and certainly dividing the Class as currently defined. *See Midwestern Machinery Co., Inc. v. Northwest Airlines, Inc.,* 392 F.3d 265 (8th Cir. 2004); *California v. American Stores Co.,* 495 U.S. 271, 297 (1989) (J. Kennedy, concurring).[4]

        (b)    Establishing product and geographic market definitions, which requires a more detailed analysis than that needed for the other claims. *See U.S. v. Continental Can Co.,* 378 U.S. 441, 459 (1964).[5]

        (c)    Establishing that BAR/BRI acquired West Bar in light of BAR/BRI's contention that BAR/BRI did not purchase West bar's stock, assets or student contracts and that West Bar was already out of business at the time that BAR/BRI agreed to provide bar review courses to former West Bar students and only incidentally acquired certain limited intellectual property from West Bar;

        (d)    Establishing the requisite causal link between BAR/BRI's acquisition of certain limited intellectual property from West Bar, which had gone out of business and was no longer a competitor, and the claimed damages;

        (e)    Defeating the "failing company" doctrine defense, which would, at the very least, require a "battle of the experts" to resolve;

        (f)    Overcoming a dearth of precedent on the issue of the divesture remedy; and

        (g)    Overcoming the fact that no private *consumer* class action has ever resulted in a divestiture remedy.

---

[4] Class Members from 1997 through 2001 who previously relied on tolling principles available for their Sherman Act claims (*i.e.* fraudulent concealment, continuing violation, etc.) would recover nothing, even in the event of a total victory, because these tolling provisions are not available with respect to the Section 7 claim.

[5] This Court has not conducted this analysis regarding Plaintiffs' product or geographic market definitions for a Section 7 claim.

104.    As the Supreme Court said when it authorized private suits in 1989, "Dissolution could be considerably more awesome... [D]issolution was a judgment ... of corporate death, which represented the extreme rigor of the law." *California v. American Stores,* 495 U.S. at 289, quoting *People v. North River Sugar Refining Co.,* 121 N.Y. 582, 608 (1890). Even if divestiture was appropriate, it would not necessarily be fashioned in terms of splitting up BAR/BRI. Since BAR/BRI's purchase of West Bar's assets was limited to some intellectual property, divestiture might only mean requiring BAR/BRI to give up intellectual property rights to materials that are ten years old. In addition, there remained a risk that the claims against BAR/BRI, including the Section 7 claim, would be decided adversely on summary judgment.

105.    Given these hurdles a substantial cash settlement coupled with significant additional relief, including termination of the very agreement which was the catalyst of the lawsuit, is fair, adequate, reasonable, and in the best interest of the Class.

### (ii)    The Bifurcation Motion Is Improper, Lacks Merit and is Denied

106.    Bifurcating the Section 7 claim from the Sherman Act claims, as requested by the Objecting Plaintiffs, would create further obstacles and be a waste of time and resources. Not only is the "conditional motion" for bifurcation premature and improper (as the motion before the Court is for final approval of a Settlement, which, if granted, moots any such motion), it defies logic.

107.    Courts have discretion to order a separate trial of any claim "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed.R.Civ.P. 42(b); *Hayden v. Chalfant Press, Inc.,* 281 F.2d 543, 544 (9th Cir. 1960). "It is the interest of efficient judicial administration that is to be controlling under the rule, rather than the

wishes of the parties." Wright & Miller, Federal Practice and Procedure, § 2388 (2d ed. pkt part 2006). The moving party has the "burden of proving that the bifurcation will promote judicial economy and avoid inconvenience or prejudice to the parties." *Spectra-Physics Lasers, Inc. v. Uniphase Corp.,* 144 F.R.D. 99, 101 (N.D. Cal. 1992); *see also Ebay, Inc. v. Bidder's Edge, Inc.,* 2000-2 Trade Cases P 73,039, 56 U.S.P.Q.2d 1856 *4 (C.D. Cal. July 25, 2000); *Burton v. Mountain West Farm Bureau Mut. Ins. Co.,* 214 F.R.D. 598 (D. Mont. 2003).

       108.   That burden cannot be met as bifurcation belies judicial economy here. The Objecting Plaintiffs concede that "the only difference between the Section 7 and Sherman Act claims is the damages." Furthermore, the proposal to try the Section 7 claim first, even if granted, may recover damages for Class Members only in the four years before the filing of the Initial Complaint. Class Members from 1997 through 2001 who previously relied on tolling principles available for their Sherman Act claims (*i.e.* fraudulent concealment, continuing violation, etc.) could recover nothing, even in the event of a total victory, because the application of those tolling provisions to a Section 7 claim is uncertain. To recover anything for these Class Members, the Sherman Act claims would still need to be tried and proven, requiring use of largely the same evidence and witnesses, regardless of the result of the Section 7 claim. This would result in a duplication of time and effort that squanders judicial resources. The rules do not permit a plaintiff to try causes of action *seriatim*, starting with whatever claim it may think is strongest. *See, e.g., In re Bendectin Litigation,* 857 F.2d 290, 307 (6th Cir. 1988) ("The piecemeal trial of separate issues in a single suit is not to be the usual course").

