Bill _____
Fees Pd _____
Prms Gvn _____
CAD _____
TDO _____
Ntc/Dkt Mld _____
FP Frms Gvn _____

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL, POSTAGE PREPAID, TO ALL COUNSEL
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.
DATED: _10-18-07_
_____
DEPUTY CLERK

DOCKETED ON CM
OCT 18 2007
BY _____ 184

1   Darrell Palmer (SBN 125147)
2   Law Offices of Darrell Palmer
3   603 North Highway 101, Ste A
    Solana Beach, California 92075
4   Telephone: (858) 792-5600
5   Facsimile: (858) 792-5655
6   Email: darrell.palmer@cox.net
    Counsel for Objectors Sarah Siegel,
7   Evans & Mullinix, P.A., Jennifer
    Brown McElroy and Daniel Schafer
8
9   Additional Counsel listed on Signature Page
10
11                 UNITED STATES DISTRICT COURT
                   CENTRAL DISTRICT OF CALIFORNIA
12
13  RYAN RODRIGUEZ, et al. on behalf of      )   Case No. CV 05-3222 R(Mcx)
    themselves and all persons similarly     )
14  situated,                                )   **JOINT NOTICE OF APPEAL BY**
                                             )   **UNNAMED CLASS**
15            Plaintiffs,                    )   **MEMBERS/OBJECTORS**
                                             )   **EVANS & MULLINIX, P.A., SARAH**
16         vs.                               )   **SIEGEL, JENNIFER BROWN**
                                             )   **MCELROY, AND DANIEL SCHAFER**
17  WEST PUBLISHING CORPORATION,             )
    et al.,                                  )   Judge: Hon. Manuel J. Real
18            Defendants.                    )   Dept: 8
19                                           )
                                             )
20  _____          )
    AND CONSOLIDATED ACTIONS                 )
21                                           )
22
23       **JOINT NOTICE OF APPEAL BY UNNAMED CLASS MEMBERS/OBJECTORS**
              **EVANS & MULLINIX, P.A., SARAH SIEGEL,**
24           **JENNIFER BROWN MCELROY, AND DANIEL SCHAFER**
25       NOTICE IS HEREBY GIVEN that Evans & Mullinix, P.A., Sarah Siegel, Jennifer
26  Brown McElroy, and Daniel Schafer (together, "Objectors Evans, Siegel, Brown and
27  Schafer,"), Objectors in the above-styled cause, hereby appeal to the United States Court
28  of Appeals for the Ninth Circuit from the (1) FINAL ORDER AND JUDGMENT

1

BY FAX (455)

Dockets.Justia.com

1  APPROVING SETTLEMENT [429], and (2) ORDER DENYING INCENTIVE

2  AWARDS TO CLASS REPRESENTATIVES [430], and (3) ORDER granting Plaintiffs'

3  MOTION for Order granting approval of class action settlement [271], denying Plaintiffs'

4  MOTION for awards to class Plaintiffs [275], and granting Class Counsel's MOTION for

5  Attorney Fees and Reimbursement of Expenses [278], all filed on September 11, 2007,

6  and (4) FINDINGS OF FACT AND CONCLUSIONS OF LAW [433], filed on

7  September 12, 2007.

8

9

10

11  Dated: October 9, 2007

12                                        DARRELL PALMER

13                                        Attorney for Objectors Evans, Siegel,
                                          Brown, and Schafer
14

15

16  Kenneth E. Nelson (pro hac vice)
    Nelson Law Firm, P.C.
17  2900 City Center Square
    1100 Main Street
18  Kansas City, MO 64105
19  Telephone: (816) 421-7225
20  Facsimile: (816) 421-3339
    Email: kennelson@mclaw.com
21  Counsel for Objector Evans & Mullinix, P.A.

22

23  Edward F. Siegel (pro hac vice)
    Edward F. Siegel Co., L.P.A.
24  27600 Chagrin Blvd., Suite 340
25  Cleveland OH 44122
    Telephone: (216) 831-3424
26  Facsimile: (216) 831-6584
27  Email: efsiegel@efs-law.com
    Counsel for Objector Sarah Siegel
28

2

**JOINT NOTICE OF APPEAL BY UNNAMED CLASS MEMBERS/OBJECTORS EVANS,
SIEGEL, BROWN AND SCHAFER**

David P. Schafer (Texas SB# 00797865 PHV App Pending)
Law Offices of David P. Schafer
7800 IH-10 West, Suite 830
San Antonio, TX 78230
Telephone: (210) 348-0500
Facsimile: (210) 348-0520
Email: david@helpingtexas.com
Counsel for Objector Daniel M. Schafer

3

**JOINT NOTICE OF APPEAL BY UNNAMED CLASS MEMBERS/OBJECTORS EVANS, SIEGEL, BROWN AND SCHAFER**

Re: **RODRIGUEZ ET AL V. WEST PUBLISHING CORP. ET AL**
**USDC CENTRAL DIST CA Case no. CV-005-3222R(MCx)**

**DECLARATION OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF SAN DIEGO**

I, Alison Paul, declare that I am employed with the Law Offices of Darrell Palmer whose address is 603 N. Highway 101, Suite A. Solana Beach, CA 92075. I am readily familiar with the business practices of this office for collection and processing of correspondence for mailing with the United States Postal Service; I am over the age of eighteen (18) and I am not a party to this action.

On October 10, 2007, I served:

**JOINT NOTICE OF APPEAL BY UNNAMED CLASS MEMBERS/OBJECTORS**
**EVANS & MULLINIX, P.A., SARAH SIEGEL,**
**JENNIFER BROWN MCELROY, AND DANIEL SCHAFER**

on the parties listed on the attached service list:

by placing a copy in a separate envelope, with postage fully prepaid, for each address named above, into a US Postal Service depository on this day and/or emailing a pdf copy of the document to the email address of each recipient as listed on the service list.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at Solana Beach, California.

*Alison Paul*

DECLARATION OF SERVICE
1

1

## SERVICE LIST

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Sidney K Kanazawa
Van Etten Suzumoto and Becket
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
310-315-8200
skanazawa@vsblaw.com

Steven Molo
Shearman and Sterling
599 Lexington Avenue
New York, NY 10022
212-848-4700
smolo@shearman.com

Heather H Gilhooly
Liner Yankelevitz Sunshine and
Regenstreif
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3503
310-500-3500
hgilhooly@linerlaw.com

Stuart N Senator
Munger Tolles & Olson
355 S Grand Ave, 35th Fl
Los Angeles, CA 90071-1560
213-683-9100
stuart.senator@mto.com

Carmine Giardino
Giardino Law firm Inc
8626 Tesoro Drive Suite 510
San Antonio, TX 78217
helpingtexas@yahoo.com

Robert C Chojnacki
Robert C Chojnacki Law Offices
525 Laurel Avenue
Menlo Park, CA 94025
510-282-4110
chojnackilaw@yahoo.com

Jon M Zimmerman
Law Offices of Jon M Zimmerman
1420 5th Avenue, Suite 2200
Seattle, WA 89101
206-274-5115
jonmzimmerman@gmail.com

Joshua R Furman
Attorney at Law
2228 Barry Avenue
Los Angeles, CA 90064
310-231-7292
jrfurman@toyquest.com

Alan Harris
Harris and Ruble
5455 Wilshire Boulevard, Suite 1800
Los Angeles, CA 90036
323-931-3777
aharris@harrisandruble.com

Charles A Sturm
Steele Sturm PLLC
1000 Louisiana, Suite 3780
Houston, TX 77002
713-659-2600
csturm@steelesturm.com

1   Ronald D Rosengarten
2   Rosengarten & Leven LLP
    23801 Calabasas Rd, Ste 1015
3   Calabasas, CA 91302
4   818-225-5070
    rdresq@sbcglobal.net
5
6   David P Schafer
7   Law Offices of David P Schafer
    7800 IH-10 West, Suite 830
8   San Antonio, TX 78230
9   210-348-0500
    David@helpingtexas.com
10
11  C. Benjamin Nutley
12  Kendrick & Nutley
    1055 E Colorado Blvd, Fifth Floor
13  Pasadena, CA 91106
14  626-204-4060
    Nutley@zenlaw.com
15
16  John W. Davis
17  4445 Eastgate Mall, 2nd Fl
    San Diego, CA 92121
18  858-812-2976
19  john@johnwdavis.com
20
    Robert Gaudet, Jr.
21  214 21st Avenue
    Seattle, WA 98122
22  206-332-1745
23  robert_gaudet@yahoo.com
24
25
26
27
28

Andrea Boggio
1150 Douglas Pike
Smithfield, RI 02917
401-232-6455
boggio@stanfordalumni.org

Sandeep Gopalan
P.O. Box 877906
Tempe, AZ 85287-7906
480-636-0710
sandeepgopalan@hotmail.com

Elizabeth De Long
9705 Fremont Ave. N.
Seattle, WA 98103
206-922-3044
Edelong06@gmail.com

Robert L Arleo
Robert L Arleo Law Offices
164 Sunset Park Road
Haines Falls, NY 12436
518-589-5264
r.arleo@verizon.net

Pamela Collins Dunmore
2635 SW 35th Place, #1402
Gainsville, Fl 32608
352-222-4009
Fax: 352-338-1578

Daniel Scott Brown
Daniel Scott Brown Law Offices
131 Lawnview Circle
Danville, CA 94526-5107
925-548-4620
absentprof@yahoo.com







# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN RODRIGUEZ, REENA B. FRAILICH, LOREDANA NESCI, JENNFIER BRAZIL, and LISA GINTZ, on behalf of themselves and all others similarly situated, | **CASE NO. CV-05-3222 R(MCx)** |
| | **[PROPOSED] FINAL ORDER AND JUDGMENT APPROVING SETTLEMENT** |
| Plaintiffs, | |
| vs. | |
| WEST PUBLISHING CORPORATION, a Minnesota Corporation d/b/a BAR/BRI, and KAPLAN, Inc., a Delaware Corporation, | |
| Defendants. | |
| AND CONSOLIDATED ACTION | |

This matter came before the Court for hearing on June 18, 2007 and July 9, 2007, pursuant to the Order Granting Preliminary Approval of Class Action Settlement and Directing Dissemination of Notice to Class dated March 26, 2007 (the "Preliminary Approval Order"), on application for approval of the proposed

1    Settlement[1] set forth in the Stipulation and Settlement Agreement dated February
2    2, 2007, ("Settlement Agreement").

3        Pursuant to the Preliminary Approval Order, Notice was given to the Class.
4    The Notice advised Class Members of the opportunity to *inter alia*: object to the:
5    (1) Settlement Agreement and the Settlement; and/or (2) the Plan of Allocation.

6        On May 7, 2007 Class Counsel filed:  (1) Notice of Motion and Motion For
7    Final Approval of Class Action Settlement; (2) Declaration of Sidney K.
8    Kanazawa; and (3) Memorandum of Points and Authorities in Support of Final
9    Approval.

10       On May 17, 2007, plaintiffs/objectors Ryan Rodriguez, Lisa Gintz and
11   Loredana Nesci (the "Objecting Plaintiffs") filed an objection, *inter alia*, objecting
12   to entry of the Preliminary Approval Order (the "May 17 Objections").

13       On May 18, 2007, Class Counsel filed a response to the May 17 Objections.

14       On May 31, 2007, the Objecting Plaintiffs filed an *ex parte* application,
15   memorandum and declaration for an order to:  (1) allow Eliot Disner, Esq.
16   ("Disner") to "speak freely" on their behalf; (2) allow access to certain files: and
17   (3) clarify the status of Disner as a "co-lead counsel" (the "*Ex Parte* Application").

18       On June 1, 2007, Class Counsel filed an Opposition to the *Ex parte*
19   Application and defendants West Publishing Corporation ("West") and Kaplan,
20   Inc. ("Kaplan") filed objections to the *Ex Parte* Application (the "*Ex Parte*
21   Oppositions").

22       On June 7, 2007, the Objecting Plaintiffs filed a reply to the *Ex Parte*
23   Application.

24

25   _____

26   [1]    Unless otherwise stated herein, all capitalized terms shall have the same
     meanings as set forth in the Stipulation and Settlement Agreement dated February
27   2, 2007.

4670962 1                                    2

In addition to the May 17 Objections, the Class Members listed in the following table filed objections to the Settlement on the dates indicated:

| | DATE FILED | CLASS MEMBER |
|---|---|---|
| 1. | May 21, 2007 | David Oriol |
| 2. | May 21, 2007 | Jason Tingle<br>Oliver Gutierrez |
| 3. | May 21, 2007 | David Feldman<br>Cameron Gharabiklou<br>Emily Grant<br>Jeff Lang<br>Sarah McDonald<br>Cara Patton<br>Rachel Schwartz<br>Greg Thomas |
| 4. | May 21, 2007 | Joseph J. Angersola |
| 5. | May 21, 2007 | Anthony Valach |
| 6. | May 21, 2007 | Jay M. Wolman |
| 7. | May 21, 2007 | Joan E. Shreffler |
| 8. | May 21, 2007 | Robert Gaudet, Jr.<br>Sandeep Gopalan<br>Elizabeth De Long<br>Andrea Boggio |
| 9. | May 21, 2007 | Justin Head<br>Ryan Helfrich |
| 10. | May 21, 2007 | George Schneider<br>Jonathan Slomba<br>James Puntumapanitch |
| 11. | May 21, 2007 | James Juranek<br>Audrey Juranek<br>Richard P Le Blanc, III. |
| 12. | May 12, 2007 | Trevino, Arcelia |

[PROPOSED] FINAL ORDER AND JUDGMENT - CV 05-3222 R(MCx)

| | DATE FILED | CLASS MEMBER |
|---|---|---|
| 13. | May 21, 2007 | Aaron Lukoff<br>John Prendergast<br>David Orange |
| 14. | May 22, 2007 | Daryl Chilimidos |
| 15. | May 22, 2007 | Nikki Love<br>John Bernitz |
| 16. | May 22, 2007 | Daniel M. Schafer |
| 17. | May 22, 2007 | Evans & Mullinix, P.A. |
| 18. | May 22, 2007 | Sarah Siegel |
| 19. | May 22, 2007 | Jennifer Brown McElroy |
| 20. | May 22, 2007 | Andrew Gilman<br>Stephen M. Vasil |
| 21. | May 23, 2007 | David Harris<br>Kareem Kamal<br>Matthew Kavanaugh<br>Simon Newfield<br>Jonathan Ricasa<br>Abigail Treanor<br>David Zelenski |
| 22. | May 23, 2007 | Pamela Collins |
| 23. | April 10, 2007 | Walenta Craig |
| 24. | May 28, 2007 | Richard A. Bodmer |
| 25. | June 12, 2007 | Stephen Lindholm |

On June 11, 2007, Class Counsel filed: (1) a reply memorandum in support of the Settlement which addressed the May 17 Objections and the objections set forth in the preceding paragraph (hereafter, the "Objections to the Settlement"); and (2) the declarations of: (a) Sidney K. Kanazawa, (b) Christine Bartholomew, (c) Richard Sartory, and (d) Hon. Daniel Weinstein.

1        On June 11, 2007, Defendants filed "Defendants' Combined Response To

2    Various Class Members' Objections To Stipulation And Settlement Agreement."

3    Also on June 11, 2007, West filed a reply memorandum to the May 17 Objections.

4        On June 15, 2007, Kaplan filed (1) "Notice of Filing of Declaration of Lee

5    S. Taylor in Support of Motion for Final Approval of Settlement, Regarding

6    Kaplan's Compliance with the Requirements of the Class Action Fairness Act;"

7    and (2) Declaration of Lee S. Taylor, and subsequently filed (1) "Notice of Filing

8    of Revised Declaration of Lee S. Taylor in Support of Motion for Final Approval

9    of Settlement, Regarding Kaplan's Compliance with the Requirements of the Class

10    Action Fairness Act;" (2) "Revised Declaration of Lee S. Taylor; Notice of Filing

11    Under Seal;" and (3) "Declaration of Lee S. Taylor Authenticating and Attaching

12    Documents."

13        On June 18, 2007, West filed the "Declaration of James P. Tallon Regarding

14    the Class Action Fairness Act."

15        Pursuant to this Court's Order, on June 26, 2007, Class Counsel filed: (1)

16    "Settling Plaintiffs' Supplemental Briefing In Support of Motion for Final

17    Approval Re: 30% Distribution Limit to Authorized Claimants and *Cy Pres* Fund

18    for Remainder;" and (2) "Declaration of Sidney K. Kanazawa." Also, on that date,

19    Defendants filed: (1) "Defendants' Supplemental Brief Regarding Approval of

20    Proposed Settlement, Addressing *Cy Pres* Provision of Proposed Settlement;" and

21    (2) the Declaration of Stuart N. Senator.

22        In addition, on June 26, 2007, several objectors, including James Juranek,

23    Audrey Juranek, Richard P. LeBlanc, III, David Harris, Kareem Kamal, Matthew

24    Kavanaugh, Simon Newfield, Jonathan Ricasa, Abigail Treanor and David

25    Zelinski, submitted additional briefing in further opposition to final approval of the

26    Settlement.

27

[PROPOSED] FINAL ORDER AND JUDGMENT - CV 05-3222 R(MCx)

1      On July 5, 2007, Eliot G. Disner filed a "Summary of Evidence Regarding

2  Defendant West Publishing Co.'s Violation of Section 2 of the Sherman Act (15

3  U.S.C. § 2)" and a "Re-Notice of Appearance of Counsel."

4      At the Final Settlement Hearing Objectors were given an opportunity to state

5  their objections to the Settlement Agreement, the Settlement and the Plan of

6  Allocation.

7      Having read and fully considered the terms of the Settlement Agreement, the

8  Plan of Allocation, and all submissions (which may include submissions not

9  specifically described above), written and oral, the Court finds the Settlement is

10  fair, reasonable and adequate:

11      **IT IS THEREFORE ORDERED, ADJUDGED AND DECREED**

12  **THAT:**

13      1.      **Objections to the Settlement** – The Objections to the Settlement are

14  overruled.

15      2.      **Incorporation of Definitions** – This Final Order and Judgment

16  Approving Settlement (the "Judgment") incorporates by reference the definitions

17  in the Settlement Agreement, and all defined terms used herein shall have the same

18  meanings as set forth in the Settlement Agreement.

19      3.      **Jurisdiction** – The Court has personal jurisdiction over all Class

20  Members (as defined below) and has subject matter jurisdiction over this Action,

21  including, without limitation, jurisdiction to (1) approve the Settlement Agreement

22  and the Plan of Allocation, (2) grant final certification of the Class, and (3) dismiss

23  the Action with prejudice.

24      4.      **Final Class Certification** – The Class this Court certified in the

25  Preliminary Approval Order under Fed. R. Civ. P. 23(b)(3) is hereby finally

26  certified and consists of all persons who purchased a bar review course from

27  BAR/BRI in the Untied States from August 1, 1997 through July 31, 2006,

4670962 1                             6

[PROPOSED] FINAL ORDER AND JUDGMENT - CV 05-3222 R(MCx)

1 exclusive of those individuals set forth in Exhibit A hereto who timely requested

2 exclusion pursuant to the Court's Order of August 14, 2006.

3      5.      **Adequacy of Representation** – Plaintiffs and Class Counsel –

4 McGuireWoods LLP, Zwerling, Schachter & Zwerling, LLP and Finkelstein

5 Thompson LLP – have fully and adequately represented the Class and have

6 satisfied the requirements of Fed. R. Civ. P. 23(a)(4).

7      6.      **Notice** – The Court finds that the distribution of the Notice, the

8 publication of the Summary Notice, the distribution of the Claim Form, and the

9 notice methodology were materially implemented in accordance with the terms of

10 the Settlement Agreement and the Preliminary Approval Order.  The Court further

11 finds that the Notice, Summary Notice and Claim Form were simply written and

12 readily understandable, and that the Notice, Summary Notice, Claim Form and

13 notice methodology: (i) constituted the best practicable notice, (ii) constituted

14 notice that was reasonably calculated, under the circumstances, to apprise Class

15 Members of the Settlement, their rights to object to the Settlement and to appear at

16 the Final Settlement Hearing, (iii) were reasonable and constituted due, adequate

17 and sufficient notice to all persons entitled to notice, and (v) met all applicable

18 requirements of the Federal Rules of Civil Procedure, the United States

19 Constitution (including the Due Process Clause), the Rules of the Court and any

20 other applicable law.

21      7.      **Final Settlement Approval** – The terms and provisions of the

22 Settlement Agreement have been entered into in good faith and are hereby fully

23 and finally approved as fair, reasonable and adequate as to, and in the best interest

24 of, each of the Settling Parties and the Class Members, and in full compliance with

25 all applicable requirements of the Federal Rules of Civil Procedure, the United

26 States Constitution (including the Due Process Clause), the Rules of the Court and

27 any other applicable law.  With respect to the determination that the Settlement

4670962 1                                      7

1  Agreement is fair reasonable and adequate, the Court specifically notes that the

2  outcome of a trial on the merits was by no means certain, this Action involved

3  highly complex factual and legal issues, the Settlement Agreement was reached

4  with the participation of a highly-respected mediator and retired judge, and the

5  monetary and non-monetary terms of the Settlement reflect substantial benefits.

6          8.      **Plan of Allocation** – The Court also hereby approves the Plan of

7  Allocation as a fair and reasonable method to allocate the Net Settlement Fund

8  among Class Members, and directs consummation of all its terms and provisions.

9          9.      **Dismissal of Action** – The Court dismisses on the merits and with

10  prejudice the First Amended Complaint and the Released Claims as defined in the

11  Settlement Agreement as to all Class Members.  Only the Persons identified in

12  Exhibit A hereto requested exclusion from the Class as of the deadline for opting

13  out.  These Persons so identified shall not share in the benefits of the Settlement.

14  The Court dismisses without prejudice the claims of such Persons who have

15  properly and timely excluded themselves in full accordance with the procedures set

16  forth in the Settlement Agreement.

17          10.     **Releases** – Upon the Effective Date of the Settlement, the

18  Representative Plaintiffs and each Class Member shall be deemed to have, and by

19  operation of this Final Order and Judgment shall, except as provided in paragraph

20  58 of the Agreement, (a) have released and forever discharged the released parties

21  from all manner of claims, demands, actions, suits, causes of action, whether class,

22  individual, or otherwise in nature, damages whenever incurred, liabilities of any

23  nature whatsoever, including costs, expenses, penalties and attorneys' fees, known

24  or unknown, suspected or unsuspected, in law or equity, that any member of the

25  Class (including any of their past, present or future officers, directors, agents,

26  employees, legal representatives, trustees, parents, associates, affiliates, licensees,

27  subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors,

4670962 1                                    8

1   successors and assigns), whether or not he, she or it objects to the settlement and

2   whether or not he, she or it makes a claim upon or participates in the Settlement

3   Fund, whether directly, representatively, derivatively or in any other capacity, ever

4   had, now has or hereafter can, shall or may have concerning or relating to any

5   conduct alleged in the Complaint in this Action, and including without limitation

6   all claims that have been asserted or could have been asserted in any litigation

7   against the Released Parties or any of them for any conduct alleged in the

8   Complaint and Amended Complaint in this Action; and (b) in addition, upon the

9   Effective Date of the Settlement, the Representative Plaintiffs and each Class

10   Member shall be deemed to have, and by operation of this Final Order and

11   Judgment shall have waived and released any and all provisions, rights and

12   benefits conferred by § 1542 of the California Civil Code, which states:

13       **Section 1542. Certain Claims not Affected by General Release. A**

14       **general release does not extend to claims which the creditor does**

15       **not know or suspect to exist in his favor at the time of executing**

16       **the release, which if known by him must have materially affected**

17       **his settlement with the debtor;**

18   or by any law of any state or territory of the United States, or principle of common

19   law, which is similar, comparable or equivalent to § 1542 of the California Civil

20   Code. The Court has considered that each member of the Class may hereafter

21   discover facts other than or different from those which he, she or it knows or

22   believes to be true with respect to the claims which are the subject matter of

23   Paragraph 56 of the Agreement, but each member of the Class by operation of this

24   Final Order and Judgment has waived and fully, finally and forever settled and

25   released any known or unknown, suspected or unsuspected, contingent or non-

26   contingent claim with respect to the subject matter of Paragraph 56 of the

27

1  Agreement, whether or not concealed or hidden, without regard to the subsequent

2  discovery or existence of such different or additional facts.

3      11.   **Permanent Injunction** – All members of the Class who did not duly

4  request exclusion from the Class in the time and manner provided in the Class

5  Action Notice (which includes all members of the Class who are not listed on

6  Exhibit A hereto) are permanently enjoined, and restrained from commencing or

7  prosecuting any action, suit, proceeding, claim, or cause of action in any

8  jurisdiction or court against Defendants or any of the other entities or persons who

9  are to be discharged as noticed above in Paragraph 10, based upon, relating to, or

10  arising out of, any of the matters which are discharged and released pursuant to

11  paragraph 10 thereof, except as provided in paragraph 58 of the Settlement

12  Agreement.

13      12.   **Retention of Jurisdiction** – The Court has jurisdiction to enter this

14  Judgment.  Without in any way affecting the finality of this Judgment, this Court

15  expressly retains exclusive and continuing jurisdiction as to all matters relating to

16  the administration, consummation, enforcement and interpretation of the

17  Settlement Agreement, and of this Judgment, and for any other necessary purposes,

18  including, without limitation:

19          (i)      enforcing the terms and conditions of the Settlement

20  Agreement and resolving any disputes, claims or causes of action that, in whole or

21  in part, are related to or arise out of the Settlement Agreement, or the Judgment

22  including, without limitation, whether a Person is or is not a Class Member; and

23          (ii)     entering such additional orders as may be necessary or

24  appropriate to project or effectuate the Judgment approving the Settlement

25  Agreement, dismissing all claims with prejudice, and permanently enjoining Class

26  Members from imitating or pursuing related proceedings, or to ensure the fair and

27  overly administration of this Settlement.

4670962 1                                    10

[PROPOSED] FINAL ORDER AND JUDGMENT - CV 05-3222 R(MCx)

1    13.   **Dismissal of Action** – This Action, including all individual claims

2   and Class claims resolved by it, are hereby dismissed with prejudice against

3   Defendants and all Class Members, without fees or cost except as otherwise

4   provided by this Court.

5    14.   **Non-Effect on Judgment** – Neither any modification or appellate

6   reversal of the Plan of Allocation, the Fee Award or Incentive Awards, nor any

7   orders entered by this Court thereon, shall in any way disturb nor affect the finality

8   of the Settlement, and all such matters shall be considered separate from this

9   Judgment.

10    15.   **Effective Date** – If: (i) the Effective Date does not occur for any

11   reason whatsoever; or (ii) the Settlement Agreement becomes null and void

12   pursuant to the terms of the Settlement Agreement, this Judgment shall be deemed

13   vacated and shall have no force or effect whatsoever.

14    16.   **No Admissions** – Nothing in this Judgment, the Settlement

15   Agreement or any aspect of the Settlement is or shall be deemed or construed to be

16   an admission, concession or evidence of any violation of any statute or law or any

17   liability or wrongdoing by any Defendant or Released Party or of the truth of any

18   of the factual or legal claims or allegations relating to the subject matter of the

19   Released Claims.

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

[PROPOSED] FINAL ORDER AND JUDGMENT - CV 05-3222 R(MCx)

1      The Clerk is directed to enter this Final Order and Judgment forthwith as the

2  final judgment of the Court.