1

2

3

      **(3)**    **The $49 Million Settlement Fund is Fair, Reasonable and Adequate in Light of the Strengths and Weakness in Plaintiffs' Case**

4

5

6

7

      109.   Nine Class Members, as well as the Objecting Plaintiffs, argue that the $49 million is inadequate or that their individual shares will be insufficient. None of these Objectors, however, provide the Court with any cogent analysis or evidence showing that the $49 million is inadequate.

8

9

10

11

12

13

14

      110.   Plaintiffs' experts estimated damages for all claims as being in the range of $158 million to $168 million. Defendants' expert opined that the Class suffered no damages with respect to both the Section 2 claim under the Sherman Act and the Section 7 claim under the Clayton Act, and, at most, suffered damages of $7 million with respect to the Section 1 claim under the Sherman Act. Thus, the $49 million represents approximately 30% of Plaintiffs' expert's estimated damages, and 700% of Defendants' expert's estimated damages.[6]

15

16

17

18

19

20

21

22

23

24

      111.   When evaluated against other settlements approved, the $49 million is fair, reasonable and adequate. *See In re Cendant Corp. Litig.*, 264 F.3d at 241 (noting that recoveries can range from 1.6% to 14% and affirming settlement representing 36% of recovery); *Newman v. Stein*, 464 F.2d 689 (2d Cir.1972) (approving settlement representing 14% of potential recovery); *Nichols v. Smithkilne Beecham Corp*, No. Civ. A.00-6222, 2005 WL 950616 at *16 (approving settlement that represented between 9.3% and 13.0% of claimed damages); *see also Phemister v. Harcourt Brace Jovanovich*, No. 77 C 39, 1984 WL 21981 at *11 (N.D. Ill. September 14, 1984) ("Many antitrust settlements that

25

26

27

28

---

[6] One Objector argues that the Settlement "smells of collusion" because Disner believes that the damages are up to ten times more than the Settlement Fund. There is absolutely no evidence in the record showing any signs of collusion. To the contrary, the record, including the declaration of the Honorable Daniel Weinstein, shows that the settlement negotiations were hard-fought at all times.

achieve substantially less than single damages for the class are considered fair and adequate settlements").

### (4)    Courts Do Not Evaluate Settlements in Light of the Treble Damages That Might Be Available After a Successful Trial.

112.    The Court rejects the Objecting Plaintiffs' argument that the monetary portion of the Settlement is inadequate because the Section 7 claim is worth $360 million. Objecting Plaintiffs arrive at this figure by trebling Plaintiffs' expert's estimated damages of $146 million since 2001 and then multiplying that figure by their estimated chances of winning at trial.

113.    This analysis is flawed as it presupposes that Plaintiffs will succeed at trial. Evaluating the Settlement in light of the treble damages available at the end of a successful trial is purely speculative. Courts do not consider such damages when calculating a reasonable range of recovery. *See e.g., City of Detroit v. Grinnel Corp.*, 495 F.2d 448, 458 (2d Cir. 1974) ("[T]he vast majority of courts which have approved settlements in this type of case . . . have given their approval to settlements which are traditionally based on an estimate of single damages only"); *In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03-0085 FSH, 2005 WL 30098808 at *9 (D. N.J. Nov. 9, 2005) ("[i]n order to evaluate the propriety of an antitrust class action settlement's monetary component, a court should compare the settlement to the estimated single damages"); *In re Warfarin*, 212 F.R.D. 231, 257 (D. Del. 2002) (citing *In re Lorazaepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 376 (D.D.C. 2002). None of the Objectors has cited any authority to the contrary.

### (5)    Defendants' Ability to Pay More Is Irrelevant

114.    The Court rejects the argument by certain Objectors that since BAR/BRI is profitable and therefore has the ability to pay more, the $49 million Settlement is inadequate. Courts have repeatedly rejected this argument. *See In re*

-39-
FINDINGS OF FACT AND CONCLUSIONS OF LAW

*Nasdaq*, 187 F.R.D. at 478 (stating that the defendants' ability to pay a very substantial judgment does not militate against settlement); *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) ("the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate").