3

4  Dated: **Sep 10**, 2007

5                                     Honorable Manuel L. Real
                                     United States District Court Judge

6

7  Submitted By:

8

9  Sidney K. Kanazawa (SBN 84608)
   **McGUIREWOODS LLP**

10  Email: skanazawa@mcguirewoods.com
   1800 Century Park East, 8th Floor

11  Los Angeles, California 90067
   Telephone: (310) 315-8200

12  Facsimile: (310) 315-8210

13  Dan Drachler, (*Pro Hac Vice*)
   **Zwerling, Schachter & Zwerling, LLP**

14  1904 Third Avenue, Suite 1030
   Seattle, WA 98101

15  Telephone: (206) 223-2053
   Facsimile: (206) 343-9631

16

17  Christine Bartholomew (SBN 211425)
   **Finkelstein Thompson LLP**

18  601 Montgomery Street, Suite 665
   San Francisco, CA 94111

19  Telephone: (415) 398-8700
   Facsimile: (415) 398-8704

20

21  Class Counsel

22

23

24

25

26

27

SCANNED

## OPT OUT MEMBER LIST

Adams, Christi R.
Orlando, FL

Adams, Kara Kinson
West Boxford, MA

Ahmad, Fatima
Montreal, Quebec, Canada

Albano, Molly E.
Southington, CT

Alexakis, Georgia
San Francisco, CA

Anderson, Dominic J.
Richland Center, WI

Andrews, Scott R.
Dublin, OH

Armesto, Castor
St Louis, MO

Ashe, Reagan
North Myrtle Beach, SC

Ast, Robyn
Chicago, IL

Avery, Robert Dean
Chicago, IL

Babbitt, Lindsay
Minneapolis, MN

Bacci, Bella Ee Ling
Napa, CA

Back, Ji-Yun
Arlington, VA

Barrila, Gaetano
Maple, Ontario, Canada

Batsedis, Olga
Dix Hills, NY

Bauer, Kristen A.
Mtn view, CA

Beck, Kimberly
Loveland, OH

Beretta, Jonathan, JD
Avondale, AZ

Bertin, Allen P.
Houston, TX

Birchfield, Jennifer
Rockford, IL

Blanchette, Jean-Pierre
New York, NY

Boesch, Victoria
Pasadena, CA

Bowen, Jeff J.
Los Angeles, CA

Boykin, Namosha
Washington, D.C.

Bracewell, Joseph S.
Washington, DC



**EXHIBIT** A

Page 13

| | |
|---|---|
| Brady, Rebecca A<br>Cheektowaga, NY | Causland, Tara<br>Kirkland, WA |
| Bragassam, Jossy<br>Singapore | Chan, Flora L.<br>Winston-Salem, NC |
| Branton, Vincent A.<br>West Richland, WA | Chareas, Stephen<br>Arl. Heights, IL |
| Brown, Necole M.<br>Lake Charles, LA | Chelico, Nabil Elias<br>Los Angeles, CA |
| Brownstone, Rebecca B.<br>Calabasas, CA 91303 | Chen, Yi-Wen<br>Philadelphia, PA |
| Buckner, Lauren<br>St. Louis, MO | Cherry, Daphne M.<br>Houston, TX |
| Burgasser, Jessica J<br>Buffalo, NY | Cho, Hay-Mie<br>Tucson, AZ |
| Burgos, Diana<br>Tampa, FL | Cho, Jayne P.<br>New York, NY |
| Caldwell, Dan<br>Ormond Beach, FL | Choong, Pek Yoke<br>Singapore |
| Caldwell, Peter<br>Lake City, FL | Choudhry, Erum A.<br>San Jose, CA |
| Caluori, Colleen A.<br>Johnston, RI | Chung Jenny<br>Oakland, CA |
| Campbell, David L.<br>Troy, MI | Clarkson, Brooke<br>Kensington, MD |
| Capuzzi, Cristiano<br>Old Bridge, NJ | Clements, Adrienne M.<br>Fort Worth, TX |
| Carter, Daragh JM<br>Houston, TX | Cliett, Gabe T.<br>Metter, GA |
| Carville, Todd C.<br>Utica, NY | Collazos, Adriana<br>New York, NY |

4433793 1

Collins, Charece
Carlisle, PA

Conahan, Sean M.
Tampa, FL

Cook, Dean
Plano, TX

Cook, Jessica
San Clemente, CA

Coppola, Maddalena
West Hempstead, NY

Cox, Genevieve A.
San Francisco, CA

Cristaudo, Alexander L.
Monroeville, NJ

Culmer, Gabrielle
New York, NY

Daley, Paul F.
Melbourne, FL

Daniels, Yvette
St. Petersburg, FL

Danquah, Angela
Greenford, Middlesex,
London

Darnell, Leslie S.
Jacksonville, FL

Dayton, Richard C.
San Jose, CA

deRoss, Carolyn
Friday Harbor, WA

Deshotel, Ashley Arinder
Baton Rouge, LA

Dhillon, Amar
Modesto, CA

Dickson, Amy L.
Castleton, NY

Dieteman, David F.
Erie, PA

Douglas R. Hoffman
Mt. Vernon, IL

Dreher, Salaam G.
Apopka, FL

Duffee, Eric D.
Columbus, OH

Dumas, Laura F.
Danville, CA

Duvall, Kathryn L.
Charlottesville, VA

Eck, Gretchen A.M.
Springfield, IL

Eck, Jonathan
Lebanon, NH

Eckart, Elyse
El Segundo, CA

Embry, Ronald G , Jr.
Houston, TX

Eskovitz, Sean
Los Angeles, CA

Estrada, E. Martin
Santa Monica, CA

Fairweather, John Zachary
Birmingham, AL

Goddard, Jane M
Orlando, FL

Goes, Ian
Toronto, Ontario

Gordon, Sarah L.
Pittsburgh, PA 15206

Grossman, Matthew A
Knoxville, Tennessee

Gunn, Kristy
Memphis, TN

Gutierrez, Joshua
Newton, MA

Hagen, Joyce
Oakland Park, FL

Hammond, Erin H.
Tacoma, WA

Hammond, Zachary
Spring, TX

Haytas, Joseph R.
Upland, CA

Hebert, Leon F., Jr.
Springfield, MA

Heine, Dorsey E
Los Angeles, CA

Hercules, Jesse
Oxford, MS

Hill, Mark
Tallahassee, FL.

Hilleren, Christine C.
Mandeville, Louisiana

Hopkins, Crystal
Ypsilanti, MI

Howell, Byron Boylin
Tampa, FL

Hunt, Melissa A.
Chicago, IL

Hurta, Shelly Z.
Naperville, IL

Inagawa, Kenichi
Yokohama Kanagawa, Japan

Innet, Leanne M.
Ocean Ridge, FL

Jamsa, Siobhan
Minneapolis, MN

Jenkins, Lyn
Orlando, FL

Jervis, Amy Tufts
Melvin, KY

Jones, Allison Medlock
Birmingham, AL

Jordan, Patrick T.
Seattle, WA

Joshi, Neeraj
Montville, NJ

Jumper, Johanna L.
Nashville, TN

Kapeller-Wismiewski, Heather S.
Lansing, MI

Karstaedt, Louise
New York, NY

4433793 1

Katsivela, Maria E
Nassau, Bahamas

Katze, Samantha
New York, NY

Kazakova, Joanna
E. Rutherford, NJ

Kelly, Matthew
Walnut Creek, CA

Kelly, Meghan
St. Louis, MO

Kessler, Daniel
Munich, Germany

Kidron, Leeora
New York, NY

Kim, Hyung Sup
Lincoln, NE

King, Bernard F., III
San Diego, CA

King, Robert
Gainesville, FL

Konoor, Sapna
Millville, NJ

Ku, Katherine
Los Angeles, CA

Kuhl, Brooke Castle
no address available

La Muro, Anthony M. Jr.
Hempstead, NY

Lageson, Anne E.
St. Louis, MO

Laginess, Courtney A.
Cincinnati, OH

LaGrandeur, Thomas
Palo Alto, CA

Lamanna, Kelly R.
Pittsburgh, PA

Lammers, Steven
Valparaiso, IN

Lang Susman, Alexandra
Los Angeles, CA

Lategano, Rosemary
Albany, NY

Latkina, Dinara
Chicago, IL

Lauro, Daniel R.
Grottoes, VA

Lawrence, J. Raza
Los Angeles, CA

Leach, Brooke
Philadelphia, PA

Leight, Adrienne S.
San Francisco, CA

Levin, Daniel B.
Los Angeles, CA

Liederman, Peter H
Berkeley, CA

Litke, Carol
Oceanside, NY

Lobb, George C
Fairfield, CA

4433793 1

Longo, Anthony
Chicago, IL

McCord, Nicole
Cleveland, TN

Looby, David J.
Oklahoma City, OK

McEwen, Warran
Orlando, FL

Lopez, Alejandra L.
Miami, FL

Medina, Erika
Philadelphia, PA

Lynch, Rebecca Gose
Oakland, CA

Melzer, Margaret A.
Palatka, FL

Macksood, Jennifer Ann
Carlsbad, CA

Menachemi, Efrat
New York, NY

Magee, Michael
Athens, GA

Menahem, Caren Jennifer
Great Neck, NY

Manfredo, Robert F.
Albany, NY

Mennillo, Seth Daniel
Brookline, MA

Mann, James
New York, NY

Merken, Stacie
Los Angeles, CA

Marciniak, Erin
Springfield, VA

Messinger, Jonathan D
Danversport, MA

Markwood, Sarah
University City, MO

Mezoff, Sheri
Brookline, MA

Marsch, Tiffany L.
Chicago, IL

Miller, Shont E.
Pasadena, CA

Marzock, Kirk R
Lancaster, PA

Mills, Gregory A.
Bloomington, IN

Matarazzo, Leopoldo
Fair Lawn, NJ

Minnix, A. L.
Columbus, OH

Mattson, Clay
Buffalo, NY

Montgomery, Jennifer
Baton Rouge, WA

Mazzotta, Francesco G.
Bethel Park, PA

Moore, Michelle
Arlington, MA

4433793 1

Morelli, Gaia
Rome, Italy

Morgan, Cynthia
San Diego, CA

Morra, Robert A.
Forest Hills, NY

Morrissey, John R.
Toronto, Ontario, Canada

Mosby, Brian L
Indianapolis, IN

Moulton, Jason R
Crestview, FL

Mourad, Adriana
Washington, DC

Mueller, Andra
Saint Paul MN

Murphy, Ryan P.
Hollister, CA

Neal, Zachary L.
Washington, D.C.

Newby, John L., II
Washington, D.C.

Newell, Ryan Patrick
Wilmington, DE

Ng, Stephanie
Walnut Creek, CA

Nguyen, Vinh
Findlay, OH

Oberholzer, Lori
Columbus, OH

O'Dowd, Sean
New Paltz, NY

Oliveira, Leonor
Burbank, CA

Oxford, James R. Jr.
Cedartown, Georgia

Pages Stone, Natalie
Los Angeles, CA

Palmer, Blake
Wall, NJ

Palmer, Margaret Anne
Rector, PA

Patel, Ulka
Baltimore, MD

Paul, Michael
San Antonio, TX

Penn-Loya, Alexis
Santa Ana, CA

Pham, Pearl
Malvern, PA

Ploetz, Nicola
Mobile, AL

Pogoriler, Leah
Washington, DC

Polansky, Seth C.
Silver Spring, MD

Powell, Daniel J.
San Francisco, CA

Prado, Gabriela
Miami, FL

4433793 1

Proxmire, Mick L.
Columbus, OH

Raetz, James T.
Los Angeles, CA

Reboucas, Rui Tabakov
Sao Paulo, SP Brazil

Reddivari, Krishna
Dallas, TX

Regina, Richard
Baldwin, NY

Reisman, Sean Peter
New York, NY

Rengito, Stephanie
Bethpage, NY

Rhee, Patricia
Castle Rock, CO

Richter, Zachary C
Arlington, VA

Roach, Matthew T.
Jacksonville, FL

Robinson, James J.
Los Angeles, CA

Rogers, James
Sag Harbor, NY

Romaszewski, Sandra A.
Lansing, MI

Rusconi, Mikaela
Miami, FL

Russell, Freya, K.
Los Angeles, CA

Rutten, James C.
San Bernardino, CA

Sacrison, Katherine
Port Orchard, WA 98366

Sagi, Chava Eve
Woodland Hills, CA

Sagnard, Candice
Minneapolis, MN

Samuelson, Marc B.
Somers Point, NJ

Sanchez, Gabriel
Los Angeles, CA

Sanfilippo, Robert
Wayne, NJ

Sawyer, Joel W.
Mount Airy, NC

Scattergood, Carrie L.
Burlington, NJ

Schacherer, P.M., J D.
Forest, Virginia

Schaeffer, Stephen
Washington, DC

Schuknecht, Amber
Pittsburgh, PA

Schwartz, Jason Brett
Cherry Hill, NJ

Scott, Ann Marie
Los Angeles, CA

Sealy, Karen A.
Ellicott City, MD

4433793 1

Seward, Michael
Benton, Pennsylvania

Shapiro, David M.
Honolulu, HI

Shekhtman, Lyudmila
S San Francisco, CA

Sheridan, Patrice
Boston, MA

Shore, Blake
Jacksonville, FL

Silverman, Charles
Chicago, IL

Simmonds, Karen H.
Seattle, WA

Simmons, Leslie Vaughan
Cartersville, Georgia

Simpson, Alistair G.
Toronto, Ontario Canada

Skeens, A. Skeens
Fort Wayne, IN

Sloan, Charissa
Waco, TX

Smith, Penelope
New York, NY

Smith, Travis M.
Houston, TX

Spaide, Heather
New Canaan, CT

Sperath, Jessica T.
Indianapolis, IN

Spigarelli, Rowena C
Whitehouse Station, NJ

Spyridakis, Vasilios S.
Sacramento, CA

St. John, Richard
Los Angeles, CA

Standish, Craig A.
Dover, NH

Stefek, Alicia
Owego, IL

Stout, Katherine E.
New Martinsville, WV

Stump, Monica A.
Alexandria, VA

Stump, Nathan D.
Alexandria, VA

Subasic, Alma
Brooklyn NY

Sukkar, Suzanne K.
Ypsilanti, MI

Sullivan, James
Fargo, ND

Sullivan, Marbree D.
Somerville, MA

Szudajski, Matthew T.
Carson City, NV

Taira, Wakana
Chofu-shi Tokyo, Japan

Takah, Jarrod T.
Burgettstown, PA

4433793.1

Tapia, Antonio G.
Orlando, FL

Tarasco, Monica D.
Pepper Pike, OH

Taylor, Lee S.
Los Angeles, CA

Tellalian, Bryan
Clovis, CA

Thabet, Mark
Chester, NY

Thompson, Scott A.
New York, NY

Thomson, Marchelle
Drexel Hill, PA

Torres, Stephanie W.
Buffalo, NY

Trunkey, Alan
Bainbridge Island, WA

Tsurui, Toshitaka
Edogawa-ku, Tokyo, Japan

Uchihara, Kiyoshi
Chiyoda-ku, Tokyo, Japan

Unno, Mitsuo
Brea, CA

Vaccaro, Michael
Avon Lake, OH

Van Deven, Nicholas P.
St. Louis, Missouri

Vanderhoofven, Nathan D.
Jacksonville, FL

Varner, Christina A.
San Francisco, CA

Venero, Jose Antonio
San Antonio, TX

Vogel, John-Paul
San Antonio, TX

Wada, Megan
San Francisco, CA

Wang, Annie
Glendale, CA

Wang, Shanyah Albert
Troy, MI

Warmuth, Glenn P.
Farmingville, NY

Warren, Tracy A
San Diego, CA

Watkins, Anthony L , Jr.
Birmingham, AL

Weg, Nadav
New York, NY

Weinstein, Reid M.
Baltimore, MD

Weiss, Sharon
Woodmere, NY

Weltin, Florence K.
St. Louis, MO

White, Catherine
London

Whitehead, Kristen
Forth Worth, TX

4433793 1

Whiting, Joseph M.
Larchmont, NY

Zorn, Heather M.
Atlanta, GA

Whitley, Joel
Los Angeles, CA

Rauls, Claire Serrano
Saint Paul, MN

Wilkovich, Andrea
Fort Lee, NJ

Hwang, Irene
Fort Lee, NJ

Williams, Beth L.
Portola Valley, CA

Tavassoli, Alan
Phoenix, AZ

Wilner, Jared
New York, NY

Band, Marissa L.
Cherry Hill, NJ

Winters, Gary M.
Houston, TX

Landis, Jennifer M.
Fort Lauderdale, FL

Wiseberg, Nicol
Port St. Lucie, FL

Woo, In-Yu
New York, NY

Wiseberg, Phil
Palm Beach Garden, FL

Williams, Erika N.
Baton Rouge, LA

Woodard, Bethany
Los Angeles, CA

Parker, Warren B
Birmingham, AL

Yoshida, Kaori
Rego Park, NY

Rachko, Larissa
Woodbury, NJ

Young, Blanca
Berkeley, CA

Stramiello, Linda Stephens
Madison, CT

Young, Melodie
Forest Hills, NY

Noushkam, Donna B.
Cerritos, CA

Yurtkuran, Shaun E.
Jackson, MS

Graham, Emily
Miami, FL

Zayas, Idalisse
Kissimmee, FL

Kim, James W.
Chicago, IL

Zigman, Abigail
Staten island, NY

Sarna, Alejandro L.
Washington DC





# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN RODRIGUEZ, REENA B. FRAILICH, LOREDANA NESCI, JENNFIER BRAZEAL, and LISA GINTZ, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>WEST PUBLISHING CORPORATION, a Minnesota Corporation d/b/a BAR/BRI, and KAPLAN, Inc., a Delaware Corporation,<br><br>        Defendants<br><br>AND CONSOLIDATED ACTION | CASE NO. CV-05-3222 R(MCx)<br><br>~~[PROPOSED]~~ ORDER DENYING INCENTIVE AWARDS TO CLASS REPRESENTATIVES |

On June 18, 2007 and July 9, 2007, pursuant to the Settlement Agreement and the Order Granting Preliminary Approval of Class Action Settlement and Directing Dissemination of Notice to Class dated March 26, 2007, the application of class counsel for grant of incentive awards to class representatives Jennifer Brazeal, Kari Brewer, Reena Frailich, Lisa Gintz, Loredana Nesci, Lorraine Rimson, and Ryan Rodriguez came before this Court.

46670571

[PROPOSED] ORDER DENYING INCENTIVE AWARDS TO CLASS REPRESENTATIVES

431



1    Having read and fully considered the application, the declarations filed in

2    support thereof, and all oppositions and objections thereto, the Court finds that

3    incentive awards should not be granted to the class representatives.

4    **IT IS THEREFORE ORDERED THAT:**

5    The application for incentive awards for class representatives is DENIED.

6

7    IT IS SO ORDERED.

8

9    Dated: **Sept. 10**, 2007

10                                            Honorable Manuel L. Real
                                             United States District Court Judge

11

12   Submitted by:

13

14

15   Sidney K. Kanazawa (SBN 84608)
     **McGUIREWOODS LLP**

16   Email: skanazawa@mcguirewoods.com
     1800 Century Park East, 8th Floor

17   Los Angeles, California 90067
     Telephone: (310) 315-8200

18   Facsimile: (310) 315-8210

19   Dan Drachler, (*Pro Hac Vice*)
     **Zwerling, Schachter & Zwerling, LLP**

20   1904 Third Avenue, Suite 1030
     Seattle, WA 98101

21   Telephone: (206) 223-2053
     Facsimile: (206) 343-9631

22

     Christine Bartholomew (SBN 211425)

23   **Finkelstein Thompson LLP**
     601 Montgomery Street, Suite 665

24   San Francisco, CA 94111
     Telephone: (415) 398-8700

25   Facsimile: (415) 398-8704

26

     Class Counsel

27

28

4667057.1                          -2-
     [PROPOSED] ORDER DENYING INCENTIVE AWARDS TO CLASS REPRESENTATIVES

ORIGINAL



ENTERED
CLERK, U.S. DISTRICT COURT

SEP 1 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

FILED
CLERK, U.S. DISTRICT COURT

SEP 1 0 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RYAN RODRIGUEZ, REENA B.
FRAILICH, LOREDANA NESCI,
JENNIFER BRAZEAL, and LISA
GINTZ, on behalf of themselves and all
others similarly situated,

                              Plaintiffs,

            vs.

WEST PUBLISHING CORPORATION,
a Minnesota Corporation d/b/a BAR/BRI,
and KAPLAN, Inc., a Delaware
Corporation,

                              Defendants.

AND CONSOLIDATED ACTION

CASE NO. CV05-3222 R (MCx)

OPINION AND ORDER

## I.    Introduction

This is a federal antitrust class action brought by Plaintiffs Ryan Rodriguez ("Rodriguez"),

Reena B. Frailich ("Frailich"), Jennifer Brazeal ("Brazeal"), Loredana Nesci ("Nesci"), and Lisa Gintz

("Gintz") (represented by Class Counsel McGuireWoods LLP) and Plaintiffs Kari Brewer ("Brewer")

and Lorraine Rimson ("Rimson") (represented by Class Counsel Finkelstein Thompson LLP and

Zwerling, Schachter & Zwerling, LLP, respectively) against Defendants West Publishing Corporation

(doing business as BAR/BRI) ("West") (represented by Liner Yankelevitz Sunshine & Regenstreif, LLP

and Shearman & Sterling, LLP) and Kaplan, Inc. ("Kaplan") (represented by Jones Day and Munger,

1  Tolles & Olsen, LLP). Plaintiffs sue on behalf of themselves and more than 300,000 class members

2  nationwide who took a full-service bar review course from BAR/BRI between August 1, 1997 and July

3  31, 2006 ("the Class" or "Class Members"). The operative complaint alleges that: (1) BAR/BRI (now

4  owned by Defendant West) illegally acquired the assets of its direct competitor West Bar in violation of

5  Section 7 of the Clayton Act; (2) Defendant West unlawfully conspired with Defendant Kaplan to

6  restrain trade in the full-service bar review course market in violation of Section 1 of the Sherman Act;

7  and (3) Defendant West wrongfully monopolized the full-service bar review course market in violation

8  of Section 2 of the Sherman Act.

9  **II.    Procedural History**

10  After an extensive pre-filing factual investigation, Plaintiffs Rodriguez and Frailich ("Initial

11  Plaintiffs") filed the first complaint against Defendants in this Action in April 2005 alleging claims for

12  violation of federal antitrust laws ("Initial Complaint"). The Initial Plaintiffs later filed a First Amended

13  Complaint ("FAC"), in which Plaintiffs Brazeal, Nesci, and Gintz joined. Plaintiffs Brewer and Rimson

14  filed a related action against Defendants in this Court entitled, *Brewer v West Publishing Corp*, Case

15  No. CV-05-06211. The Court consolidated the two actions after motion practice on October 17, 2005.

16  The FAC, the operative complaint in this action, alleges claims for violation of Sections 1 and 2

17  of the Sherman Act, and Section 7 of the Clayton Act. The FAC seeks monetary damages and

18  injunctive relief. Defendants answered the FAC in July 2006, raising numerous defenses, including

19  statute of limitations, laches, proximate cause, standing, and *bona fide* business competition.

20  The action entered the discovery phase in August 2005. Plaintiffs took substantial factual and

21  expert discovery relating to liability, damages, and class certification issues. Plaintiffs reviewed and

22  analyzed over 400,000 pages of documents produced by Defendants and third parties, conducted one

23  deposition pursuant to Federal Rule of Civil Procedure 30(b)(6), and deposed fourteen fact witnesses.

24  Defendants deposed the seven Plaintiffs, as well as three non-party witnesses. The parties also

25  conducted extensive expert discovery, including eight depositions of five different expert witnesses.

26  Plaintiffs and Defendants had a series of discovery disputes. These discovery disputes resulted in a

27  number of motions to compel before this Court and Special Discovery Master John Francis Carroll.

28  On March 13, 2006, Plaintiffs filed their Motion for Class Certification. Defendants raised many

2

1   challenges, including the relevant market definition, antitrust impact, and the existence of a formulaic

2   approach to damages. On May 15, 2006, after comprehensive briefing, including the submission of

3   detailed expert declarations and exhibits as well as extended oral argument, the Court certified a

4   national class defined as: "All persons who purchased a bar review course from BAR/BRI in the United

5   States from 1997 to the present." The Court appointed the seven named plaintiffs as class

6   representatives ("Class Representatives").

7        On June 29, 2006, after reviewing submissions from Plaintiffs and Defendants concerning the

8   proposed plan of notice to the Class, the Court issued an Order Re: Class Notice ("Class Notice Order")

9   which approved the proposed form of notice, and provided for dissemination by: (a) first-class mail; (b)

10  in national publications; and (c) over the internet. In accordance with the Class Notice Order, the Class

11  Action Notice ("Notice") was disseminated in July 2006. The Notice provided Class Members the

12  opportunity to request exclusion from the Class.

13       Defendants filed a petition with the Court of Appeals for the Ninth Circuit for leave to file an

14  appeal regarding the Class Certification Order. Plaintiffs filed an extensive opposition. The Ninth

15  Circuit denied Defendants' petition on August 11, 2006.

16       On July 17, 2006, Kaplan filed a motion for summary judgment seeking to dismiss Count II of

17  the FAC (the only count against Kaplan). Plaintiffs opposed the Motion and subsequently sought leave

18  to file two supplemental opposition briefs to the Motion, which the Court granted. The Court denied

19  Kaplan's Motion for Summary Judgment on September 18, 2006. Trial was set for February 13, 2007.

20       After completion of discovery, and with the February trial date approaching, the counsel for

21  Plaintiffs and Defendants, together with Rodriguez, Nesci, and Gintz, engaged in a formal mediation in

22  New York City on November 29, 2006. The Honorable Daniel Weinstein (Ret.) of JAMS, who has

23  substantial experience in resolving antitrust and class action cases, served as mediator  Plaintiffs were

24  represented by Class Counsel and Defendants were represented by their litigation counsel and their in-

25  house counsel. The record reflects that at all times the negotiations were at arm's-length and hard

26  fought. The parties were unable to reach a resolution on November 29, 2006.

27       Negotiations continued for the next several weeks with the assistance of the mediator. During

28  this time, the parties continued to prosecute discovery disputes and prepare for trial. After several

3

1  weeks of negotiations, an agreement was reached on all settlement terms. The Settlement Agreement

2  was executed on February 2, 2007. Plaintiffs Rodriguez, Nesci, and Gintz ("the Objecting Plaintiffs")

3  refused to authorize the execution of the Settlement Agreement on their behalf.

4          On March 19, 2007, over the objections of the Objecting Plaintiffs, the Court entered an Order

5  Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Directing

6  Dissemination of Notice to Class ("Preliminary Approval Order") that, among other things: (a) found

7  that the Settlement Agreement was negotiated in good faith, under the supervision of a well-respected

8  mediator, was the result of extensive arm's length negotiations, was concluded after Class Counsel

9  conducted broad discovery, and was sufficiently fair, reasonable, and adequate to warrant sending

10  notice of the Settlement to Class Members and holding a full hearing on the Settlement; (b) modified

11  the definition of the previously certified class to: "All Persons who purchased a bar review course from

12  BAR/BRI in the United States from August 1, 1997 through and including July 31, 2006"; (c) found

13  that the proposed forms and methods of notice met the requirements of the Federal Rules of Civil

14  Procedure, the United States Constitution, the Rules of the Court and all other applicable law; (d)

15  appointed a claims administrator; (e) established procedures for Class Members to object to the

16  Settlement; and (f) established the date for the Final Approval Hearing.

17          On June 18, 2007 and July 9, 2007, the Court conducted hearings on the fairness,

18  reasonableness, and adequacy of the Settlement. Twelve groups of Objectors were represented at the

19  first Final Approval Hearing (through counsel). Two of the three Objecting Plaintiffs - Nesci and

20  Rodriguez - were also present. At the Final Approval Hearing on July 9, 2007, after hearing argument

21  from the parties, Objectors and/or their counsel, and Objecting Plaintiffs Nesci and Rodriguez, the

22  Court: (1) granted Plaintiffs' Motion for an Order Granting Approval of the Class Action Settlement;

23  (2) denied Plaintiffs' Motion for Incentive Awards to Class Representatives; and (3) granted Class

24  Counsel's Motion for Attorneys' Fees and Reimbursement of Expenses. This Opinion and Order

25  follows.