### (6)    The Amount Sought In the FAC Is Immaterial

115.    The Court rejects the argument by two groups of Objectors that the $49 million Settlement Fund is inadequate because it is substantially less than the amount sought in the FAC ($900 million). The amount sought in the FAC, however, was based on the recovery of treble damages before discovery was taken and before Plaintiffs' experts provided an estimate of the damages. The Court considers the $49 million Settlement Fund in light of the time of settlement.

### (7)    The Present Value of a BAR/BRI Course Is Irrelevant

116.    The Court rejects the argument by one Objector that the $49 million Settlement Fund is inadequate because Class Members will only get a pro-rata share of $145.70, which he claims is equivalent to 5% of the present value of his course ($2700). The present value of a BAR/BRI course has nothing to do with the amount of alleged overcharges to the Class. Further, the amount each Class Member will receive under the Settlement depends on the number of Class Members who file valid Claim Forms, among other things, as set forth in the Plan of Allocation.

### (8)    The Objectors Miscalculate the Risks Going Forward

117.    The Court rejects the argument by certain of the Objectors that the $49 million Settlement Fund is inadequate because of the limited risk in the Action. For instance, they argue that there is a low risk of decertification and that

future costs are limited because discovery is complete. These conclusory Objections, however, ignore the myriad of risks identified and discussed at length by Settling Plaintiffs, including the further costs of going to trial and the risks associated with establishing damages.

> **(9)** **The Lack of Provisions Prohibiting Future Misconduct or Dissolution Do Not Render the Settlement Inadequate**

118. The Court rejects the argument by certain Objectors that the non-monetary relief is either illusory or insufficient because it does not prohibit Defendants from engaging in anticompetitive or unlawful conduct in the future. Courts are reluctant to sustain such objections, finding that the "best assurance against future antitrust violations by defendants is the persistent threat of litigation by any class member." *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 337 (N.D. Ga. 1993) (approving settlement as fair, reasonable and adequate despite the absence of injunctive relief prohibiting the defendant from engaging in future misconduct).

119. The Settlement requires Defendants to terminate the agreement Plaintiffs allege is unlawful.[7] BAR/BRI is also required to provide a clear statement to initial enrollees that they are not contractually obligated to pay the full amount for a BAR/BRI course should they choose not to take such a course upon graduation from law school. Since many law students enter into a contract with BAR/BRI in their first year of law school, Plaintiffs have argued that the obligation to pay the full amount for the course serves as a powerful hold on these students,

---

[7] At least one Objector incorrectly argues that Plaintiffs accomplished nothing sought in the Action. Plaintiffs achieved termination of the alleged non-competitive agreement which was the catalyst of this Action. That Plaintiffs did not obtain everything sought in the FAC does not render the Settlement inadequate, as settlement is about compromise.

-41-
FINDINGS OF FACT AND CONCLUSIONS OF LAW

1  thereby locking-up a substantial portion of the market for a three-year period.[8]

2  Thus, this provision removes a significant barrier to entry into the market by

3  competitors, who would otherwise face the potentially overwhelming obstacle of

4  trying to compete in a market with few available customers for several years after

5  entry.  Furthermore, BAR/BRI has stated that it is committed to accurate

6  advertising as required by the Lanham Act, the Federal Trade Commission Act, and

7  similar laws.  Settlement Agreement at ¶¶ 38(a) and 39.

8
9              **(i)    Dissolution Does Not Benefit the Class**

10             120.   Other Objectors criticize the Settlement because it does not

11  provide for the break-up of BAR/BRI.  According to the Objecting Plaintiffs, "a

12  significant number of class members are directly interested in the future" of the bar

13  review industry and that BAR/BRI would be broken up if Plaintiffs instead went to

14  trial and prevailed on the Section 7 claim.

15             121.   First, a significant number of Class Members are in favor of the

16  Settlement and have not filed any Objections on the ground that there are no

17  provisions for dissolution.

18             122.   Second, there are no guarantees that Plaintiffs would prevail at

19  trial and obtain an order breaking-up BAR/BRI, as even Disner has acknowledged.

20  Even if Plaintiffs did prevail at trial, any verdict in their favor, including

21  divestiture, would be subject to appeal thereby delaying any recovery to the Class.

22  This is especially true here, where the Objecting Plaintiffs concede the complexity

23  of Section 7 and the dearth of relevant authority applying or interpreting that

24  section in private consumer class action cases.

25
26  [8] The argument that this provision is "practically self-defeating" because BAR/BRI
27  can rescind the statement on five days notice to Class Counsel is inaccurate.  To
    rescind the statement, BAR/BRI must apply to the Court on five days notice to Class
28  Counsel and establish "good cause."  *See* Settlement Agreement at ¶ 38(b).