26  **III.    The Incentive Agreement and the Requests for Incentive Awards**

27          As part of their Retainer Agreement, the five Class Representatives represented by Class

28  Counsel Van Etten Suzumoto & Becket LLP (the predecessor to Class Counsel McGuireWoods LLP)

4

1   entered into an "Incentive Agreement" with their counsel.[1] Each of the five Class Representatives

2   represented by McGuireWoods signed the Incentive Agreement prior to entering the lawsuit. Under the

3   section entitled "Incentive/Compensation to Clients" the contingency fee-type contract obligates Class

4   Counsel to seek payment for each of the Class Representatives in an amount that adjusts based on the

5   end settlement or litigated victory amount. If the settlement or litigated victory was greater than or equal

6   to $500,000, Class Counsel would seek a $10,000 award per Class Representative. For $1.5 million or

7   more, Class Counsel would seek a $25,000 award. For $5 million or more, Class Counsel would seek

8   $50,000 and for $10 million or more, Class Counsel would seek $75,000. The five Class

9   Representatives who signed the Incentive Agreement all aver that they were never promised that they

10  would receive an incentive award and that any award was contingent on court approval. Such a promise

11  is not necessary to securing an award that is quickly becoming the grist of the class action money mill.

12          The Class was never advised of the Incentive Agreement. The Court was made aware of the

13  Incentive Agreement only after the Preliminary Approval Hearing, when the incentive payment requests

14  were made. Apparently, however, Defendants obtained a copy of the Incentive Agreement in April

15  2006.

16          The case settled for $49,000,000. Thus, per the Incentive Agreement, McGuireWoods is

17  contractually obligated to seek $75,000 for each Class Representative as an incentive payment

18  _____

19  [1] The section entitled "Incentive/Compensation to Clients" states in full: "In consideration for the
    services Clients will be providing, and as an incentive to Clients for their participation as Class
20  representatives here and to compensate them for all the burdens accruing therefrom, VSB agrees to seek
    payment for each Client in the following amounts: 1. The sum of $10,000 if the West case ends by
21  settlement or litigated victory with the payment to the Class a sum greater than or equal to five hundred
    thousand dollars ($500,000) in cash or anything of comparable value; 2. In supplement to the sum
22  identified in paragraph 1 directly above, an additional $15,000 (for a sum total of $25,000) will be paid
    to each client if the West case ends by settlement or litigated victory with the payment to the Class a sum
23  greater than or equal to one million five hundred thousand dollars ($1,500,000) in cash or anything of
    comparable value; 3. In supplement to the sum identified in paragraph 2 directly above, an additional
24  $25,000 (for a sum total of $50,000) will be paid to each client if the West case ends by settlement or
    litigated victory with the payment to the Class a sum greater than or equal to five million dollars
25  ($5,000,000) in cash or anything of comparable value; and 4. In supplement to the sum identified in
    paragraph 3 directly above, an additional $25,000 (for a sum total of $75,000) will be paid to each client
26  if the West case ends by settlement or litigated victory with the payment to the Class a sum greater than
    or equal to ten million ($10,000,000) in cash or anything of comparable value. 5. Such payments listed
27  above shall be subject to the following conditions: a. Clients have reasonably provided the assistance
    sought in paragraphs 1-3 under section "Services to be Rendered by Clients;" and b. any required Court
28  approval is first obtained, which VSB agrees to seek, as need be, at the pertinent time." (June 11, 2007
    Kanazawa Decl. Ex. 1 at 2-3.)

5

1    However, in the Settlement Agreement entered into on February 2, 2007, Defendants would only agree

2    not to oppose requests for incentive awards less than or equal to $25,000 for each Class Representative.

3    After the Settlement was reached, McGuireWoods communicated with the five Class Representatives it

4    represents about the incentive awards. Two of the five (Plaintiffs Brazeal and Frailich) agreed that

5    McGuireWoods would seek only $25,000 on their behalf. The three Objecting Plaintiffs refused to

6    agree to the lower amount and, as a result, McGuireWoods seeks $75,000 each for Plaintiffs Rodriguez,

7    Nesci, and Gintz pursuant to the terms of the Incentive Agreement. Class Counsel seeks these awards

8    on behalf of the Class Representatives despite the minimal assistance the Class Representatives

9    contributed to the prosecution of the litigation and the conflict of interests the contingency fee-type

10   agreement created between the Class Representatives and the Class Members.

11        The two other named plaintiffs, Plaintiffs Brewer and Rimson, who were represented by Class

12   Counsel Finkelstein Thompson LLP and Zwerling, Schachter & Zwerling, LLP, respectively, made no

13   ex-ante incentive award agreement with their clients Plaintiffs Brewer and Rimson had no agreement

14   regarding any amount that would be requested as an incentive award on their behalf Their counsel

15   maintain that they independently determined that $25,000 was an appropriate incentive award amount

16   for each of their Class Representatives.

17 **IV.    Jurisdiction**

18        This Court has jurisdiction over Class Members' claims because Plaintiffs have alleged

19   violations of the Sherman Act, 15 U.S.C. § 1, and the Clayton Act, 15 U.S.C. § 18. 28 U.S.C. 1331.

20        This Court can also exercise personal jurisdiction over all absentee Class Members because

21   Class Members received proper notice of the action. The Notice informed potential Class Members of

22   the pendency of this Action and provided them with the opportunity to exclude themselves from the

23   Class. The Notice also informed Class Members of their opportunity to object to the Settlement and to

24   be heard at the Final Approval Hearing. As discussed further below, such notice satisfies the due

25   process requirements of the Fifth Amendment. *Brown v. Ticor Title Inc.,* 982 F2d 386, 392 (9th Cir.

26   1992).

27

28

1   **V.    Settlement Terms**

2        **A.    The Settlement Fund**

3        Consistent with the terms of the Settlement Agreement, Defendants paid forty-nine million

4   dollars ($49,000,000) into an interest-bearing account for the benefit of the Class, which amount, plus

5   interest ("Gross Settlement Fund"), has or will be used to pay for the costs of notice, settlement

6   administration, taxes and attorneys' fees and expenses pursuant to the orders of this Court. After such

7   payments from the Gross Settlement Fund, the balance will be distributed to the Class ("Net Settlement

8   Fund") pursuant to the Plan of Allocation.

9        **B.    Plan of Allocation**

10        Under the terms of the Plan of Allocation, the Net Settlement Fund will be distributed *pro rata*

11   based on the amount each Class Member who submits a timely and valid Claim Form ("Authorized

12   Claimant") paid BAR/BRI for the bar review course in relation to the amounts paid by all other

13   Authorized Claimants. For example, if the amount paid for a bar review course by an Authorized

14   Claimant equals 1/100,000 of the aggregate of such amounts paid by all other Authorized Claimants,

15   then the Authorized Claimant will receive 1/100,000 of the Net Settlement Fund. The maximum

16   amount of payment that any Authorized Claimant shall be entitled to receive from the Net Settlement

17   Fund, however, shall not exceed thirty-percent (30%) of the amount the Authorized Claimant paid for

18   the bar review course ("Maximum Payment").

19        Class Members also have the option of donating their portion of the Net Settlement Fund to the

20   National Legal Aid and Defender Association ("NLADA"), for the purpose of providing training

21   opportunities for young lawyers nationwide. NLADA, founded in 1911, is the oldest and largest

22   national, nonprofit membership organization devoted to advocating equal access to justice for all.

23        Defendants are not entitled to a reversion of any money remaining in the Net Settlement Fund

24   after distribution of the Maximum Payments to all Authorized Claimants. If any funds remain in the Net

25   Settlement Fund after distributing the Maximum Payments to all Authorized Claimants, Class Counsel

26   will make an application to the Court for a *cy pres* distribution of the residual amount of the Net

27   Settlement Fund.

28

1    **C.    Provisions to Promote Competition in the Bar Review Market**

2    For purposes of Settlement, BAR/BRI and Kaplan agreed to terminate the marketing agreement

3    that Plaintiffs allege is unlawful and has allowed BAR/BRI to maintain a monopoly and Defendants to

4    divide the market. Further, for a period of five years following the Effective Date, BAR/BRI will

5    include the following statement on the forms it uses to enroll law students into its review courses:

6    NOTE: By signing this Enrollment Form and making an initial payment to BAR/BRI,

7    you are not committing yourself to taking the BAR/BRI Bar Review course or making

8    full payment to BAR/BRI for such course.

9    Finally, in the Settlement Agreement, BAR/BRI expressly states "that it is committed to

10    accurate advertising as required by the Lanham Act, the Federal Trade Commission Act and similar

11    laws, regulations and rules."

12    **D.    Release**

13    The Settlement Order provides that all Class Members (including any of their past, present or

14    future officers, directors, agents, employees, legal representatives, trustees, parents, associates,

15    affiliates, licensees, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors,

16    successors, and assigns), with the exception of those who exercised their right to opt out (identified in

17    Exhibit A to the Settlement Order), whether or not he, she, or it objects to the Settlement and whether

18    or not he, she, or it makes a claim upon or participates in the Settlement Fund, whether directly,

19    representatively, derivatively or in any other capacity, ever had, now has or hereafter can, shall or may

20    have concerning or relating to any conduct alleged in the FAC in this Action, and including without

21    limitation all claims that have been asserted or could have been asserted in any litigation against the

22    Released Parties or any of them for any conduct alleged in the FAC in this Action (collectively with all

23    claims referenced in the next paragraph, the "Released Claims"), are permanently enjoined from filing,

24    commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving

25    any benefits or other relief from, any other lawsuit, arbitration, or other proceeding against any or all

26    Released Parties, or order in any jurisdiction entered against any or all Released Parties that is based

27    upon, arises out of, or relates to any Released Claims.

28    Notwithstanding the foregoing, the Released Claims shall not include claims asserted against the

8

1  named defendants as of February 2, 2007, in the putative class actions, entitled *Park v Thomson Corp.,*

2  *et al.,* Case No. 05 Civ. 2931 (WHP) and *Arendas v. Thomson Corp., et al.,* Case

3  6:06-cv-1113-Orl-28JGG, currently pending in the United States District Court, Southern District of

4  New York ("New York Actions").

5  **VI.    Notice and Dissemination Was Adequate**

6      Notice to the Class of the Settlement satisfied all applicable requirements, including due

7  process  Proper notice should provide: (a) the material terms of the proposed settlement; (b) disclosure

8  of any special benefit to the class representatives; (c) disclosure of the attorneys' fees provisions; (d) the

9  time and place of the final approval hearing and the method for objecting to the settlement; (e) an

10  explanation regarding the procedures for allocating and distributing the settlement funds; and (f) the

11  address and phone number of class counsel and the procedures for making inquiries. *See, e.g., Marshall*

12  *v. Holiday Magic,* 550 F.2d 1173, 1177-78 (9th Cir.1977); *In re Aetna Inc. Secs. Litig.,* MDL No. 1219,

13  2001 WL 20928 at * 5, 2001 U.S. Dist. LEXIS 68, at *16 (E.D. Pa. Jan. 4, 2001) (holding that the

14  notice must be "reasonably calculated under all the circumstances, to apprise interested parties of the

15  pendency of the action and afford them an opportunity to present their objections." (quoting *Mullane v*

16  *Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314-15 (1950) (citation omitted)). The Notice here met

17  all of these requirements and, thus, was adequate.

18      The Notice dissemination also satisfied all applicable requirements, including due process. The

19  Notice was mailed by first class mail to each Class Member identified from Defendants' records. The

20  Notice was also made available on a variety of internet sites – including that of the Claims

21  Administrator and Class Counsel. In addition, the Summary Notice describing the principal terms of the

22  Settlement Agreement and providing information on how a more detailed description of the Settlement

23  Agreement could be obtained was published in *The National Law Journal* (twice), *Lawyers Weekly*

24  *USA* (three times) and *USA Today* (once). The Summary Notice was sent by first-class mail to the

25  largest 200 law firms in the United States, as listed in *American Lawyer*. These publications and the

26  mailing to the 200 largest law firms specifically targeted the Class. Thus, the Notice dissemination was

27  adequate. *See, e.g., Silber v Mobon,* 18 F. 33 1449, 1452-54 (9th Cir. 1994) (approving notice sent by

28  first class mail as the "best notice practicable"); *Zimmer Paper Prods., Inc. v. Berger & Montague,*

9

1  *P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and

2  publication in the press fully satisfy the Notice requirement of both Fed. R. Civ. 23 and the due process

3  clause.") (citations omitted); *Montgomery v. Beneficial Consumer Disc. Co.*, No. 04- 2114, 2005 WL

4  497776, at *6, 2005 U.S. Dist. LEXIS 3249, at *19 (E.D. Pa. Mar. 2, 2005) (individual mailing

5  accompanied by publication in *USA Today* was best practicable notice under the circumstances; "[d]ue

6  process does not require actual notice, but rather a good faith effort to provide actual notice") (quoting

7  Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* § 11:53 (4th ed. 2002) ("*Newberg*").

8  **VII.  The Settlement Is Fair**

9      **A.  The Settlement Agreement Enjoys a Presumption of Fairness**

10          In the Ninth Circuit, a court affords a presumption of fairness to a settlement, if (1) the

11  negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the

12  settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.

13  *Newberg* at § 11.41; *Young v. Polo Retail*, 2006 WL 3 050861, at *5, 2006 U.S. Dist. LEXIS 81077, at

14  *12-13 (N.D. Cal. Oct. 25, 2006). As described above, the Settlement was reached only after extensive

15  discovery had been conducted. Settlement negotiations occurred at arm's length for three months with

16  the assistance of a mediator and the Settlement Agreement was not reached until the eve of trial. Both

17  Class Counsel and Defendants' counsel are experienced in class actions, including antitrust class

18  actions. Moreover, only a small fraction of the Class objected to the Settlement. Thus, the Settlement

19  Agreement enjoys a presumption of fairness.

20      **B.  The Settlement Agreement is Fair, Adequate, and Reasonable**

21          "It is the settlement taken as a whole, rather than the individual component parts, that must be

22  examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). A court

23  may not delete, modify, or rewrite particular provisions of the settlement; rather, "[t]he settlement must

24  stand or fall in its entirety." *Id.* The Ninth Circuit has articulated eight factors to evaluate a settlement's

25  fairness, adequacy, and reasonableness:

26        (1)  The strength of plaintiffs' case;

27        (2)  The risk, expense, complexity, and likely duration of further litigation;

28        (3)  The risk of maintaining class action status throughout the trial;

1    (4)    The amount offered in settlement;

2    (5)    The extent of discovery completed, and the stage of the proceedings;

3    (6)    The experience and views of counsel;

4    (7)    The presence of a governmental participant;[2] and

5    (8)    The reaction of the class members to the proposed settlement.

6    *Molska v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1026. All the applicable

7    factors favor a finding of fairness, adequacy, and reasonableness in this case. The Court also finds that

8    the conflict of interest between the Class Representatives and the Class Members does not disturb the

9    Court's finding that the Settlement is fair, adequate, and reasonable.

10    **(1)    The Strength of Plaintiffs' Case**

11    Although Plaintiffs prevailed on Kaplan's Motion for Summary Judgment and believe they

12    would prevail on any motion for summary judgment filed by BAR/BRI, defeating these motions does

13    not mean that Plaintiffs established Defendants' *prima facie* liability; whether they would obtain a

14    favorable, unanimous jury verdict as required by Federal Rule of Civil Procedure 48 is far from

15    guaranteed. *See, e.g., In re Airline Ticket Com'n Antitrust Litig.*, 953 F.Supp. 280, 283 (D. Minn. 1997)

16    (approving a settlement although it did not provide a full recovery of the potential losses and noting that

17    objectors failed to appreciate that on summary judgment, the court only decided that defendants did not

18    prevail as a matter of law, not that plaintiffs had a winning case). Claims for violation of federal

19    antitrust laws are notoriously difficult to prove. *See Palmer v. BRG*, 498 U.S. 46, 48 (1990). The

20    Court's ruling on Kaplan's Motion for Summary Judgment was simply a recognition that there were

21    material facts still in dispute. Accordingly, this factor weighs in favor of approving the Settlement.

22    **(2)    The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

23    The risk, expense, complexity and duration of continued litigation also favored settlement.

24    These factors consider "the probable costs, in both time and money, of continued litigation." *In re*

25    *Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002). In most cases, "unless the

26    settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive

27    

28    
-------
[2] There was no governmental presence with respect to the claims set forth in the action.

1  litigation with uncertain results." *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc*, 221 F.R.D. 523,

2  526 (C.D. Cal. 2004) (quoting *Newberg* at § 11.50 at 155). Indeed, settlement is encouraged in class

3  actions where possible. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir.1976) ("It hardly

4  seems necessary to point out that there is an overriding public interest in settling and quieting litigation.

5  This is particularly true in class action suits which are now an ever increasing burden to so many federal

6  courts and which frequently present serious problems of management and expense."). Further, this

7  action is complex and, if not settled, is likely be enormously expensive and very lengthy. Antitrust class

8  actions "are notoriously complex, protracted, and bitterly fought" and "arguably the most complex

9  actions to prosecute." *In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510

10  (E.D.N.Y. 2003) (quoting *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989)).

11  Additionally, the litigation would most likely take several years to finally resolve, considering the

12  length of trial and appeals. Accordingly, avoiding a trial and inevitable appeals in this complex,

13  antitrust suit strongly weigh in support of approval of the Settlement, rather than prolonged and

14  uncertain litigation. *See DIRECTV*, 221 F.R.D. at 527 ("Avoiding such a trial and the subsequent

15  appeals in this complex case strongly militates in favor of settlement rather than further protracted and

16  uncertain litigation"). Accordingly, this factor weighs in favor of approving the Settlement.

17      **(3)    The Risk of Maintaining Class Action Status Throughout the Trial**

18      As for the risk of maintaining class action status throughout the trial, this Court certified a

19  nationwide Class. Although Plaintiffs believe it is unlikely, there is no guarantee that Defendants would

20  not move for and obtain decertification of the Class before or during trial. *See In re Nasdaq Market-*

21  *Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998). As noted by one court, if

22  "insurmountable management problems were to develop at any point, class certification can be revisited

23  at any time under Fed. R. Civ. P. 23(c)(1)." *Id.* Further, even if the Class remained certified throughout

24  the trial and Plaintiffs prevailed, Defendants would surely challenge class certification on appeal. If at

25  any point the Class were decertified or certification were reversed on appeal, the Class would recover

26  nothing. Thus, this factor also weighs in favor of approving the Settlement.

27      **(4)    The Amount Offered in the Settlement**

28      The relief offered in the Settlement also supports a finding that the Settlement is fair, adequate,

12

1    and reasonable. The Settlement includes a Settlement Fund of $49 million, as well as valuable non-

2    monetary relief. The $49 million represents approximately thirty-percent (30%) of Plaintiffs' damages,

3    estimated by their expert to be in the range of $158 million to $168 million, and seven times

4    Defendants' expert's estimate of damages. "[S]ettlement is about compromise, a yielding of the highest

5    hopes in exchange for certainty and resolution." *In re Warfarin*, 212 F R.D. at 257-58 (finding

6    settlement amount representing 33% of maximum possible recovery was well within a reasonable range

7    when compared with recovery percentages in other class action settlements). Accordingly, this factor

8    weighs in favor of approving the Settlement.

9              (5)      **The Extent of Discovery Completed and the Stage of the Proceedings**

10             The extent of protracted and contentious discovery supervised by Special Master John Francis

11   Carroll completed and the stage of the proceedings when the parties reached the Settlement also

12   supports final approval of the Settlement. *See DIRECTV*, 221 F.R.D. at 528 ("A settlement following

13   sufficient discovery and genuine arms-length negotiation is presumed fair"). What is required is that

14   "sufficient discovery has been taken or investigation completed to enable counsel and the court to act

15   intelligently." *Newberg* at § 11:41. Here, Class Counsel conducted extensive discovery regarding each

16   of the relevant issues in the case, deposing more than a dozen witnesses and reviewing more than

17   400,000 pages of produced documents. When the parties reached the Settlement Agreement, they had

18   already engaged in numerous discovery disputes and Kaplan's Motion for Summary Judgment had

19   already been decided by the Court. Thus, this factor weighs in favor of approving the Settlement.

20             (6)      **The Experience and Views of Counsel**

21             In assessing the adequacy of the terms of a settlement, the trial court is entitled to, and should,

22   rely upon the judgment of experienced counsel for the parties. *See DIRECTV*, 221 F.R.D at 528

23   ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with

24   the facts of the underlying litigation") (internal quotations and citations omitted); *see also Cotton v.*

25   *Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). The basis for such reliance is that "[p]arties represented

26   by competent counsel are better positioned than courts to produce a settlement that fairly reflects each

27   party's expected outcome in the litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir

28   1995). Indeed, when evaluating a proposed settlement, the trial judge, absent fraud, collusion, or the

13

1 | like, should be hesitant to substitute its own judgment for that of counsel. *See Flinn v. FMC Corp*, 528

2 | F.2d 1169, 1173 (4th Cir. 1975); *Hanrahan v. Britt*, 174 F.R.D. 356, 366-368 (E D. Pa. 1997) (finding

3 | that a presumption of correctness applies to a class action settlement reached in arm's length

4 | negotiations between experienced, capable counsel after meaningful discovery, citing the *Manual for*

5 | *Complex Litigation* § 30.41 (2nd ed. 1985)). Here, Class Counsel have considerable experience in

6 | litigating antitrust matters, class actions, and other complex litigation. Class Counsel concluded that

7 | the Settlement terms are fair, adequate, and reasonable and in the best interests of the Class as a whole,

8 | and recommended that it be granted final approval. This factor weighs in favor of approving the

9 | Settlement.

10 |                    **(8)    The Reaction of the Class Members to the Proposed Settlement**

11 |          Finally, the fact that the Settlement Agreement enjoys overwhelming support from the Class

12 | supports a finding that the Settlement Agreement is fair, adequate, and reasonable. *DIRECTV*, 221

13 | F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class

14 | action settlement raises a strong presumption that the terms of a proposed class settlement action are

15 | favorable to the class members."). The Notice was delivered by first class U.S. mail to approximately

16 | 376,000 Class Members. As of August 2007, more than 52,000 claims were filed. In contrast, only 54

17 | Class Members submitted Objections; less than a thousandth of a percent of the Class. The relatively

18 | low number of objectors supports a finding that the Settlement is adequate. *See, e.g., Boyd v. Cechtle*

19 | *Corp*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding that objections from only 16 percent of the

20 | class was persuasive that the settlement was adequate). Regardless, in any class action of significant

21 | size, the absence of any objections would be "extremely unusual." *See In re Anthracite Coal Antitrust*

22 | *Litig.*; 79 F.R.D. 707, 712-13 (M.D. Pa. 1978). Accordingly, this factor weighs in favor of approving

23 | the Settlement.

24 | **C.    Objections to the Settlement Agreement Are Overruled**

25 |               **(1)    The Adequacy of the Settlement Does Not Depend on the Individual Desires**

26 |                          **of the Objecting Plaintiffs**

27 |          The Court rejects the arguments by four Objectors or groups of Objectors that the Settlement

28 | should not be approved because the Objecting Plaintiffs object to the terms of the Settlement. To the

1  contrary, "agreement of the named plaintiffs is not essential to approval of a settlement which the trial

2  court finds to be fair and reasonable." *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982); *see*

3  *also Lazy Oil Co. v. Witco Co.*, 95 F. Supp. 2d 290, 333-34 (W.D. Pa. 1997) (approving a settlement

4  and noting same). Multiple courts have approved class action settlements notwithstanding the

5  objections of the class representatives *See, e.g., Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615,

6  631 (9th Cir. 1982); *Parker,* 667 F.2d at 1204 (affirming the approval of a settlement of an

7  employment discrimination class action over the objections of 10 of the 11 named plaintiffs); *Maywalt*

8  *v. Parker & Parsley Petroleum*, 864 F  Supp. 1422 (S.D.N.Y. 1994), *aff'd* 67 F.3d 1072 (2d. Cir. 1995)

9  (granting final approval of a securities fraud class action over some 2,700 objections, including certain

10  of the class representatives); *Boyd,* 485 F. Supp. at 624 (approving a consent decree in an employment

11  discrimination class action despite the fact that "[a]pproximately sixteen percent of the class, including

12  three of the four named plaintiffs, have filed some opposition to the settlement"), *Olden v. LaFarge*

13  *Corp.*, 2007 U.S. Dist. LEXIS 5954, at *40-41 (E.D. Mich. Jan. 29, 2007) (approving settlement

14  without the support of any of the class representatives)  Plainly, "[t]o empower the Class

15  Representatives with what would amount to an automatic veto over the Proposed Settlement does not

16  appear to serve the best interests of Rule 23 and would merely encourage strategic behavior 'designed

17  to maximize the value of the veto rather than the settlement value of the claims.'" *Maywalt,* 864 F.

18  Supp. at 1430, quoting *In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1366 (2d Cir. 1991).

19            **(2)   The Bifurcation Motion Is Improper, Lacks Merit and Is Denied**

20        Bifurcating the Section 7 claim from the Sherman Act claims, as requested by the Objecting

21  Plaintiffs, would create further obstacles and be a waste of time and resources. The moving party has

22  the "burden of proving that the bifurcation will promote judicial economy and avoid inconvenience or

23  prejudice to the parties." *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D.

24  Cal. 1992); *see also Ebay, Inc. v  Bidder's Edge, Inc*, 2000-2 Trade Cases P 73,039, 56 U S.P.Q.2d

25  1856, at *4 (C.D. Cal. July 25, 2000); *Burton v. Mountain W  Farm Bureau Mut. Ins. Co.*, 214 F.R.D.

26  598 (D. Mont. 2003). That burden cannot be met, as bifurcation belies judicial economy here. The only

27  difference between the Section 7 and Sherman Act claims is the damages. Bifurcation would result in a

28  duplication of time and effort that squanders judicial resources determining unimportant differences.

**(3)    Courts Do Not Evaluate Settlements in Light of the Treble Damages that Might Be Available After a Successful Trial**

The Court rejects the Objecting Plaintiffs' argument that the monetary portion of the Settlement is inadequate because the Section 7 claim is worth $360 million. Objecting Plaintiffs arrive at this figure by trebling Plaintiffs' expert's estimated damages of $146 million since 2001 and then multiplying that figure by their estimated chances of winning at trial. This analysis is flawed because it presupposes that Plaintiffs will succeed at trial. Evaluating the Settlement in light of the treble damages available at the end of a successful trial is purely speculative. Courts do not consider such damages when calculating a reasonable range of recovery. *See, e.g., Detroit v. Grinnel Corp.*, 495 F.2d 448, 458 (2d Cir. 1974) ("[T]he vast majority of courts which have approved settlements in this type of case . . . have given their approval to settlements which are traditionally based on an estimate of single damages only."); *In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, at *24; 2005 U.S. Dist. LEXIS 27011, at *69-70 (D.N.J. Sept. 13, 2005) ("In order to evaluate the propriety of an antitrust class action settlement's monetary component, a court should compare the settlement to the estimated single damages."); *In re Warfarin*, 212 F.R.D. 231, 257 (D. Del. 2002) (citing *In re Lorazaepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 376 (D.D.C. 2002)).

**(4)    The Lack of Provisions Prohibiting Future Misconduct or Dissolution Do Not Render the Settlement Inadequate**

The Court rejects the argument by certain Objectors that the non-monetary relief is either illusory or insufficient because it does not prohibit Defendants from engaging in anticompetitive or unlawful conduct in the future. Courts are reluctant to sustain such objections, finding that the "best assurance against future antitrust violations by defendants is the persistent threat of litigation by any class member." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 337 (N.D. Ga. 1993) (approving a settlement as fair, reasonable, and adequate despite the absence of injunctive relief prohibiting the defendant from engaging in future misconduct). Furthermore, this objection was promoted by a competitor in one of Defendant West's operating areas.