1

2    **(ii)    Class Counsel Cannot Ensure Competition In the Bar**
          **Review Market Through the Settlement**

3

4    123.    The Court rejects arguments by other Objectors that the

5    Settlement does not encourage competitors into the market, require BAR/BRI to

6    lower its prices, or require Defendants to enter each other's market.

7    124.    Class Counsel cannot force competitors to enter the market

8    through the Settlement.

9    **(10)    The Scope And Contents of the Release Are Proper**

10

11    125.    The Court rejects arguments by Objectors that "settling

12    defendants are buying immunity from all claims, including those not alleged in the

13    complaint. If the settlement proponents seek a broad release, class members should

14    be more adequately compensated." This argument, too, ignores the actual terms of

15    the Settlement Agreement. The Release expressly preserves the claims in the New

16    York Actions. *See* Settlement Agreement ¶58.

17    126.    While the Release includes "all manner of claims . . .

18    concerning or relating to any conduct alleged in the Complaint in this Action, and

19    including without limitation all claims that have been asserted or could have been

20    asserted in any litigation," this language is typical and has been approved by many

21    courts, including the Ninth Circuit. *See Class Plaintiffs v. City of Seattle*, 955 F.2d

22    1284, 1287-88 (9th Cir. 1992) (noting that the weight of authority holds that

23    federal courts may release claims which are not in the complaint provided they are

24    based on the "same factual predicate"); *In re Prudential Ins. Co. America Sales*

25    *Practice Litig.*, 148 F.3d at 326 (finding it reasonable for release to include "other

26    claims" and stating that "releases may include all claims, including unpleaded

27    claims that arise out of the same conduct alleged in the case").

28

**(11)    The Possibility of a Cap and a Cy Pres Award Are Proper**

127.. The Court rejects the argument of certain Objectors that the possibility of a cap on individual recovery resulting in a *cy pres* award should defeat approval of the Settlement. Those provisions do not render the Settlement inadequate.

128.    The Maximum Payment was a heavily negotiated term of the Settlement. Because the Net Settlement Fund is to be distributed *pro rata* among the Class Members who make a valid claim, the Maximum Payment prevents a small group from receiving a multi-million dollar windfall. This 30% Maximum Payment coincides with Plaintiffs' expert's estimate that the average overcharge resulting from Defendants' alleged conduct was approximately 30% nationwide.

129.    The Maximum Payment does not create any benefit for Defendants as they will not receive any money back if the Maximum Payment and *cy pres* award are implicated. In that event, this Court would determine the recipient of any *cy pres* award of the undistributed funds.

**(12)    A Second Opt-Out Period Is Not Required**

130.    In granting the Preliminary Approval Order, the Court found that an additional opt-out period was unnecessary.

131.    A second opt-out is not required. *See Officers for Justice*, 688 F.2d at 635 (citations omitted); In re *Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d at 518.

**(13)    The Sealed Record Does Not Impact Approval of the Settlement**

132.    The Court rejects the argument by certain Objectors that final approval of the Settlement should be delayed and/or denied on the ground that the

Class was purportedly denied access to the pleadings filed under seal pursuant to a protective order entered by the Court on January 13, 2006 (the "Protective Order"). These Objections are moot, untimely, and more importantly, ignore the crucial role served by the Court in the class action settlement approval process.

133.    These Objections are overcome by the safeguards of the three step class action settlement approval procedure being utilized here -- preliminary approval, dissemination of notice, and a fairness hearing. This procedure, commonly employed by federal courts and endorsed by leading class action commentators, serves the dual function of safeguarding class members' due process rights and enabling the court to fulfill its role as the guardian of class members' interests. *See Newberg* at § 11.25, quoting *Manual for Complex Litigation* (Third) § 30.41 (1995).

134.    These Objections disregard the fact that, in its role as guardian for the Class, this Court has had access to all of the pleadings filed by the parties, including those under seal pursuant to the Protective Order. The Court's access to and review of these documents throughout the pendency of this Action precludes any contention that this Court is incapable of assessing the fairness, adequacy and reasonableness of the Settlement. To the contrary, this Court is intimately familiar with facts and legal theories this matter.

135.    The Objections based upon the inaccessibility of documents are untimely. Class Members received notice of the Settlement in early April 2007, and could have acted earlier to obtain access to the materials. Instead, they waited five weeks, until the Objections were due, to request a continuance of the Final Settlement Hearing to permit a review the sealed documents, or in the alternative, a rejection of the Settlement. Such a tactic is inherently suspect and prejudicial to the Class Members who have voiced their approval of the Settlement.