16

1       The Settlement requires Defendants to terminate the agreement Plaintiffs allege is unlawful.

2 BAR/BRI is also required to provide a clear statement to initial enrollees that they are not contractually

3 obligated to pay the full amount for a BAR/BRI course should they choose not to take such a course

4 upon graduation from law school. Since many law students enter into a contract with BAR/BRI in their

5 first year of law school, Plaintiffs have argued that the obligation to pay the full amount for the course

6 serves as a powerful hold on these students, thereby locking-up a substantial portion of the market for a

7 three-year period. Thus, this provision removes a significant barrier to entry into the market by

8 competitors, who would otherwise face the potentially overwhelming obstacle of trying to compete in a

9 market with few available customers for several years after entry. Furthermore, BAR/BRI has stated

10 that it is committed to accurate advertising as required by the Lanham Act, the Federal Trade

11 Commission Act, and similar laws.

12

13       Other Objectors criticize the Settlement because it does not provide for the break-up of

14 BAR/BRI. According to the Objecting Plaintiffs, "a significant number of class members are directly

15 interested in the future" of the bar review industry and believe that BAR/BRI would be broken up if

16 Plaintiffs instead went to trial and prevailed on the Section 7 claim. First, the overwhelming majority

17 of Class Members are in favor of the Settlement and have not filed any objection arguing that the

18 Settlement should be rejected because there are no provisions for dissolution. Second, there is no

19 guarantee that Plaintiffs would prevail at trial and obtain an order breaking-up BAR/BRI. Even if

20 Plaintiffs did prevail at trial, any verdict in their favor, including divestiture, would be subject to

21 appeal, thereby delaying any recovery to the Class. Regardless, neither Class Counsel nor the Court can

22 force competitors to enter the market.

23       **(5)**      **The Possibility of a Cap and a *Cy Pres* Award Are Proper**

24

25       The Court rejects the argument of certain Objectors that the possibility of a cap on individual

26 recovery resulting in a *cy pres* award should defeat approval of the Settlement. Those provisions do not

27 render the Settlement inadequate. The Maximum Payment was a heavily negotiated term of the

28 Settlement. Because the Net Settlement Fund is to be distributed *pro rata* among the Class Members

1    who make a valid claim, the Maximum Payment prevents a small group from receiving a multi-million

2    dollar windfall. This 30% Maximum Payment coincides with Plaintiffs' expert's estimate that the

3    average overcharge resulting from Defendants' alleged conduct was approximately 30% nationwide.

4    The Maximum Payment does not create any benefit for Defendants, as they will not receive any money

5    back if the Maximum Payment and *cy pres* award are implicated. In that event, this Court will

6    determine the recipient of any *cy pres* award of the undistributed funds.

7
       (6)    **The Sealed Record Does Not Impact Approval of the Settlement**
8

9         The Court rejects the argument by certain Objectors that final approval of the Settlement should

10    be delayed and/or denied on the ground that the Class was purportedly denied access to the pleadings

11    filed under seal pursuant to a protective order entered by the Court on January 13, 2006 ("Protective

12    Order"). These Objections are moot, untimely, and more importantly, ignore the crucial role served by

13    the Court in the class action settlement approval process. These Objections disregard the fact that, in its

14    role as guardian for the Class, this Court has had access to all of the pleadings filed by the parties,

15    including those under seal pursuant to the Protective Order. The Court's access to and review of these

16    documents throughout the pendency of this Action precludes any contention that this Court is

17    incapable of assessing the fairness, adequacy, and reasonableness of the Settlement. To the contrary,

18    this Court is intimately familiar with facts and legal theories in this matter. *See Newberg* at § 11.25,

19    quoting *Manual for Complex Litigation* (Third) § 30.41 (1995).

20         The Objections based upon the inaccessibility of documents are untimely. Class Members

21    received notice of the Settlement in early April 2007, and could have acted earlier to obtain access to

22    the materials. Instead, they waited five weeks, until the Objections were due, to request a continuance

23    of the Final Approval Hearing to permit a review the sealed documents, or in the alternative, a rejection

24    of the Settlement.

25

26    (7)    **Class Counsel Has Fulfilled Its Fiduciary Obligation to the Class as a**

27           **Whole and Is Adequate Under Fed. R. Civ. P. 23**

28         The Court rejects the argument by one Objector that Class Counsel are inadequate due to a

18

"rift" within McGuireWoods (one of three Class Counsel), allegedly because "one of the partners, Eliot Disner, has filed a brief objecting to the proposed settlement...." This is inaccurate. The brief in question, although apparently drafted by Disner or at his direction, was filed by the Objecting Plaintiffs without the authorization of Class Counsel. Moreover, Disner initially agreed to the Settlement and supported it at the Preliminary Approval Hearing on March 19, 2007. Class Counsel maintains that the viability of the theories espoused in the unauthorized filing by the Objecting Plaintiffs were thoroughly considered by Class Counsel prior to entering the Settlement, with the ultimate decision by Class Counsel as a whole (including Disner) that the Settlement was fair, adequate, and reasonable.

Between the Preliminary Approval Hearing and the Final Approval Hearing, Disner left McGuireWoods on May 22, 2007. Then, prior to the Final Approval Hearing, Disner filed an Ex Parte Application to Permit Lead Counsel to Speak Freely and, later, an Objection to the Settlement Agreement with the Court. The Court denied the Application and overruled the Objection because Disner was never appointed Class Counsel; McGuireWoods was appointed Class Counsel. Disner was not in a position to object to the Settlement Agreement, as he was only one of at least half a dozen McGuireWoods attorneys who helped negotiate the Settlement Agreement and only one of hundreds of McGuireWoods partners firm-wide. There is no compelling reason for the Court to grant Disner a Settlement Agreement veto. Therefore, the Court finds that Disner's subsequent reversal of position and departure from McGuireWoods is immaterial to the Court's consideration of the fairness, reasonability, and adequacy of the Settlement.

Class Counsel has fulfilled its fiduciary duty to the Class as a whole. The primary responsibility of class counsel is to represent the entire class as it believes appropriate. *See* Advisory Committee Note, Fed. R. Civ. P. 23(g) ("Paragraph (1) . . . articulates the obligation of class counsel to represent the interests of the class, as opposed to the potentially conflicting interests of individual class members."); *see also Newberg* at § 11.65 ("The general rule is that the named plaintiff and counsel bringing the action stand as fiduciaries for the entire class, commencing with the filing of a class complaint."); *Greenfield v Villager Indus., Inc.*, 483 F.2d 824, 832 (3d Cir. 1973) ("[C]lass action counsel possess, in a very real sense, fiduciary obligations to those not before the court."). Class

1  counsel must make their own determinations about the appropriate course of action, taking full account

2  of their fiduciary obligation to the class as a whole. *See Olden*, 472 F. Supp. 2d at 939; *In re "Agent*

3  *Orange" Prod. Liab. Litig.*, 800 F.2d 14, 18-19 (2d Cir. 1986); *Lazy Oil Co* , 166 F.3d at 590. The

4  Court finds that Class Counsel fulfilled its fiduciary obligation to the Class as a whole and is adequate

5  under Rule 23.

6      All other objections are overruled on relevance and other grounds.

7

8  **VIII.  The Court, in Its Discretion, Declines To Award Incentive Payments to the Class**

9          **Representatives**

10         **A.     The Factors Courts Consider in Deciding Whether to Award an Incentive Payment**

11                 **and the Purposes for Which Courts Award Incentive Payments**

12

13         The decision whether to award an incentive payment to a class representative, and the size of

14  that award, is entirely within the trial court's discretion *See, e g , In re Mego Fin. Corp. Sec Litig* ,

15  213 F.3d 454, 458, 462 (9th Cir. 2000). "The criteria courts may consider in determining whether to

16  make an incentive award include: (1) the risk to the class representative in commencing suit, both

17  financial and otherwise; (2) the notoriety and personal difficulties encountered by the class

18  representative; (3) the amount of time and effort spent by the class representative; (4) the duration of

19  the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a

20  result of the litigation." *Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299-300 (S.D. Cal. 1995)

21  (approving an award of $50,000 (half of the amount requested) to a named plaintiff who actively

22  participated in a litigation that lasted many years, provided "key testimony" at trial, and did not receive

23  great personal benefit from the common fund). Case law from other circuits is in accord. *See, e.g.,*

24  *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991)

25  ("Courts in [the Sixth Circuit] review the following factors when considering a request for class

26  representative incentive awards: (1) the action taken by the Class Representatives to protect the

27  interests of Class Members and others and whether these actions resulted in a substantial benefit to

28  Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial

20

1    risk; and (3) the amount of time and effort spent by the Class Representatives in pursuing the

2    litigation."); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("In deciding whether such an

3    award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of

4    the class, the degree to which the class has benefitted from those actions, and the amount of time and

5    effort the plaintiff expended in pursuing the litigation."). Courts generally evaluate class representative

6    incentive awards individually. *See, e.g., Allapattah Servs., Inc. v Exxon Corp.*, 454 F. Supp. 2d 1185,

7    1220-22, 1234-38 (S.D. Fla. 2006) (granting a reduced incentive award to a named plaintiff who

8    entered into an improper fee sharing agreement with his attorney after finding that the conflict of

9    interest created by it warranted partial forfeiture of the otherwise warranted award); *In re Heritage*

10   *Bond Litig.*, 2005 WL 1594403, at *18, 2005 U.S. Dist. LEXIS 13555, at *57 (C.D. Cal. 2005)

11   (awarding different amounts to different named plaintiffs).

12        The purposes for which courts award incentive payments are threefold. First, incentive awards

13   compensate class representatives for work done by them on behalf of the class under a quantum meruit

14   theory. *See Enter. Energy Corp.*, 137 F.R.D. at 251; *see also, Financial Arrangements in Class Actions*

15   *and the Code of Professional Responsibility*, 20 FORDHAM URB. L.J. 831, 834-835 (1993) ("*Financial*

16   *Arrangements in Class Actions*"). This is the same reason attorneys' fees, expert fees, and other costs

17   of litigation are generally deducted from the common fund - to prevent a windfall to the class. Second,

18   incentive awards are used to compensate class representatives for risks undertaken by them in bringing

19   the class action. *See, e.g., In re Continental Ill. Sec Litig.*, 962 F.2d 566, 571 (7th Cir. 1992). These

20   risks include retaliation resulting in personal or financial harm, discrimination, trouble finding

21   employment, and significant financial risk. *See, e.g., Cook*, 142 F.3d at 1016 (workplace retaliation);

22   *Allapattah Servs.*, 454 F. Supp. 2d at 1220-21 (financial retaliation); *Women's Comm for Equal*

23   *Employment Opportunity v. Nat'l Broad. Co*, 76 F.R.D. 173, 181 (S.D.N.Y. 1977) (discrimination);

24   *Glass v UBS Fin. Servs., Inc.*, Slip Copy, 2007 WL 221862, at *16, 2007 U.S. Dist. LEXIS 8476, at

25   *52 (N.D. Cal. Jan. 26, 2007) (trouble finding employment); *Enter Energy Corp.*, 137 F.R.D. at 251

26   (significant financial risk). Third, some courts award incentive awards to class representatives in

27   recognition of their willingness to act as a private attorney general. *See, e.g., In re*

28   *Continental/Midlantic S'holders Litig.*, 1987 WL 16678, at *7, 1987 U.S. Dist. LEXIS 8070, at *12-13

21

(E.D. Pa. Aug. 29, 1987).

**B.  The Court Considered the Relevant Factors and the Purposes for Which Courts Award Incentive Payments in Deciding Not to Award Incentive Payments**

**(1)  The Risk to the Class Representative in Commencing Suit**

None of the Class Representatives faced substantial risks in bringing this suit. All seven of their retainer agreements provided that Class Counsel would front all fees and costs in bringing the litigation, and seek reimbursement for those fees and costs as part of any settlement or judgment. *Cf. Enter. Energy Corp*, 137 F.R.D. at 251 (finding there was a significant financial risk where class members were contractually obligated to pay all expenses incurred in the pursuit of the litigation if they were not otherwise paid, amounting to hundreds of thousands of dollars). There is no indication the Class Representatives were threatened with financial or personal harm in retaliation for their having brought this suit, and there was no risk of being discriminated against. Plaintiffs' argument that the Class Representatives here faced some risk to their careers, citing *Glass v. UBS Financial Services, Inc.,* is unavailing. 2007 WL 221862, at *16. In *Glass*, the class representatives were securities brokers still currently employed in the securities industry and had "placed something at risk by putting their names on a complaint against one of the largest brokerage houses in America." *Id.* at *16. There is no indication that Class Representatives face inordinate or significant risks to their professional reputations as lawyers as a result of suing a publishing company and test provider for whom they have never worked and for whom it is not likely that they would consider working. Furthermore, this Court finds it hard to believe that any potential legal employer would consider it a negative for an attorney to be litigious. Thus, this factor weighs against awarding incentive payments

**(2)  The Notoriety and Personal Difficulties Encountered by the Class Representatives**

Although the Class Representatives likely received some notoriety in bringing this lawsuit, they received a significant amount of positive press also. This Court is aware of no personal difficulties of consequence encountered by the Class Representatives. Accordingly, this factor weighs against

22

awarding incentive payments.

### (3)  The Amount of Time and Effort Spent by the Class Representatives

The incentive award amounts requested by Plaintiffs are unreasonable: (1) in light of the time and effort spent by the Class Representatives in furtherance of this litigation; (2) after analyzing the value of the work done; and (3) when compared to the recovery of the unnamed Class members pursuant to the Settlement Agreement. In their Motion for Incentive Awards to Class Plaintiffs, the three Objecting Plaintiffs requested $75,000 each; the four Settling Plaintiffs requested $25,000 each. At the first Final Approval Hearing on June 18, 2007, the Court ordered Class Counsel to provide documentation for each of the Class Representatives indicating his/her time spent working on the litigation, and the value of such time, using a lodestar-type calculation. In response, each of the Class Representatives filed declarations with the Court and Class Counsel filed briefs arguing in support of the requested amounts. As part of the Settlement Agreement, Defendants agreed not to oppose the Class Representatives incentive award requests up to $25,000 and, thus, filed nothing in response to Plaintiffs' papers.

The time and effort spent by the Class Representatives does not justify the huge incentive awards requested. The Class Representatives' declarations contain extensive entries for interpersonal communications, including emails and telephone calls, meetings with reporters and photographers, and several hours spent reviewing news articles about the case. Three of the Class Representatives "billed" their time in .10 hour increments. A substantial portion of these billings were amassed between January 1, 2007 and June 23, 2007. Even assuming all of the hours claimed are justified, the amount of time and effort spent by the Class Representatives does not justify an incentive award in the tens of thousands of dollars. Just because the Class Representatives in this case happen to be attorneys does not mean that the time they spent working as Class Representatives in furtherance of this litigation should be charged to the rest of the Class at $250 an hour. *See Newberg* at §.15.22 (4th ed. 2002) (collecting case law indicating that attorneys who wish to represent the class in a class action should not also act or be paid as class counsel); *Gilbert v. Master Washer & Stamping Co.*, 87 Cal. App. 4th 212, 221 (2001); *Bruno v Bell*, 91 Cal. App. 3d 776, 788 (1979).

1    Class Counsel cites *Glass, Bradburn, and In re Insurance Brokerage Antitrust Litigation* as

2   recent opinions that support the amounts requested here. In fact, these cases are easily distinguishable

3   and reveal just how unreasonable the amounts requested in this case really are. *Glass*, 2007 WL

4   221862, at *17; *Bradburn Parent Teacher Store, Inc. v. 3M (Minn Mining and Mfg. Co.)*, Slip Copy,

5   2007 WL 1468847, at *19, 2007 U.S. Dist. LEXIS 35899, at *57-58 (E.D. Pa. May 14, 2007); *In re*

6   *Ins. Brokerage Antitrust Litig.*, Slip Copy, 2007 WL 1652303, at *10-11, 2007 U.S. Dist. LEXIS

7   40729, at *68-69 (D.N.J. June 5, 2007). In *Bradburn*, the court approved a $75,000 award to a small

8   business that served as a named class representative from a total settlement of $39,750,000. The

9   *Bradburn* representatives worked closely with their class counsel for over four years, undergoing nine

10  depositions and providing testimony at the class certification hearing while preparing to attend and give

11  testimony at the trial. 2007 WL 1468847, at *17-19. Significantly, there were no objections to the

12  award. *Id.* at *19. In the instant matter, three of the Class representatives are requesting individual

13  awards of $75,000 – an amount that was awarded based on the collective efforts of several

14  representatives of a small business in *Bradburn*. *Id.* Further, the representatives in *Bradburn* were

15  involved in litigation spanning four years, more than double the time involved in this case. *Id.* Finally,

16  while there were no objections to the award requested by the class representative in *Bradburn*, the

17  Court has received several objections by Class Members to the amounts requested by the Class

18  Representatives in this matter. *Id.*

19      *Glass* is likewise distinguishable. 2007 WL 221862, at *16-17. In that case, the court approved

20  $25,000 from a settlement of $45 million to each of the four named plaintiffs out of a class of 13,000

21  members. *Id.* In approving the awards, the court relied on the class counsel's declaration that the

22  named plaintiffs provided a great deal of informal discovery and insight into the policies and practices

23  of the defendant, and took into account the risk they faced suing a major employer in their industry. *Id.*

24  at 16-17. Here, the Class Representatives provided no such insights and faced no such risk, yet three of

25  them seek three times the amount requested by the class representatives in *Glass*. While in *Glass* there

26  was only one objection to the incentive awards amounts requested, here, a number of Objectors

27  vehemently oppose the incentive award payments, some even filing briefs addressing the issue. *Id.*

28  Finally, in *Glass*, the court noted that the settlement provided for a maximum of $100,000 in incentive

24

awards, subject to court approval. *Id.* at 16. Here, Defendants agreed only not to oppose incentive award requests for $25,000 for each of the Class Representatives

In *In re Insurance Brokerage Antitrust Litigation*, the court awarded an incentive payment of only $10,000 to each of fifteen named plaintiffs in an antitrust class action that resulted in a $121 million settlement fund. Slip Copy, 2007 WL 1652303, at *1, 10-11. The duration of the litigation in that case was approximately the same as in this case, just under two years. *Id.* at *1. Also, the court noted that there was only one objection to the amount requested and that the objection "lacked any supporting case law or a thorough explanation as to why [the amount requested] should be considered excessive." *Id.* at *11. Here, the Class Representatives seek bigger awards for the same type of litigation, lasting about the same amount of time, that resulted in a smaller settlement fund. Also, in this case, there are a number of outspoken Objectors who make valid and well-reasoned arguments regarding the value of the work done by the Class Representatives and the impropriety of the Incentive Agreement which five of them signed.

Most problematic, however, is the value to the litigation of the time and effort spent by the Class Representatives. Although they are all attorneys, the Class Representatives were not Class Counsel and it was unnecessary for them to have done work duplicative of that of the attorneys representing the Class. The Class Representatives' declarations reflect that they spent much of their time on this case researching case law and extensively reviewing documents produced in discovery, pleadings, and deposition transcripts. The Class is already paying for those services, and Class Counsel is being compensated for those services, through the Court's grant of Class Counsel's Motion for Attorneys' Fees and Reimbursement of Costs. Again, none of the Class Representatives are current or former employees of any of the Defendants in this case, so they could not provide extensive "informal discovery" or "insight" into the practices of Defendants, as did the class representatives in *Glass.* 2007 WL 221862, at *17. Indeed, the fact that most of the Class Representatives contracted in advance the amount of the incentive award that Class Counsel would request on their behalf, based solely on the amount of recovery, leads the Court to believe that there is no correlation whatsoever between the amount of work done, or the value of the work done, and the amount requested.

25

Finally, it is estimated that each Class Member who files an appropriate claim against the Settlement Fund will receive about $125. The Settling Plaintiffs are requesting an amount approximately 200 times that amount; the amount the Objecting Plaintiffs seek is approximately 600 times the amount each Class Member is expected to receive. Such a large discrepancy is inherently suspicious and weighs against a finding that incentive awards are warranted. *See Staton v Boeing Co*, 327 F.3d 938, 975 (9th Cir. 2003) (finding a "serious concern[] as to fairness, adequacy and reasonableness" that the named plaintiffs would receive, on average, sixteen times greater damages than each of the unnamed class members). Therefore, this factor weighs against awarding incentive payments.

### (4)    The Duration of the Litigation

Fourth, the duration of this litigation was relatively quick, given that antitrust litigation often spans many years, the Complaint in this case was filed only two years before the Settlement Agreement was reached, and the Class Representatives were not actively involved in trial preparations *See Bradburn*, Slip Copy, 2007 WL 1468847, at *57-58 (awarding a $75,000 incentive payment to a small business that served as a class representative in class action antitrust lawsuit and worked closely with their class counsel for over four years, undergoing nine depositions and providing testimony at the class certification hearing while preparing to attend and give testimony at the trial). Thus, this factor weighs against awarding incentive payments.

### (5)    The Personal Benefit Enjoyed by the Class Representative

This factor weighs neither for or against an award of incentive payments.

After carefully considering the factors courts consider in deciding whether to award incentive payments, and the purposes for which courts award incentive payments, the Court declines to award any of the Class Representatives incentive payments in this case.

### B.    The Incentive Agreement is Inappropriate and Contrary to Public Policy

Additionally, the Court declines to award incentive payments to the five Class Representatives

26

1    who signed the Incentive Agreement[3] because that agreement is inappropriate and contrary to public

2    policy. This appears to be the first case in which a class representative entered into a contingency fee-

3    type contract with class counsel from the outset whereby class counsel agreed to request a particular

4    incentive award on behalf of the class representative based on the amount of the ultimate recovery.

5    However, some commentators have opined that such agreements might be acceptable. *See* Clinton A.

6    Krislov, *Scrutiny of the Bounty. Incentive Awards for Plaintiffs in Class Litigation*, 78 ILL. B.J. 286,

7    290 (1990). ("While the plaintiff's attorney cannot promise the plaintiff an award in advance, there

8    would seem to be no reason to question the attorney's commitment in the initial engagement agreement

9    to request an incentive award if the primary claim is successful."). The Court strongly disagrees. These

10   contracts: (1) lead to an improper request of the court; (2) create the appearance of impropriety; (3) fail

11   to correlate the amount requested to any reasonable forecast of costs or risk incurred; (4) run afoul of

12   the California Rules of Professional Conduct; and (5) encourage "figurehead" lawsuits or "bounty

13   hunting" by potential class action plaintiffs.

14
              (1)      **The Incentive Agreement Leads to an Improper Request of the Court**
15

16         The Incentive Agreement leads to an improper request of the Court, as it completely ignores the

17   factors courts should (and do) take into account when deciding whether to award incentive payments.

18   *See, e.g., Van Vraken*, 901 F. Supp. at 299-300. Under Federal Rule of Civil Procedure 11, claims,

19   defenses, and other legal conclusions presented to the court must be warranted by existing law or by a

20   nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment

21   of new law. Fed. R. Civ. P. 11. It is disingenuous, improper, and a violation of the Federal Rules, for

22   class counsel to request and argue for an arbitrary, contractually-obligated incentive award that is not

23   reflective of the factors courts consider in granting such requests.

24

25

26         [3] The Court recognizes that, of the five Class Representatives who signed the Incentive

27   Agreements, only the three Objecting Plaintiffs are requesting the $75,000 award pursuant to the terms
     of the Incentive Agreement. The two Settling Plaintiffs who signed the Incentive Agreements, Plaintiffs

28   Frailich and Brazeal seek $25,000, the same amount as the other two Settling Plaintiffs and the amount
     that Defendants agreed not to oppose in the Settlement Agreement.

### (2)    The Incentive Agreement Creates the Appearance of Impropriety

The Incentive Agreement itself creates at least the appearance of impropriety and can cloud the proceedings. Under the terms of the agreement, Class Counsel will request an incentive award on behalf of the Class Representatives based on the amount ultimately recovered, not on the amount of work to be done, the amount of time spent, the value of work done, or the risks undertaken in bringing the lawsuit. The contract essentially aligns the financial interests of the Class Representatives and Class Counsel in seeking the highest amount of monetary recovery possible in the shortest amount of time or for the least amount of work. Such an agreement runs afoul of the rule forbidding class counsel and class representatives from being the same person or otherwise having identical interests. *See, e.g., In re Cal. Micro Devices Sec Litig.*, 168 F.R.D. 257, 260 (N D. Cal. 1996) ("[A]n attorney may not serve as both class representative and class counsel."); *Turoff v. May Co*, 531 F.2d 1357, 1360 (6th Cir. 1976) ("[T]he roles of class representative and of class attorney cannot be played by the same person."); *Susman v Lincoln Am. Corp*, 561 F.2d 86, 90-92 (7th Cir. 1977) ("Courts have also expressed fear as to the danger of champerty because of the close relationship between the putative class representative and counsel.").

Contracts such as these act to undermine class action settlement agreements. Even if it is not actually the case, courts (the ones charged with the responsibility of determining fairness, adequacy and reasonableness under Federal Rule 23) "fear that a class representative who is closely associated with the class attorney would allow settlement on terms less favorable to the interests of absent class members." *Susman*, 561 F.2d at 91. Likewise, class members, who are generally not involved in settlement negotiations, justifiably fear collusion, especially when other remedies, such as injunctive relief, are minimal or nonexistent. Although the Court finds there was no collusion in this case, many of the Objectors understandably expressed these concerns in briefs and at the Final Approval Hearings. Further, when the defense counsel agrees not to oppose incentive award requests in line with the terms of the contract between the class counsel and the class representatives, it appears as if the class representatives were "bought off" by defense counsel. This is especially true where, as here, defense counsel uncovered the terms of the Incentive Agreement through discovery before settlement

28

negotiations even began. In this case, at least five different groups of Objectors argued that the $75,000 award requests for the Objecting Plaintiffs represent an attempt to "buy them off."

(3)    **The Incentive Agreement Fails to Correlate the Amount Requested to a Reasonable Forecast of Costs or Risk Incurred**

The Incentive Agreement is also improper because it fails to correlate the amount requested to a reasonable forecast of costs or risk incurred. This invalidates the contract for the same reasons the common law and state statutes disapprove of liquidated damages provisions that are not a reasonable forecast of damages in the event of a breach - it undermines the purpose of allowing the clauses and the policy against penalties. Liquidated damages provisions that are not a reasonable forecast of damages in the event of breach of contract at the time the contract was made or, in some circumstances, not reasonable in light of actual damages, are generally invalid. *See, e.g.,* Cal. Civ. Code § 1671 (2007) (anticipated); Cal. Com. Code § 2718 (2007) (anticipated or actual).

Here, the Incentive Agreement was negotiated before this case was even filed. The contract requires the Class Representatives to "cooperate fully in the investigation and pursuit of the matter" and perform the other duties of a class representative before Class Counsel would seek any incentive payment. However, if the Class Representatives did so, the sliding scale obligates Class Counsel to make a greater incentive payment request for a greater monetary recovery, not for doing more work or facing heightened risk. Indeed, had the case settled for more than $10 million dollars only a month after it had been filed, before discovery had even commenced, Class Counsel would still have been contractually obligated to seek an incentive payment of $75,000 per Class Representative. Thus, the incentive award agreement provisions were never a reasonable forecast of costs or risks the Class Representatives would incur. For the reasons discussed above, nor are they reasonable in light of the actual costs incurred.

(4)    **The Incentive Agreement Runs Afoul of the California Rules of Professional Conduct**

Incentive award agreements such as the one at issue here are also inappropriate because they

29

1   violate the California Rule of Professional Conduct prohibiting fee-sharing with clients and fee-

2   splitting among lawyers.[4] Cal. R. Prof Conduct 2-200 (Financial Arrangements Among Lawyers);[5]

3   Cal. R. Prof. Conduct 1-320 (Financial Arrangements with Non-Lawyers).[6]

4           The Incentive Agreement violates the ethics rule against fee-sharing with non-lawyers because

5   it, in essence, promises the client a fee (over which the attorney has some control) for having brought

6   the case. *See Financial Arrangements in Class Actions,* 20 FORDHAM URB. L.J. at 839 (noting that

7   solicitation of clients using the promise of an incentive award to encourage plaintiffs to bring a lawsuit

8   would violate professional disciplinary rules regarding solicitation and fee-splitting). The Incentive

9   Agreement noted that the award was contingent on the approval of the Court. However, the

10  contingency fee-like arrangement demonstrates that the Class Representatives believed they would be

11  compensated for serving as named representatives and that Class Counsel had some control over the

12  amount they would receive. Otherwise, they would not have contractually obligated Class Counsel to

13  request a specific amount on their behalf. Class Counsel, for their part, agreed to seek the fee,

14  regardless of whether or not it was actually warranted, to ensure they would be selected by Plaintiffs to

15  bring the case. Furthermore, the plain language of the contract indicates that it was the parties'

16  understanding that the incentive award request would be "rubberstamped" by the Court. The relevant

17

18  [4] "[T]he Central District of California has adopted the 'State Bar Act, the Rules of Professional Conduct
    of the State Bar of California, and the decisions of any court applicable thereto' as the standard of

19  professional conduct in the district. Local Rule Ch. VI., R. 1.2." *San Gabriel Basin Water v. Aerojet-
    General Corp.,* 105 F. Supp. 2d 1095, 1101 (C.D. Cal. 2000).