**(14)   Use of the Simple Claim Form Is Proper**

136.   The Court rejects the argument by certain Objectors that requiring use of the Claim Form should preclude the Court from approving the Settlement.  The claim form process, however, is not designed to minimize participation, as none of the Settlement Fund will revert back to Defendants. Further, these Objections also disregard the facts of the case and the economic reality that claims administration costs are paid from the Settlement Fund.  Any cash distribution from a settlement fund involves costs.  The Claims Administrator incurs the expenses of cutting a check for each claimant; mailing the checks; canceling checks that were lost, misplaced, or never received; and reissuing checks to such claimants.  All of those costs are charged to the Settlement Fund.

137.   While BAR/BRI has the names and addresses of the Class Members in its records, these addresses go back as far as 1997.  Many Class Members have moved at least once, if not numerous times, since purchasing the BAR/BRI bar review course.  Also, many Class Members have changed their names since taking the BAR/BRI bar review course.  Blindly mailing checks to Class Members without regard for these facts would be costly, unnecessary and wasteful, and would deplete the Settlement Fund without necessarily benefitting Class Members. Class Counsel, based on their experience, properly considered various settlement structures and concluded that a claims-made structure would preserve the Settlement Fund for the benefit of Class Members who want to participate in the Settlement, while at the same time ensure that cash distributions reach Class Members.

138.   The Claim Form is relatively simple and should be self-explanatory for these sophisticated Class Members.  This is demonstrated by the fact that over 52,000 Claim Forms have been filed as of August 16, 2007.

1    139.   Therefore, the use of a claim form in the claims process is not a

2  reason for denying final approval. *See e.g., In re Insurance Brokerage Antitrust*

3  *Litig.,* No. 04-5184 (GEB), 2007 WL 542227 at *10 (D. N.J. Feb. 16, 2007)

4  (granting final approval of settlement which utilized a simple claim form process).[9]

5        **(15)   The Contents of the Notice Satisfy Rule 23 and Due**

6        **Process**

7

8    140.   The Court rejects the argument by certain Objectors that the

9  content of the Notice, which this Court approved, is insufficient.  Among the items

10  allegedly missing are a statement that the Objecting Plaintiffs do not support the

11  settlement and a copy of a memo authored by them, as well as information

12  regarding the size of the Class, the amount each Class Member will receive, the

13  average cost per Class Member, the aggregate amount of damages, and notice of

14  any attorneys' referral agreement.  None of this information is required to be

15  included in the Notice under due process or Fed.R.Civ.P. 23.[10]

16    141.   As set forth at length in Section V, *supra*, the Ninth Circuit

17

18  _____

19  [9] The Court further rejects the argument that the Settlement should not be approved
20  because it lacks provisions requiring claims processing to be completed in a
   reasonable time, monitoring, or reporting requirements.  To the contrary, the
21  Settlement contains a number of provisions designed to protect the Class.  For
   instance, all parties, including the Claims Administrator, are subject to the Court's
22  jurisdiction. *See* Settlement Agreement at ¶ 46. Additionally, Class Counsel must use
23  their best efforts and act in good faith to effectuate and implement all terms and
   conditions of the Settlement, including processing of claims. *See id.* at ¶ 68. Further,
24  before cash distributions are made, Class Counsel must apply to the Court for an order
25  approving distribution and to the extent necessary, for a determination of all
26  valid/invalid claims. *See id.* at ¶ 47.

27  [10] Further, Class Counsel dispute the content and accuracy of the Objecting Plaintiffs'
28  nine-page memo and believe it would have been misleading, not to mention cost
   prohibitive, to disseminate to the Class.

1 requires a very general description of the proposed settlement in the settlement

2 notice, which is satisfied here. *See Churchill Village, L.L C.*, 361 F.3d at 575;

3 *Torrisi*, 8 F.3d at 1374.

4 **(16) Class Counsel Has Fulfilled Its Fiduciary Obligation to the**

5 **Class as a Whole and is Adequate Under Fed. R. Civ. P. 23**

6

7 142. The Court rejects the argument by one Objector that Class

8 Counsel are inadequate due to a "rift" within McGuireWoods LLP (one of three

9 Class Counsel), allegedly because "one of the partners, Eliot Disner, has filed a

10 brief objecting to the proposed settlement...." This is inaccurate. The record is

11 undisputed that in December of 2006, after significant consideration, all Class

12 Counsel working on the case (including Disner) agreed that the Settlement was

13 fair, adequate and reasonable. The brief in question was filed by the Objecting

14 Plaintiffs without the authorization of Class Counsel. *See* Docket No. 281.

15 Moreover, Disner initially agreed to the Settlement and supported it at the

16 Preliminary Approval hearing. The viability of the theories espoused in the

17 unauthorized filing by the Objecting Plaintiffs were thoroughly considered by

18 Class Counsel prior to entering the Settlement, with the ultimate decision by Class

19 Counsel as a whole (including Disner) that the Settlement was fair, adequate and

20 reasonable. Therefore, this Court finds that Disner's subsequent reversal of

21 position and departure from McGuire Woods LLP is immaterial to this Court's

22 consideration of the fairness, reasonability, and adequacy of the Settlement.