20
    [5] "(A) Neither a member nor a law firm shall directly or indirectly share legal fees with a person who is
21  not a lawyer...." Cal. R. Prof. Conduct 1-320.

22  [6] "(A) A member shall not divide a fee for legal services with a lawyer who is not a partner of, associate
    of, or shareholder with the member unless: (1) The client has consented in writing thereto after a full

23  disclosure has been made in writing that a division of fees will be made and the terms of such division;
    and (2) The total fee charged by all lawyers is not increased solely by reason of the provision for division

24  of fees and is not unconscionable as that term is defined in rule 4-200; (B) Except as permitted in
    paragraph (A) of this rule or rule 2-300, a member shall not compensate, give, or promise anything of

25  value to any lawyer for the purpose of recommending or securing employment of the member or the
    member's law firm by a client, or as a reward for having made a recommendation resulting in

26  employment of the member or the member's law firm by a client  A member's offering of or giving a
    gift or gratuity to any lawyer who has made a recommendation resulting in the employment of the

27  member or the member's law firm shall not of itself violate this rule, provided the gift or gratuity
    was not offered in consideration of any promise, agreement, or understanding that such a gift or gratuity

28  would be forthcoming or that referrals would be made or encouraged in the future." Cal. R. Prof.
    Conduct 2-200.

1   section of the contract is titled "Incentive/Compensation to Clients" and repeatedly states that a certain

2   amount "will be paid" depending on the amount of the recovery.[7]

3       Even though the fee is not paid directly by the lawyer, because both the attorneys fees and the

4   incentive payments are deducted from the Settlement Fund and Class Counsel requests the incentive

5   payment on the Class Representatives' behalf, this is indirect fee sharing. *See, e.g., In re Gould Secs.*

6   *Litig.*, 727 F. Supp. 1201, 1209 (N.D. Ill. 1989) (refusing to grant an incentive award request that was

7   not made pursuant to a contractual agreement because it "borders on permitting a lay plaintiff to share

8   in the attorneys' fees."). Pursuant to the California Rules of Professional Conduct 1-320, attorneys are

9   not permitted to pay incentive awards to class representatives out of the attorneys' fees award. *See*

10  *Campbell v. Fireside Thrift Co.*, 2004 Cal. App. Unpub. LEXIS 216, at *36-38 ("Thus, when a class

11  representative receives an incentive award as part of a settlement, it may either be paid from a common

12  fund, if the settlement creates one, or directly by the defendant, as an addition to the other amounts to

13  be under the settlement.") (citations omitted). Likewise, the Incentive Agreement is an attempt at

14  improper fee sharing between an attorney and a client. To find otherwise would allow attorneys to skirt

15  the ethics rule governing client solicitation. Cal. R. Prof. Conduct 1-400.

16

17      Furthermore, as Class Counsel and the Class Representatives in this case are all attorneys, the

18  Incentive Agreement also violates the ethics rule prohibiting fee-splitting among lawyers. Cal. R. Prof.

19  Conduct 2-200 ("[A] member shall not compensate, give, or promise anything of value to any lawyer

20  for the purpose of recommending or securing employment of the member or the member's law firm by

21  a client, or as a reward for having made a recommendation resulting in employment of the member or

22  the member's law firm by a client."). Here, Class Counsel promised it would seek an incentive

23  payment for the Class Representatives from the Court. This promise certainly has some value because

24  it is the first step in getting the request granted. Also, the Class Representatives admittedly researched

25  the claims they would bring against Defendants themselves prior to agreeing to serve as named

26

---

27  [7] Indeed, the promise of an incentive award undermines the purpose for which attorneys inform clients
    and prospective clients of the possibility of the court granting an incentive award request - to encourage

28  the class representative's participation throughout the litigation. *See In re W. Union Money Transfer
    Litig.*, 2004 U.S. Dist. LEXIS 29377, at *53 (E.D.N.Y. Oct. 19, 2004).

plaintiffs in this class action. Surely they believed the case was worth a lot of money and wanted to share in the ultimate recovery, even though they did not have the experience handling class actions and complex litigation or knowledge of the applicable law to bring the case themselves. Fed. R. Civ. P. 23(g)(1). This is why they made the Incentive Agreement prior to agreeing to serve as a named plaintiff. Thus, the Incentive Agreement is also an attempt at improper fee-splitting among lawyers.

> **(5)    Incentive Agreements Such as This One Encourage Figurehead Cases and Bounty Payments**

Incentive award agreements such as the one in this case are contrary to public policy because they encourage figurehead cases and bounty payments by potential class counsel. Courts routinely disapprove of figurehead lawsuits brought by plaintiffs too closely associated with the attorneys bringing the lawsuit and anticipating large fee awards. *See, e.g., Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 95 (7th Cir. 1977) (finding that an attorney's brother could not serve as a class representative); *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1375 (11th Cir. 1984) (finding that a named plaintiff who was class counsel's employee could not represent the class); *Turoff v. May Co.*, 531 F.2d 1357, 1360 (6th Cir. 1976) (finding that the attorneys who were part of the firm appointed as class counsel (and their wives) were too closely associated with class counsel to represent the class). This is due to the risk that the class representative would be more interested in maximizing the attorneys fees award than in aggressively representing the class. *See, e.g., Susman*, 561 F.2d at 95; *Shroder*, 729 F.2d at 1375; *Turoff*, 531 F.2d at 1360. When allowed to proceed, figurehead lawsuits often unnecessarily encourage litigation, drive up attorneys fees awards, and give the proceedings the appearance of impropriety. *See, e.g., Turoff*, 531 F.2d at 1360 (explaining that, when the class representatives are too closely associated with class counsel it causes "manufactured litigation" and a "cloud" on the proceedings).

Much like the figurehead lawsuits discussed above, the Class Representatives here are too closely associated with Class Counsel. Because both the Incentive Agreement and the Retainer Agreement between Class Counsel and the Class Representative are contingency fee arrangements, their interests are aligned in obtaining the highest financial recovery possible. When the ultimate

amount of recovery determines both the attorneys' fees and the incentive awards, there is a real fear that the class representatives are more interested in working with the class counsel only to maximize that award, rather than in aggressively representing the class. As evidenced by the oral arguments and briefing of some of the Objectors, the Incentive Agreement did in fact give the proceedings the appearance of impropriety. Thus, this relationship is contrary to public policy.

Likewise, courts and legislatures often disapprove of arrangements in which a bounty is paid to a plaintiff by an attorney to encourage the plaintiff to bring suit. *See, e.g., In re Gould Secs. Litig.*, 727 F. Supp. 1201, 1209 (N.D. Ill. 1989) (relating incentive awards to bounty payments). The payment of bounties to named plaintiffs violates public policy because it unnecessarily encourages litigation and creates class actions in which the lead plaintiff is unlikely to undertake a meaningful counsel selection process, engage in effective bargaining over lead counsel's fee, or adequately monitor lead counsel's performance. *See, e.g., In re Cendant Corp. Litig.*, 264 F.3d 201, 255 (3rd Cir. 2001) (noting also that lead counsel often select lead plaintiff rather than vice versa). Such arrangements can also lead to "bounty hunting" whereby prospective plaintiffs incite a bidding war between prospective class counsel. *See Financial Arrangements in Class Actions*, 20 FORDHAM URB. L.J. at 839-40 (noting that an undesirable consequence of promising incentive awards is that it will lead to bidding wars to attract plaintiffs, prompting plaintiffs to sign up with those who promise the highest amount); *In re Gould Secs. Litig.*, 727 F. Supp. at 1209 ("The real danger [of incentive awards] is a potentially undesireable precedent where every named plaintiff would expect a 'fee' or 'bounty' for the use of his or her name to create a class action. It is not difficult to envision a scenario ... of prospective named plaintiffs becoming involved in a bidding war ... with prospective class counsel.").

The usual grant of an incentive award request is not considered a bounty payment by most courts. *See, e.g., Deloach v. Philip Morris Cos., Inc.*, 2005 WL 1528783, at *3, 2005 U.S. Dist. LEXIS 13032, at *11-12 (M.D.N.C. June 29, 2005) (citing a number of cases in which courts have awarded incentive payments to named plaintiffs or class representatives and rejecting the argument that payment of incentive awards in class action litigation constitutes a bounty payment). However, the Incentive Agreement makes the present case very different. Because the contract was negotiated in advance, with

the understanding that the class representatives "will be paid" a specified amount correlated to a specified settlement or litigated victory amount and not to the amount or value of the work to be done by the class representative, the agreement represents a bounty payment  Indeed, if these arrangements were permitted, a rational plaintiff seeking counsel would be financially motivated to select his or her counsel based on which agreed to seek the largest incentive payment on his or her behalf. Also, counsel competing for named plaintiffs would be encouraged to contract to seek bigger and bigger awards on the plaintiff's behalf. In fact, because three of the Class Representatives did not join the lawsuit until after the initial complaint was filed, it appears as if Plaintiffs Brazeal, Nesci, and Gintz were recruited into the lawsuit by Class Counsel with the promise of incentive awards. Thus, in this case, granting the incentive award request would violate the public policy against bounty payments.

C.    The Incentive Agreement Creates a Conflict of Interest Between the Contracting Class Representatives and the Unnamed Class Members

Most problematic, however, is the conflict of interest between the Class Representatives and the unnamed Class Members created by the Incentive Agreement. By entering into a contingency fee-type agreement with Class Counsel that correlated the incentive request solely to the settlement or litigated victory amount, the Class Representatives disaligned their interests with the interests of the Class. They no longer had the same interests as the Class in seeking injunctive relief or adequate compensation for alleged wrongs, or their continuing effects, for all Class Members. *See* Jerold S. Solovy et al., *The Head of the Class*, NAT'L LAW JOURNAL, Aug. 27, 1990, at 13 ("The primary difficulty with incentive awards is that they raise the specter that named plaintiffs may 'sell out' the interest of the class they purport to represent."). Worse, once a settlement offer of greater than $10 million was made, the Class Representatives had no financial incentive whatsoever in seeking injunctive relief or a larger settlement amount, as a settlement in that amount ensured a request for the contractually-capped incentive payment. *See Financial Arrangements in Class Actions*, 20 FORDHAM URB. L.J. at 840 (noting that "incentive awards could encourage collusion and 'suboptimal' class settlements, because plaintiffs with something extra to gain are not motivated to hold out for higher awards for the rest of the class."). Indeed, at the Final Approval Hearings, the Objecting Plaintiffs did

1  not argue that the lawsuit should not be settled or that it provided insufficient injunctive relief, but only

2  that Defendants should pay more.

3      Furthermore, once the threshold cash settlement amount was met, the Class Representatives had

4  no incentive to go to trial. In fact, it created a strong *disincentive* to proceed to trial, as it put the Class

5  Representatives in the position of risking $75,000 if they rejected any settlement amount over $10

6  million, for little potential return to themselves. A trial might return a much larger aggregate sum to the

7  class, but would increase individual returns, including those of the Class Representatives, only

8  marginally, if at all. A loss at trial would eliminate the incentive award, but a win would not increase it.

9  Thus, there was a disconnect between the interests of the Class Representatives and the unnamed Class

10  Members, and a consequent conflict of interests.

11

12      Although the notice and judicial approval requirements provide safeguards against conflicts of

13  interest and unreasonable settlements, here the parties did not disclose their agreement to the Court

14  from the outset and the agreement was never disclosed to the Class. *See Financial Arrangements in*

15  *Class Actions,* 20 FORDHAM URB. L.J. at 840. In fact, although apparently the Incentive Agreement was

16  provided to Defendants in April of 2006, no one informed the Court of the Incentive Agreement until

17  well after the Preliminary Approval Hearing, when the incentive award requests were made. The

18  failure to disclose this agreement to the Court violates the class representatives' fiduciary duties to the

19  class and duty of candor to the Court. *See Sipper v Capital One Bank,* 2002 WL 398768, at *4 & n.8,

20  2002 U.S. Dist. LEXIS 3881, at *13 & n.8 (C.D. Cal. 2002) (citing other relevant cases and finding

21  that the failure to disclose the existence of a business relationship between class counsel and the named

22  plaintiff constituted a conflict of interest that destroyed the adequacy of the plaintiff's representation).

23  Class Members could not have consented to the conflict because they were never told about the

24  Incentive Agreement, as it was not included in the Notice sent to the Class Members which described

25  the incentive award requests.[8] Thus, the safeguards of notice and judicial approval could not operate to

26

27  [8] The relevant section of the Notice reads: "All costs, fees, and expenses related to this lawsuit are to be paid out of the proceeds of the Settlement Fund. From the inception of the lawsuit, Class Counsel have not received any payment for their services in prosecuting the case, nor have they been reimbursed for

28  any out-of-pocket expenses. Class Counsel will apply to the Court for an award of attorneys' fees of 25% of the Settlement Fund and reimbursement of expenses advanced in the litigation ("Fee Petition").

1    prevent the conflict of interests here. The Court must now act to remedy the conflict by declining to

2    award incentive payments.

3        The conflict of interests here was not simply potential. Indeed, in this case there was an actual

4    manifestation of conflicting interest. The Objecting Plaintiffs claim that Class Counsel threatened to

5    not request incentive payments on their behalf pursuant to the Incentive Agreement if they did not

6    agree to the Settlement. This demonstrates that the Objecting Plaintiffs recognized that their own

7    interests diverged from those of the Class. Although the Objecting Plaintiffs argue that there is no

8    actual conflict of interests because they continue to object to the Settlement, the Objecting Plaintiffs

9    have never taken a position that jeopardizes their $75,000 incentive award request because they do not

10   object to the settlement with Kaplan. The $13 million settlement with Kaplan alone exceeds the $10

11   million provision in the Incentive Agreement which contractually requires Class Counsel to request a

12   $75,000 incentive payment on their behalf.

13       Thus, for the reasons discussed above, the Court declines to award any incentive awards to any

14   of the Class Representatives. Giving awards in this situation would be a violation of the Court's duty in

15   overseeing class actions and against the public interest.

16

17   **VI.    Attorneys Fees**

18

19       The Court finds that Class Counsel's Motion for Attorneys' Fees and Reimbursement of

20   Expenses is proper and grants the Motion.

21

22

23

24   Moreover, an application will be made to the Court for an incentive award of $25,000 for Plaintiffs
     Frailich, Brazeal, Brewer and Rimson, and $75,000 for Plaintiffs Rodriguez, Nesci and Gintz to

25   compensate them for their participation in, and prosecution of, this case on behalf of the Class, which
     included, among other things, producing documents, providing written discovery, consulting with Class

26   Counsel and members of the Class, and appearing for depositions ("Incentive Award Petition"). Class
     Counsel will file the Fee Petition and the Incentive Award Petition with the Clerk fo the Central District

27   of California, at the United States District Courthouse, 312 N. Spring Street, Los Angeles, California,
     90012 on or before May 7, 2007. The petitions will be available for inspection during normal business

28   hours at the office of the Clerk." Notice of Proposed Settlement of Class Action and Hearing Regarding
     Settlement at 3.

**VI.    Conclusion**

For the reasons set forth above,

(1)    The Court grants Plaintiffs' Motion for an Order Granting Approval of Class Action Settlement;

(2)    The Court denies Plaintiffs' Motion for Incentive Awards to Class Plaintiffs;

(3)    The Court grants Class Counsel's Motion for Attorneys' Fees and Reimbursement of Expenses.

IT IS SO ORDERED.

DATED: September _10_, 2007.

MANUEL L. REAL

UNITED STATES DISTRICT JUDGE

ORIGINAL — LODGED



FILED
CLERK, U S DISTRICT COURT

SEP 1 0 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ENTERED
CLERK, U S DISTRICT COURT

SEP 1 7 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN RODRIGUEZ, REENA B. FRAILICH, LOREDANA NESCI, JENNIFER BRAZIL, and LISA GINTZ, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>WEST PUBLISHING CORPORATION, a Minnesota Corporation d/b/a BAR/BRI, and KAPLAN, Inc., a Delaware Corporation,<br><br>        Defendants<br><br>AND CONSOLIDATED ACTION | CASE NO. CV-05-3222 R(MCx)<br><br>~~[PROPOSED]~~ ORDER GRANTING CLASS COUNSEL ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES |

The Court has granted final approval of the Settlement Agreement[1] in the Action (the "Final Approval Judgment"). Class Counsel filed their Motion for

---

[1]     Unless otherwise stated herein, all capitalized terms shall have the same meanings as set forth in the Stipulation and Settlement Agreement dated February 2, 2007.

4667130 1

1

430

1  Award of Attorneys' Fees and Reimbursement of Expenses (the "Motion") on May

2  7, 2007, in accordance with the Order Granting Preliminary Approval of Class

3  Action Settlement and Directing Dissemination of Notice to Class dated March 26,

4  2007.

5      In support of the Motion, Class Counsel filed: (1) Declaration of Sidney K.

6  Kanazawa (to which is attached the Declarations of Christine Pedigo Bartholomew

7  and Dan Drachler); and (2) Memorandum and Points and Authorities in Support of

8  Motion for Attorneys' Fees.

9      The following objections to the Motion were filed:

10

11

12

| | DATE FILED | CLASS MEMBER |
|---|---|---|
| 1. | May 21, 2007 | David Oriol |
| 2. | May 21, 2007 | Jason Tingle<br>Oliver Gutierrez |
| 3. | May 21, 2007 | David Feldman<br>Cameron Gharabiklou<br>Emily Grant<br>Jeff Lang<br>Sarah McDonald<br>Cara Patton<br>Rachel Schwartz<br>Greg Thomas |
| 4. | May 21, 2007 | Joseph J. Angersola |
| 5. | May 21, 2007 | Anthony Valach |
| 6. | May 21, 2007 | Robert Gaudet, Jr.<br>Sandeep Gopalan<br>Elizabeth De Long<br>Andrea Boggio |
| 7. | May 21, 2007 | Justin Head<br>Ryan Helfrich |

27

[PROPOSED] ORDER GRANTING CLASS COUNSEL ATTORNEYS' FEES
CASE NO CV 05-3222 R(MCx)

| | DATE FILED | CLASS MEMBER |
|---|---|---|
| 8. | May 21, 2007 | George Schneider<br>Jonathan Slomba<br>James Puntumapanitch |
| 9. | May 21, 2007 | James Juranek<br>Audrey Juranek<br>Le Blanc, Richard P., III. |
| 10. | May 12, 2007 | Arcelia Trevino |
| 11. | May 21, 2007 | Aaron Lukoff<br>John Prendergast<br>David Orange |
| 12. | May 22, 2007 | Daryl Chilimidos |
| 13. | May 22, 2007 | Andrew Gilman<br>Stephen M. Vasil |
| 14. | May 23, 2007 | Pamela Collins |
| 15. | June 12, 2007 | Stephen Lindholm |

On June 11, 2007, Class Counsel filed a Reply Memorandum in Support of the Motion and the Declaration of Sidney K. Kanazawa in further support of the Motion.

The Motion was heard by the Court on June 18, 2007 and July 9, 2007. The Court has considered all papers submitted and oral argument presented in support of the Motion. The Court has also considered all papers submitted by Class Members objecting to the Motion, and accompanying oral argument.

In awarding attorneys' fees, the Court has the discretion to use either the percentage method or the lodestar/multiplier method in common fund cases such as this one. *See In re Washington Public Power Supply System Securities Litig ("WPPSS")*, 19 F.3d 1291, 1295 (9th Cir. 1994). The Court is guided by the fundamental principle that fee awards out of common funds be "reasonable under

4667130 1

3

1 the circumstances." *Id.* at 1296. The Court will utilize the lodestar/multiplier

2 approach in this case.

3          Under the lodestar/multiplier approach, the lodestar is first calculated by

4 multiplying the reasonable hours expended by a reasonable hourly rate. *See*

5 *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546,

6 565 (1986). The Court may then enhance the lodestar by a "multiplier," if

7 necessary, to arrive at a reasonable fee under the circumstances. *See Paul,*

8 *Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989). The Court

9 may enhance a lodestar in common fund cases based on, among other things, risk;

10 the novelty and difficulty of the questions involved; the amount involved and the

11 results obtained; the experience, reputation, and ability of the attorneys; and

12 awards in similar cases. *See WPPSS,* 19 F.3d at 1299; *Vizcaino v. Microsoft Corp.,*

13 142 F. Supp. 2d 1299, 1306, (W.D. Wash. 2001).

14          Class Counsel faced a substantial amount of risk in the prosecution of this

15 action. Unlike other antitrust cases, Class Counsel here did not benefit from the

16 fruits of any underlying government actions. There were no controlling precedents

17 regarding Plaintiffs' claims, especially with regard to the Section 7 claim under the

18 Clayton Act. Class Counsel's risk was even greater, and their work more difficult,

19 because Defendants are resourceful and formidable, and were represented by

20 skilled counsel.

21          Further, as detailed in Class Counsel's submission in connection with the

22 Motion, Class Counsel faced a number of hurdles in proving both damages and

23 liability at trial. Class Counsel also faced a number of risks, including: the risk that

24 the Class would be decertified during trial or certification reversed on appeal; the

25 risk of proving conspiracy; and the risk of proving damages, among other things.

26 Also, Defendants raised numerous defenses that, if successful, would have

27 foreclosed or, at a minimum, diminished any recovery. Despite these obstacles,

1   Class Counsel obtained $49 million in cash for the benefit of the Class and non-

2   monetary relief designed to promote competition in the bar review market.

3         The Court has reviewed all of the documentation submitted by Class

4   Counsel in support of the Motion, including the detailed declarations of Sidney K.

5   Kanazawa, Dan Drachler, and Christine P. Bartholomew.  The Court has also

6   reviewed Class Counsel's firm résumés and the prevailing market rates.  The Court

7   finds that Class Counsel's hourly rates are reasonable.

8         The Court recognizes that Class Counsel's lodestar has increased since the

9   filing of the Motion due to the work they performed in connection with the

10  Settlement, including responding to objectors' arguments and preparing for and

11  appearing at the Final Settlement Hearing.  Class Counsel have advised the Court

12  that they have and will continue to respond to Class Member inquiries,

13  communicate with and monitor the Claims Administrator, and otherwise monitor

14  the Settlement administrative process.  Should any objectors file an appeal from

15  the Final Approval Judgment, Class Counsel will have to perform additional work

16  to ensure that the appeal is dismissed or the Final Approval Judgment is affirmed

17  in all respects.

18        **IT IS THEREFORE ORDERED THAT:**

19        Good cause appearing therefor, the Court hereby awards Class Counsel: (1)

20  their lodestar on the Effective Date (as defined in the Settlement Agreement),

21  enhanced by a multiplier of 1.75, but not to exceed twenty-five percent of the

22  Gross Settlement Fund on the Effective Date; and (2) reimbursement of their

23  expenses as of the Effective Date.  This award shall be paid from the Gross

24  Settlement Fund in accordance with the terms of the Settlement and pursuant to an

25  order of the Court.

26  ///

27  ///

IT IS SO ORDERED

DATE                    Sept. 10, 2007

4667130 1

[PROPOSED] ORDER GRANTING CLASS COUNSEL'S ATTORNEYS' FEES
CASE NO CV 05-3222 R (Mcx)

U.S. DISTRICT COURT JUDGE

1    IT IS SO ORDERED.

2

3

4    DATED:_____    _____

5                                HONORABLE MANUEL L. REAL
                                 UNITED STATES DISTRICT COURT JUDGE

6    Submitted by:

7

8    _____
     Sidney K. Kanazawa (SBN 84608)
9    McGUIREWOODS LLP
     Email: skanazawa@mcguirewoods.com
10   1800 Century Park East, 8th Floor
     Los Angeles, California 90067
11   Telephone: (310) 315-8200
12   Facsimile: (310) 315-8210

13

14   Dan Drachler (*Pro Hac Vice*)
     **Zwerling, Schachter & Zwerling, LLP**
15   1904 Third Avenue, Suite 1030
     Seattle, WA 98101
16   Telephone: (206) 223-2053
17   Facsimile: (206) 343-9631

18
     Christine Bartholomew (SBN 211425)
19   **Finkelstein Thompson LLP**
20   601 Montgomery Street, Suite 665
     San Francisco, CA 94111
21   Telephone: (415) 398-8700
22   Facsimile: (415) 398-8704

23   Class Counsel

24

25

26

27

46671301                    6



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RYAN RODRIGUEZ, REENA B.
FRAILICH, LOREDANA NESCI,
JENNIFER BRAZEAL, and LISA
GINTZ, on behalf of themselves and all
others similarly situated,

                         Plaintiffs,

      v.

WEST PUBLISHING
CORPORATION, a Minnesota
Corporation d/b/a BAR/BRI, and
KAPLAN, Inc., a Delaware
Corporation,

                         Defendants.

AND CONSOLIDATED ACTION

Case No.: CV-05-3222 R(MCx)

[~~PROPOSED~~] FINDINGS OF
FACT AND CONCLUSIONS
OF LAW

433

1    Representative Plaintiffs[1] and Defendants have submitted for approval a

2    Settlement of this Action that is memorialized in the Settlement Agreement. For the

3    reasons set forth below, the Court has determined that the Settlement is fair, reasonable

4    and adequate, and should therefore be approved. As the Court is contemporaneously

5    issuing a Judgment and an Order Approving Settlement, the Court makes the following

6    findings of fact and conclusions of law:

7    **I. BACKGROUND**

8        **A.    Materials Considered by the Court**

9            1.    In coming to its decision, this Court has considered the written

10   memoranda and other material submitted by the Settling Parties, as well as those

11   submitted by objectors to the Settlement (the "Objectors"). In addition, this Court

12   has relied upon its familiarity with this case resulting from motion hearings and the

13   documents submitted in connection therewith, and its general case management

14   duties. As discussed below, Class Counsel and counsel for Defendants have fully

15   briefed the request for approval, and they have supported the request with

16   declarations of fact. Class Counsel and counsel for Defendants were present at the

17   June 18 and July 9, 2007 Final Settlement Hearing and addressed issues that were

18   raised at the time by the Court and the Objectors.

19       **B.    History of the Litigation**

20           2.    After an extensive pre-filing factual investigation, plaintiffs

21   Ryan Rodriguez ("Rodriguez") and Reena B. Frailich (the "Initial Plaintiffs") filed

22   the first complaint in this Action in April 2005 against Defendants alleging claims

23   for violation of the federal antitrust laws (the "Initial Complaint").

24           3.    The Initial Plaintiffs later filed a First Amended Complaint

25

26   [1] Unless otherwise specifically defined herein, the capitalized terms in the Findings
27   of Fact and Conclusions of Law have the same meaning as attributed to them in the
     Stipulation and Settlement Agreement, dated February 2, 2007 (the "Settlement
28   Agreement").

1  ("FAC"), in which plaintiffs Jennifer Brazeal, Loredana Nesci ("Nesci") and Lisa

2  Gintz ("Gintz") joined.

3         4.    Plaintiffs Kari Brewer and Lorraine Rimson filed a related action

4  against Defendants in this Court entitled, *Brewer v. West Publishing Corp.*, Case

5  No. CV-05-06211. The Court consolidated the two actions after motion practice on

6  October 17, 2005.

7      **C.**    **Plaintiffs' Allegations**

8         5.    The FAC, the operative complaint which seeks monetary

9  damages and injunctive relief, alleges claims for violation of Sections 1 and 2 of the

10  Sherman Act, and violation of Section 7 of the Clayton Act.

11      **D.**    **Defendants' Response**

12         6    Defendants answered the FAC in July 2006, raising numerous

13  defenses, including statute of limitations, laches, proximate cause, standing, and

14  *bona fide* business competition.