23 143. Class Counsel has fulfilled its fiduciary duty to the Class as a

24 whole, and the unauthorized filing by the Objecting Plaintiffs does not change that.

25 The primary responsibility of class counsel is to represent the entire class as it

26 believes appropriate. *See* Advisory Committee Note, Fed. R. Civ. P. 23(g)

27 ("Paragraph (1) . . . articulates the obligation of class counsel to represent the

28

interests of the class, as opposed to the potentially conflicting interests of individual class members."); *see also Newberg* at § 11.65 ("The general rule is that the named plaintiff and counsel bringing the action stand as fiduciaries for the entire class, commencing with the filing of a class complaint."); *Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 832 (3d Cir. 1973) ("[C]lass action counsel possess, in a very real sense, fiduciary obligations to those not before the court.").

144.    Class counsel must make their own determinations about the appropriate course of action, taking full account of their fiduciary obligation to the class as a whole. *See Olden supra*, 472 F. Supp. 2d at 939; *In re "Agent Orange" Prod. Liab. Litig.*, 800 F.2d 14, 18-19 (2d Cir. 1986); *Lazy Oil Co.*, 166 F.3d at 590.

145.    It is for this Court to determine what is in the best interests of the Class after evaluating all arguments in favor of and against the Settlement. Class Counsel have conducted themselves throughout this case to aid the Court in this evaluation by performing its fiduciary duties to the Class, and are therefore adequate under Fed. R. Civ. P. 23.

## IX.    FAIRNESS OF PLAN OF ALLOCATION

146.    "As with settlement agreements, courts consider whether distribution plans are fair, reasonable, and adequate." *Lorazepam & Clorazepate*, 205 F.R.D. at 381; *see also City of Seattle*, 955 F.2d at 1284; *In re Citric Acid Antitrust Litigation*, 145 F. Supp.2d 1152, 1154 (N.D. Cal. 2001); *Vitamins Antitrust Litig.*, No. 99197, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000). "[I]n evaluating the formula for apportioning the settlement fund, the Court keeps in mind that district courts enjoy broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members equitably." *Hammon v Barry*, 752 F. Supp. 1087, 1095 (D. D.C. 1990) (internal

quotations and citations omitted); *accord In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 179, 181 (2d Cir. 1987).

147.    The Plan of Allocation was prepared by Class Counsel and Defendants' Counsel in such a way as to fairly allocate the recovery among Class Members in accordance with Plaintiffs' theories of potential damages in the Action.

148.    Finally, in addition to the input of the experts referred to above, the Plan of Allocation was adopted only after significant arm's length discussions among Class Counsel and Defendants' counsel.

149.    For the reasons set out above, this Court finds that the Plan of Allocation is fair and reasonable.

## X.    CONCLUSION

150.    The Settlement Agreement is comprehensive in its scope, is fair and even-handed in its application, and is of substantial economic benefit to the Class. The Court therefore approves the Settlement Agreement as fair, adequate and reasonable.

151.    The Court finds that it is in the best interests of Class Members that the Net Settlement Fund be disbursed, pursuant to the Plan of Allocation as soon as possible, and that the Settlement Agreement resolves all claims in the Action as to the Defendants.

DATED: **Aug 10**, 2007    _____

Honorable Manuel L. Real
United States District Court Judge

1  Submitted by:

2

3

4  Sidney K. Kanazawa  (SBN 84608)
5  McGUIREWOODS LLP
   1800 Century Park East, 8th Floor
6  Los Angeles, California 90067
7  Telephone: (310) 315-8200
   Facsimile: (310) 315-8210
8

9  Dan Drachler (*Pro Hac Vice*)
   ZWERLING, SCHACHTER &
10   ZWERLING, LLP
11  1904 Third Avenue, Suite 1030
   Seattle, WA 98101
12  Telephone: (206) 223-2053
13  Facsimile:  (206) 343-9631

14
   Christine Bartholomew (SBN 211425)
15  FINKELSTEIN THOMPSON, LLP
16  601 Montgomery Street, Suite 665
   San Francisco, CA 94111
17  Telephone:  (415)398-8700
18  Facsimile:  (415) 398-8704

19  Class Counsel
20

21

22

23

24

25

26

27

28

FINDINGS OF FACT AND CONCLUSIONS OF LAW

1                      **PROOF OF SERVICE**

2 **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3          I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1800 Century Park East, 8th Floor, Los Angeles, California 90067.