15      **E.**    **Discovery**

16         7.    The Action entered the discovery phase in August 2005.

17  Plaintiffs took substantial factual and expert discovery relating to liability, damages

18  and class certification issues.

19         8.    Plaintiffs reviewed and analyzed over 400,000 pages of

20  documents produced by Defendants and third parties, conducted one deposition

21  pursuant to Fed. R. Civ. Proc. Section 30(b)(6), and deposed fourteen fact witnesses

22  as follows:

23

24

| Date | Deponent | Description of Deponent |
|------|----------|-------------------------|
| 07/14/06 | Trent Anderson | Former employee of Kaplan |
| 02/22/06, | Richard Conviser | CEO of BAR/BRI |

25

26

27

28

| 2/23/06 | ("Conviser") | |
|---------|--------------|---|
| 07/11/06 | John Costonis | Chancellor of Louisiana State University |
| 01/06/06 | Robert Feinberg | President and CEO of PMBR |
| 06/20/06 | Jonathan Grayer | Chairman and CEO of Kaplan |
| 06/13/06 | Kandace Kukas | Marketing director for the North Atlantic region of Kaplan |
| 07/20/06 | Ian MacDiarmid | Former employee of Kaplan |
| 06/21/06 | David Oliveiri | Former employee of Thomson Corporation |
| 02/14/06 | John Perovich | Former employee of Thomson Corporation. |
| 7/14/06 | John Polstein | CEO of the Test Prep Division at Kaplan. |
| 07/07/06 | Andrew Rosen | COO at Kaplan. |
| 02/07/06 | Brian Sacks | Western regional director at BAR/BRI. |
| 06/14/06 | Donna Skibbe | Employee of Kaplan and a former employee of BAR/BRI and West Bar Review ("West Bar"). |
| 06/23/06 | Michael Suchsland | Executive at BAR/BRI |

9.    Defendants deposed the seven Plaintiffs as well as non-party

witnesses Jack Goetz, Hugh Reed and Stanley Chess.

10. The Settling Parties also conducted extensive expert discovery, including eight depositions of five different expert witnesses.

11. Plaintiffs and Defendants had a series of discovery disputes. These discovery disputes resulted in a number of motions to compel before this Court and Special Discovery Master John Francis Carroll, whose appointment was also the subject of motion practice.

**F.    Class Certification**

12. On March 13, 2006, Plaintiffs filed their motion for class certification. Defendants raised many challenges, including the relevant market definition, antitrust impact and the existence of a formulaic approach to damages.

13. On May 15, 2006, after comprehensive briefing, including the submission of detailed expert declarations and exhibits as well as extended oral argument, the Court certified a national class defined as: "All persons who purchased a bar review course from BAR/BRI in the United States from 1997 to the present." *See* Order filed May 15, 2006 (the "Class Certification Order").

14. The Court appointed Plaintiffs as the Class Representatives.

15. On June 29, 2006, after reviewing submissions from Plaintiffs and Defendants concerning the proposed plan of notice to the Class, the Court issued an Order Re Class Notice (the "Class Notice Order") which approved the proposed form of notice, and provided for dissemination by: (a) first-class mail; (b) in national publications; and (c) over the Internet. In accordance with the Class Notice Order, the Class Action Notice was disseminated in July 2006. The Class Action Notice provided Class Members the opportunity to request exclusion from the Class.

16. Defendants filed a petition with the Court of Appeals for the Ninth Circuit for leave to file an appeal regarding the Class Certification Order.

Plaintiffs filed an extensive opposition. The Ninth Circuit denied Defendants'
petition on August 11, 2006.

**G.    Trial**

17.    The original trial date for this Action was set for June 20, 2006.

18.    At the request of the parties the trial date was continued to
September 12, 2006. The Court later continued the trial date to February 13, 2007
*sua sponte* .

**H.    Summary Judgment**

19.    On July 17, 2006, Kaplan filed a motion for summary judgment
seeking to dismiss Count II of the FAC (the only count against Kaplan). Plaintiffs
opposed the motion and subsequently sought leave to file two supplemental
opposition briefs to the motion, which the Court granted. The Court denied
Kaplan's motion for summary judgment. *See* Order filed September 18, 2006.

**I.    Negotiation of the Settlement Agreement**

20.    After completion of discovery and with the February trial date
approaching, the Settling Parties together with Rodriguez, Nesci, and Gintz (the
"Objecting Plaintiffs") engaged in a formal mediation in New York City on
November 29, 2006. The Honorable Daniel Weinstein (Ret.) of JAMS, who has
substantial experience in resolving antitrust and class action cases, served as
mediator. Plaintiffs were represented by Class Counsel; plaintiff Gintz was also
present. BAR/BRI was represented by Shearman & Sterling, LLP and Kaplan was
represented by Munger, Tolles & Olson LLP. Also present were in-house counsel
for Defendants and Conviser.

21.    The record reflects that at all times, the negotiations were at
arm's-length and hard fought. The Settling Parties were unable to reach a
resolution on November 29, 2006.

22.    Negotiations continued for the next several weeks with the

assistance of the mediator. Throughout this time, Class Counsel continued to prosecute discovery disputes and prepare for trial. After several weeks of negotiations, an agreement was reached on all Settlement terms (which was supported by the mediator); the Settlement Agreement was executed on February 2, 2007.

23.    The Objecting Plaintiffs refused to authorize the execution of the Settlement Agreement on their behalf.

## II.    THE TERMS OF THE SETTLEMENT

### A.    The Settlement Fund

24.    Consistent with the terms of the Settlement Agreement, Defendants paid forty-nine million dollars into an interest-bearing account for the benefit of the Class, which amount, plus interest (hereinafter, "Gross Settlement Fund"), has or will be used to pay for the costs of notice, settlement administration, taxes and attorneys' fees and expenses pursuant to the orders of this Court. After such payments from the Gross Settlement Fund, the balance will be distributed to the Class ("Net Settlement Fund") pursuant to the Plan of Allocation.

### B.    Plan of Allocation

25.    Under the terms of the Plan of Allocation, the Net Settlement Fund will be distributed *pro rata* based on the amount each Class Member who submits a timely and valid Claim Form ("Authorized Claimant") paid BAR/BRI for the bar review course in relation to the amounts paid by all other Authorized Claimants. For example, if the amount paid for a bar review course by an Authorized Claimant equals 1/100,000 of the aggregate of such amounts paid by all other Authorized Claimants, then the Authorized Claimant will receive 1/100,000 of the Net Settlement Fund. The maximum amount of payment that any Authorized Claimant shall be entitled to receive from the Net Settlement Fund, however, shall not exceed thirty-percent (30%) of the amount the Authorized Claimant paid for the

bar review course (the "Maximum Payment").

26.    Class Members also have the option of donating their portion of the Net Settlement Fund to the National Legal Aid and Defender Association ("NLADA"), for the purpose of providing training opportunities for young lawyers nationwide. NLADA, founded in 1911, is the oldest and largest national, nonprofit membership organization devoting all of its resources to advocating equal access to justice for all people.

27.    Defendants are not entitled to a reversion of any money remaining in the Net Settlement Fund after distribution of the Maximum Payments to all Authorized Claimants. If any funds remain in the Net Settlement Fund after distributing the Maximum Payments to all Authorized Claimants, Class Counsel will make an application to the Court for a *cy pres* distribution of the residual amount of the Net Settlement Fund.

**C.    Provisions to Promote Competition in the Bar Review Market**

28.    For purposes of Settlement, BAR/BRI and Kaplan agreed to terminate the marketing agreement that Plaintiffs allege is unlawful and has allowed BAR/BRI to maintain a monopoly and Defendants to divide the market. Further, for a period of five years following the Effective Date, BAR/BRI will include the following statement on the forms it uses to enroll law students into its review courses:

NOTE: By signing this Enrollment Form and making an initial payment to BAR/BRI, you are not committing yourself to taking the BAR/BRI Bar Review course or making full payment to BAR/BRI for such course.

29.    Finally, in the Settlement Agreement, BAR/BRI expressly states "that it is committed to accurate advertising as required by the Lanham Act, the Federal Trade Commission Act and similar laws, regulations and rules."

Settlement Agreement ¶ 39.

### D.   Release

30.     Paragraphs 56 and 57 of the Settlement Agreement contain a proposed Release, which is incorporated in the Judgment and Order Approving Settlement, signed contemporaneously with these Findings of Fact and Conclusions of Law (the "Settlement Order").  The Settlement Order provides that all Class Members (including any of their past, present or future officers, directors, agents, employees, legal representatives, trustees, parents, associates, affiliates, licensees, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors, and assigns), with the exception of those who exercised their right to opt out (identified in Exhibit A to the Settlement Order), whether or not he, she or it objects to the Settlement and whether or not he, she or it makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity, ever had, now has or hereafter can, shall or may have concerning or relating to any conduct alleged in the FAC  in this Action, and including without limitation all claims that have been asserted or could have been asserted in any litigation against the Released Parties or any of them for any conduct alleged in the FAC in this Action (collectively with all claims referenced in the next paragraph, the "Released Claims"), are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration or other proceeding against any or all Released Parties, or order in any jurisdiction entered against any or all Released Parties that is based upon, arises out of or relates to any Released Claims.

31.     Notwithstanding the foregoing, the Released Claims shall not include claims asserted against the named defendants as of February 2, 2007, in the putative class actions, entitled *Park v. Thomson Corp., et al.*, Case No. 05 Civ. 2931

FINDINGS OF FACT AND CONCLUSIONS OF LAW

(WHP) and *Arendas v Thomson Corp., et al.*, Case 6:06-cv-1113-Orl-28JGG, currently pending in the United States District Court, Southern District of New York (the "New York Actions").

## III.   JURISDICTION

32.    This Court has jurisdiction over the claims of Class Members because Plaintiffs have alleged violations of federal laws, specifically the Sherman Act, 15 U.S.C. § 1 and the Clayton Act, 15 U.S.C. § 18.

33.    This Court can also exercise personal jurisdiction over all absentee Class Members because Class Members received proper notice of the Action.

34.    The Class Action Notice informed potential Class Members of the pendency of this Action and provided them with the opportunity to exclude themselves from the Class.

35.    The  Notice informed Class Members of their opportunity to object to the Settlement and to be heard at the Final Settlement Hearing.  Such notice satisfies the due process requirements of the Fifth Amendment. *Brown v. Ticor Title Inc.,* 982 F2d 386, 392 (9th Cir. 1992).

## IV.   PRELIMINARY APPROVAL

36.    On March 19, 2006, over the objections of the Objecting Plaintiffs, this Court entered an Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Directing Dissemination of Notice to Class (the "Preliminary Approval Order") that, among other things: (a) found that the Settlement Agreement was negotiated in good faith, under the supervision of a well-respected mediator, resulted from extensive arm's length negotiations, was concluded after Class Counsel conducted broad discovery and was sufficiently fair, reasonable and adequate to warrant sending notice of the Settlement to Class Members and holding a full hearing on the Settlement; (b) modified the definition

FINDINGS OF FACT AND CONCLUSIONS OF LAW

of the previously certified class to: "All Persons who purchased a bar review course from BAR/BRI in the United States from August 1, 1997 through and including July 31, 2006"; (c) found that the proposed forms and methods of notice met the requirements of the Federal Rules of Civil Procedure, the United States Constitution, the Rules of the Court and any other applicable law; (d) appointed Complete Claim Solutions, LLC ("CCS") as Claims Administrator; (e) established procedures for Class Members to object to the Settlement; and (f) established the date for the Final Settlement Hearing.

## V.  NOTICE TO THE CLASS OF THE SETTLEMENT

37.    The Settling Parties have provided extensive individual notice to Class Members.  Pursuant to the Preliminary Approval Order, CCS caused a copy of the Notice and Claim Form to be sent *via* first-class mail to the last known postal address of each Class Member, as updated through the United States Postal Service National Change of Address service.  A total of approximately 376,000 Notices were sent.

38.    The Summary Notice was published in:  (a) *The National Law Journal* on April 23 and 30, 2007; (b) *Lawyers Weekly USA* on April 23, May 7 and 21, 2007; and (c) *USA Today* on April 18, 2007.  The Summary Notice was also distributed through PR Newswire on May 8, 2007 and was sent *via* first-class mail to the office manager of each law firm listed on the most recent "*AmLaw* 200 list".  In addition, the Notice and Summary Notice  were posted on Class Counsel's websites.

39.    Under Class Counsel's direction and supervision, CCS updated the official BAR/BRI class action website at *www.barbri-classaction.com* to provide Class Members information about the Settlement.  The website provided Class Members with important dates regarding the Settlement, answers to "frequently asked questions," copies of the Notice and Claim Form, the Settlement

FINDINGS OF FACT AND CONCLUSIONS OF LAW

Agreement, the Plan of Allocation, as well as certain other relevant pleadings in the Action.

40.    Under Class Counsel's direction and supervision, CCS established a toll-free interactive voice response system which also provided answers to frequently asked questions. Class Members were also able to speak with a live operator at CCS. Additionally, CCS established an email box for Class members who wish to request additional information by email.

41.    Finally, Class Counsel set up a response team comprised of several attorneys and paralegals to respond to questions from Class Members about the Settlement.

42.    The Notice included summaries of the Release and the Plan of Allocation, and provided detailed information about the Settlement benefits available to the Class Members, including their right to object to the Settlement and to appear at the Final Settlement Hearing.

## VI.    THE NOTICE SATISFIED ALL APPLICABLE REQUIREMENTS

43.    The Preliminary Approval Order approved the procedures for notifying Class Members about the Settlement Agreement, as well as the form of the Notice and the Summary Notice. The form of such an order is within this Court's discretion. *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("Rule 23(d)(2), of course, does not provide for a specific manner of notice or the form of the notice. These are matters left to the court's discretion to be dictated by the circumstances of each case.) The Settling Parties provided extensive and sufficient notice to Class Members, and the methodology by which it was provided not only meets, but exceeds, all requirements for notice in a class action settlement.

44.    In order to satisfy due process requirements, notice to Settlement Class Members must generally describe the terms of the settlement in sufficient

detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Torrisi v. Tucson Elec. Power Co* , 8 F.3d 1370, 1374 (9th Cir. 1993) (quoting *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977)); *In re Aetna Inc. Secs. Litig.*, MDL No. 1219, 2001 WL 20928 at * 5 (E.D. Pa. Jan. 4, 2001) ( Notice must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950) (citation omitted)).

A.    **The Contents of the Notice Satisfy Due Process**

45.    A settlement notice is a summary, not a complete source of information. This circuit requires a very general description of the proposed settlement in such a notice. *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d at 575 (9th Cir. 2004) ("[N]otice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard'") (quoting *Mendoza v. Tucson School Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980)); *Torrisi*, 8 F.3d at, 1374.

46.    Proper notice should provide:  (a) the material terms of the proposed settlement; (b) disclosure of any special benefit to the class representatives; (c) disclosure of the attorneys' fees provisions; (d) the time and place of the final approval hearing and the method for objecting to the settlement; (e) an explanation regarding the procedures for allocating and distributing the settlement funds; and (f) the address and phone number of class counsel and the procedures for making inquiries. *See Marshall v. Holiday Magic*, 550 F.2d at 1178.

47.    The Notice and the Summary Notice provided all of the required information: a description of the material terms of the Settlement; a description of the monetary and non-monetary relief and the Plan of Allocation; the applications for the Incentive Awards and the amounts; Class Counsel's intent to apply for a Fee

Award in the amount of twenty-five percent (25%) of the Gross Settlement Fund and for reimbursement of expenses; and the contact information for Class Counsel, including how to make inquiries. The Notice also included the date, time, and place of the Final Settlement Hearing, described how to object, and informed Class Members that any objection must be filed with the Court and delivered to Class Counsel and counsel for Defendants no later than May 21, 2007.

48.    The Notice further advised Class Members that if the Settlement is approved, Defendants will be released of any liability to the Class Members arising out of the conduct alleged or which could have been alleged in this Action, with the exception of the claims asserted in the New York Actions.

49.    The Notice's content advised Class Members of the information that is material to making an informed and intelligent decision respecting whether to participate in the Settlement or not. *See In re Equity Funding Corp. of America Securities Litigation*, 603 F.2d 1353, 1361 (9th Cir. 1979) (approving notice because "the Notice informed the appellants of the subject matter and terms of the proposed settlements and Plan of Allocation at the time the Notice was sent out"); *Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 332 (E.D. Pa. 1993) ("The standard then is that the notice required by [Rule 23](c)(2) must contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment.") (quoting *In re Nissan Motor Corp Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

50.    The Notice and Summary Notice provided sufficient information for Class Members to understand the proposed Settlement Agreement and their options. *See In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 235, 254 (D.N.J. 2000) (finding due process satisfied where the notice informs class members of (a) the nature of litigation; (b) general terms of the settlement; (c) where to locate

-14-
FINDINGS OF FACT AND CONCLUSIONS OF LAW

complete information; and (d) the place and time of the hearing where objections may be heard).

**B.    The Dissemination Plan Satisfies Due Process**

51.    There is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those Class Members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974). "Rule 23(e) gives the Court 'virtually complete' discretion as to the manner of service of settlement notice." *Colesberry v. Ruiz Food Products, Inc*, No. CV F 04-5516, 2006 WL 1875444, at *7 (E.D. Cal. Jun. 30, 2006) (*citing Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981)). Here, the Notice was disseminated *via* individual mailing and publication. As the highest standard of notice, the Notice satisfies the due process requirement.

52.    In this Action, as stated above, the Notice was mailed by first class mail to each Class Member identified from Defendants' records, which CCS reviewed and formatted to ensure standardization and removal of duplicate and non-mailable records. The Notice was also made available on a variety of internet sites – including that of the Claims Administrator and Class Counsel. In addition, the Summary Notice describing the principal terms of the Settlement Agreement and providing information respecting how a more detailed description of the Settlement Agreement could be obtained was published in *The National Law Journal* (two insertions), *Lawyers Weekly USA* (three insertions) and *USA Today*. The Summary Notice was sent by first-class mail to the largest 200 law firms in the United States as listed in *American Lawyer*. These publications and the mailing to the 200 largest law firms specifically targeted the Class.

53.    The procedures used for providing notice in this case satisfy the Federal Rules and due process requirements. *See, e.g., Silber v. Mobon*, 18 F. 33

1449, 1452-54 (9th Cir. 1994)(approving notice sent by first class mail as the "best notice practicable"); *Zimmer Paper Prods , Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the Notice requirement of both Fed. R. Civ. 23 and the due process clause.") (citations omitted); *Montgomery v. Beneficial Consumer Disc. Co.*, No. 04- 2114, 2005 WL 497776, at * 6 (E.D. Pa. Mar. 2, 2005) (individual mailing accompanied by publication in USA Today was best practicable notice under the circumstances; "[d]ue process does not require actual notice, but rather a good faith effort to provide actual notice") (quoting Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* § 11:53 (4th ed. 2002) (hereafter "*Newberg*").

      54.    The Court thus affirms its findings in the Preliminary Approval Order that the notice in this case and the notice methodology are the best practicable notice and meet the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23), the United States Constitution (including the Due Process Clause), the Rules of this Court and any other applicable law.

## VII.    FINAL APPROVAL OF THE SETTLEMENT

### A.    Written Submissions

      55.    Class Counsel and Defendants filed submissions in support of the Settlement Agreement and the Objecting Plaintiffs filed submissions in opposition to the Settlement Agreement as follows:

      (a)    On May 17, 2007, Class Counsel filed: (i) Notice of Motion and Motion and Motion For Final Approval of Class Action Settlement; (ii) Declaration of Sidney K. Kanazawa; and (iii) Memorandum of Points and Authorities in Support of Final Approval;

      (b)    On May 17, 2007, the Objecting Plaintiffs filed an

objection, *inter alia* objecting to entry of the Preliminary Approval Order (the "May 17 Objections");

> (c)    On May 18, 2007, Class Counsel filed a response to the May 17 Objections;

> (d)    On May 31, 2007, the Objecting Plaintiffs filed an *ex parte* application, memorandum and declaration for an order to: (i) allow Eliot Disner, Esq. ("Disner") to "speak freely" on their behalf; (ii) allow access to certain files; and (iii) clarify the status of Disner as a "co-lead counsel" (the "*Ex Parte* Application");

> (e)    On June 1, 2007, Class Counsel filed an Opposition to the *Ex Parte* Application and Defendants filed objections to the *Ex Parte* Application (the "*Ex Parte* Oppositions"); and

> (f)    On June 7, 2007, the Objecting Plaintiffs filed a reply to the *Ex Parte* Oppositions.

56.    In addition to the May 17 Objections, the purported Class Members listed in the following table filed Objections to the Settlement on the dates indicated (together with the May 17 Objections, the "Objections"):

| Date Filed | Class Member |
|---|---|
| May 21, 2007 | David Oriol (the "Oriol Objector") |
| May 21, 2007 | Jason Tingle<br>Oliver Gutierrez  (the "Tingle Objections") |
| May 21, 2007 | David Feldman<br>Cameron Gharabiklou<br>Emily Grant<br>Jeff Lang<br>Sarah McDonald |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

| Date Filed | Class Member |
|---|---|
|  | Cara Patton |
|  | Rachel Schwartz |
|  | Greg Thomas (the "Feldman Objectors") |
| May 21, 2007 | Joseph J. Angersola |
| May 21, 2007 | Anthony Valach |
| May 21, 2007 | Jay M. Wolman (the "Wolman Objector") |
| May 21, 2007 | Joan E. Shreffler |
| May 21, 2007 | Robert Gaudet, |
|  | Sandeep Gopalan |
|  | Elizabeth De Long |
|  | Andrea Boggio (the "Gaudet Objectors") |
| May 21, 2007 | Justin Head |
|  | Ryan Helfrich (the "Head Objectors") |
| May 21, 2007 | George Schneider |
|  | Jonathan Slomba |
|  | James Puntumapanitch (the "Schneider Objectors") |
| May 21, 2007 | James Juranek |
|  | Audrey Juranek |
|  | Richard P. Le Blanc, III. (the "Juranek Objectors") |
| May 12, 2007 | Arcelia Trevino (the "Trevino Objector") |
| May 21, 2007 | Aaron Lukoff |
|  | John Prendergast |
|  | David Orange (the "Lukoff Objectors") |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

| Date Filed | Class Member |
|---|---|
| May 22, 2007 | Daryl Chilimidos (the "Chilimidos Objector") |
| May 22, 2007 | Nikki Love<br>John Bernitz (the "Love Objectors") |
| May 22, 2007 | Daniel M. Schaefer (the "Schaefer Objector") |
| May 22, 2007 | Evans & Mullinix, P.A. (the "Evans & Mullinix Objectors") |
| May 22, 2007 | Sarah Siegel (the "Siegel Objector") |
| May 22, 2007 | Jennifer Brown McElroy (the "McElroy Objector") |
| May 22, 2007 | Andrew Gilman<br>Stephen M. Vasil |
| May 23, 2007 | David Harris<br>Kareem Kamal<br>Matthew Kavanaugh<br>Simon Newfield<br>Jonathan Ricasa<br>Abigail Treanor<br>David Zelenski (the "Harris Objector") |
| May 23, 2007 | Pamela Collins (the "Collins Objector") |
| April 10, 2007 | Craig Walenta |
| May 28, 2007 | Richard A. Bodmer |
| June 12, 2007 | Stephen Lindholm |

57.    On June 11, 2007, Class Counsel filed:  (a) a reply memorandum in support of the Settlement which addressed the Objections; and (b) the

declarations of: (i) Sidney K. Kanazawa; (ii) Christine Pedigo Bartholomew; (iii) Richard Sartory of CCS; and (iv) Hon. Daniel Weinstein.

58.    On June 11, 2007, Defendants filed Defendants' Combined Response To Various Class Members' Objections To Stipulation And Settlement Agreement ("Defendants' Combined Response"). Also on June 11, 2007, BAR/BRI filed a reply memorandum to the May 17 Objections.

59.    On June 15, 2007, Kaplan filed: (a) Notice of Filing of Declaration of Lee S. Taylor in Support of Motion for Final Approval of Settlement, Regarding Kaplan's Compliance with the Requirements of the Class Action Fairness Act; and (b) Declaration of Lee S. Taylor, and subsequently filed: (a) Notice of Filing of Revised Declaration of Lee S. Taylor in Support of Motion for Final Approval of Settlement, Regarding Kaplan's Compliance with the Requirements of the Class Action Fairness Act; (b) Revised Declaration of Lee S. Taylor; Notice of Filing Under Seal; and (c) Declaration of Lee S. Taylor Authenticating and Attaching Documents.

60.    On June 18, 2007, BAR/BRI filed the Declaration of James P. Tallon Regarding the Class Action Fairness Act.

61.    On June 18, 2007, the Court ordered additional briefing to be submitted with regard to the issue of a *cy pres* distribution (the "June 18 Order").

62.    Pursuant to the Court's June 18 Order, on June 26, 2007, Class Counsel filed: (a) Settling Plaintiffs' Supplemental Briefing In Support of Motion for Final Approval Re: 30% Distribution Limit To Authorized Claimants and Cy Pres Fund for Remainder; (b) Declaration of Sidney K. Kanazawa; and (c) Declaration of Richard L. Sartory of CCS. Also, on that date, Defendants filed: (a) Defendants' Supplemental Brief Regarding Approval of Proposed Settlement, Addressing Cy Pres Provision of Proposed Settlement; and (b) the Declaration of Stuart N. Senator.

63.    In addition, on June 26, 2007, several Objectors including the Juranek Objectors and the Harris Objectors, submitted additional briefing in further opposition to final approval of the Settlement.

64.    On July 5, 2007, Disner filed a Summary of Evidence Regarding Defendant West Publishing Co.'s Violation of Section 2 of the Sherman Act (15 U.S.C. § 2) and a Re-Notice of Appearance of Counsel.

65.    As noted above, the number of Objections was small.  The Objectors raised issues regarding the following topics:  (a) the Objecting Plaintiffs opposed the Settlement; (b) Plaintiffs' Section 7 claim should be bifurcated from the Sherman Act claims; (c) Plaintiffs' case against the Defendants is too strong; (d) the Settlement Fund is insufficient; (e) the lack of a provision prohibiting future misconduct or dissolution; (f) the scope of the Release; (g) the possibility of a cap on individual Class Member's recovery and a *cy pres* award; (h) the failure to provide for a second opt-out chance; (i) the sealing of certain confidential documents obtained in discovery; (j) the Claim Form procedure renders the Settlement unfair; (k) the sufficiency of the Notice; and (l) the adequacy of Class Counsel.

**B.    The Final Approval Hearing**

66.    On June 18, 2007 and July 9, 2007, the Court conducted hearings on the fairness, reasonableness, and adequacy of the Settlement.

67.    Twelve groups of Objectors were represented at the Final Approval Hearing (through counsel).  Two of the three Objecting Plaintiffs - Nesci and Rodriguez - were also present.

68.    The Objectors (other than the Objecting Plaintiffs) were represented at the Final Approval Hearing by:  (a) Alan Harris, Esq. (on behalf of the Harris Objectors); (b) Howard Steele, Esq., Charles Steiner, Esq., and Ron Rosengarten, Esq. (on behalf of the Juranek Objectors); (c) Alexandra Steinberg,

Esq. (on behalf of the Trevino Objector); (d) John Davis, Esq. (on behalf of the Feldman Objectors); (e) Robert Gaudet, Jr., Esq. (on behalf of the Gaudet Objectors); (f) Ben Nutley, Esq. (on behalf of Head Objectors); (g) Robert Chojnakci, Esq. (on behalf of the Oriol Objectors); (h) Ken Nelson, Esq (on behalf of the Evans & Mullinix Objectors); (i) Emily Greer, Esq. (on behalf of the Love Objectors); (j) Leo Collins, Esq. (on behalf of the Collins Objector); and (k) Darnell Palmer, Esq. (on behalf of the Evans & Mullinix Objectors, the McElroy Objector and the Schaefer Objector). In addition, Perrin Disner, the son of Disner appeared *pro se* as an objector, although he did not comply with the procedure for objecting set forth in the Preliminary Approval Order.