4

5          On August 20, 2007, I served the following document(s) described as **[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

6

7                      **SEE ATTACHED LIST**

8 ☒      **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices. (C.C.P. § 1013 (a) and 1013a(3))

9

10

11

12 ☐      **BY FACSIMILE:** At approximately _____, I caused said document(s) to be transmitted by facsimile pursuant to Rule 2008 of the California Rules of Court. The telephone number of the sending facsimile machine was (310) 315-8210. The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

13

14

15

16 ☐      **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder. (C.C.P. § 1013(d)(e))

17

18

19 ☐      **BY HAND DELIVERY:** I delivered such envelope(s) by hand to the office of the addressee(s). (C.C.P. § 1011(a)(b))

20 ☐      **BY PERSONAL SERVICE:** I personally delivered such envelope(s) to the addressee(s). (C.C.P. § 1011)

21

22          I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

23          Executed on August 20, 2007, at Los Angeles, California.

24

25                              _____

26                              Glen A. Davis

27

28

# SERVICE LIST

Bradley S. Phillips, Esq.
Stuart N. Senator, Esq.
Munger Tolles & Olson LLP
355 S. Grand Avenue
35th Floor
Los Angeles, CA 90071-1560

Attorneys for *Kaplan, Inc*

And via email to:
Brad.Phillips@mto.com
Stuart.Senator@mto.com
lee.taylor@mto.com

Steven F. Molo, Esq.
Wayne Dale Collins, Esq.
Shearman & Sterling, LLP
599 Lexington Avenue
New York, NY 10022-6069

Attorneys for *West Publishing Corporation*

And via email to:
smolo@shearman.com
wcollins@shearman.com

Edward A. Klein, Esq.
Heather H. Gilhooly, Esq.
Liner Yankelevitz Sunshine & Regenstreif LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3503

Attorneys for *West Publishing Corporation*

And via email to:
hgilhooly@linerlaw.com
eklein@linerlaw.com

Ryan Rodriguez, Esq.
3943 Irvine Blvd., #330
Irvine, CA 92602

And via email to:
ryanrodriguez7@hotmail.com

Lisa Gintz, Esq.
10725 Fontenot Road
Denham Springs, LA 70726

And via email to:
lisagintz@hotmail.com

Loredana Nesci, Esq.
859 No. Hollywood Way, No. 206
Burbank, CA 91505

And via email to:
invisiblejet-usa@yahoo.com
invisiblejet_usa@yahoo.com
loredana.nesci@sbcglobal.net

DISNER LAW CORPORATION
Eliot G. Disner
A Professional Corporation
2029 Century Park East, 19th Floor
Los Angeles, CA 90067

And via email to:
edisner@disnerlaw.com

## SERVICE LIST OF OBJECTING CLASS MEMBERS



Robert C. Chojnakci
Law Offices of Robert C. Chojnacki
525 Laurel Avenue
Menlo Park, CA  94025

Attorneys for:
Oriol, David (Louisiana Bar)
Tingle, Jason (Alabama Bar) and
Gutierrez, Oliver (California Bar)

And via email to:
chojnackilaw@yahoo.com


John W. Davis
Law Office of John W. Davis
4445 Eastgate Mall, 2nd Floor
San Diego, CA  92121

and

Steven F. Helfand
Helfand Law Offices
582 Market Street, Suite 1400
San Francisco, CA  94101

Attorneys for:
Feldman, David
Gharabiklou, Cameron
Grant, Emily
Lang, Jeff
McDonald, Sarah
Patton, Cara
Schwartz, Rachel
Thomas, Greg

And via email to:
john@johnwdavis.com
steven@stevenhelfand.com


Joseph J. Angersola *(pro se)*
2803 N. Wolcott, Unit D
Chicago, IL  60657

No email address


Anthony Valach *(pro se)*
4819 N. Fairfield Avenue, #2
Chicago, IL  60625

And via email to:
anthonyvalach@gmail.com


Jay M. Wolman *(pro se)*
62 S. Huntington  Avenue, Unit 23
Boston, MA  02130

No email address


Joan Elizabeth Shreffler *(pro se)*
Four Embarcadero Center
Suite 3800
San Francisco, CA  94111