## VIII. FAIRNESS OF THE SETTLEMENT AGREEMENT

### A.    The Settlement Agreement Enjoys a Presumption of Fairness

69.    In the Ninth Circuit, a court affords a presumption of fairness to a settlement, if: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Young v. Polo Retail*, No. C-02-4546 VRW, 2006 WL 3 050861, at 5 (N.D. Ca. Oct. 25, 2006); *Newberg* at § 11.41. As described above, the Settlement was reached only after extensive discovery had been conducted. Settlement negotiations occurred at arm's length for three months with the assistance of a mediator and on the eve of trial.

70.    Both Class Counsel and Defendants' counsel are experienced in class actions, including antitrust class actions. Moreover, the Class' reaction to the Settlement Agreement has been overwhelmingly positive, and only a small fraction of the Class has objected to the Settlement. The Settlement Agreement thus enjoys a presumption of fairness.

### B.    The Settlement Agreement is Fair, Adequate and Reasonable

71.    The Ninth Circuit has articulated eight factors to evaluate a

settlement's fairness, adequacy, and reasonableness:

    (a)  The strength of plaintiffs' case;

    (b)  The risk, expense, complexity, and likely duration of further litigation;

    (c)  The risk of maintaining class action status throughout the trial;

    (d)  The amount offered in settlement;

    (e)  The extent of discovery completed, and the stage of the proceedings;

    (f)  The experience and views of counsel;

    (g)  The presence of a governmental participant,[2] and

    (h)  The reaction of the class members to the proposed settlement.

*Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003); *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### 1.   The Strength of Plaintiffs' Case

72.   Plaintiffs prevailed on Kaplan's motion for summary judgment and believe they would prevail on any motion for summary judgment filed by BAR/BRI. Nevertheless, defeating these motions does not mean that Plaintiffs established Defendants' *prima facie* liability; whether they would obtain a favorable, unanimous jury verdict as required by Fed. R. Civ. P. 48 is far from guaranteed. *See, e.g., In re Airline Ticket Com'n Antitrust Litig*, 953 F.Supp. 280, 283 (D. Minn. 1997) (approving settlement although it did not provide a full recovery of the potential losses and noting that objectors failed to appreciate that on summary judgment, the court only decided that defendants did not prevail as a

---

[2] There was no governmental presence with respect to the claims set forth in the Action.

matter of law, not that plaintiffs had a winning case).

73.    To prove their claim for violation of Section 1 of the Sherman Act, Plaintiffs have to show that Defendants combined, conspired and contracted among themselves to eliminate competition in the bar review course market throughout the United States for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate commerce. *See Palmer v. BRG,* 498 U.S. 46, 48 (1990). Plaintiffs' Section 1 claim is based on Kaplan's withdrawal from a letter of intent to purchase West Bar and its subsequent agreement with BAR/BRI. Kaplan and BAR/BRI, however, point to documentary and testimonial evidence to support their defense that the 1997 agreement between them was not an illegal market allocation agreement, but a *bona-fide* co-marketing agreement executed after Kaplan made a legitimate business decision not to go forward with acquiring West Bar due to its poor financial forecast for the business. While Plaintiffs claim to have evidence to rebut Defendants' defenses, litigation is uncertain and Plaintiffs could lose on this point as equally as they could prevail. *See In re Superior Beverage/Glass Container Consolidated Pretrial,* 133 F.R.D. 119, 127 (N.D. Ill. 1990) (stating that "[t]he 'best' case can be lost and the 'worst' case can be won . . . .").

74.    There is also no guarantee that Plaintiffs would prevail on their Section 2 claim. To establish their Section 2 claim, Plaintiffs would have to prove that BAR/BRI has significant market power and engaged in wrongful conduct to obtain and preserve its monopoly power on a national scale, thereby injuring Plaintiffs and the Class. *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 596 (1985). BAR/BRI, however, argues that its market position is the result of innovation and high-quality products and services, not illegal conduct. Further, BAR/BRI has proffered evidence showing that the relevant product market is not national, but state specific, and the geographic markets are local and

metropolitan areas. BAR/BRI also argued that the conduct alleged in the FAC to support the Section 2 claim was (i) not substantiated in discovery, (ii) local and limited in impact, and (iii) too remote in time. Again, while Plaintiffs believe they have strong evidence to the contrary, it is not inconceivable that a jury could agree with and decide in favor of BAR/BRI.

75.    Similarly, there is no guarantee that Plaintiffs would prevail on their Section 7 claim under the Clayton Act, which prohibits mergers, acquisitions and joint ventures "that may substantially lessen competition or tend to create a monopoly in a market." 15 U.S.C. § 18. BAR/BRI claims it did not violate Section 7 by acquiring West Bar as Plaintiffs allege. Rather, BAR/BRI claims its conduct was pro-competitive and did not diminish competition. BAR/BRI claims it had both testimony and documentary evidence showing that West Bar was already defunct when BAR/BRI agreed to provide bar review courses to West Bar's customers so that BAR/BRI did not acquire West Bar or diminish competition. Again, while Plaintiffs claim to have rebuttal evidence, they have no crystal ball to allow them to foresee which way the Court and/or a jury would find on this issue.

76.    Defendants also raise the statute of limitations defense. If the Court or the jury determined that the statute precluded the claims of certain Class Members, thereby decreasing the size of the Class and impacting the damages analysis relied upon by Class Counsel in negotiating the Settlement, then the Class may recover significantly less than what was achieved by the Settlement.

## 2.    The Risk, Expense, Complexity and Duration of Continued Litigation

77.    These factors consider "the probable costs, in both time and money, of continued litigation." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002). In most cases, "unless the settlement is clearly inadequate,

its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Telecommunications Coop. v. DIRECTV, Inc*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting *Newberg*, § 11:50 at 155). Indeed, it has been held proper "to take the bird in hand instead of a prospective flock in the bush." *DIRECTV*, 221 F.R.D. at 526 (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)). Settlement is encouraged in class actions where possible. *Van Bronkhorst v Safeco Corp.*, 529 F.2d 943, 950 (9th Cir.1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense.").

78.    There is no question that this Action is complex and, if not settled, its potential to result in enormous expense and lengthy duration is great. Antitrust class actions "are notoriously complex, protracted, and bitterly fought" and "arguably the most complex actions to prosecute." *In re Visa Check/MasterMoney Antitrust Litig.*, 297 F.Supp.2d 503, 510 (E.D.N.Y. 2003) (quoting *Weseley v. Spear, Leeds & Kellogg*, 711 F.Supp.713, 719 (E.D.N.Y. 1989)); *In re Motorsports Merch. Antitrust Litig.*, 112 F.Supp.2d 1329, 1337 (N.D. Ga. 2000).

79.    This antitrust case is no different; it would surely involve further expense in addition to the amounts already expended if the Action proceeded to trial. For instance, proceeding to trial would require additional discovery, including the resolution of a number of motions to compel that were pending at the time the Settling Parties reached Settlement; the briefing and resolution of numerous motions *in limine* yet to be filed; and cross-*Daubert* motions would certainly be filed. Plaintiffs would also have to oppose BAR/BRI's motion for summary judgment and motion to bifurcate the trial. These costs would substantially increase

1   the significant costs and fees already incurred.

2         80.    Additionally, the litigation would most likely take several years

3   to finally resolve, considering the length of trial and appeals. Accordingly,

4   avoiding a trial and inevitable appeals in this complex, antitrust suit strongly weigh

5   in support of approval of the Settlement, rather than prolonged and uncertain

6   litigation. *See DIRECTV,* 221 F.R.D. at 527 ("Avoiding such a trial and the

7   subsequent appeals in this complex case strongly militates in favor of settlement

8   rather than further protracted and uncertain litigation").

9         **3.    The Risks of Maintaining Class Certification throughout**
10              **Trial**

11        81.    This Court certified a nationwide Class. Although Plaintiffs

12  believe it is unlikely, there is no guarantee that Defendants would not move for and

13  obtain decertification of the Class before or during trial. *See In re Nasdaq Market-*

14  *Makers Antitrust Litig.,* 187 F.R.D. 465, 476 (S.D.N.Y. 1998). As noted by one

15  court, if "insurmountable management problems were to develop at any point, class

16  certification can be revisited at any time under Fed.R.Civ.P. 23(c)(1)." *Id.* Further,

17  even if the Class remained certified throughout the trial and Plaintiffs prevailed,

18  Defendants would surely challenge class certification on appeal. If at any point the

19  Class were decertified or certification were reversed on appeal, the Class would

20  recover nothing. Thus, this factor also weighs in favor of the Settlement.

21        **4.    The Relief Offered in Settlement**

22        82.    The Settlement provides a significant Settlement Fund of $49

23  million as well as valuable non-monetary relief. Defendants deposited this money

24  into an escrow account on April 6, 2007 where it is currently earning interest for the

25  benefit of the Class.

26        83.    When compared to Defendants' expert's estimated damages, the

27  $49 million is an excellent result. According to Defendants' experts, the Class

suffered no antitrust impact or damages respecting Plaintiffs' Section 2 claim under the Sherman Act or Section 7 claim under the Clayton Act. Defendant's expert further opined that Plaintiffs suffered no antitrust impact or damages with respect to Plaintiffs' Section 1 claim under the Sherman Act, but if they did, it was limited to at most, approximately $7 million  Therefore, the $49 million represents seven times more than Defendants' expert's most generous estimate of damages.

84.    While the $49 million does not represent Plaintiffs' expert's full amount of estimated damages, "settlement is about compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Warfarin*, 212 F.R.D. at 257. The $49 million does, however, represent approximately thirty-percent (30%) of Plaintiffs' damages, estimated by their expert to be in the range of $158 million to $168 million. Thus, the $49 million represents a significant portion of Plaintiffs' expert's estimated damages. Moreover, Defendants made clear their intention to mount a substantial attack on Plaintiffs' damages expert on multiple grounds as set forth in Defendants' Combined Response. While Plaintiffs believe that they could have overcome these anticipated attacks, the outcome was uncertain.

85.    Courts have routinely approved class action settlements where the settlement amount is in the percentage range of the claimed amount of damages here, as well as where the settlement amount was a substantially lower percentage of the claimed amount of damages. *See In re Cendant Corp. Litig.*, 264 F.3d at 241 (noting that recoveries can range from 1.6% to 14% and affirming settlement representing 36% of recovery); *Nichols v. Smithkline Beecham Corp.*, No. 00-6222, 2005 WL 950616, at *16 (E.D. Pa. April 22, 2005) (approving settlement that represented between 9.3% and 13.9% of the claimed damages); *In re Warfarin*, 212 F.R.D. at 258 (finding settlement amount representing 33% of maximum possible recovery was well within a reasonable range when compared with recovery percentages in other class action settlements).

86      Although Plaintiffs believe their case is strong and that they could recover damages at trial, there is always the risk that Plaintiffs may not recover anything. "The history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or negligible damages, at trial or on appeal." *In re Nasdaq*, 187 F.R.D. at 476.

87.     Further, if the case did not settle, Plaintiffs risk the valuable non-monetary relief that Class Counsel negotiated. This relief addresses many of the concerns that prompted the filing of this lawsuit, such as the "market allocation" agreement between BAR/BRI and Kaplan that Plaintiffs allege is illegal and other barriers to entry. This valuable non-monetary relief, in addition to the significant fund of $49 million, weigh heavily in favor of Settlement.

### 5.    The Extent of Discovery Completed and the Stage of Proceedings When the Parties Reached the Settlement

88.     "To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery." *In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 176 (S.D.N.Y. 2000). However, "the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of trial " *Id.* (quoting *Martens v. Smith Barney, Inc*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)). What is required is that "sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently." *Newberg* at § 11:41.

89.     The record here supports final approval of the Settlement. Class Counsel conducted extensive discovery regarding each of the relevant issues in the case, such as: (a) the negotiation, terms and impact of the co-marketing agreement between BAR/BRI and Kaplan; (b) BAR/BRI's competitive activities and interactions with competitors; (c) BAR/BRI's purchase of West Bar's assets; (d) the

FINDINGS OF FACT AND CONCLUSIONS OF LAW

geographic market for bar review courses; (e) market shares; and (f) barriers to entry and market conditions. Plaintiffs also deposed fourteen fact witnesses, deposed each of Defendants' experts on issues relating to liability, damages, and class certification, and reviewed and analyzed more than 400,000 pages of documents.

90.    Further, at the time Class Counsel negotiated the Settlement, the Settling Parties had the benefit of key briefing and rulings on class certification and Kaplan's motion for summary adjudication. Accordingly, when Class Counsel negotiated the Settlement, they had more than sufficient information to adequately assess the strengths and weaknesses of the case. The amount of discovery taken in this case and the stage of the proceedings weighs heavily in favor of the Settlement. *See DIRECTV,* 221 F.R.D. at 528 ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair").

**6.    The Experience and Views of Counsel Favor Final Approval**

91.    In assessing the adequacy of the terms of a settlement, the trial court is entitled to and should rely upon the judgment of experienced counsel for the parties. *See DIRECTV,* 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation" (internal quotations and citations omitted)); *see also Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977). The basis for such reliance is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995). Indeed, when evaluating a proposed settlement, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel. *See Flinn v. FMC Corporation,* 528 F.2d 1169, 1173 (4th Cir. 1975); *Hanrahan v. Britt,* 174 F.R.D. 356, 366-368 (E.D. Pa. 1997) (presumption of

correctness applies to a class action settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery, citing *Manual for Complex Litigation* § 30.41 (2nd ed. 1985)).

92.    Class Counsel have considerable experience in litigating antitrust matters, class actions, and other complex litigation, as their firm resumés show.

93.    After thorough consideration, Class Counsel concluded that the Settlement terms are fair, adequate and reasonable and in the best interests of the Class as a whole, and recommended that it be granted final approval. In negotiating the terms of the Settlement, Class Counsel represented that they considered a multitude of factors, including: (a) the nature and complexity of the alleged offenses; (b) the availability and admissibility of evidence to support each of the required elements of the alleged causes of action; (c) the nature and idiosyncrasies of the bar review business; (d) the extent to which Class Members were damaged by the alleged conduct of Defendants; (e) the defenses asserted; (f) the anticipated motions to be filed by Defendants; and (g) the benefit of obtaining a settlement on the proposed terms now, as opposed to awaiting a potentially greater settlement or judgment at some unknown time in the future.

94.    Moreover, Class Counsel have demonstrated a high degree of competence in the litigation of this case. With the benefit of extensive factual and expert discovery and arduous motion practice, including class certification and summary judgment, Class Counsel strongly believe that the Settlement is a fair, adequate, and reasonable resolution of the Class' dispute with Defendants, and is preferable to continued litigation and the costs and uncertainties associated therewith. Accordingly, this factor weighs in favor of approval of the Settlement.

7.    **The Settlement Enjoys Overwhelming Class Support**

95.    The last criterion for final approval is the reaction of the Class.
*See Officers for Justice v. Civil Serv. Comm'n of San Francisdo*, 688 F.2d 615, 625
(9th Cir. 1982). In any class action of significant size, the absence of any
objections would be "extremely unusual." *See In re Anthracite Coal Antitrust
Litigation*, 79 F.R.D. 707, 712-13 (M.D. Pa. 1978). *DIRECTV*, 221 F.R.D. at 529
("It is established that the absence of a large number of objections to a proposed
class action settlement raises a strong presumption that the terms of a proposed
class settlement action are favorable to the class members.").

96.    The Settlement enjoys the overwhelming support of the Class.
The Notice was delivered by first class U S. mail to approximately 376,000 Class
members. As of August , 2007, more than 52,000 claims have been filed. In
contrast, only 54 Class Members have submitted Objections. The reaction from the
Class warrants final approval of the Settlement. *See e g., Boyd v. Cechtle Corp.*,
485 F.Supp. 610, 624 (N.D. Cal. 1979) (objections from only 16 percent of the
class was persuasive that the settlement was adequate).

C.    **The Objections Are Overruled**

(1)    **The Adequacy of the Settlement Does Not Depend on
the Individual Desires of the Objecting Plaintiffs**

97.    The Court rejects the arguments by four Objectors or groups of
Objectors that the Settlement should not be approved because the Objecting
Plaintiffs object to the terms of the Settlement. To the contrary, "agreement of the
named plaintiffs is not essential to approval of a settlement which the trial court
finds to be fair and reasonable." *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th
Cir. 1982); *see also Lazy Oil Co v. Witco Co.*, 95 F. Supp. 2d 290, 334 (W.D. Pa.
1997).

98.    Multiple courts have approved class action settlements
notwithstanding the objections of the class representatives. *See, e.g Officers for*

-32-
FINDINGS OF FACT AND CONCLUSIONS OF LAW

*Justice,* 688 F.2d at 631; *Parker,* 667 F 2d at 1204 (affirmed the approval of a settlement of an employment discrimination class action over the objections of 10 of the 11 named plaintiffs); *Maywalt v. Parker & Parsley Petroleum,* 864 F. Supp. 1422 (S.D.N.Y. 1994), *aff'd* 67 F.3d 1072 (2d. Cir. 1995) (granting final approval of a securities fraud class action over some 2,700 objections, including certain of the class representatives).[3] The rationale is that "[t]o empower the Class Representatives with what would amount to an automatic veto over the Proposed Settlement does not appear to serve the best interests of Rule 23 and would merely encourage strategic behavior 'designed to maximize the value of the veto rather than the settlement value of the claims.'" *Maywalt,* 864 F. Supp. at 1430, quoting *In re Ivan F. Boesky Sec. Litig.,* 948 F.2d 1358, 1366 (2d Cir. 1991).

99.    This Court is not required to give any special deference to the Objecting Plaintiffs. *See In re Airline Ticket,* 953 F. Supp. At 282 n.3 (considering but giving "no special deference based merely on [objector's] status as a class representative" and approving settlement). The Representative Plaintiffs support approval of the Settlement.

(2)    **The Risks Associated With The Clayton Act Section 7 Claim Weigh In Favor Of The Settlement**

(i)    **Objectors Ignore the Hurdles Facing Plaintiffs at Trial**

100.    Certain Objectors argue that the case against Defendants is too strong to settle. These Objectors, however, fail to provide the Court with any

---

[3] *See also, Olden v. LaFarge Corp.,* 2007 U.S. Dist. LEXIS 5954 at *40-41 (E.D. Mich. 2007) (approving settlement without the support of any of the class representatives); *Lazy Oil,* 95 F. Supp. 2d. at 333-34 (approving settlement and noting that "agreement of the named plaintiffs is not essential to approval of a settlement which the trial court finds to be fair and reasonable"); *Boyd,* 485 F. Supp. at 624 (approving consent decree in an employment discrimination class action, despite the fact that "[a]pproximately sixteen percent of the class, including three of the four named plaintiffs, have filed some opposition to the settlement").

evidence or analysis. Their argument is based more on the unsubstantiated optimism of Disner, than on the facts of the case and the risks associated with trial.

101. The Objecting Plaintiffs argue that the strength of the Section 7 claim weighs in favor of rejecting the Settlement against BAR/BRI, but not Kaplan. Notwithstanding the impropriety of this request, the position is contrary to the position that the Objecting Plaintiffs and Disner previously advocated in early December 2006, when they all supported the monetary terms of the Settlement. Moreover, it directly contradicts statements Disner made under oath in a declaration filed with this Court on March 12, 2007. Furthermore, this Court finds this argument is without merit.

102. The Objecting Plaintiffs urged the Court to approve Kaplan's agreement to pay $13 million of the Settlement and its release from the Action, but urge the Court to reject the remainder of the Settlement (involving BAR/BRI). The Settlement Agreement does not specify how much either Defendant is paying; nor does it allow for the Court to approve parts of the Settlement, while disapproving others. The Settlement "must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026 ("Neither the district court nor this court ha[s] the ability to delete, modify or substitute certain provisions"). In *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986), the Supreme Court noted that a district court is only permitted to "accept the proposal, reject it and postpone the trial date to see if a different settlement can be achieved, or reject it and try the case." Since the Settlement as a whole is fair, reasonable and adequate, it is approved in its entirety.

103. As with the Sherman Act claims, Class Counsel thoroughly considered the strengths of the Section 7 claim and concluded that Plaintiffs faced many hurdles, including:

(a)    Application of the four-year statute of limitations and/or the doctrine of laches, possibly defeating or diminishing the claim all

1 together and certainly dividing the Class as currently defined. *See Midwestern*

2 *Machinery Co., Inc. v Northwest Airlines, Inc.*, 392 F.3d 265 (8th Cir. 2004);

3 *California v. American Stores Co.*, 495 U.S. 271, 297 (1989) (J. Kennedy,

4 concurring).[4]

5

6        (b)    Establishing product and geographic market definitions,

which requires a more detailed analysis than that needed for the other claims. *See*

7 *U.S. v. Continental Can Co.*, 378 U.S. 441, 459 (1964).[5]

8

9        (c)    Establishing that BAR/BRI acquired West Bar in light of

BAR/BRI's contention that BAR/BRI did not purchase West bar's stock, assets or

10 student contracts and that West Bar was already out of business at the time that

11 BAR/BRI agreed to provide bar review courses to former West Bar students and

12 only incidentally acquired certain limited intellectual property from West Bar;

13        (d)    Establishing the requisite causal link between BAR/BRI's

14 acquisition of certain limited intellectual property from West Bar, which had gone

15 out of business and was no longer a competitor, and the claimed damages;

16

17        (e)    Defeating the "failing company" doctrine defense, which

would, at the very least, require a "battle of the experts" to resolve;

18

19        (f)    Overcoming a dearth of precedent on the issue of the

20 divesture remedy; and

21        (g)    Overcoming the fact that no private *consumer* class action

22 has ever resulted in a divestiture remedy.

23 ——————————————

24 [4] Class Members from 1997 through 2001 who previously relied on tolling principles available for their Sherman Act claims (*i.e.* fraudulent concealment,

25 continuing violation, etc.) would recover nothing, even in the event of a total

26 victory, because these tolling provisions are not available with respect to the Section 7 claim.

27

28 [5] This Court has not conducted this analysis regarding Plaintiffs' product or geographic market definitions for a Section 7 claim.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

104.    As the Supreme Court said when it authorized private suits in 1989, "Dissolution could be considerably more awesome... [D]issolution was a judgment ... of corporate death, which represented the extreme rigor of the law." *California v. American Stores*, 495 U.S. at 289, quoting *People v. North River Sugar Refining Co.*, 121 N.Y. 582, 608 (1890). Even if divestiture was appropriate, it would not necessarily be fashioned in terms of splitting up BAR/BRI. Since BAR/BRI's purchase of West Bar's assets was limited to some intellectual property, divestiture might only mean requiring BAR/BRI to give up intellectual property rights to materials that are ten years old. In addition, there remained a risk that the claims against BAR/BRI, including the Section 7 claim, would be decided adversely on summary judgment.

105.    Given these hurdles a substantial cash settlement coupled with significant additional relief, including termination of the very agreement which was the catalyst of the lawsuit, is fair, adequate, reasonable, and in the best interest of the Class.

(ii)    **The Bifurcation Motion Is Improper, Lacks Merit and is Denied**

106.    Bifurcating the Section 7 claim from the Sherman Act claims, as requested by the Objecting Plaintiffs, would create further obstacles and be a waste of time and resources. Not only is the "conditional motion" for bifurcation premature and improper (as the motion before the Court is for final approval of a Settlement, which, if granted, moots any such motion), it defies logic.

107.    Courts have discretion to order a separate trial of any claim "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed.R.Civ.P. 42(b); *Hayden v. Chalfant Press, Inc.*, 281 F.2d 543, 544 (9th Cir. 1960). "It is the interest of efficient judicial administration that is to be controlling under the rule, rather than the

1   wishes of the parties." Wright & Miller, Federal Practice and Procedure, § 2388

2   (2d ed. pkt part 2006). The moving party has the "burden of proving that the

3   bifurcation will promote judicial economy and avoid inconvenience or prejudice to

4   the parties." *Spectra-Physics Lasers, Inc v Uniphase Corp.*, 144 F.R.D. 99, 101

5   (N.D. Cal. 1992); *see also Ebay, Inc. v. Bidder's Edge, Inc.*, 2000-2 Trade Cases P

6   73,039, 56 U.S.P.Q.2d 1856 *4 (C.D. Cal. July 25, 2000); *Burton v. Mountain West

7   Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598 (D. Mont. 2003).

8          108.   That burden cannot be met as bifurcation belies judicial

9   economy here. The Objecting Plaintiffs concede that "the only difference between

10   the Section 7 and Sherman Act claims is the damages." Furthermore, the proposal

11   to try the Section 7 claim first, even if granted, may recover damages for Class

12   Members only in the four years before the filing of the Initial Complaint. Class

13   Members from 1997 through 2001 who previously relied on tolling principles

14   available for their Sherman Act claims (*i.e.* fraudulent concealment, continuing

15   violation, etc.) could recover nothing, even in the event of a total victory, because

16   the application of those tolling provisions to a Section 7 claim is uncertain. To

17   recover anything for these Class Members, the Sherman Act claims would still

18   need to be tried and proven, requiring use of largely the same evidence and

19   witnesses, regardless of the result of the Section 7 claim. This would result in a

20   duplication of time and effort that squanders judicial resources.   The rules do not

21   permit a plaintiff to try causes of action *seriatim*, starting with whatever claim it

22   may think is strongest. *See, e.g., In re Bendectin Litigation*, 857 F.2d 290, 307 (6th

23   Cir. 1988) ("The piecemeal trial of separate issues in a single suit is not to be the

24   usual course").

25

26

27

28

(3)   The $49 Million Settlement Fund is Fair, Reasonable and
       Adequate in Light of the Strengths and Weakness in
       Plaintiffs' Case

109.   Nine Class Members, as well as the Objecting Plaintiffs, argue

that the $49 million is inadequate or that their individual shares will be insufficient.

None of these Objectors, however, provide the Court with any cogent analysis or

evidence showing that the $49 million is inadequate.

110.   Plaintiffs' experts estimated damages for all claims as being in

the range of $158 million to $168 million.  Defendants' expert opined that the

Class suffered no damages with respect to both the Section 2 claim under the

Sherman Act and the Section 7 claim under the Clayton Act, and, at most, suffered

damages of $7 million with respect to the Section 1 claim under the Sherman Act.

Thus, the $49 million represents approximately 30% of Plaintiffs' expert's

estimated damages, and 700% of Defendants' expert's estimated damages.[6]

111.   When evaluated against other settlements approved, the $49

million is fair, reasonable and adequate.  *See In re Cendant Corp. Litig.*, 264 F.3d

at 241 (noting that recoveries can range from 1.6% to 14% and affirming settlement

representing 36% of recovery); *Newman v. Stein*, 464 F.2d 689 (2d Cir.1972)

(approving settlement representing 14% of potential recovery); *Nichols v.

Smithkilne Beecham Corp*, No. Civ. A.00-6222, 2005 WL 950616 at *16

(approving settlement that represented between 9.3% and 13.0% of claimed

damages); *see also Phemister v. Harcourt Brace Jovanovich*, No. 77 C 39, 1984

WL 21981 at *11 (N.D. Ill. September 14, 1984) ("Many antitrust settlements that

---

[6] One Objector argues that the Settlement "smells of collusion" because Disner
believes that the damages are up to ten times more than the Settlement Fund.  There
is absolutely no evidence in the record showing any signs of collusion.  To the
contrary, the record, including the declaration of the Honorable Daniel Weinstein,
shows that the settlement negotiations were hard-fought at all times.

achieve substantially less than single damages for the class are considered fair and adequate settlements").

(4)  **Courts Do Not Evaluate Settlements in Light of the Treble Damages That Might Be Available After a Successful Trial.**

112.  The Court rejects the Objecting Plaintiffs' argument that the monetary portion of the Settlement is inadequate because the Section 7 claim is worth $360 million. Objecting Plaintiffs arrive at this figure by trebling Plaintiffs' expert's estimated damages of $146 million since 2001 and then multiplying that figure by their estimated chances of winning at trial.