And via email to:
shreffl@skadden com



Robert Gaudet, Jr. *(pro se)*
214 21st Avenue
Seattle, WA 98122

And via email to:
Robert_gaudet@yahoo.com

Sandeep Gopalan *(pro se)*
P.O. Box 877906
Tempe, AZ 85287

And via email to:
sandeepgopalan@hotmail.com

Elizabeth De Long *(pro se)*
9705 Fremont Avenue N.
Seattle, WA 98103

And via email to:
Edelong06@gmail.com

Andrea Boggio *(pro se)*
1150 Douglas Pike
Smithfield, RI 02917

And via email to:
boggio@stanfordalumni.org

J. Garrett Kendrick
C. Benjamin Nutley
Kendrick & Nutley
1055 E. Colorado Blvd., Fifth Floor
Pasadena, CA 91106

Attorneys for:
Head, Justin
Helfrich, Ryan
Schneider, George
Slomba, Jonathan
Puntumapanitch, James

And via email to:
jgk@private-ag.com
Nutley@zenlaw.com

Ronald D. Rosengarten
Rosengarten & Leven, LLP
23801 Calabasas Road, Suite 1015
Calabasas, CA 91302

Attorneys for:
Juranek, James
Juranek, Audrey
Le Blanc, Richard P., III.

And via email to:
rdresq@sbcglobal.net

Charles A. Sturm
STEELE STRUM, PLLC
1000 Louisiana, Suite 3780
Houston, TX 77002

csturm@steelestrum.com

\4596456 1

Carmine Giardino
The Giardino Law Firm, Inc.
8626 Tesoro Drive, Suite 510
San Antonio, TX  78217

and

Douglas N. Silverstein, Esq.
Kesluk & Silverstein
9255 Sunset Blvd., Ste. 411
Los Angeles, CA  90069

Attorneys for·
Trevino, Arcelia

And via email to:

dsilverstein@californialaborlawattorney.com


Joshua R. Furman, Esq.
2228 Barry Avenue
Los Angeles, CA  90064

and

Jon M. Zimmerman
Law Offices of Jon M. Zimmerman
1420 5th Avenue, Suite 2200
Seattle, WA  89101

Attorneys for:
Lukoff, Aaron
Prendergast, John
Orange, David

And via email to:
joshua@furman.com
jrfurman@toyquest.com
jonMzimmerman@gmail.com


Lawrence W. Schonbrun
Law Offices of Lawrence W. Schonbrun
86 Eucalyptus Road
Berkeley, CA  94705

Attorneys for:
Chilimidos, Daryl

And via email to:
lschon@inreach.com


Darrell Palmer, Esq.
603 North Highway 101, Ste. A
Solano Beach, CA 92075

Attorneys for:
Schafer, Daniel M.
Evans & Mullinix, P.A.
Siegel, Sarah
McElroy, Jennifer Brown

And via email to:
Darrell.palmer@cox.net

\4596456 1

David P. Schafer (*pro se*)
Law Offices of David P. Schafer
7800 IH-10 West, Suite 830
San Antonio, TX 78230

And via email to:
david@helpingtexas.com


Kenneth E. Nelson
Nelson Law Firm, P.C.
2900 City Center Square
1100 Main Street
Kansas City, MO 64105

Attorneys for:
Evans & Mullinix, P.A.

And via email to·
kennelson@mclaw.com


Edward F. Siegel
Edward F. Siegel Co. L.P.A.
27600 Chagrin Blvd., Ste 340
Cleveland, OH 44122

Attorneys for:
Sarah Siegel

And via email to:
efsiegel@efs-law.com


Andrew H. Gilman (*pro se*)
115 Dudley Ave, 3rd Floor
Narberth, PA 19072

And via email to:


Stephen M. Vasil (*pro se*)
162 5th Avenue
Brooklyn NY 11217

And via email to:
stephenvasil@gmail.com


Alan Harris
HARRIS & RUBLE
5455 Wilshire, Ste. 1800
Los Angeles, CA 90036

Attorneys for:
Harris, David
Kamal, Kareem
Kavanaugh, Matthew
Newfield, Simon
Ricasa, Jonathan
Treanor, Abigail
Zelenski, David

And via email to:
law@harrisandruble.com


Pamela Collins Dunmore
2635 SW 35th Place, #1402
Gainesville, FL 32608

Attorneys for:
Collins, Pamela (*pro se*)

No email address

Craig J. Walenta  *(pro se)*          No email address
17 Mountainview Court
Riverdale, NJ  07457


Richard A  Bodmer  *(pro se)*          No email address
2114 Cuyler Avenue
Chicago, IL  60618