113.  This analysis is flawed as it presupposes that Plaintiffs will succeed at trial. Evaluating the Settlement in light of the treble damages available at the end of a successful trial is purely speculative. Courts do not consider such damages when calculating a reasonable range of recovery. *See e.g., City of Detroit v. Grinnel Corp.*, 495 F.2d 448, 458 (2d Cir. 1974) ("[T]he vast majority of courts which have approved settlements in this type of case . . . have given their approval to settlements which are traditionally based on an estimate of single damages only"); *In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03-0085 FSH, 2005 WL 30098808 at *9 (D. N.J. Nov. 9, 2005) ("[i]n order to evaluate the propriety of an antitrust class action settlement's monetary component, a court should compare the settlement to the estimated single damages"); *In re Warfarin*, 212 F.R.D. 231, 257 (D. Del. 2002) (citing *In re Lorazaepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 376 (D.D.C. 2002). None of the Objectors has cited any authority to the contrary.

(5)  **Defendants' Ability to Pay More Is Irrelevant**

114.  The Court rejects the argument by certain Objectors that since BAR/BRI is profitable and therefore has the ability to pay more, the $49 million Settlement is inadequate. Courts have repeatedly rejected this argument. *See In re*

-39-
FINDINGS OF FACT AND CONCLUSIONS OF LAW

*Nasdaq*, 187 F.R.D. at 478 (stating that the defendants' ability to pay a very substantial judgment does not militate against settlement); *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) ("the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate").

### (6)    The Amount Sought In the FAC Is Immaterial

115.   The Court rejects the argument by two groups of Objectors that the $49 million Settlement Fund is inadequate because it is substantially less than the amount sought in the FAC ($900 million).  The amount sought in the FAC, however, was based on the recovery of treble damages before discovery was taken and before Plaintiffs' experts provided an estimate of the damages.  The Court considers the $49 million Settlement Fund in light of the time of settlement.

### (7)    The Present Value of a BAR/BRI Course Is Irrelevant

116.   The Court rejects the argument by one Objector that the $49 million Settlement Fund is inadequate because Class Members will only get a pro-rata share of $145.70, which he claims is equivalent to 5% of the present value of his course ($2700).  The present value of a BAR/BRI course has nothing to do with the amount of alleged overcharges to the Class.  Further, the amount each Class Member will receive under the Settlement depends on the number of Class Members who file valid Claim Forms, among other things, as set forth in the Plan of Allocation.

### (8)    The Objectors Miscalculate the Risks Going Forward

117.   The Court rejects the argument by certain of the Objectors that the $49 million Settlement Fund is inadequate because of the limited risk in the Action.  For instance, they argue that there is a low risk of decertification and that

1    future costs are limited because discovery is complete.  These conclusory

2    Objections, however, ignore the myriad of risks identified and discussed at length

3    by Settling Plaintiffs, including the further costs of going to trial and the risks

4    associated with establishing damages.

5            (9)     **The Lack of Provisions Prohibiting Future Misconduct or**

6                    **Dissolution Do Not Render the Settlement Inadequate**

7

8            118.    The Court rejects the argument by certain Objectors that the

9    non-monetary relief is either illusory or insufficient because it does not prohibit

10   Defendants from engaging in anticompetitive or unlawful conduct in the future.

11   Courts are reluctant to sustain such objections, finding that the "best assurance

12   against future antitrust violations by defendants is the persistent threat of litigation

13   by any class member." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 337

14   (N.D. Ga. 1993) (approving settlement as fair, reasonable and adequate despite the

15   absence of injunctive relief prohibiting the defendant from engaging in future

16   misconduct).

17           119.    The Settlement requires Defendants to terminate the agreement

18   Plaintiffs allege is unlawful.[7]  BAR/BRI is also required to provide a clear

19   statement to initial enrollees that they are not contractually obligated to pay the full

20   amount for a BAR/BRI course should they choose not to take such a course upon

21   graduation from law school.  Since many law students enter into a contract with

22   BAR/BRI in their first year of law school, Plaintiffs have argued that the obligation

23   to pay the full amount for the course serves as a powerful hold on these students,

24

25   _____

26   [7] At least one Objector incorrectly argues that Plaintiffs accomplished nothing sought
     in the Action.  Plaintiffs achieved termination of the alleged non-competitive

27   agreement which was the catalyst of this Action. That Plaintiffs did not obtain
     everything sought in the FAC does not render the Settlement inadequate, as settlement

28   is about compromise.

thereby locking-up a substantial portion of the market for a three-year period. Thus, this provision removes a significant barrier to entry into the market by competitors, who would otherwise face the potentially overwhelming obstacle of trying to compete in a market with few available customers for several years after entry. Furthermore, BAR/BRI has stated that it is committed to accurate advertising as required by the Lanham Act, the Federal Trade Commission Act, and similar laws. Settlement Agreement at ¶¶ 38(a) and 39.

### (i)    Dissolution Does Not Benefit the Class

120.    Other Objectors criticize the Settlement because it does not provide for the break-up of BAR/BRI  According to the Objecting Plaintiffs, "a significant number of class members are directly interested in the future" of the bar review industry and that BAR/BRI would be broken up if Plaintiffs instead went to trial and prevailed on the Section 7 claim.

121.    First, a significant number of Class Members are in favor of the Settlement and have not filed any Objections on the ground that there are no provisions for dissolution.

122.    Second, there are no guarantees that Plaintiffs would prevail at trial and obtain an order breaking-up BAR/BRI, as even Disner has acknowledged. Even if Plaintiffs did prevail at trial, any verdict in their favor, including divestiture, would be subject to appeal thereby delaying any recovery to the Class. This is especially true here, where the Objecting Plaintiffs concede the complexity of Section 7 and the dearth of relevant authority applying or interpreting that section in private consumer class action cases.

---

[8] The argument that this provision is "practically self-defeating" because BAR/BRI can rescind the statement on five days notice to Class Counsel is inaccurate. To rescind the statement, BAR/BRI must apply to the Court on five days notice to Class Counsel and establish "good cause." *See* Settlement Agreement at ¶ 38(b).

(ii)    **Class Counsel Cannot Ensure Competition In the Bar Review Market Through the Settlement**

123.    The Court rejects arguments by other Objectors that the Settlement does not encourage competitors into the market, require BAR/BRI to lower its prices, or require Defendants to enter each other's market.

124.    Class Counsel cannot force competitors to enter the market through the Settlement.

(10)    **The Scope And Contents of the Release Are Proper**

125.    The Court rejects arguments by Objectors that "settling defendants are buying immunity from all claims, including those not alleged in the complaint. If the settlement proponents seek a broad release, class members should be more adequately compensated." This argument, too, ignores the actual terms of the Settlement Agreement. The Release expressly preserves the claims in the New York Actions. *See* Settlement Agreement ¶58.

126.    While the Release includes "all manner of claims . . . concerning or relating to any conduct alleged in the Complaint in this Action, and including without limitation all claims that have been asserted or could have been asserted in any litigation," this language is typical and has been approved by many courts, including the Ninth Circuit. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1284, 1287-88 (9th Cir. 1992) (noting that the weight of authority holds that federal courts may release claims which are not in the complaint provided they are based on the "same factual predicate"); *In re Prudential Ins. Co. America Sales Practice Litig.*, 148 F.3d at 326 (finding it reasonable for release to include "other claims" and stating that "releases may include all claims, including unpleaded claims that arise out of the same conduct alleged in the case").

**(11)    The Possibility of a Cap and a Cy Pres Award Are Proper**

127.  The Court rejects the argument of certain Objectors that the possibility of a cap on individual recovery resulting in a *cy pres* award should defeat approval of the Settlement.  Those provisions do not render the Settlement inadequate.

128.  The Maximum Payment was a heavily negotiated term of the Settlement.  Because the Net Settlement Fund is to be distributed *pro rata* among the Class Members who make a valid claim, the Maximum Payment prevents a small group from receiving a multi-million dollar windfall.  This 30% Maximum Payment coincides with Plaintiffs' expert's estimate that the average overcharge resulting from Defendants' alleged conduct was approximately 30% nationwide.

129.  The Maximum Payment does not create any benefit for Defendants as they will not receive any money back if the Maximum Payment and *cy pres* award are implicated.  In that event, this Court would determine the recipient of any *cy pres* award of the undistributed funds.

**(12)    A Second Opt-Out Period Is Not Required**

130.  In granting the Preliminary Approval Order, the Court found that an additional opt-out period was unnecessary.

131.  A second opt-out is not required.  *See Officers for Justice*, 688 F.2d at 635 (citations omitted); In re *Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d at 518.

**(13)    The Sealed Record Does Not Impact Approval of the Settlement**

132.  The Court rejects the argument by certain Objectors that final approval of the Settlement should be delayed and/or denied on the ground that the

1

2

Class was purportedly denied access to the pleadings filed under seal pursuant to a
protective order entered by the Court on January 13, 2006 (the "Protective Order").

3

4

These Objections are moot, untimely, and more importantly, ignore the crucial role
served by the Court in the class action settlement approval process.

5

6

133.   These Objections are overcome by the safeguards of the three

7

step class action settlement approval procedure being utilized here -- preliminary
approval, dissemination of notice, and a fairness hearing.  This procedure,

8

9

commonly employed by federal courts and endorsed by leading class action
commentators, serves the dual function of safeguarding class members' due

10

11

process rights and enabling the court to fulfill its role as the guardian of class
members' interests. *See Newberg* at § 11.25, quoting *Manual for Complex*

12

13

*Litigation* (Third) § 30.41 (1995).

14

134.   These Objections disregard the fact that, in its role as guardian

15

for the Class, this Court has had access to all of the pleadings filed by the parties,
including those under seal pursuant to the Protective Order.  The Court's access to

16

17

and review of these documents throughout the pendency of this Action precludes
any contention that this Court is incapable of assessing the fairness, adequacy and

18

19

reasonableness of the Settlement.  To the contrary, this Court is intimately familiar
with facts and legal theories this matter.

20

21

135.   The Objections based upon the inaccessibility of documents are

22

untimely.  Class Members received notice of the Settlement in early April 2007,

23

and could have acted earlier to obtain access to the materials.  Instead, they waited

24

five weeks, until the Objections were due, to request a continuance of the Final

25

Settlement Hearing to permit a review the sealed documents, or in the alternative, a

26

rejection of the Settlement.  Such a tactic is inherently suspect and prejudicial to

27

the Class Members who have voiced their approval of the Settlement.

28

**(14)   Use of the Simple Claim Form Is Proper**

136.   The Court rejects the argument by certain Objectors that requiring use of the Claim Form should preclude the Court from approving the Settlement.  The claim form process, however, is not designed to minimize participation, as none of the Settlement Fund will revert back to Defendants.  Further, these Objections also disregard the facts of the case and the economic reality that claims administration costs are paid from the Settlement Fund.  Any cash distribution from a settlement fund involves costs.  The Claims Administrator incurs the expenses of cutting a check for each claimant; mailing the checks; canceling checks that were lost, misplaced, or never received; and reissuing checks to such claimants.  All of those costs are charged to the Settlement Fund.

137.   While BAR/BRI has the names and addresses of the Class Members in its records, these addresses go back as far as 1997.  Many Class Members have moved at least once, if not numerous times, since purchasing the BAR/BRI bar review course.  Also, many Class Members have changed their names since taking the BAR/BRI bar review course.  Blindly mailing checks to Class Members without regard for these facts would be costly, unnecessary and wasteful, and would deplete the Settlement Fund without necessarily benefitting Class Members. Class Counsel, based on their experience, properly considered various settlement structures and concluded that a claims-made structure would preserve the Settlement Fund for the benefit of Class Members who want to participate in the Settlement, while at the same time ensure that cash distributions reach Class Members.

138.   The Claim Form is relatively simple and should be self-explanatory for these sophisticated Class Members.  This is demonstrated by the fact that over 52,000 Claim Forms have been filed as of August 16, 2007.

1    139.   Therefore, the use of a claim form in the claims process is not a

2 reason for denying final approval. *See e g*, *In re Insurance Brokerage Antitrust*

3 *Litig.*, No. 04-5184 (GEB), 2007 WL 542227 at *10 (D. N.J. Feb. 16, 2007)

4 (granting final approval of settlement which utilized a simple claim form process).[9]

5          **(15)   The Contents of the Notice Satisfy Rule 23 and Due**

6                 **Process**

7

8    140.   The Court rejects the argument by certain Objectors that the

9 content of the Notice, which this Court approved, is insufficient.  Among the items

10 allegedly missing are a statement that the Objecting Plaintiffs do not support the

11 settlement and a copy of a memo authored by them, as well as information

12 regarding the size of the Class, the amount each Class Member will receive, the

13 average cost per Class Member, the aggregate amount of damages, and notice of

14 any attorneys' referral agreement.  None of this information is required to be

15 included in the Notice under due process or Fed.R.Civ.P. 23.[10]

16    141.   As set forth at length in Section V, *supra*, the Ninth Circuit

17

18 _____

19 [9] The Court further rejects the argument that the Settlement should not be approved
because it lacks provisions requiring claims processing to be completed in a
20 reasonable time, monitoring, or reporting requirements.  To the contrary, the
21 Settlement contains a number of provisions designed to protect the Class.  For
instance, all parties, including the Claims Administrator, are subject to the Court's
22 jurisdiction. *See* Settlement Agreement at ¶ 46. Additionally, Class Counsel must use
23 their best efforts and act in good faith to effectuate and implement all terms and
conditions of the Settlement, including processing of claims. *See id.* at ¶ 68. Further,
24 before cash distributions are made, Class Counsel must apply to the Court for an order
25 approving distribution and to the extent necessary, for a determination of all
26 valid/invalid claims. *See id.* at ¶ 47.

27 [10] Further, Class Counsel dispute the content and accuracy of the Objecting Plaintiffs'
28 nine-page memo and believe it would have been misleading, not to mention cost
prohibitive, to disseminate to the Class.

-47-

FINDINGS OF FACT AND CONCLUSIONS OF LAW

1    requires a very general description of the proposed settlement in the settlement

2    notice, which is satisfied here. *See Churchill Village, L.L C* , 361 F.3d at 575;

3    *Torrisi*, 8 F.3d at 1374.

4

5              **(16)    Class Counsel Has Fulfilled Its Fiduciary Obligation to the**
                        **Class as a Whole and is Adequate Under Fed. R. Civ. P. 23**

6

7              142.   The Court rejects the argument by one Objector that Class

8    Counsel are inadequate due to a "rift" within McGuireWoods LLP (one of three

9    Class Counsel), allegedly because "one of the partners, Eliot Disner, has filed a

10   brief objecting to the proposed settlement...." This is inaccurate. The record is

11   undisputed that in December of 2006, after significant consideration, all Class

12   Counsel working on the case (including Disner) agreed that the Settlement was

13   fair, adequate and reasonable. The brief in question was filed by the Objecting

14   Plaintiffs without the authorization of Class Counsel. *See* Docket No. 281.

15   Moreover, Disner initially agreed to the Settlement and supported it at the

16   Preliminary Approval hearing. The viability of the theories espoused in the

17   unauthorized filing by the Objecting Plaintiffs were thoroughly considered by

18   Class Counsel prior to entering the Settlement, with the ultimate decision by Class

19   Counsel as a whole (including Disner) that the Settlement was fair, adequate and

20   reasonable. Therefore, this Court finds that Disner's subsequent reversal of

21   position and departure from McGuire Woods LLP is immaterial to this Court's

22   consideration of the fairness, reasonability, and adequacy of the Settlement.

23             143.   Class Counsel has fulfilled its fiduciary duty to the Class as a

24   whole, and the unauthorized filing by the Objecting Plaintiffs does not change that.

25   The primary responsibility of class counsel is to represent the entire class as it

26   believes appropriate. *See* Advisory Committee Note, Fed. R. Civ. P. 23(g)

27   ("Paragraph (1) . . . articulates the obligation of class counsel to represent the

28

interests of the class, as opposed to the potentially conflicting interests of individual class members."); *see also Newberg* at § 11.65 ("The general rule is that the named plaintiff and counsel bringing the action stand as fiduciaries for the entire class, commencing with the filing of a class complaint."); *Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 832 (3d Cir. 1973) ("[C]lass action counsel possess, in a very real sense, fiduciary obligations to those not before the court.").

144.  Class counsel must make their own determinations about the appropriate course of action, taking full account of their fiduciary obligation to the class as a whole. *See Olden supra*, 472 F. Supp. at 939; *In re "Agent Orange" Prod. Liab. Litig.*, 800 F.2d 14, 18-19 (2d Cir. 1986); *Lazy Oil Co.*, 166 F.3d at 590.

145.  It is for this Court to determine what is in the best interests of the Class after evaluating all arguments in favor of and against the Settlement. Class Counsel have conducted themselves throughout this case to aid the Court in this evaluation by performing its fiduciary duties to the Class, and are therefore adequate under Fed. R. Civ. P. 23.

## IX.   FAIRNESS OF PLAN OF ALLOCATION

146.  "As with settlement agreements, courts consider whether distribution plans are fair, reasonable, and adequate." *Lorazepam & Clorazepate*, 205 F.R.D. at 381; *see also City of Seattle*, 955 F.2d at 1284; *In re Citric Acid Antitrust Litigation*, 145 F. Supp.2d 1152, 1154 (N.D. Cal. 2001); *Vitamins Antitrust Litig.*, No. 99197, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000).  "[I]n evaluating the formula for apportioning the settlement fund, the Court keeps in mind that district courts enjoy broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members equitably." *Hammon v Barry*, 752 F. Supp. 1087, 1095 (D. D.C. 1990) (internal

1    quotations and citations omitted); *accord In re "Agent Orange" Prod. Liab. Litig.*,

2    818 F.2d 179, 181 (2d Cir. 1987).

3        147.   The Plan of Allocation was prepared by Class Counsel and

4    Defendants' Counsel in such a way as to fairly allocate the recovery among Class

5    Members in accordance with Plaintiffs' theories of potential damages in the Action.

6        148.   Finally, in addition to the input of the experts referred to above,

7    the Plan of Allocation was adopted only after significant arm's length discussions

8    among Class Counsel and Defendants' counsel.

9        149.   For the reasons set out above, this Court finds that the Plan of

10   Allocation is fair and reasonable.

11   **X.   CONCLUSION**

12

13       150.   The Settlement Agreement is comprehensive in its scope, is fair

14   and even-handed in its application, and is of substantial economic benefit to the

15   Class. The Court therefore approves the Settlement Agreement as fair, adequate and

16   reasonable.

17       151.   The Court finds that it is in the best interests of Class Members

18   that the Net Settlement Fund be disbursed, pursuant to the Plan of Allocation as

19   soon as possible, and that the Settlement Agreement resolves all claims in the Action

20   as to the Defendants.

21

22   DATED: Aug 10 , 2007                    _____

23                                           Honorable Manuel L. Real
                                             United States District Court Judge
24

25

26

27

28

FINDINGS OF FACT AND CONCLUSIONS OF LAW

Submitted by:

Sidney K. Kanazawa (SBN 84608)
McGUIREWOODS LLP
1800 Century Park East, 8th Floor
Los Angeles, California 90067
Telephone: (310) 315-8200
Facsimile: (310) 315-8210

Dan Drachler (*Pro Hac Vice*)
ZWERLING, SCHACHTER &
  ZWERLING, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
Telephone: (206) 223-2053
Facsimile: (206) 343-9631

Christine Bartholomew (SBN 211425)
FINKELSTEIN THOMPSON, LLP
601 Montgomery Street, Suite 665
San Francisco, CA 94111
Telephone: (415)398-8700
Facsimile: (415) 398-8704

Class Counsel

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

     I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1800 Century Park East, 8th Floor, Los Angeles, California 90067.

     On August 20, 2007, I served the following document(s) described as **[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

**SEE ATTACHED LIST**

☒   **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices. (C.C.P. § 1013 (a) and 1013a(3))

☐   **BY FACSIMILE:** At approximately _____ , I caused said document(s) to be transmitted by facsimile pursuant to Rule 2008 of the California Rules of Court. The telephone number of the sending facsimile machine was (310) 315-8210. The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

☐   **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder. (C.C.P. § 1013(d)(e))

☐   **BY HAND DELIVERY:** I delivered such envelope(s) by hand to the office of the addressee(s). (C.C.P. § 1011(a)(b))

☐   **BY PERSONAL SERVICE:** I personally delivered such envelope(s) to the addressee(s). (C.C.P. § 1011)

     I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

     Executed on August 20, 2007, at Los Angeles, California.

Glen A. Davis

Document3

## SERVICE LIST

Bradley S. Phillips, Esq.
Stuart N. Senator, Esq.
Munger Tolles & Olson LLP
355 S. Grand Avenue
35th Floor
Los Angeles, CA 90071-1560

Attorneys for *Kaplan, Inc*

And via email to:
Brad Phillips@mto.com
Stuart Senator@mto com
lee taylor@mto com

Steven F. Molo, Esq
Wayne Dale Collins, Esq.
Shearman & Sterling, LLP
599 Lexington Avenue
New York, NY 10022-6069

Attorneys for *West Publishing Corporation*

And via email to:
smolo@shearman com
wcollins@shearman.com

Edward A. Klein, Esq.
Heather H. Gilhooly, Esq
Liner Yankelevitz Sunshine & Regenstreif LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3503

Attorneys for *West Publishing Corporation*

And via email to:
hgilhooly@linerlaw.com
eklein@linerlaw com

Ryan Rodriguez, Esq.
3943 Irvine Blvd., #330
Irvine, CA 92602

And via email to·
ryanrodriguez7@hotmail.com

Lisa Gintz, Esq.
10725 Fontenot Road
Denham Springs, LA 70726

And via email to:
lisagintz@hotmail.com

Loredana Nesci, Esq
859 No. Hollywood Way, No. 206
Burbank, CA 91505

And via email to:
invisiblejet-usa@yahoo com
invisiblejet_usa@yahoo com
loredana.nesci@sbcglobal.net

DISNER LAW CORPORATION
Eliot G. Disner
A Professional Corporation
2029 Century Park East, 19th Floor
Los Angeles, CA 90067

And via email to:
edisner@disnerlaw.com

\4596456 1

## SERVICE LIST OF OBJECTING CLASS MEMBERS

| | |
|---|---|
| Robert C. Chojnakci<br>Law Offices of Robert C. Chojnacki<br>525 Laurel Avenue<br>Menlo Park, CA 94025 | Attorneys for:<br>Oriol, David (Louisiana Bar)<br>Tingle, Jason (Alabama Bar) and<br>Gutierrez, Oliver (California Bar)<br><br>And via email to:<br>chojnackilaw@yahoo.com |
| John W. Davis<br>Law Office of John W. Davis<br>4445 Eastgate Mall, 2nd Floor<br>San Diego, CA 92121<br><br>and<br><br>Steven F. Helfand<br>Helfand Law Offices<br>582 Market Street, Suite 1400<br>San Francisco, CA 94101 | Attorneys for:<br>Feldman, David<br>Gharabiklou, Cameron<br>Grant, Emily<br>Lang, Jeff<br>McDonald, Sarah<br>Patton, Cara<br>Schwartz, Rachel<br>Thomas, Greg<br><br>And via email to:<br>john@johnwdavis.com<br>steven@stevenhelfand.com |
| Joseph J. Angersola *(pro se)*<br>2803 N. Wolcott, Unit D<br>Chicago, IL 60657 | No email address |
| Anthony Valach *(pro se)*<br>4819 N. Fairfield Avenue, #2<br>Chicago, IL 60625 | And via email to:<br>anthonyvalach@gmail.com |
| Jay M. Wolman *(pro se)*<br>62 S. Huntington Avenue, Unit 23<br>Boston, MA 02130 | No email address |
| Joan Elizabeth Shreffler *(pro se)*<br>Four Embarcadero Center<br>Suite 3800<br>San Francisco, CA 94111 | And via email to:<br>shreffl@skadden.com |

Robert Gaudet, Jr. *(pro se)*
214 21st Avenue
Seattle, WA  98122

And via email to:
Robert_gaudet@yahoo.com


Sandeep Gopalan *(pro se)*
P.O. Box 877906
Tempe, AZ  85287

And via email to:
sandeepgopalan@hotmail.com


Elizabeth De Long *(pro se)*
9705 Fremont Avenue N
Seattle, WA  98103

And via email to.
Edelong06@gmail.com


Andrea Boggio *(pro se)*
1150 Douglas Pike
Smithfield, RI  02917

And via email to:
boggio@stanfordalumni.org


J  Garrett Kendrick
C. Benjamin Nutley
Kendrick & Nutley
1055 E. Colorado Blvd., Fifth Floor
Pasadena, CA  91106

Attorneys for:
Head, Justin
Helfrich, Ryan
Schneider, George
Slomba, Jonathan
Puntumapanitch, James

And via email to:
jgk@private-ag.com
Nutley@zenlaw com


Ronald D. Rosengarten
Rosengarten & Leven, LLP
23801 Calabasas Road, Suite 1015
Calabasas, CA  91302

Attorneys for:
Juranek, James
Juranek, Audrey
Le Blanc, Richard P., III

And via email to·
rdresq@sbcglobal.net


Charles A. Sturm
STEELE STRUM, PLLC
1000 Louisiana, Suite 3780
Houston, TX 77002

csturm@steelestrum.com

Carmine Giardino
The Giardino Law Firm, Inc.
8626 Tesoro Drive, Suite 510
San Antonio, TX 78217

and

Douglas N. Silverstein, Esq.
Kesluk & Silverstein
9255 Sunset Blvd., Ste. 411
Los Angeles, CA 90069

Attorneys for
Trevino, Arcelia

And via email to:

dsilverstein@californialaborlawattorney.com


Joshua R. Furman, Esq.
2228 Barry Avenue
Los Angeles, CA 90064

and

Jon M. Zimmerman
Law Offices of Jon M. Zimmerman
1420 5th Avenue, Suite 2200
Seattle, WA 89101

Attorneys for:
Lukoff, Aaron
Prendergast, John
Orange, David

And via email to:
joshua@furman.com
jrfurman@toyquest.com
jonMzimmerman@gmail.com


Lawrence W. Schonbrun
Law Offices of Lawrence W. Schonbrun
86 Eucalyptus Road
Berkeley, CA 94705

Attorneys for:
Chilimidos, Daryl

And via email to:
lschon@inreach.com


Darrell Palmer, Esq.
603 North Highway 101, Ste. A
Solano Beach, CA 92075

Attorneys for:
Schafer, Daniel M.
Evans & Mullinix, P.A.
Siegel, Sarah
McElroy, Jennifer Brown

And via email to:
Darrell.palmer@cox.net

David P. Schafer (*pro se*)
Law Offices of David P Schafer
7800 IH-10 West, Suite 830
San Antonio, TX 78230

And via email to:
david@helpingtexas.com

Kenneth E. Nelson
Nelson Law Firm, P.C.
2900 City Center Square
1100 Main Street
Kansas City, MO 64105

Attorneys for.
Evans & Mullinix, P.A.

And via email to·
kennelson@mclaw.com

Edward F. Siegel
Edward F. Siegel Co. L.P.A.
27600 Chagrin Blvd., Ste 340
Cleveland, OH 44122

Attorneys for:
Sarah Siegel

And via email to:
efsiegel@efs-law.com

Andrew H. Gilman (*pro se*)
115 Dudley Ave, 3rd Floor
Narberth, PA 19072

And via email to:

Stephen M. Vasil (*pro se*)
162 5th Avenue
Brooklyn NY 11217

And via email to:
stephenvasil@gmail.com

Alan Harris
HARRIS & RUBLE
5455 Wilshire, Ste. 1800
Los Angeles, CA 90036

Attorneys for:
Harris, David
Kamal, Kareem
Kavanaugh, Matthew
Newfield, Simon
Ricasa, Jonathan
Treanor, Abigail
Zelenski, David

And via email to:
law@harrisandruble.com

Pamela Collins Dunmore
2635 SW 35th Place, #1402
Gainesville, FL 32608

Attorneys for:
Collins, Pamela (*pro se*)

No email address

\4596456 !

Craig J. Walenta *(pro se)*          No email address
17 Mountainview Court
Riverdale, NJ 07457

Richard A. Bodmer *(pro se)*          No email address
2114 Cuyler Avenue
Chicago, IL 60618

\4596456 1