Darrell Palmer (SBN 125147)
Law Offices of Darrell Palmer
603 North Highway 101, Ste A
Solana Beach, California 92075
Telephone: (858) 792-5600
Facsimile: (858) 792-5655
Email: darrell.palmer @cox.net
Counsel for Objectors Sarah Siegel,
Evans & Mullinix, P.A., Jennifer
Brown McElroy and Daniel Schafer

Additional Counsel listed on Signature Page

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

RYAN RODRIGUEZ, et al. on behalf of themselves and all persons similarly situated,

        Plaintiffs,

    vs.

WEST PUBLISHING CORPORATION, et al.,

        Defendants.

AND CONSOLIDATED ACTIONS

Case No. CV 05-3222 R(Mcx)

U.S. COURT OF APPEALS
DOCKET NO. 07-56649

**AMENDED JOINT NOTICE OF APPEAL BY UNNAMED CLASS MEMBERS/OBJECTORS EVANS & MULLINIX, P.A., SARAH SIEGEL, JENNIFER BROWN MCELROY, AND DANIEL SCHAFER**

Judge: Hon. Manuel J. Real
Dept: 8

**AMENDED JOINT NOTICE OF APPEAL BY UNNAMED CLASS MEMBERS-OBJECTORS EVANS & MULLINIX, P.A., SARAH SIEGEL, JENNIFER BROWN MCELROY, AND DANIEL SCHAFER**

NOTICE IS HEREBY GIVEN that Evans & Mullinix, P.A., Sarah Siegel, Jennifer Brown McElroy, and Daniel Schafer (together, "Objectors Evans, Siegel, Brown and Schafer,"), Objectors in the above-styled cause, hereby appeal to the United States Court

1

Dockets.Justia.com



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN RODRIGUEZ, REENA B. FRAILICH, LOREDANA NESCI, JENNFIER BRAZIL, and LISA GINTZ, on behalf of themselves and all others similarly situated, | CASE NO. CV-05-3222 R(MCx) |
| | ~~[PROPOSED]~~ FINAL ORDER AND JUDGMENT APPROVING SETTLEMENT |
| Plaintiffs, | |
| vs. | |
| WEST PUBLISHING CORPORATION, a Minnesota Corporation d/b/a BAR/BRI, and KAPLAN, Inc., a Delaware Corporation, | |
| Defendants. | |
| AND CONSOLIDATED ACTION | |

This matter came before the Court for hearing on June 18, 2007 and July 9, 2007, pursuant to the Order Granting Preliminary Approval of Class Action Settlement and Directing Dissemination of Notice to Class dated March 26, 2007 (the "Preliminary Approval Order"), on application for approval of the proposed

4670962 1

1

1   Settlement[1] set forth in the Stipulation and Settlement Agreement dated February

2   2, 2007, ("Settlement Agreement").

3       Pursuant to the Preliminary Approval Order, Notice was given to the Class.

4   The Notice advised Class Members of the opportunity to *inter alia*: object to the:

5   (1) Settlement Agreement and the Settlement; and/or (2) the Plan of Allocation.

6       On May 7, 2007 Class Counsel filed: (1) Notice of Motion and Motion For

7   Final Approval of Class Action Settlement; (2) Declaration of Sidney K.

8   Kanazawa; and (3) Memorandum of Points and Authorities in Support of Final

9   Approval.

10      On May 17, 2007, plaintiffs/objectors Ryan Rodriguez, Lisa Gintz and

11   Loredana Nesci (the "Objecting Plaintiffs") filed an objection, *inter alia*, objecting

12   to entry of the Preliminary Approval Order (the "May 17 Objections").

13      On May 18, 2007, Class Counsel filed a response to the May 17 Objections.

14      On May 31, 2007, the Objecting Plaintiffs filed an *ex parte* application,

15   memorandum and declaration for an order to: (1) allow Eliot Disner, Esq.

16   ("Disner") to "speak freely" on their behalf; (2) allow access to certain files: and

17   (3) clarify the status of Disner as a "co-lead counsel" (the "*Ex Parte* Application").

18      On June 1, 2007, Class Counsel filed an Opposition to the *Ex parte*

19   Application and defendants West Publishing Corporation ("West") and Kaplan,

20   Inc. ("Kaplan") filed objections to the *Ex Parte* Application (the "*Ex Parte*

21   Oppositions").

22      On June 7, 2007, the Objecting Plaintiffs filed a reply to the *Ex Parte*

23   Application.

24

25   ———————————

26   [1]   Unless otherwise stated herein, all capitalized terms shall have the same meanings as set forth in the Stipulation and Settlement Agreement dated February

27   2, 2007.

4670962.1

In addition to the May 17 Objections, the Class Members listed in the following table filed objections to the Settlement on the dates indicated:

| | DATE FILED | CLASS MEMBER |
|---|---|---|
| 1. | May 21, 2007 | David Oriol |
| 2. | May 21, 2007 | Jason Tingle<br>Oliver Gutierrez |
| 3. | May 21, 2007 | David Feldman<br>Cameron Gharabiklou<br>Emily Grant<br>Jeff Lang<br>Sarah McDonald<br>Cara Patton<br>Rachel Schwartz<br>Greg Thomas |
| 4. | May 21, 2007 | Joseph J. Angersola |
| 5. | May 21, 2007 | Anthony Valach |
| 6. | May 21, 2007 | Jay M. Wolman |
| 7. | May 21, 2007 | Joan E. Shreffler |
| 8. | May 21, 2007 | Robert Gaudet, Jr.<br>Sandeep Gopalan<br>Elizabeth De Long<br>Andrea Boggio |
| 9. | May 21, 2007 | Justin Head<br>Ryan Helfrich |
| 10. | May 21, 2007 | George Schneider<br>Jonathan Slomba<br>James Puntumapanitch |
| 11. | May 21, 2007 | James Juranek<br>Audrey Juranek<br>Richard P Le Blanc, III. |
| 12. | May 12, 2007 | Trevino, Arcelia |

|     | DATE FILED     | CLASS MEMBER                                                                                                        |
| --- | -------------- | ------------------------------------------------------------------------------------------------------------------ |
| 13. | May 21, 2007   | Aaron Lukoff<br>John Prendergast<br>David Orange                                                                   |
| 14. | May 22, 2007   | Daryl Chilimidos                                                                                                   |
| 15. | May 22, 2007   | Nikki Love<br>John Bernitz                                                                                         |
| 16. | May 22, 2007   | Daniel M. Schafer                                                                                                  |
| 17. | May 22, 2007   | Evans & Mullinix, P.A.                                                                                             |
| 18. | May 22, 2007   | Sarah Siegel                                                                                                      |
| 19. | May 22, 2007   | Jennifer Brown McElroy                                                                                             |
| 20. | May 22, 2007   | Andrew Gilman<br>Stephen M. Vasil                                                                                  |
| 21. | May 23, 2007   | David Harris<br>Kareem Kamal<br>Matthew Kavanaugh<br>Simon Newfield<br>Jonathan Ricasa<br>Abigail Treanor<br>David Zelenski |
| 22. | May 23, 2007   | Pamela Collins                                                                                                     |
| 23. | April 10, 2007 | Walenta Craig                                                                                                      |
| 24. | May 28, 2007   | Richard A. Bodmer                                                                                                  |
| 25. | June 12, 2007  | Stephen Lindholm                                                                                                   |

On June 11, 2007, Class Counsel filed: (1) a reply memorandum in support of the Settlement which addressed the May 17 Objections and the objections set forth in the preceding paragraph (hereafter, the "Objections to the Settlement"); and (2) the declarations of: (a) Sidney K. Kanazawa, (b) Christine Bartholomew, (c) Richard Sartory, and (d) Hon. Daniel Weinstein.

1    On June 11, 2007, Defendants filed "Defendants' Combined Response To

2    Various Class Members' Objections To Stipulation And Settlement Agreement."

3    Also on June 11, 2007, West filed a reply memorandum to the May 17 Objections.

4    On June 15, 2007, Kaplan filed (1) "Notice of Filing of Declaration of Lee

5    S. Taylor in Support of Motion for Final Approval of Settlement, Regarding

6    Kaplan's Compliance with the Requirements of the Class Action Fairness Act;"

7    and (2) Declaration of Lee S. Taylor, and subsequently filed (1) "Notice of Filing

8    of Revised Declaration of Lee S. Taylor in Support of Motion for Final Approval

9    of Settlement, Regarding Kaplan's Compliance with the Requirements of the Class

10   Action Fairness Act;" (2) "Revised Declaration of Lee S. Taylor; Notice of Filing

11   Under Seal;" and (3) "Declaration of Lee S. Taylor Authenticating and Attaching

12   Documents."

13   On June 18, 2007, West filed the "Declaration of James P. Tallon Regarding

14   the Class Action Fairness Act."

15   Pursuant to this Court's Order, on June 26, 2007, Class Counsel filed: (1)

16   "Settling Plaintiffs' Supplemental Briefing In Support of Motion for Final

17   Approval Re: 30% Distribution Limit to Authorized Claimants and *Cy Pres* Fund

18   for Remainder;" and (2) "Declaration of Sidney K. Kanazawa." Also, on that date,

19   Defendants filed: (1) "Defendants' Supplemental Brief Regarding Approval of

20   Proposed Settlement, Addressing *Cy Pres* Provision of Proposed Settlement;" and

21   (2) the Declaration of Stuart N. Senator.

22   In addition, on June 26, 2007, several objectors, including James Juranek,

23   Audrey Juranek, Richard P. LeBlanc, III, David Harris, Kareem Kamal, Matthew

24   Kavanaugh, Simon Newfield, Jonathan Ricasa, Abigail Treanor and David

25   Zelinski, submitted additional briefing in further opposition to final approval of the

26   Settlement.

27

4670962.1                                   5

1    On July 5, 2007, Eliot G. Disner filed a "Summary of Evidence Regarding
2  Defendant West Publishing Co.'s Violation of Section 2 of the Sherman Act (15
3  U.S.C. § 2)" and a "Re-Notice of Appearance of Counsel."

4    At the Final Settlement Hearing Objectors were given an opportunity to state
5  their objections to the Settlement Agreement, the Settlement and the Plan of
6  Allocation.

7    Having read and fully considered the terms of the Settlement Agreement, the
8  Plan of Allocation, and all submissions (which may include submissions not
9  specifically described above), written and oral, the Court finds the Settlement is
10  fair, reasonable and adequate:

11    **IT IS THEREFORE ORDERED, ADJUDGED AND DECREED**
12  **THAT:**

13    1.    **Objections to the Settlement** – The Objections to the Settlement are
14  overruled.

15    2.    **Incorporation of Definitions** – This Final Order and Judgment
16  Approving Settlement (the "Judgment") incorporates by reference the definitions
17  in the Settlement Agreement, and all defined terms used herein shall have the same
18  meanings as set forth in the Settlement Agreement.

19    3.    **Jurisdiction** – The Court has personal jurisdiction over all Class
20  Members (as defined below) and has subject matter jurisdiction over this Action,
21  including, without limitation, jurisdiction to (1) approve the Settlement Agreement
22  and the Plan of Allocation, (2) grant final certification of the Class, and (3) dismiss
23  the Action with prejudice.

24    4.    **Final Class Certification** – The Class this Court certified in the
25  Preliminary Approval Order under Fed. R. Civ. P. 23(b)(3) is hereby finally
26  certified and consists of all persons who purchased a bar review course from
27  BAR/BRI in the Untied States from August 1, 1997 through July 31, 2006,

4670962 1                                  6

1   exclusive of those individuals set forth in Exhibit A hereto who timely requested

2   exclusion pursuant to the Court's Order of August 14, 2006.

3       5.    **Adequacy of Representation** – Plaintiffs and Class Counsel –

4   McGuireWoods LLP, Zwerling, Schachter & Zwerling, LLP and Finkelstein

5   Thompson LLP – have fully and adequately represented the Class and have

6   satisfied the requirements of Fed. R. Civ. P. 23(a)(4).

7       6.    **Notice** – The Court finds that the distribution of the Notice, the

8   publication of the Summary Notice, the distribution of the Claim Form, and the

9   notice methodology were materially implemented in accordance with the terms of

10  the Settlement Agreement and the Preliminary Approval Order. The Court further

11  finds that the Notice, Summary Notice and Claim Form were simply written and

12  readily understandable, and that the Notice, Summary Notice, Claim Form and

13  notice methodology: (i) constituted the best practicable notice, (ii) constituted

14  notice that was reasonably calculated, under the circumstances, to apprise Class

15  Members of the Settlement, their rights to object to the Settlement and to appear at

16  the Final Settlement Hearing, (iii) were reasonable and constituted due, adequate

17  and sufficient notice to all persons entitled to notice, and (v) met all applicable

18  requirements of the Federal Rules of Civil Procedure, the United States

19  Constitution (including the Due Process Clause), the Rules of the Court and any

20  other applicable law.

21      7.    **Final Settlement Approval** – The terms and provisions of the

22  Settlement Agreement have been entered into in good faith and are hereby fully

23  and finally approved as fair, reasonable and adequate as to, and in the best interest

24  of, each of the Settling Parties and the Class Members, and in full compliance with

25  all applicable requirements of the Federal Rules of Civil Procedure, the United

26  States Constitution (including the Due Process Clause), the Rules of the Court and

27  any other applicable law. With respect to the determination that the Settlement

1    Agreement is fair reasonable and adequate, the Court specifically notes that the

2    outcome of a trial on the merits was by no means certain, this Action involved

3    highly complex factual and legal issues, the Settlement Agreement was reached

4    with the participation of a highly-respected mediator and retired judge, and the

5    monetary and non-monetary terms of the Settlement reflect substantial benefits.

6        8.    **Plan of Allocation** – The Court also hereby approves the Plan of

7    Allocation as a fair and reasonable method to allocate the Net Settlement Fund

8    among Class Members, and directs consummation of all its terms and provisions.

9        9.    **Dismissal of Action** – The Court dismisses on the merits and with

10   prejudice the First Amended Complaint and the Released Claims as defined in the

11   Settlement Agreement as to all Class Members.  Only the Persons identified in

12   Exhibit A hereto requested exclusion from the Class as of the deadline for opting

13   out.  These Persons so identified shall not share in the benefits of the Settlement.

14   The Court dismisses without prejudice the claims of such Persons who have

15   properly and timely excluded themselves in full accordance with the procedures set

16   forth in the Settlement Agreement.

17       10.   **Releases** – Upon the Effective Date of the Settlement, the

18   Representative Plaintiffs and each Class Member shall be deemed to have, and by

19   operation of this Final Order and Judgment shall, except as provided in paragraph

20   58 of the Agreement, (a) have released and forever discharged the released parties

21   from all manner of claims, demands, actions, suits, causes of action, whether class,

22   individual, or otherwise in nature, damages whenever incurred, liabilities of any

23   nature whatsoever, including costs, expenses, penalties and attorneys' fees, known

24   or unknown, suspected or unsuspected, in law or equity, that any member of the

25   Class (including any of their past, present or future officers, directors, agents,

26   employees, legal representatives, trustees, parents, associates, affiliates, licensees,

27   subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors,

4670962 1

8

[PROPOSED] FINAL ORDER AND JUDGMENT - CV 05-3222 R(MCx)

1   successors and assigns), whether or not he, she or it objects to the settlement and

2   whether or not he, she or it makes a claim upon or participates in the Settlement

3   Fund, whether directly, representatively, derivatively or in any other capacity, ever

4   had, now has or hereafter can, shall or may have concerning or relating to any

5   conduct alleged in the Complaint in this Action, and including without limitation

6   all claims that have been asserted or could have been asserted in any litigation

7   against the Released Parties or any of them for any conduct alleged in the

8   Complaint and Amended Complaint in this Action; and (b) in addition, upon the

9   Effective Date of the Settlement, the Representative Plaintiffs and each Class

10  Member shall be deemed to have, and by operation of this Final Order and

11  Judgment shall have waived and released any and all provisions, rights and

12  benefits conferred by § 1542 of the California Civil Code, which states:

13      **Section 1542. Certain Claims not Affected by General Release. A**

14      **general release does not extend to claims which the creditor does**

15      **not know or suspect to exist in his favor at the time of executing**

16      **the release, which if known by him must have materially affected**

17      **his settlement with the debtor;**

18  or by any law of any state or territory of the United States, or principle of common

19  law, which is similar, comparable or equivalent to § 1542 of the California Civil

20  Code. The Court has considered that each member of the Class may hereafter

21  discover facts other than or different from those which he, she or it knows or

22  believes to be true with respect to the claims which are the subject matter of

23  Paragraph 56 of the Agreement, but each member of the Class by operation of this

24  Final Order and Judgment has waived and fully, finally and forever settled and

25  released any known or unknown, suspected or unsuspected, contingent or non-

26  contingent claim with respect to the subject matter of Paragraph 56 of the

27

4670962 1

1    Agreement, whether or not concealed or hidden, without regard to the subsequent

2    discovery or existence of such different or additional facts.

3        11.    **Permanent Injunction** – All members of the Class who did not duly

4    request exclusion from the Class in the time and manner provided in the Class

5    Action Notice (which includes all members of the Class who are not listed on

6    Exhibit A hereto) are permanently enjoined, and restrained from commencing or

7    prosecuting any action, suit, proceeding, claim, or cause of action in any

8    jurisdiction or court against Defendants or any of the other entities or persons who

9    are to be discharged as noticed above in Paragraph 10, based upon, relating to, or

10   arising out of, any of the matters which are discharged and released pursuant to

11   paragraph 10 thereof, except as provided in paragraph 58 of the Settlement

12   Agreement.

13       12.    **Retention of Jurisdiction** – The Court has jurisdiction to enter this

14   Judgment.  Without in any way affecting the finality of this Judgment, this Court

15   expressly retains exclusive and continuing jurisdiction as to all matters relating to

16   the administration, consummation, enforcement and interpretation of the

17   Settlement Agreement, and of this Judgment, and for any other necessary purposes,

18   including, without limitation:

19           (i)    enforcing the terms and conditions of the Settlement

20   Agreement and resolving any disputes, claims or causes of action that, in whole or

21   in part, are related to or arise out of the Settlement Agreement, or the Judgment

22   including, without limitation, whether a Person is or is not a Class Member; and

23           (ii)    entering such additional orders as may be necessary or

24   appropriate to project or effectuate the Judgment approving the Settlement

25   Agreement, dismissing all claims with prejudice, and permanently enjoining Class

26   Members from imitating or pursuing related proceedings, or to ensure the fair and

27   overly administration of this Settlement.

4670962 1

10

[PROPOSED] FINAL ORDER AND JUDGMENT - CV 05-3222 R(MCx)

13.    **Dismissal of Action** – This Action, including all individual claims and Class claims resolved by it, are hereby dismissed with prejudice against Defendants and all Class Members, without fees or cost except as otherwise provided by this Court.

14.    **Non-Effect on Judgment** – Neither any modification or appellate reversal of the Plan of Allocation, the Fee Award or Incentive Awards, nor any orders entered by this Court thereon, shall in any way disturb nor affect the finality of the Settlement, and all such matters shall be considered separate from this Judgment.

15.    **Effective Date** – If: (i) the Effective Date does not occur for any reason whatsoever; or (ii) the Settlement Agreement becomes null and void pursuant to the terms of the Settlement Agreement, this Judgment shall be deemed vacated and shall have no force or effect whatsoever.

16.    **No Admissions** – Nothing in this Judgment, the Settlement Agreement or any aspect of the Settlement is or shall be deemed or construed to be an admission, concession or evidence of any violation of any statute or law or any liability or wrongdoing by any Defendant or Released Party or of the truth of any of the factual or legal claims or allegations relating to the subject matter of the Released Claims.

///
///
///
///
///
///
///
///

1        The Clerk is directed to enter this Final Order and Judgment forthwith as the

2    final judgment of the Court.

3

4    Dated: **Sept 10**, 2007

                                    Honorable Manuel L. Real

5                                      United States District Court Judge

6

7    Submitted By:

8

9    Sidney K. Kanazawa (SBN 84608)
    **McGUIREWOODS LLP**

10   Email: skanazawa@mcguirewoods.com
    1800 Century Park East, 8th Floor

11   Los Angeles, California 90067
    Telephone: (310) 315-8200

12   Facsimile: (310) 315-8210

13   Dan Drachler, (*Pro Hac Vice*)
    **Zwerling, Schachter & Zwerling, LLP**

14   1904 Third Avenue, Suite 1030
    Seattle, WA 98101

15   Telephone: (206) 223-2053
    Facsimile: (206) 343-9631

16

17   Christine Bartholomew (SBN 211425)
    **Finkelstein Thompson LLP**

18   601 Montgomery Street, Suite 665
    San Francisco, CA 94111

19   Telephone: (415) 398-8700
    Facsimile: (415) 398-8704

20

21   Class Counsel

22

23

24

25

26

27

4670962 1

[PROPOSED] FINAL ORDER AND JUDGMENT - CV 05-3222 R(MCx)

SCANNED

## OPT OUT MEMBER LIST

Adams, Christi R.
Orlando, FL

Adams, Kara Kinson
West Boxford, MA

Ahmad, Fatima
Montreal, Quebec, Canada

Albano, Molly E.
Southington, CT

Alexakis, Georgia
San Francisco, CA

Anderson, Dominic J.
Richland Center, WI

Andrews, Scott R.
Dublin, OH

Armesto, Castor
St. Louis, MO

Ashe, Reagan
North Myrtle Beach, SC

Ast, Robyn
Chicago, IL

Avery, Robert Dean
Chicago, IL

Babbitt, Lindsay
Minneapolis, MN

Bacci, Bella Ee Ling
Napa, CA

Back, Ji-Yun
Arlington, VA

Barrila, Gaetano
Maple, Ontario, Canada

Batsedis, Olga
Dix Hills, NY

Bauer, Kristen A.
Mtn view, CA

Beck, Kimberly
Loveland, OH

Beretta, Jonathan, JD
Avondale, AZ

Bertin, Allen P.
Houston, TX

Birchfield, Jennifer
Rockford, IL

Blanchette, Jean-Pierre
New York, NY

Boesch, Victoria
Pasadena, CA

Bowen, Jeff J.
Los Angeles, CA

Boykin, Namosha
Washington, D.C.

Bracewell, Joseph S.
Washington, DC

4433793 1

**EXHIBIT A**

Brady, Rebecca A
Cheektowaga, NY

Bragassam, Jossy
Singapore

Branton, Vincent A.
West Richland, WA

Brown, Necole M.
Lake Charles, LA

Brownstone, Rebecca B.
Calabasas, CA 91303

Buckner, Lauren
St. Louis, MO

Burgasser, Jessica J
Buffalo, NY

Burgos, Diana
Tampa, FL

Caldwell, Dan
Ormond Beach, FL

Caldwell, Peter
Lake City, FL

Caluori, Colleen A.
Johnston, RI

Campbell, David L.
Troy, MI

Capuzzi, Cristiano
Old Bridge, NJ

Carter, Daragh JM
Houston, TX

Carville, Todd C.
Utica, NY

Causland, Tara
Kirkland, WA

Chan, Flora L.
Winston-Salem, NC

Chareas, Stephen
Arl. Heights, IL

Chelico, Nabil Elias
Los Angeles, CA

Chen, Yi-Wen
Philadelphia, PA

Cherry, Daphne M.
Houston, TX

Cho, Hay-Mie
Tucson, AZ

Cho, Jayne P.
New York, NY

Choong, Pek Yoke
Singapore

Choudhry, Erum A.
San Jose, CA

Chung Jenny
Oakland, CA

Clarkson, Brooke
Kensington, MD

Clements, Adrienne M.
Fort Worth, TX

Chett, Gabe T.
Metter, GA

Collazos, Adriana
New York, NY

Collins, Charece
Carlisle, PA

Conahan, Sean M.
Tampa, FL

Cook, Dean
Plano, TX

Cook, Jessica
San Clemente, CA

Coppola, Maddalena
West Hempstead, NY

Cox, Genevieve A.
San Francisco, CA

Cristaudo, Alexander L.
Monroeville, NJ

Culmer, Gabrielle
New York, NY

Daley, Paul F.
Melbourne, FL

Daniels, Yvette
St. Petersburg, FL

Danquah, Angela
Greenford, Middlesex,
London

Darnell, Leslie S.
Jacksonville, FL

Dayton, Richard C.
San Jose, CA

deRoss, Carolyn
Friday Harbor, WA

Deshotel, Ashley Arinder
Baton Rouge, LA

Dhillon, Amar
Modesto, CA

Dickson, Amy L.
Castleton, NY

Dieteman, David F.
Erie, PA

Douglas R. Hoffman
Mt. Vernon, IL

Dreher, Salaam G.
Apopka, FL

Duffee, Eric D.
Columbus, OH

Dumas, Laura F.
Danville, CA

Duvall, Kathryn L.
Charlottesville, VA

Eck, Gretchen A.M.
Springfield, IL

Eck, Jonathan
Lebanon, NH

Eckart, Elyse
El Segundo, CA

Embry, Ronald G., Jr.
Houston, TX

Eskovitz, Sean
Los Angeles, CA

Estrada, E. Martin
Santa Monica, CA

Fairweather, John Zachary
Birmingham, AL

Goddard, Jane M
Orlando, FL

Goes, Ian
Toronto, Ontario

Gordon, Sarah L.
Pittsburgh, PA 15206

Grossman, Matthew A
Knoxville, Tennessee

Gunn, Kristy
Memphis, TN

Gutierrez, Joshua
Newton, MA

Hagen, Joyce
Oakland Park, FL

Hammond, Erin H.
Tacoma, WA

Hammond, Zachary
Spring, TX

Haytas, Joseph R.
Upland, CA

Hebert, Leon F., Jr.
Springfield, MA

Heine, Dorsey E
Los Angeles, CA

Hercules, Jesse
Oxford, MS

Hill, Mark
Tallahassee, FL

Hillcren, Christine C.
Mandeville, Louisiana

Hopkins, Crystal
Ypsilanti, MI

Howell, Byron Boylin
Tampa, FL

Hunt, Melissa A.
Chicago, IL

Hurta, Shelly Z.
Naperville, IL

Inagawa, Kenichi
Yokohama Kanagawa, Japan

Innet, Leanne M.
Ocean Ridge, FL

Jamsa, Siobhan
Minneapolis, MN

Jenkins, Lyn
Orlando, FL

Jervis, Amy Tufts
Melvin, KY

Jones, Allison Medlock
Birmingham, AL

Jordan, Patrick T.
Seattle, WA

Joshi, Neeraj
Montville, NJ

Jumper, Johanna L.
Nashville, TN

Kapeller-Wisniewski, Heather S.
Lansing, MI

Karstaedt, Louise
New York, NY

4433793 1

Katsivela, Maria E
Nassau, Bahamas

Katze, Samantha
New York, NY

Kazakova, Joanna
E. Rutherford, NJ

Kelly, Matthew
Walnut Creek, CA

Kelly, Meghan
St. Louis, MO

Kessler, Daniel
Munich, Germany

Kidron, Leeora
New York, NY

Kim, Hyung Sup
Lincoln, NE

King, Bernard F., III
San Diego, CA

King, Robert
Gainesville, FL

Konoor, Sapna
Millville, NJ

Ku, Katherine
Los Angeles, CA

Kuhl, Brooke Castle
no address available

La Muro, Anthony M. Jr.
Hempstead, NY

Lageson, Anne E.
St. Louis, MO

Laginess, Courtney A.
Cincinnati, OH

LaGrandeur, Thomas
Palo Alto, CA

Lamanna, Kelly R.
Pittsburgh, PA

Lammers, Steven
Valparaiso, IN

Lang Susman, Alexandra
Los Angeles, CA

Lategano, Rosemary
Albany, NY

Latkina, Dinara
Chicago, IL

Lauro, Daniel R.
Grottoes, VA

Lawrence, J. Raza
Los Angeles, CA

Leach, Brooke
Philadelphia, PA

Leight, Adrienne S.
San Francisco, CA

Levin, Daniel B.
Los Angeles, CA

Liederman, Peter H
Berkeley, CA

Litke, Carol
Oceanside, NY

Lobb, George C
Fairfield, CA

4433793 1

Longo, Anthony
Chicago, IL

McCord, Nicole
Cleveland, TN

Looby, David J.
Oklahoma City, OK

McEwen, Warran
Orlando, FL

Lopez, Alejandra L.
Miami, FL

Medina, Erika
Philadelphia, PA

Lynch, Rebecca Gose
Oakland, CA

Melzer, Margaret A.
Palatka, FL

Macksood, Jennifer Ann
Carlsbad, CA

Menachemi, Efrat
New York, NY

Magee, Michael
Athens, GA

Menahem, Caren Jennifer
Great Neck, NY

Manfredo, Robert F.
Albany, NY

Mennillo, Seth Daniel
Brookline, MA

Mann, James
New York, NY

Merken, Stacie
Los Angeles, CA

Marciniak, Erin
Springfield, VA

Messinger, Jonathan D
Danversport, MA

Markwood, Sarah
University City, MO

Mezoff, Sheri
Brookline, MA

Marsch, Tiffany L.
Chicago, IL

Miller, Shont E.
Pasadena, CA

Marzock, Kirk R
Lancaster, PA

Mills, Gregory A.
Bloomington, IN

Matarazzo, Leopoldo
Fair Lawn, NJ

Minnix, A. L.
Columbus, OH

Mattson, Clay
Buffalo, NY

Montgomery, Jennifer
Baton Rouge, WA

Mazzotta, Francesco G.
Bethel Park, PA

Moore, Michelle
Arlington, MA

4433793 1

Morelli, Gaia
Rome, Italy

Morgan, Cynthia
San Diego, CA

Morra, Robert A.
Forest Hills, NY

Morrissey, John R.
Toronto, Ontario, Canada

Mosby, Brian L
Indianapolis, IN

Moulton, Jason R
Crestview, FL

Mourad, Adriana
Washington, DC

Mueller, Andra
Saint Paul MN

Murphy, Ryan P.
Hollister, CA

Neal, Zachary L.
Washington, D.C.

Newby, John L., II
Washington, D.C.

Newell, Ryan Patrick
Wilmington, DE

Ng, Stephanie
Walnut Creek, CA

Nguyen, Vinh
Findlay, OH

Oberholzer, Lori
Columbus, OH

O'Dowd, Sean
New Paltz, NY

Oliveira, Leonor
Burbank, CA

Oxford, James R. Jr.
Cedartown, Georgia

Pages Stone, Natalie
Los Angeles, CA

Palmer, Blake
Wall, NJ

Palmer, Margaret Anne
Rector, PA

Patel, Ulka
Baltimore, MD

Paul, Michael
San Antonio, TX

Penn-Loya, Alexis
Santa Ana, CA

Pham, Pearl
Malvern, PA

Ploetz, Nicola
Mobile, AL

Pogoriler, Leah
Washington, DC

Polansky, Seth C.
Silver Spring, MD

Powell, Daniel J.
San Francisco, CA

Prado, Gabriela
Miami, FL

Proxmire, Mick L.
Columbus, OH

Raetz, James T.
Los Angeles, CA

Reboucas, Rui Tabakov
Sao Paulo, SP Brazil

Reddivari, Krishna
Dallas, TX

Regina, Richard
Baldwin, NY

Reisman, Sean Peter
New York, NY

Rengito, Stephanie
Bethpage, NY

Rhee, Patricia
Castle Rock, CO

Richter, Zachary C
Arlington, VA

Roach, Matthew T.
Jacksonville, FL

Robinson, James J.
Los Angeles, CA

Rogers, James
Sag Harbor, NY

Romaszewski, Sandra A.
Lansing, MI

Rusconi, Mikaela
Miami, FL

Russell, Freya, K.
Los Angeles, CA

Rutten, James C.
San Bernardino, CA

Sacrison, Katherine
Port Orchard, WA 98366

Sagi, Chava Eve
Woodland Hills, CA

Sagnard, Candice
Minneapolis, MN

Samuelson, Marc B.
Somers Point, NJ

Sanchez, Gabriel
Los Angeles, CA

Sanfilippo, Robert
Wayne, NJ

Sawyer, Joel W.
Mount Airy, NC

Scattergood, Carrie L.
Burlington, NJ

Schacherer, P.M., J D.
Forest, Virginia

Schaeffer, Stephen
Washington, DC

Schuknecht, Amber
Pittsburgh, PA

Schwartz, Jason Brett
Cherry Hill, NJ

Scott, Ann Marie
Los Angeles, CA

Sealy, Karen A.
Ellicott City, MD

4433793 1

Seward, Michael
Benton, Pennsylvania

Spigarelli, Rowena C
Whitehouse Station, NJ

Shapiro, David M.
Honolulu, HI

Spyridakis, Vasilios S.
Sacramento, CA

Shekhtman, Lyudmila
S San Francisco, CA

St. John, Richard
Los Angeles, CA

Sheridan, Patrice
Boston, MA

Standish, Craig A.
Dover, NH

Shore, Blake
Jacksonville, FL

Stefek, Alicia
Owego, IL

Silverman, Charles
Chicago, IL

Stout, Katherine E.
New Martinsville, WV

Simmonds, Karen H.
Seattle, WA

Stump, Monica A.
Alexandria, VA

Simmons, Leslie Vaughan
Cartersville, Georgia

Stump, Nathan D.
Alexandria, VA

Simpson, Alistair G.
Toronto, Ontario Canada

Subasic, Alma
Brooklyn NY

Skeens, A. Skeens
Fort Wayne, IN

Sukkar, Suzanne K.
Ypsilanti, MI

Sloan, Charissa
Waco, TX

Sullivan, James
Fargo, ND

Smith, Penelope
New York, NY

Sullivan, Marbree D.
Somerville, MA

Smith, Travis M.
Houston, TX

Szudajski, Matthew T.
Carson City, NV

Spaide, Heather
New Canaan, CT

Taira, Wakana
Chofu-shi Tokyo, Japan

Sperath, Jessica T.
Indianapolis, IN

Takah, Jarrod T.
Burgettstown, PA

4433793.1

Tapia, Antonio G.
Orlando, FL

Tarasco, Monica D.
Pepper Pike, OH

Taylor, Lee S.
Los Angeles, CA

Tellalian, Bryan
Clovis, CA

Thabet, Mark
Chester, NY

Thompson, Scott A.
New York, NY

Thomson, Marchelle
Drexel Hill, PA

Torres, Stephanie W.
Buffalo, NY

Trunkey, Alan
Bainbridge Island, WA

Tsurui, Toshitaka
Edogawa-ku, Tokyo, Japan

Uchihara, Kiyoshi
Chiyoda-ku, Tokyo, Japan

Unno, Mitsuo
Brea, CA

Vaccaro, Michael
Avon Lake, OH

Van Deven, Nicholas P.
St. Louis, Missouri

Vanderhoofven, Nathan D.
Jacksonville, FL

Varner, Christina A.
San Francisco, CA

Venero, Jose Antonio
San Antonio, TX

Vogel, John-Paul
San Antonio, TX

Wada, Megan
San Francisco, CA

Wang, Annie
Glendale, CA

Wang, Shanyah Albert
Troy, MI

Warmuth, Glenn P.
Farmingville, NY

Warren, Tracy A
San Diego, CA

Watkins, Anthony L , Jr.
Birmingham, AL

Weg, Nadav
New York, NY

Weinstein, Reid M.
Baltimore, MD

Weiss, Sharon
Woodmere, NY

Weltin, Florence K.
St. Louis, MO

White, Catherine
London

Whitehead, Kristen
Forth Worth, TX

4433793 1

Whiting, Joseph M.
Larchmont, NY

Zorn, Heather M.
Atlanta, GA

Whitley, Joel
Los Angeles, CA

Rauls, Claire Serrano
Saint Paul, MN

Wilkovich, Andrea
Fort Lee, NJ

Hwang, Irene
Fort Lee, NJ

Williams, Beth L.
Portola Valley, CA

Tavassoli, Alan
Phoenix, AZ

Wilner, Jared
New York, NY

Band, Marissa L.
Cherry Hill, NJ

Winters, Gary M.
Houston, TX

Landis, Jennifer M.
Fort Lauderdale, FL

Wiseberg, Nicol
Port St. Lucie, FL

Woo, In-Yu
New York, NY

Wiseberg, Phil
Palm Beach Garden, FL

Williams, Erika N.
Baton Rouge, LA

Woodard, Bethany
Los Angeles, CA

Parker, Warren B
Birmingham, AL

Yoshida, Kaori
Rego Park, NY

Rachko, Larissa
Woodbury, NJ

Young, Blanca
Berkeley, CA

Stramiello, Linda Stephens
Madison, CT

Young, Melodie
Forest Hills, NY

Noushkam, Donna B.
Cerritos, CA

Yurtkuran, Shaun E.
Jackson, MS

Graham, Emily
Miami, FL

Zayas, Idalisse
Kissimmee, FL

Kim, James W.
Chicago, IL

Zigman, Abigail
Staten island, NY

Sarna, Alejandro L.
Washington DC

4433793 1



**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RYAN RODRIGUEZ, REENA B. FRAILICH, LOREDANA NESCI, JENNFIER BRAZIL, and LISA GINTZ, on behalf of themselves and all others similarly situated, | CASE NO. CV-05-3222 R(MCx) |
| Plaintiffs, | [PROPOSED] ORDER GRANTING CLASS COUNSEL ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES |
| vs. | |
| WEST PUBLISHING CORPORATION, a Minnesota Corporation d/b/a BAR/BRI, and KAPLAN, Inc., a Delaware Corporation, | |
| Defendants | |
| AND CONSOLIDATED ACTION | |

The Court has granted final approval of the Settlement Agreement[1] in the Action (the "Final Approval Judgment"). Class Counsel filed their Motion for

---

[1]     Unless otherwise stated herein, all capitalized terms shall have the same meanings as set forth in the Stipulation and Settlement Agreement dated February 2, 2007.

4667130 1

1

1  Award of Attorneys' Fees and Reimbursement of Expenses (the "Motion") on May
2  7, 2007, in accordance with the Order Granting Preliminary Approval of Class
3  Action Settlement and Directing Dissemination of Notice to Class dated March 26,
4  2007.
5        In support of the Motion, Class Counsel filed: (1) Declaration of Sidney K.
6  Kanazawa (to which is attached the Declarations of Christine Pedigo Bartholomew
7  and Dan Drachler); and (2) Memorandum and Points and Authorities in Support of
8  Motion for Attorneys' Fees.
9        The following objections to the Motion were filed:

10

| | DATE FILED | CLASS MEMBER |
|---|---|---|
| 1. | May 21, 2007 | David Oriol |
| 2. | May 21, 2007 | Jason Tingle<br>Oliver Gutierrez |
| 3. | May 21, 2007 | David Feldman<br>Cameron Gharabiklou<br>Emily Grant<br>Jeff Lang<br>Sarah McDonald<br>Cara Patton<br>Rachel Schwartz<br>Greg Thomas |
| 4. | May 21, 2007 | Joseph J. Angersola |
| 5. | May 21, 2007 | Anthony Valach |
| 6. | May 21, 2007 | Robert Gaudet, Jr.<br>Sandeep Gopalan<br>Elizabeth De Long<br>Andrea Boggio |
| 7. | May 21, 2007 | Justin Head<br>Ryan Helfrich |

27

4667130 1

2

| | DATE FILED | CLASS MEMBER |
|---|---|---|
| 8. | May 21, 2007 | George Schneider<br>Jonathan Slomba<br>James Puntumapanitch |
| 9. | May 21, 2007 | James Juranek<br>Audrey Juranek<br>Le Blanc, Richard P., III. |
| 10. | May 12, 2007 | Arcelia Trevino |
| 11. | May 21, 2007 | Aaron Lukoff<br>John Prendergast<br>David Orange |
| 12. | May 22, 2007 | Daryl Chilimidos |
| 13. | May 22, 2007 | Andrew Gilman<br>Stephen M. Vasil |
| 14. | May 23, 2007 | Pamela Collins |
| 15. | June 12, 2007 | Stephen Lindholm |

On June 11, 2007, Class Counsel filed a Reply Memorandum in Support of the Motion and the Declaration of Sidney K. Kanazawa in further support of the Motion.

The Motion was heard by the Court on June 18, 2007 and July 9, 2007. The Court has considered all papers submitted and oral argument presented in support of the Motion. The Court has also considered all papers submitted by Class Members objecting to the Motion, and accompanying oral argument.

In awarding attorneys' fees, the Court has the discretion to use either the percentage method or the lodestar/multiplier method in common fund cases such as this one. *See In re Washington Public Power Supply System Securities Litig* *("WPPSS")*, 19 F.3d 1291, 1295 (9th Cir. 1994). The Court is guided by the fundamental principle that fee awards out of common funds be "reasonable under

[PROPOSED] ORDER GRANTING CLASS COUNSEL ATTORNEYS' FEES
CASE NO  CV 05-3222 R(MCx)

1   the circumstances." *Id.* at 1296.  The Court will utilize the lodestar/multiplier

2   approach in this case.

3          Under the lodestar/multiplier approach, the lodestar is first calculated by

4   multiplying the reasonable hours expended by a reasonable hourly rate.  *See*

5   *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546,

6   565 (1986).  The Court may then enhance the lodestar by a "multiplier," if

7   necessary, to arrive at a reasonable fee under the circumstances.  *See Paul,*

8   *Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  The Court

9   may enhance a lodestar in common fund cases based on, among other things, risk;

10  the novelty and difficulty of the questions involved; the amount involved and the

11  results obtained; the experience, reputation, and ability of the attorneys; and

12  awards in similar cases.  *See WPPSS*, 19 F.3d at 1299; *Vizcaino v. Microsoft Corp.,*

13  142 F. Supp. 2d 1299, 1306, (W.D. Wash. 2001).

14         Class Counsel faced a substantial amount of risk in the prosecution of this

15  action.  Unlike other antitrust cases, Class Counsel here did not benefit from the

16  fruits of any underlying government actions.  There were no controlling precedents

17  regarding Plaintiffs' claims, especially with regard to the Section 7 claim under the

18  Clayton Act.  Class Counsel's risk was even greater, and their work more difficult,

19  because Defendants are resourceful and formidable, and were represented by

20  skilled counsel.

21         Further, as detailed in Class Counsel's submission in connection with the

22  Motion, Class Counsel faced a number of hurdles in proving both damages and

23  liability at trial.  Class Counsel also faced a number of risks, including: the risk that

24  the Class would be decertified during trial or certification reversed on appeal; the

25  risk of proving conspiracy; and the risk of proving damages, among other things.

26  Also, Defendants raised numerous defenses that, if successful, would have

27  foreclosed or, at a minimum, diminished any recovery.  Despite these obstacles,

4667130 1                                          4

1  Class Counsel obtained $49 million in cash for the benefit of the Class and non-

2  monetary relief designed to promote competition in the bar review market.

3      The Court has reviewed all of the documentation submitted by Class

4  Counsel in support of the Motion, including the detailed declarations of Sidney K.

5  Kanazawa, Dan Drachler, and Christine P. Bartholomew.  The Court has also

6  reviewed Class Counsel's firm résumés and the prevailing market rates.  The Court

7  finds that Class Counsel's hourly rates are reasonable.

8      The Court recognizes that Class Counsel's lodestar has increased since the

9  filing of the Motion due to the work they performed in connection with the

10  Settlement, including responding to objectors' arguments and preparing for and

11  appearing at the Final Settlement Hearing.  Class Counsel have advised the Court

12  that they have and will continue to respond to Class Member inquiries,

13  communicate with and monitor the Claims Administrator, and otherwise monitor

14  the Settlement administrative process.  Should any objectors file an appeal from

15  the Final Approval Judgment, Class Counsel will have to perform additional work

16  to ensure that the appeal is dismissed or the Final Approval Judgment is affirmed

17  in all respects.

18  **IT IS THEREFORE ORDERED THAT:**

19      Good cause appearing therefor, the Court hereby awards Class Counsel: (1)

20  their lodestar on the Effective Date (as defined in the Settlement Agreement),

21  enhanced by a multiplier of 1.75, but not to exceed twenty-five percent of the

22  Gross Settlement Fund on the Effective Date; and (2) reimbursement of their

23  expenses as of the Effective Date.  This award shall be paid from the Gross

24  Settlement Fund in accordance with the terms of the Settlement and pursuant to an

25  order of the Court.

26  ///

27  ///

IT IS SO ORDERED

DATE _____ Sept. 10, 2007

U.S. DISTRICT COURT JUDGE

4667130 1

5

[PROPOSED] ORDER GRANTING CLASS COUNSEL ATTORNEYS' FEES
CASE NO CV 05-3222



1    IT IS SO ORDERED.

2

3

4    DATED:_____

          HONORABLE MANUEL L. REAL
5         UNITED STATES DISTRICT COURT JUDGE

6    Submitted by:

7

8    Sidney K. Kanazawa (SBN 84608)
9    **McGUIREWOODS LLP**
     Email: skanazawa@mcguirewoods.com
10   1800 Century Park East, 8th Floor
11   Los Angeles, California 90067
     Telephone:  (310) 315-8200
12   Facsimile:  (310) 315-8210

13
     Dan Drachler (*Pro Hac Vice*)
14   **Zwerling, Schachter & Zwerling, LLP**
15   1904 Third Avenue, Suite 1030
     Seattle, WA 98101
16   Telephone:  (206) 223-2053
17   Facsimile:  (206) 343-9631

18
     Christine Bartholomew (SBN 211425)
19   **Finkelstein Thompson LLP**
20   601 Montgomery Street, Suite 665
     San Francisco, CA  94111
21   Telephone:  (415) 398-8700
22   Facsimile:  (415) 398-8704

23   Class Counsel

24

25

26

27

4667130 1                      6

[PROPOSED] ORDER GRANTING CLASS COUNSEL ATTORNEYS' FEES
CASE NO  CV 05-3222 R(MCx)



LODGED
CLERK, U.S. DISTRICT COURT

AUG 20 2007
3:08

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT

SEP 12 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

FILED
CLERK, U S DISTRICT COURT

SEP 10 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RYAN RODRIGUEZ, REENA B.
FRAILICH, LOREDANA NESCI,
JENNIFER BRAZEAL, and LISA
GINTZ, on behalf of themselves and all
others similarly situated,

                    Plaintiffs,

          v.

WEST PUBLISHING
CORPORATION, a Minnesota
Corporation d/b/a BAR/BRI, and
KAPLAN, Inc., a Delaware
Corporation,

                    Defendants.

AND CONSOLIDATED ACTION

Case No.: CV-05-3222 R(MCx)

[PROPOSED] FINDINGS OF
FACT AND CONCLUSIONS
OF LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORIGINAL

(433)

1    Representative Plaintiffs[1] and Defendants have submitted for approval a

2    Settlement of this Action that is memorialized in the Settlement Agreement. For the

3    reasons set forth below, the Court has determined that the Settlement is fair, reasonable

4    and adequate, and should therefore be approved.  As the Court is contemporaneously

5    issuing a Judgment and an Order Approving Settlement, the Court makes the following

6    findings of fact and conclusions of law:

7    **I. BACKGROUND**

8        **A.    Materials Considered by the Court**

9            1.    In coming to its decision, this Court has considered the written

10   memoranda and other material submitted by the Settling Parties, as well as those

11   submitted by objectors to the Settlement (the "Objectors").  In addition, this Court

12   has relied upon its familiarity with this case resulting from motion hearings and the

13   documents submitted in connection therewith, and its general case management

14   duties.  As discussed below, Class Counsel and counsel for Defendants have fully

15   briefed the request for approval, and they have supported the request with

16   declarations of fact.  Class Counsel and counsel for Defendants were present at the

17   June 18 and July 9, 2007 Final Settlement Hearing and addressed issues that were

18   raised at the time by the Court and the Objectors.

19       **B.    History of the Litigation**

20           2.    After an extensive pre-filing factual investigation, plaintiffs

21   Ryan Rodriguez ("Rodriguez") and Reena B. Frailich (the "Initial Plaintiffs") filed

22   the first complaint in this Action in April 2005 against Defendants alleging claims

23   for violation of the federal antitrust laws (the "Initial Complaint").

24           3.    The Initial Plaintiffs later filed a First Amended Complaint

25

26   _____

     [1] Unless otherwise specifically defined herein, the capitalized terms in the Findings

27   of Fact and Conclusions of Law have the same meaning as attributed to them in the

28   Stipulation and Settlement Agreement, dated February 2, 2007 (the "Settlement
     Agreement").

1  ("FAC"), in which plaintiffs Jennifer Brazeal, Loredana Nesci ("Nesci") and Lisa

2  Gintz ("Gintz") joined.

3          4.    Plaintiffs Kari Brewer and Lorraine Rimson filed a related action

4  against Defendants in this Court entitled, *Brewer v. West Publishing Corp.*, Case

5  No. CV-05-06211.  The Court consolidated the two actions after motion practice on

6  October 17, 2005.

7      **C.    Plaintiffs' Allegations**

8          5.    The FAC, the operative complaint which seeks monetary

9  damages and injunctive relief, alleges claims for violation of Sections 1 and 2 of the

10  Sherman Act, and violation of Section 7 of the Clayton Act.

11     **D.    Defendants' Response**

12         6.    Defendants answered the FAC in July 2006, raising numerous

13  defenses, including statute of limitations, laches, proximate cause, standing, and

14  *bona fide* business competition.

15     **E.    Discovery**

16         7.    The Action entered the discovery phase in August 2005.

17  Plaintiffs took substantial factual and expert discovery relating to liability, damages

18  and class certification issues.

19         8.    Plaintiffs reviewed and analyzed over 400,000 pages of

20  documents produced by Defendants and third parties, conducted one deposition

21  pursuant to Fed. R. Civ. Proc. Section 30(b)(6), and deposed fourteen fact witnesses

22  as follows:

23

| Date | Deponent | Description of Deponent |
|------|----------|-------------------------|
| 07/14/06 | Trent Anderson | Former employee of Kaplan |
| 02/22/06, | Richard Conviser | CEO of BAR/BRI |

| 2/23/06 | ("Conviser") | |
|---------|--------------|---|
| 07/11/06 | John Costonis | Chancellor of Louisiana State University |
| 01/06/06 | Robert Feinberg | President and CEO of PMBR |
| 06/20/06 | Jonathan Grayer | Chairman and CEO of Kaplan |
| 06/13/06 | Kandace Kukas | Marketing director for the North Atlantic region of Kaplan |
| 07/20/06 | Ian MacDiarmid | Former employee of Kaplan |
| 06/21/06 | David Oliveiri | Former employee of Thomson Corporation |
| 02/14/06 | John Perovich | Former employee of Thomson Corporation. |
| 7/14/06 | John Polstein | CEO of the Test Prep Division at Kaplan. |
| 07/07/06 | Andrew Rosen | COO at Kaplan. |
| 02/07/06 | Brian Sacks | Western regional director at BAR/BRI. |
| 06/14/06 | Donna Skibbe | Employee of Kaplan and a former employee of BAR/BRI and West Bar Review ("West Bar"). |
| 06/23/06 | Michael Suchsland | Executive at BAR/BRI |

9.    Defendants deposed the seven Plaintiffs as well as non-party

1    witnesses Jack Goetz, Hugh Reed and Stanley Chess.

2         10.    The Settling Parties also conducted extensive expert discovery,

3    including eight depositions of five different expert witnesses.

4         11.    Plaintiffs and Defendants had a series of discovery disputes.

5    These discovery disputes resulted in a number of motions to compel before this

6    Court and Special Discovery Master John Francis Carroll, whose appointment was

7    also the subject of motion practice.

8    **F.    Class Certification**

9         12.    On March 13, 2006, Plaintiffs filed their motion for class

10   certification. Defendants raised many challenges, including the relevant market

11   definition, antitrust impact and the existence of a formulaic approach to damages.

12        13.    On May 15, 2006, after comprehensive briefing, including the

13   submission of detailed expert declarations and exhibits as well as extended oral

14   argument, the Court certified a national class defined as: "All persons who

15   purchased a bar review course from BAR/BRI in the United States from 1997 to the

16   present." *See* Order filed May 15, 2006 (the "Class Certification Order").

17        14.    The Court appointed Plaintiffs as the Class Representatives.

18        15.    On June 29, 2006, after reviewing submissions from Plaintiffs

19   and Defendants concerning the proposed plan of notice to the Class, the Court

20   issued an Order Re Class Notice (the "Class Notice Order") which approved the

21   proposed form of notice, and provided for dissemination by: (a) first-class mail; (b)

22   in national publications; and (c) over the Internet. In accordance with the Class

23   Notice Order, the Class Action Notice was disseminated in July 2006. The Class

24   Action Notice provided Class Members the opportunity to request exclusion from

25   the Class.

26        16.    Defendants filed a petition with the Court of Appeals for the

27   Ninth Circuit for leave to file an appeal regarding the Class Certification Order.

Plaintiffs filed an extensive opposition. The Ninth Circuit denied Defendants' petition on August 11, 2006.

**G.    Trial**

      17.    The original trial date for this Action was set for June 20, 2006.

      18.    At the request of the parties the trial date was continued to September 12, 2006. The Court later continued the trial date to February 13, 2007 *sua sponte* .

**H.    Summary Judgment**

      19.    On July 17, 2006, Kaplan filed a motion for summary judgment seeking to dismiss Count II of the FAC (the only count against Kaplan). Plaintiffs opposed the motion and subsequently sought leave to file two supplemental opposition briefs to the motion, which the Court granted. The Court denied Kaplan's motion for summary judgment. *See* Order filed September 18, 2006.

**I.    Negotiation of the Settlement Agreement**

      20.    After completion of discovery and with the February trial date approaching, the Settling Parties together with Rodriguez, Nesci, and Gintz (the "Objecting Plaintiffs") engaged in a formal mediation in New York City on November 29, 2006. The Honorable Daniel Weinstein (Ret.) of JAMS, who has substantial experience in resolving antitrust and class action cases, served as mediator. Plaintiffs were represented by Class Counsel; plaintiff Gintz was also present. BAR/BRI was represented by Shearman & Sterling, LLP and Kaplan was represented by Munger, Tolles & Olson LLP. Also present were in-house counsel for Defendants and Conviser.

      21.    The record reflects that at all times, the negotiations were at arm's-length and hard fought. The Settling Parties were unable to reach a resolution on November 29, 2006.

      22.    Negotiations continued for the next several weeks with the

assistance of the mediator. Throughout this time, Class Counsel continued to prosecute discovery disputes and prepare for trial. After several weeks of negotiations, an agreement was reached on all Settlement terms (which was supported by the mediator); the Settlement Agreement was executed on February 2, 2007.

23.     The Objecting Plaintiffs refused to authorize the execution of the Settlement Agreement on their behalf.

## II.     THE TERMS OF THE SETTLEMENT

### A.     The Settlement Fund

24.     Consistent with the terms of the Settlement Agreement, Defendants paid forty-nine million dollars into an interest-bearing account for the benefit of the Class, which amount, plus interest (hereinafter, "Gross Settlement Fund"), has or will be used to pay for the costs of notice, settlement administration, taxes and attorneys' fees and expenses pursuant to the orders of this Court. After such payments from the Gross Settlement Fund, the balance will be distributed to the Class ("Net Settlement Fund") pursuant to the Plan of Allocation.

### B.     Plan of Allocation

25.     Under the terms of the Plan of Allocation, the Net Settlement Fund will be distributed *pro rata* based on the amount each Class Member who submits a timely and valid Claim Form ("Authorized Claimant") paid BAR/BRI for the bar review course in relation to the amounts paid by all other Authorized Claimants. For example, if the amount paid for a bar review course by an Authorized Claimant equals 1/100,000 of the aggregate of such amounts paid by all other Authorized Claimants, then the Authorized Claimant will receive 1/100,000 of the Net Settlement Fund. The maximum amount of payment that any Authorized Claimant shall be entitled to receive from the Net Settlement Fund, however, shall not exceed thirty-percent (30%) of the amount the Authorized Claimant paid for the

FINDINGS OF FACT AND CONCLUSIONS OF LAW

1  bar review course (the "Maximum Payment").

2     26.    Class Members also have the option of donating their portion

3  of the Net Settlement Fund to the National Legal Aid and Defender Association

4  ("NLADA"), for the purpose of providing training opportunities for young lawyers

5  nationwide.  NLADA, founded in 1911, is the oldest and largest national, nonprofit

6  membership organization devoting all of its resources to advocating equal access to

7  justice for all people.

8     27.    Defendants are not entitled to a reversion of any money

9  remaining in the Net Settlement Fund after distribution of the Maximum Payments

10  to all Authorized Claimants.  If any funds remain in the Net Settlement Fund after

11  distributing the Maximum Payments to all Authorized Claimants, Class Counsel

12  will make an application to the Court for a *cy pres* distribution of the residual

13  amount of the Net Settlement Fund.

14
      **C.    Provisions to Promote Competition in the Bar Review Market**

15     28.    For purposes of Settlement, BAR/BRI and Kaplan agreed to

16  terminate the marketing agreement that Plaintiffs allege is unlawful and has allowed

17  BAR/BRI to maintain a monopoly and Defendants to divide the market.  Further,

18  for a period of five years following the Effective Date, BAR/BRI will include the

19  following statement on the forms it uses to enroll law students into its review

20  courses:

21
      NOTE:  By signing this Enrollment Form and making an initial

22      payment to BAR/BRI, you are not committing yourself to taking the

23      BAR/BRI Bar Review course or making full payment to BAR/BRI for

24      such course.

25
       29.    Finally, in the Settlement Agreement, BAR/BRI expressly

26  states "that it is committed to accurate advertising as required by the Lanham Act,

27  the Federal Trade Commission Act and similar laws, regulations and rules."

28

-8-
FINDINGS OF FACT AND CONCLUSIONS OF LAW

Settlement Agreement ¶ 39.

### D.    Release

30.    Paragraphs 56 and 57 of the Settlement Agreement contain a proposed Release, which is incorporated in the Judgment and Order Approving Settlement, signed contemporaneously with these Findings of Fact and Conclusions of Law (the "Settlement Order"). The Settlement Order provides that all Class Members (including any of their past, present or future officers, directors, agents, employees, legal representatives, trustees, parents, associates, affiliates, licensees, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors, and assigns), with the exception of those who exercised their right to opt out (identified in Exhibit A to the Settlement Order), whether or not he, she or it objects to the Settlement and whether or not he, she or it makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity, ever had, now has or hereafter can, shall or may have concerning or relating to any conduct alleged in the FAC in this Action, and including without limitation all claims that have been asserted or could have been asserted in any litigation against the Released Parties or any of them for any conduct alleged in the FAC in this Action (collectively with all claims referenced in the next paragraph, the "Released Claims"), are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration or other proceeding against any or all Released Parties, or order in any jurisdiction entered against any or all Released Parties that is based upon, arises out of or relates to any Released Claims.

31.    Notwithstanding the foregoing, the Released Claims shall not include claims asserted against the named defendants as of February 2, 2007, in the putative class actions, entitled *Park v. Thomson Corp., et al.*, Case No. 05 Civ. 2931

1  (WHP) and *Arendas v. Thomson Corp., et al.*, Case 6:06-cv-1113-Orl-28JGG,

2  currently pending in the United States District Court, Southern District of New

3  York (the "New York Actions").

4

## III.  JURISDICTION

5
6  32.     This Court has jurisdiction over the claims of Class Members

7  because Plaintiffs have alleged violations of federal laws, specifically the Sherman

   Act, 15 U.S.C. § 1 and the Clayton Act, 15 U.S.C. § 18.

8
9  33.     This Court can also exercise personal jurisdiction over all

   absentee Class Members because Class Members received proper notice of the

10
11  Action.

12  34.     The Class Action Notice informed potential Class Members of

13  the pendency of this Action and provided them with the opportunity to exclude

14  themselves from the Class.

15  35.     The  Notice informed Class Members of their opportunity to

16  object to the Settlement and to be heard at the Final Settlement Hearing.  Such

17  notice satisfies the due process requirements of the Fifth Amendment.  *Brown v.*

18  *Ticor Title Inc.,* 982 F2d 386, 392 (9th Cir. 1992).

## IV.  PRELIMINARY APPROVAL

19
20  36.     On March 19, 2006, over the objections of the Objecting

21  Plaintiffs, this Court entered an Order Granting Plaintiffs' Motion for Preliminary

22  Approval of Class Action Settlement and Directing Dissemination of Notice to

23  Class (the "Preliminary Approval Order") that, among other things: (a) found that

24  the Settlement Agreement was negotiated in good faith, under the supervision of a

25  well-respected mediator, resulted from extensive arm's length negotiations, was

26  concluded after Class Counsel conducted broad discovery and was sufficiently fair,

27  reasonable and adequate to warrant sending notice of the Settlement to Class

28  Members and holding a full hearing on the Settlement; (b) modified the definition

of the previously certified class to: "All Persons who purchased a bar review course from BAR/BRI in the United States from August 1, 1997 through and including July 31, 2006"; (c) found that the proposed forms and methods of notice met the requirements of the Federal Rules of Civil Procedure, the United States Constitution, the Rules of the Court and any other applicable law; (d) appointed Complete Claim Solutions, LLC ("CCS") as Claims Administrator; (e) established procedures for Class Members to object to the Settlement; and (f) established the date for the Final Settlement Hearing.

## V.    NOTICE TO THE CLASS OF THE SETTLEMENT

37.    The Settling Parties have provided extensive individual notice to Class Members. Pursuant to the Preliminary Approval Order, CCS caused a copy of the Notice and Claim Form to be sent *via* first-class mail to the last known postal address of each Class Member, as updated through the United States Postal Service National Change of Address service. A total of approximately 376,000 Notices were sent.

38.    The Summary Notice was published in: (a) *The National Law Journal* on April 23 and 30, 2007; (b) *Lawyers Weekly USA* on April 23, May 7 and 21, 2007; and (c) *USA Today* on April 18, 2007. The Summary Notice was also distributed through PR Newswire on May 8, 2007 and was sent *via* first-class mail to the office manager of each law firm listed on the most recent "*AmLaw* 200 list". In addition, the Notice and Summary Notice were posted on Class Counsel's websites.

39.    Under Class Counsel's direction and supervision, CCS updated the official BAR/BRI class action website at *www.barbri-classaction.com* to provide Class Members information about the Settlement. The website provided Class Members with important dates regarding the Settlement, answers to "frequently asked questions," copies of the Notice and Claim Form, the Settlement

1    Agreement, the Plan of Allocation, as well as certain other relevant pleadings in the

2    Action.

3            40.    Under Class Counsel's direction and supervision, CCS

4    established a toll-free interactive voice response system which also provided

5    answers to frequently asked questions.  Class Members were also able to speak with

6    a live operator at CCS.  Additionally, CCS established an email box for Class

7    members who wish to request additional information by email.

8            41.    Finally, Class Counsel set up a response team comprised of

9    several attorneys and paralegals to respond to questions from Class Members about

10   the Settlement.

11           42.    The Notice included summaries of the Release and the Plan of

12   Allocation, and provided detailed information about the Settlement benefits

13   available to the Class Members, including their right to object to the Settlement and

14   to appear at the Final Settlement Hearing.

15

16   **VI.    THE NOTICE SATISFIED ALL APPLICABLE REQUIREMENTS**

17           43.    The Preliminary Approval Order approved the procedures for

18   notifying Class Members about the Settlement Agreement, as well as the form of

19   the Notice and the Summary Notice.  The form of such an order is within this

20   Court's discretion.  *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir.

21   1977) ("Rule 23(d)(2), of course, does not provide for a specific manner of notice

22   or the form of the notice. These are matters left to the court's discretion to be

23   dictated by the circumstances of each case.)  The Settling Parties provided

24   extensive and sufficient notice to Class Members, and the methodology by which it

25   was provided not only meets, but exceeds, all requirements for notice in a class

26   action settlement.

27           44.    In order to satisfy due process requirements, notice to Settlement

28   Class Members must generally describe the terms of the settlement in sufficient

1  detail to alert those with adverse viewpoints to investigate and to come forward and

2  be heard." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993)

3  (quoting *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977)); *In re*

4  *Aetna Inc. Secs. Litig.*, MDL No. 1219, 2001 WL 20928 at * 5 (E.D. Pa. Jan. 4,

5  2001) ( Notice must be "reasonably calculated under all the circumstances, to

6  apprise interested parties of the pendency of the action and afford them an

7  opportunity to present their objections." (quoting *Mullane v. Cent. Hanover Bank &*

8  *Trust Co.*, 339 U.S. 306, 314-15 (1950) (citation omitted)).

9

10  **A.    The Contents of the Notice Satisfy Due Process**

11  45.    A settlement notice is a summary, not a complete source of

12  information.  This circuit requires a very general description of the proposed

13  settlement in such a notice.  *See Churchill Village, L.L.C. v. General Electric*, 361

14  F.3d at 575 (9th Cir. 2004) ("[N]otice is satisfactory if it 'generally describes the

15  terms of the settlement in sufficient detail to alert those with adverse viewpoints to

16  investigate and to come forward and be heard'") (quoting *Mendoza v. Tucson*

17  *School Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980)); *Torrisi*, 8 F.3d at, 1374.

18  46.    Proper notice should provide:  (a) the material terms of the

19  proposed settlement; (b) disclosure of any special benefit to the class

20  representatives; (c) disclosure of the attorneys' fees provisions; (d) the time and

21  place of the final approval hearing and the method for objecting to the settlement;

22  (e) an explanation regarding the procedures for allocating and distributing the

23  settlement funds; and (f) the address and phone number of class counsel and the

24  procedures for making inquiries.  *See Marshall v. Holiday Magic*, 550 F.2d at 1178.

25  47.    The Notice and the Summary Notice provided all of the required

26  information: a description of the material terms of the Settlement; a description of

27  the monetary and non-monetary relief and the Plan of Allocation; the applications

28  for the Incentive Awards and the amounts; Class Counsel's intent to apply for a Fee

1  Award in the amount of twenty-five percent (25%) of the Gross Settlement Fund
2  and for reimbursement of expenses; and the contact information for Class Counsel,
3  including how to make inquiries.  The Notice also included the date, time, and place
4  of the Final Settlement Hearing, described how to object, and informed Class
5  Members that any objection must be filed with the Court and delivered to Class
6  Counsel and counsel for Defendants no later than May 21, 2007.
7          48.     The Notice further advised Class Members that if the Settlement
8  is approved, Defendants will be released of any liability to the Class Members
9  arising out of the conduct alleged or which could have been alleged in this Action,
10  with the exception of the claims asserted in the New York Actions.
11          49.     The Notice's content advised Class Members of the information
12  that is material to making an informed and intelligent decision respecting whether
13  to participate in the Settlement or not.  *See In re Equity Funding Corp. of America*
14  *Securities Litigation*, 603 F.2d 1353, 1361 (9th Cir. 1979)  (approving notice
15  because "the Notice informed the appellants of the subject matter and terms of the
16  proposed settlements and Plan of Allocation at the time the Notice was sent out");
17  *Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 332 (E.D. Pa. 1993) ("The
18  standard then is that the notice required by [Rule 23](c)(2) must contain information
19  that a reasonable person would consider to be material in making an informed,
20  intelligent decision of whether to opt out or remain a member of the class and be
21  bound by the final judgment.") (quoting *In re Nissan Motor Corp. Antitrust Litig.*,
22  552 F.2d 1088, 1105 (5th Cir. 1977)).
23          50.     The Notice and Summary Notice provided sufficient information
24  for Class Members to understand the proposed Settlement Agreement and their
25  options. *See In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 235, 254 (D.N.J.
26  2000) (finding due process satisfied where the notice informs class members of (a)
27  the nature of litigation; (b) general terms of the settlement; (c) where to locate

complete information; and (d) the place and time of the hearing where objections

may be heard).

**B.    The Dissemination Plan Satisfies Due Process**

51.    There is no statutory or due process requirement that all class

members receive actual notice by mail or other means; rather, "individual notice

must be provided to those Class Members who are identifiable through reasonable

effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974). "Rule 23(e)

gives the Court 'virtually complete' discretion as to the manner of service of

settlement notice." *Colesberry v. Ruiz Food Products, Inc.*, No. CV F 04-5516,

2006 WL 1875444, at *7 (E.D. Cal. Jun. 30, 2006) (*citing Franks v. Kroger Co.*,

649 F.2d 1216, 1222-23 (6th Cir. 1981)). Here, the Notice was disseminated *via*

individual mailing and publication. As the highest standard of notice, the Notice

satisfies the due process requirement.

52.    In this Action, as stated above, the Notice was mailed by first

class mail to each Class Member identified from Defendants' records, which CCS

reviewed and formatted to ensure standardization and removal of duplicate and

non-mailable records. The Notice was also made available on a variety of internet

sites – including that of the Claims Administrator and Class Counsel. In addition,

the Summary Notice describing the principal terms of the Settlement Agreement

and providing information respecting how a more detailed description of the

Settlement Agreement could be obtained was published in *The National Law

Journal* (two insertions), *Lawyers Weekly USA* (three insertions) and *USA Today*.

The Summary Notice was sent by first-class mail to the largest 200 law firms in the

United States as listed in *American Lawyer*. These publications and the mailing to

the 200 largest law firms specifically targeted the Class.

53.    The procedures used for providing notice in this case satisfy the

Federal Rules and due process requirements. *See, e.g., Silber v. Mobon*, 18 F. 33

1449, 1452-54 (9th Cir. 1994)(approving notice sent by first class mail as the "best

notice practicable"); *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758

F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class

mail and publication in the press fully satisfy the Notice requirement of both Fed.

R. Civ. 23 and the due process clause.") (citations omitted); *Montgomery v.*

*Beneficial Consumer Disc. Co.*, No. 04- 2114, 2005 WL 497776, at * 6 (E.D. Pa.

Mar. 2, 2005) (individual mailing accompanied by publication in USA Today was

best practicable notice under the circumstances; "[d]ue process does not require

actual notice, but rather a good faith effort to provide actual notice") (quoting Alba

Conte and Herbert B. Newberg, *Newberg on Class Actions* § 11:53 (4th ed. 2002)

(hereafter "*Newberg*").

      54.    The Court thus affirms its findings in the Preliminary Approval

Order that the notice in this case and the notice methodology are the best

practicable notice and meet the requirements of the Federal Rules of Civil

Procedure (including Fed. R. Civ. P. 23), the United States Constitution (including

the Due Process Clause), the Rules of this Court and any other applicable law.

## VII.      FINAL APPROVAL OF THE SETTLEMENT

### A.    Written Submissions

      55.    Class Counsel and Defendants filed submissions in support of

the Settlement Agreement and the Objecting Plaintiffs filed submissions in

opposition to the Settlement Agreement as follows:

        (a)    On May 17, 2007, Class Counsel filed: (i) Notice of

Motion and Motion and Motion For Final Approval of Class Action Settlement; (ii)

Declaration of Sidney K. Kanazawa; and (iii) Memorandum of Points and

Authorities in Support of Final Approval;

        (b)    On May 17, 2007, the Objecting Plaintiffs filed an

objection, *inter alia* objecting to entry of the Preliminary Approval Order (the "May 17 Objections");

(c)     On May 18, 2007, Class Counsel filed a response to the May 17 Objections;

(d)     On May 31, 2007, the Objecting Plaintiffs filed an *ex parte* application, memorandum and declaration for an order to: (i) allow Eliot Disner, Esq. ("Disner") to "speak freely" on their behalf; (ii) allow access to certain files; and (iii) clarify the status of Disner as a "co-lead counsel" (the "*Ex Parte* Application");

(e)     On June 1, 2007, Class Counsel filed an Opposition to the *Ex Parte* Application and Defendants filed objections to the *Ex Parte* Application (the "*Ex Parte* Oppositions"); and

(f)     On June 7, 2007, the Objecting Plaintiffs filed a reply to the *Ex Parte* Oppositions.

56.     In addition to the May 17 Objections, the purported Class Members listed in the following table filed Objections to the Settlement on the dates indicated (together with the May 17 Objections, the "Objections"):

| Date Filed | Class Member |
|---|---|
| May 21, 2007 | David Oriol (the "Oriol Objector") |
| May 21, 2007 | Jason Tingle<br>Oliver Gutierrez (the "Tingle Objections") |
| May 21, 2007 | David Feldman<br>Cameron Gharabiklou<br>Emily Grant<br>Jeff Lang<br>Sarah McDonald |

| Date Filed | Class Member |
|---|---|
| | Cara Patton<br>Rachel Schwartz<br>Greg Thomas (the "Feldman Objectors") |
| May 21, 2007 | Joseph J. Angersola |
| May 21, 2007 | Anthony Valach |
| May 21, 2007 | Jay M. Wolman (the "Wolman Objector") |
| May 21, 2007 | Joan E. Shreffler |
| May 21, 2007 | Robert Gaudet,<br>Sandeep Gopalan<br>Elizabeth De Long<br>Andrea Boggio (the "Gaudet Objectors") |
| May 21, 2007 | Justin Head<br>Ryan Helfrich (the "Head Objectors") |
| May 21, 2007 | George Schneider<br>Jonathan Slomba<br>James Puntumapanitch (the "Schneider Objectors") |
| May 21, 2007 | James Juranek<br>Audrey Juranek<br>Richard P. Le Blanc, III. (the "Juranek Objectors") |
| May 12, 2007 | Arcelia Trevino (the "Trevino Objector") |
| May 21, 2007 | Aaron Lukoff<br>John Prendergast<br>David Orange (the "Lukoff Objectors") |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

| Date Filed | Class Member |
|---|---|
| May 22, 2007 | Daryl Chilimidos (the "Chilimidos Objector") |
| May 22, 2007 | Nikki Love<br>John Bernitz (the "Love Objectors") |
| May 22, 2007 | Daniel M. Schaefer (the "Schaefer Objector") |
| May 22, 2007 | Evans & Mullinix, P.A. (the "Evans & Mullinix Objectors") |
| May 22, 2007 | Sarah Siegel (the "Siegel Objector") |
| May 22, 2007 | Jennifer Brown McElroy (the "McElroy Objector") |
| May 22, 2007 | Andrew Gilman<br>Stephen M. Vasil |
| May 23, 2007 | David Harris<br>Kareem Kamal<br>Matthew Kavanaugh<br>Simon Newfield<br>Jonathan Ricasa<br>Abigail Treanor<br>David Zelenski (the "Harris Objector") |
| May 23, 2007 | Pamela Collins (the "Collins Objector") |
| April 10, 2007 | Craig Walenta |
| May 28, 2007 | Richard A. Bodmer |
| June 12, 2007 | Stephen Lindholm |

57.    On June 11, 2007, Class Counsel filed: (a) a reply memorandum in support of the Settlement which addressed the Objections; and (b) the

FINDINGS OF FACT AND CONCLUSIONS OF LAW

1   declarations of: (i) Sidney K. Kanazawa; (ii) Christine Pedigo Bartholomew; (iii)

2   Richard Sartory of CCS; and (iv) Hon. Daniel Weinstein.

3       58.   On June 11, 2007, Defendants filed Defendants' Combined

4   Response To Various Class Members' Objections To Stipulation And Settlement

5   Agreement ("Defendants' Combined Response"). Also on June 11, 2007,

6   BAR/BRI filed a reply memorandum to the May 17 Objections.

7       59.   On June 15, 2007, Kaplan filed: (a) Notice of Filing of

8   Declaration of Lee S. Taylor in Support of Motion for Final Approval of

9   Settlement, Regarding Kaplan's Compliance with the Requirements of the Class

10   Action Fairness Act; and (b) Declaration of Lee S. Taylor, and subsequently filed:

11   (a) Notice of Filing of Revised Declaration of Lee S. Taylor in Support of Motion

12   for Final Approval of Settlement, Regarding Kaplan's Compliance with the

13   Requirements of the Class Action Fairness Act; (b) Revised Declaration of Lee S.

14   Taylor; Notice of Filing Under Seal; and (c) Declaration of Lee S. Taylor

15   Authenticating and Attaching Documents.

16       60.   On June 18, 2007, BAR/BRI filed the Declaration of James P.

17   Tallon Regarding the Class Action Fairness Act.

18       61.   On June 18, 2007, the Court ordered additional briefing to be

19   submitted with regard to the issue of a *cy pres* distribution (the "June 18 Order").

20       62.   Pursuant to the Court's June 18 Order, on June 26, 2007, Class

21   Counsel filed: (a) Settling Plaintiffs' Supplemental Briefing In Support of Motion

22   for Final Approval Re: 30% Distribution Limit To Authorized Claimants and Cy

23   Pres Fund for Remainder; (b) Declaration of Sidney K. Kanazawa; and (c)

24   Declaration of Richard L. Sartory of CCS. Also, on that date, Defendants filed: (a)

25   Defendants' Supplemental Brief Regarding Approval of Proposed Settlement,

26   Addressing Cy Pres Provision of Proposed Settlement; and (b) the Declaration of

27   Stuart N. Senator.

28

63.    In addition, on June 26, 2007, several Objectors including the Juranek Objectors and the Harris Objectors, submitted additional briefing in further opposition to final approval of the Settlement.

64.    On July 5, 2007, Disner filed a Summary of Evidence Regarding Defendant West Publishing Co.'s Violation of Section 2 of the Sherman Act (15 U.S.C. § 2) and a Re-Notice of Appearance of Counsel.

65.    As noted above, the number of Objections was small.  The Objectors raised issues regarding the following topics: (a) the Objecting Plaintiffs opposed the Settlement; (b) Plaintiffs' Section 7 claim should be bifurcated from the Sherman Act claims; (c) Plaintiffs' case against the Defendants is too strong; (d) the Settlement Fund is insufficient; (e) the lack of a provision prohibiting future misconduct or dissolution; (f) the scope of the Release; (g) the possibility of a cap on individual Class Member's recovery and a *cy pres* award; (h) the failure to provide for a second opt-out chance; (i) the sealing of certain confidential documents obtained in discovery; (j) the Claim Form procedure renders the Settlement unfair; (k) the sufficiency of the Notice; and (l) the adequacy of Class Counsel.

**B.    The Final Approval Hearing**

66.    On June 18, 2007 and July 9, 2007, the Court conducted hearings on the fairness, reasonableness, and adequacy of the Settlement.

67.    Twelve groups of Objectors were represented at the Final Approval Hearing (through counsel).  Two of the three Objecting Plaintiffs - Nesci and Rodriguez - were also present.

68.    The Objectors (other than the Objecting Plaintiffs) were represented at the Final Approval Hearing by: (a) Alan Harris, Esq. (on behalf of the Harris Objectors); (b) Howard Steele, Esq., Charles Steiner, Esq., and Ron Rosengarten, Esq. (on behalf of the Juranek Objectors); (c) Alexandra Steinberg,

Esq. (on behalf of the Trevino Objector); (d) John Davis, Esq. (on behalf of the Feldman Objectors); (e) Robert Gaudet, Jr., Esq. (on behalf of the Gaudet Objectors); (f) Ben Nutley, Esq. (on behalf of Head Objectors); (g) Robert Chojnakci, Esq. (on behalf of the Oriol Objectors); (h) Ken Nelson, Esq. (on behalf of the Evans & Mullinix Objectors); (i) Emily Greer, Esq. (on behalf of the Love Objectors); (j) Leo Collins, Esq. (on behalf of the Collins Objector); and (k) Darnell Palmer, Esq. (on behalf of the Evans & Mullinix Objectors, the McElroy Objector and the Schaefer Objector). In addition, Perrin Disner, the son of Disner appeared *pro se* as an objector, although he did not comply with the procedure for objecting set forth in the Preliminary Approval Order.

## VIII. FAIRNESS OF THE SETTLEMENT AGREEMENT

### A. The Settlement Agreement Enjoys a Presumption of Fairness

69.    In the Ninth Circuit, a court affords a presumption of fairness to a settlement, if: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Young v. Polo Retail*, No. C-02-4546 VRW, 2006 WL 3 050861, at 5 (N.D. Ca. Oct. 25, 2006); *Newberg* at § 11.41. As described above, the Settlement was reached only after extensive discovery had been conducted. Settlement negotiations occurred at arm's length for three months with the assistance of a mediator and on the eve of trial.

70.    Both Class Counsel and Defendants' counsel are experienced in class actions, including antitrust class actions. Moreover, the Class' reaction to the Settlement Agreement has been overwhelmingly positive, and only a small fraction of the Class has objected to the Settlement. The Settlement Agreement thus enjoys a presumption of fairness.

### B. The Settlement Agreement is Fair, Adequate and Reasonable

71.    The Ninth Circuit has articulated eight factors to evaluate a

settlement's fairness, adequacy, and reasonableness:

    (a)  The strength of plaintiffs' case;

    (b)  The risk, expense, complexity, and likely duration of further litigation;

    (c)  The risk of maintaining class action status throughout the trial;

    (d)  The amount offered in settlement;

    (e)  The extent of discovery completed, and the stage of the proceedings;

    (f)  The experience and views of counsel;

    (g)  The presence of a governmental participant,[2] and

    (h)  The reaction of the class members to the proposed settlement.

*Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### 1.    The Strength of Plaintiffs' Case

72.    Plaintiffs prevailed on Kaplan's motion for summary judgment and believe they would prevail on any motion for summary judgment filed by BAR/BRI. Nevertheless, defeating these motions does not mean that Plaintiffs established Defendants' *prima facie* liability; whether they would obtain a favorable, unanimous jury verdict as required by Fed. R. Civ. P. 48 is far from guaranteed. *See, e.g., In re Airline Ticket Com'n Antitrust Litig.*, 953 F.Supp. 280, 283 (D. Minn. 1997) (approving settlement although it did not provide a full recovery of the potential losses and noting that objectors failed to appreciate that on summary judgment, the court only decided that defendants did not prevail as a

_____

[2] There was no governmental presence with respect to the claims set forth in the Action.

1    matter of law, not that plaintiffs had a winning case).

2        73.    To prove their claim for violation of Section 1 of the Sherman

3    Act, Plaintiffs have to show that Defendants combined, conspired and contracted

4    among themselves to eliminate competition in the bar review course market

5    throughout the United States for the purpose and with the effect of raising,

6    depressing, fixing, pegging, or stabilizing the price of a commodity in interstate

7    commerce. *See Palmer v. BRG,* 498 U.S. 46, 48 (1990). Plaintiffs' Section 1 claim

8    is based on Kaplan's withdrawal from a letter of intent to purchase West Bar and its

9    subsequent agreement with BAR/BRI. Kaplan and BAR/BRI, however, point to

10   documentary and testimonial evidence to support their defense that the 1997

11   agreement between them was not an illegal market allocation agreement, but a

12   *bona-fide* co-marketing agreement executed after Kaplan made a legitimate

13   business decision not to go forward with acquiring West Bar due to its poor

14   financial forecast for the business. While Plaintiffs claim to have evidence to rebut

15   Defendants' defenses, litigation is uncertain and Plaintiffs could lose on this point

16   as equally as they could prevail. *See In re Superior Beverage/Glass Container*

17   *Consolidated Pretrial,* 133 F.R.D. 119, 127 (N.D. Ill. 1990) (stating that "[t]he

18   'best' case can be lost and the 'worst' case can be won . . . .").

19

20       74.    There is also no guarantee that Plaintiffs would prevail on their

21   Section 2 claim. To establish their Section 2 claim, Plaintiffs would have to prove

22   that BAR/BRI has significant market power and engaged in wrongful conduct to

23   obtain and preserve its monopoly power on a national scale, thereby injuring

24   Plaintiffs and the Class. *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,*

25   472 U.S. 585, 596 (1985). BAR/BRI, however, argues that its market position is

26   the result of innovation and high-quality products and services, not illegal conduct.

27   Further, BAR/BRI has proffered evidence showing that the relevant product market

28   is not national, but state specific, and the geographic markets are local and

metropolitan areas. BAR/BRI also argued that the conduct alleged in the FAC to support the Section 2 claim was (i) not substantiated in discovery, (ii) local and limited in impact, and (iii) too remote in time. Again, while Plaintiffs believe they have strong evidence to the contrary, it is not inconceivable that a jury could agree with and decide in favor of BAR/BRI.

75.     Similarly, there is no guarantee that Plaintiffs would prevail on their Section 7 claim under the Clayton Act, which prohibits mergers, acquisitions and joint ventures "that may substantially lessen competition or tend to create a monopoly in a market." 15 U.S.C. § 18. BAR/BRI claims it did not violate Section 7 by acquiring West Bar as Plaintiffs allege. Rather, BAR/BRI claims its conduct was pro-competitive and did not diminish competition. BAR/BRI claims it had both testimony and documentary evidence showing that West Bar was already defunct when BAR/BRI agreed to provide bar review courses to West Bar's customers so that BAR/BRI did not acquire West Bar or diminish competition. Again, while Plaintiffs claim to have rebuttal evidence, they have no crystal ball to allow them to foresee which way the Court and/or a jury would find on this issue.

76.     Defendants also raise the statute of limitations defense. If the Court or the jury determined that the statute precluded the claims of certain Class Members, thereby decreasing the size of the Class and impacting the damages analysis relied upon by Class Counsel in negotiating the Settlement, then the Class may recover significantly less than what was achieved by the Settlement.

## 2.     The Risk, Expense, Complexity and Duration of Continued Litigation

77.     These factors consider "the probable costs, in both time and money, of continued litigation." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002). In most cases, "unless the settlement is clearly inadequate,

1   its acceptance and approval are preferable to lengthy and expensive litigation with

2   uncertain results." *National Rural Telecommunications Coop. v. DIRECTV, Inc.,*

3   221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting *Newberg,* § 11:50 at 155). Indeed,

4   it has been held proper "to take the bird in hand instead of a prospective flock in the

5   bush." *DIRECTV,* 221 F.R.D. at 526 (quoting *Oppenlander v. Standard Oil Co.,* 64

6   F.R.D. 597, 624 (D. Colo. 1974)). Settlement is encouraged in class actions where

7   possible. *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir.1976) ("It

8   hardly seems necessary to point out that there is an overriding public interest in

9   settling and quieting litigation. This is particularly true in class action suits which

10  are now an ever increasing burden to so many federal courts and which frequently

11  present serious problems of management and expense.").

12

13      78.    There is no question that this Action is complex and, if not

14  settled, its potential to result in enormous expense and lengthy duration is great.

15  Antitrust class actions "are notoriously complex, protracted, and bitterly fought"

16  and "arguably the most complex actions to prosecute." *In re Visa*

17  *Check/MasterMoney Antitrust Litig.,* 297 F.Supp.2d 503, 510 (E.D.N.Y. 2003)

18  (quoting *Weseley v. Spear, Leeds & Kellogg,* 711 F.Supp.713, 719 (E.D.N.Y.

19  1989)); *In re Motorsports Merch. Antitrust Litig.,* 112 F.Supp.2d 1329, 1337 (N.D.

20  Ga. 2000).

21      79.    This antitrust case is no different; it would surely involve further

22  expense in addition to the amounts already expended if the Action proceeded to

23  trial. For instance, proceeding to trial would require additional discovery, including

24  the resolution of a number of motions to compel that were pending at the time the

25  Settling Parties reached Settlement; the briefing and resolution of numerous

26  motions *in limine* yet to be filed; and cross-*Daubert* motions would certainly be

27  filed. Plaintiffs would also have to oppose BAR/BRI's motion for summary

28  judgment and motion to bifurcate the trial. These costs would substantially increase

1    the significant costs and fees already incurred.

2        80.    Additionally, the litigation would most likely take several years

3    to finally resolve, considering the length of trial and appeals. Accordingly,

4    avoiding a trial and inevitable appeals in this complex, antitrust suit strongly weigh

5    in support of approval of the Settlement, rather than prolonged and uncertain

6    litigation. *See DIRECTV*, 221 F.R.D. at 527 ("Avoiding such a trial and the

7    subsequent appeals in this complex case strongly militates in favor of settlement

8    rather than further protracted and uncertain litigation").

9        **3.    The Risks of Maintaining Class Certification throughout**

10        **Trial**

11        81.    This Court certified a nationwide Class. Although Plaintiffs

12    believe it is unlikely, there is no guarantee that Defendants would not move for and

13    obtain decertification of the Class before or during trial. *See In re Nasdaq Market-*

14    *Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998). As noted by one

15    court, if "insurmountable management problems were to develop at any point, class

16    certification can be revisited at any time under Fed.R.Civ.P. 23(c)(1)." *Id.* Further,

17    even if the Class remained certified throughout the trial and Plaintiffs prevailed,

18    Defendants would surely challenge class certification on appeal. If at any point the

19    Class were decertified or certification were reversed on appeal, the Class would

20    recover nothing. Thus, this factor also weighs in favor of the Settlement.

21        **4.    The Relief Offered in Settlement**

22        82.    The Settlement provides a significant Settlement Fund of $49

23    million as well as valuable non-monetary relief. Defendants deposited this money

24    into an escrow account on April 6, 2007 where it is currently earning interest for the

25    benefit of the Class.

26        83.    When compared to Defendants' expert's estimated damages, the

27    $49 million is an excellent result. According to Defendants' experts, the Class

1   suffered no antitrust impact or damages respecting Plaintiffs' Section 2 claim under

2   the Sherman Act or Section 7 claim under the Clayton Act. Defendant's expert

3   further opined that Plaintiffs suffered no antitrust impact or damages with respect to

4   Plaintiffs' Section 1 claim under the Sherman Act, but if they did, it was limited to

5   at most, approximately $7 million. Therefore, the $49 million represents seven

6   times more than Defendants' expert's most generous estimate of damages.

7        84.    While the $49 million does not represent Plaintiffs' expert's full

8   amount of estimated damages, "settlement is about compromise, a yielding of the

9   highest hopes in exchange for certainty and resolution." *In re Warfarin*, 212 F.R.D.

10   at 257. The $49 million does, however, represent approximately thirty-percent

11   (30%) of Plaintiffs' damages, estimated by their expert to be in the range of $158

12   million to $168 million. Thus, the $49 million represents a significant portion of

13   Plaintiffs' expert's estimated damages. Moreover, Defendants made clear their

14   intention to mount a substantial attack on Plaintiffs' damages expert on multiple

15   grounds as set forth in Defendants' Combined Response. While Plaintiffs believe

16   that they could have overcome these anticipated attacks, the outcome was uncertain.

17        85.    Courts have routinely approved class action settlements where

18   the settlement amount is in the percentage range of the claimed amount of damages

19   here, as well as where the settlement amount was a substantially lower percentage

20   of the claimed amount of damages. *See In re Cendant Corp. Litig.*, 264 F.3d at

21   241(noting that recoveries can range from 1.6% to 14% and affirming settlement

22   representing 36% of recovery); *Nichols v. Smithkline Beecham Corp.*, No. 00-6222,

23   2005 WL 950616, at *16 (E.D. Pa. April 22, 2005) (approving settlement that

24   represented between 9.3% and 13.9% of the claimed damages); *In re Warfarin*, 212

25   F.R.D. at 258 (finding settlement amount representing 33% of maximum possible

26   recovery was well within a reasonable range when compared with recovery

27   percentages in other class action settlements).

86.    Although Plaintiffs believe their case is strong and that they could recover damages at trial, there is always the risk that Plaintiffs may not recover anything. "The history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or negligible damages, at trial or on appeal." *In re Nasdaq*, 187 F.R.D. at 476.

87.    Further, if the case did not settle, Plaintiffs risk the valuable non-monetary relief that Class Counsel negotiated. This relief addresses many of the concerns that prompted the filing of this lawsuit, such as the "market allocation" agreement between BAR/BRI and Kaplan that Plaintiffs allege is illegal and other barriers to entry. This valuable non-monetary relief, in addition to the significant fund of $49 million, weigh heavily in favor of Settlement.

### 5.    The Extent of Discovery Completed and the Stage of Proceedings When the Parties Reached the Settlement

88.    "To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery." *In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 176 (S.D.N.Y. 2000). However, "the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of trial." *Id.* (quoting *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 263 (S.D.N.Y. 1998)). What is required is that "sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently." *Newberg* at § 11:41.

89.    The record here supports final approval of the Settlement. Class Counsel conducted extensive discovery regarding each of the relevant issues in the case, such as: (a) the negotiation, terms and impact of the co-marketing agreement between BAR/BRI and Kaplan; (b) BAR/BRI's competitive activities and interactions with competitors; (c) BAR/BRI's purchase of West Bar's assets; (d) the

geographic market for bar review courses; (e) market shares; and (f) barriers to entry and market conditions. Plaintiffs also deposed fourteen fact witnesses, deposed each of Defendants' experts on issues relating to liability, damages, and class certification, and reviewed and analyzed more than 400,000 pages of documents.

90.    Further, at the time Class Counsel negotiated the Settlement, the Settling Parties had the benefit of key briefing and rulings on class certification and Kaplan's motion for summary adjudication. Accordingly, when Class Counsel negotiated the Settlement, they had more than sufficient information to adequately assess the strengths and weaknesses of the case. The amount of discovery taken in this case and the stage of the proceedings weighs heavily in favor of the Settlement. *See DIRECTV*, 221 F.R.D. at 528 ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair").

**6.    The Experience and Views of Counsel Favor Final Approval**

91.    In assessing the adequacy of the terms of a settlement, the trial court is entitled to and should rely upon the judgment of experienced counsel for the parties. *See DIRECTV*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation" (internal quotations and citations omitted)); *see also Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). The basis for such reliance is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Indeed, when evaluating a proposed settlement, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel. *See Flinn v. FMC Corporation*, 528 F.2d 1169, 1173 (4th Cir. 1975); *Hanrahan v. Britt*, 174 F.R.D. 356, 366-368 (E.D. Pa. 1997) (presumption of

1    correctness applies to a class action settlement reached in arm's length negotiations

2    between experienced, capable counsel after meaningful discovery, citing *Manual*

3    *for Complex Litigation* § 30.41 (2nd ed. 1985)).

4        92.    Class Counsel have considerable experience in litigating

5    antitrust matters, class actions, and other complex litigation, as their firm resumés

6    show.

7        93.    After thorough consideration, Class Counsel concluded that the

8    Settlement terms are fair, adequate and reasonable and in the best interests of the

9    Class as a whole, and recommended that it be granted final approval.  In

10   negotiating the terms of the Settlement, Class Counsel represented that they

11   considered a multitude of factors, including: (a) the nature and complexity of the

12   alleged offenses; (b) the availability and admissibility of evidence to support each

13   of the required elements of the alleged causes of action; (c) the nature and

14   idiosyncrasies of the bar review business; (d) the extent to which Class Members

15   were damaged by the alleged conduct of Defendants; (e) the defenses asserted; (f)

16   the anticipated motions to be filed by Defendants; and (g) the benefit of obtaining a

17   settlement on the proposed terms now, as opposed to awaiting a potentially greater

18   settlement or judgment at some unknown time in the future.

19

20       94.    Moreover, Class Counsel have demonstrated a high degree of

21   competence in the litigation of this case.  With the benefit of extensive factual and

22   expert discovery and arduous motion practice, including class certification and

23   summary judgment, Class Counsel strongly believe that the Settlement is a fair,

24   adequate, and reasonable resolution of the Class' dispute with Defendants, and is

25   preferable to continued litigation and the costs and uncertainties associated

26   therewith. Accordingly, this factor weighs in favor of approval of the Settlement.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 7.    The Settlement Enjoys Overwhelming Class Support

95.    The last criterion for final approval is the reaction of the Class. *See Officers for Justice v. Civil Serv. Comm'n of San Francisdo*, 688 F.2d 615, 625 (9th Cir. 1982). In any class action of significant size, the absence of any objections would be "extremely unusual." *See In re Anthracite Coal Antitrust Litigation*, 79 F.R.D. 707, 712-13 (M.D. Pa. 1978). *DIRECTV*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

96.    The Settlement enjoys the overwhelming support of the Class. The Notice was delivered by first class U.S. mail to approximately 376,000 Class members. As of August , 2007, more than 52,000 claims have been filed. In contrast, only 54 Class Members have submitted Objections. The reaction from the Class warrants final approval of the Settlement. *See e.g., Boyd v. Cechtle Corp.*, 485 F.Supp. 610, 624 (N.D. Cal. 1979) (objections from only 16 percent of the class was persuasive that the settlement was adequate).

### C.    The Objections Are Overruled

#### (1)    The Adequacy of the Settlement Does Not Depend on the Individual Desires of the Objecting Plaintiffs

97.    The Court rejects the arguments by four Objectors or groups of Objectors that the Settlement should not be approved because the Objecting Plaintiffs object to the terms of the Settlement. To the contrary, "agreement of the named plaintiffs is not essential to approval of a settlement which the trial court finds to be fair and reasonable." *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982); *see also Lazy Oil Co v. Witco Co.*, 95 F. Supp. 2d 290, 334 (W.D. Pa. 1997).

98.    Multiple courts have approved class action settlements notwithstanding the objections of the class representatives. *See, e.g. Officers for*

-32-
FINDINGS OF FACT AND CONCLUSIONS OF LAW

*Justice,* 688 F.2d at 631; *Parker,* 667 F.2d at 1204 (affirmed the approval of a

settlement of an employment discrimination class action over the objections of 10

of the 11 named plaintiffs); *Maywalt v. Parker & Parsley Petroleum,* 864 F. Supp.

1422 (S.D.N.Y. 1994), *aff'd* 67 F.3d 1072 (2d. Cir. 1995) (granting final approval

of a securities fraud class action over some 2,700 objections, including certain of

the class representatives).[3]  The rationale is that "[t]o empower the Class

Representatives with what would amount to an automatic veto over the Proposed

Settlement does not appear to serve the best interests of Rule 23 and would merely

encourage strategic behavior 'designed to maximize the value of the veto rather

than the settlement value of the claims.'"  *Maywalt,* 864 F. Supp. at 1430, quoting

*In re Ivan F. Boesky Sec. Litig.,* 948 F.2d 1358, 1366 (2d Cir. 1991).

       99.    This Court is not required to give any special deference to the

Objecting Plaintiffs. *See In re Airline Ticket,* 953 F. Supp. At 282 n.3 (considering

but giving "no special deference based merely on [objector's] status as a class

representative" and approving settlement).  The Representative Plaintiffs support

approval of the Settlement.

      **(2)**    **The Risks Associated With The Clayton Act Section 7 Claim**

             **Weigh In Favor Of The Settlement**

        **(i)**    **Objectors Ignore the Hurdles Facing Plaintiffs at Trial**

       100.    Certain Objectors argue that the case against Defendants is too

strong to settle.  These Objectors, however, fail to provide the Court with any

---

[3] *See also, Olden v. LaFarge Corp.,* 2007 U.S. Dist. LEXIS 5954 at *40-41 (E.D. Mich. 2007) (approving settlement without the support of any of the class representatives); *Lazy Oil,* 95 F. Supp. 2d. at 333-34 (approving settlement and noting that "agreement of the named plaintiffs is not essential to approval of a settlement which the trial court finds to be fair and reasonable"); *Boyd,* 485 F. Supp. at 624 (approving consent decree in an employment discrimination class action, despite the fact that "[a]pproximately sixteen percent of the class, including three of the four named plaintiffs, have filed some opposition to the settlement").

1    evidence or analysis. Their argument is based more on the unsubstantiated

2    optimism of Disner, than on the facts of the case and the risks associated with trial.

3        101.   The Objecting Plaintiffs argue that the strength of the Section 7

4    claim weighs in favor of rejecting the Settlement against BAR/BRI, but not

5    Kaplan. Notwithstanding the impropriety of this request, the position is contrary to

6    the position that the Objecting Plaintiffs and Disner previously advocated in early

7    December 2006, when they all supported the monetary terms of the Settlement.

8    Moreover, it directly contradicts statements Disner made under oath in a

9    declaration filed with this Court on March 12, 2007. Furthermore, this Court finds

10   this argument is without merit.

11       102.   The Objecting Plaintiffs urged the Court to approve Kaplan's

12

13   agreement to pay $13 million of the Settlement and its release from the Action, but

14   urge the Court to reject the remainder of the Settlement (involving BAR/BRI). The

15   Settlement Agreement does not specify how much either Defendant is paying; nor

16   does it allow for the Court to approve parts of the Settlement, while disapproving

17   others. The Settlement "must stand or fall in its entirety." *Hanlon,* 150 F.3d at

18   1026 ("Neither the district court nor this court ha[s] the ability to delete, modify or

19   substitute certain provisions"). In *Evans v. Jeff D.,* 475 U.S. 717, 726 (1986), the

20   Supreme Court noted that a district court is only permitted to "accept the proposal,

21   reject it and postpone the trial date to see if a different settlement can be achieved,

22   or reject it and try the case." Since the Settlement as a whole is fair, reasonable and

23   adequate, it is approved in its entirety.

24       103.   As with the Sherman Act claims, Class Counsel thoroughly

25   considered the strengths of the Section 7 claim and concluded that Plaintiffs faced

26   many hurdles, including:

27              (a)    Application of the four-year statute of limitations

28   and/or the doctrine of laches, possibly defeating or diminishing the claim all

together and certainly dividing the Class as currently defined. *See Midwestern Machinery Co., Inc. v. Northwest Airlines, Inc.*, 392 F.3d 265 (8th Cir. 2004); *California v. American Stores Co.*, 495 U.S. 271, 297 (1989) (J. Kennedy, concurring).[4]

      (b)     Establishing product and geographic market definitions, which requires a more detailed analysis than that needed for the other claims. *See U.S. v. Continental Can Co.*, 378 U.S. 441, 459 (1964).[5]

      (c)     Establishing that BAR/BRI acquired West Bar in light of BAR/BRI's contention that BAR/BRI did not purchase West bar's stock, assets or student contracts and that West Bar was already out of business at the time that BAR/BRI agreed to provide bar review courses to former West Bar students and only incidentally acquired certain limited intellectual property from West Bar;

      (d)     Establishing the requisite causal link between BAR/BRI's acquisition of certain limited intellectual property from West Bar, which had gone out of business and was no longer a competitor, and the claimed damages;

      (e)     Defeating the "failing company" doctrine defense, which would, at the very least, require a "battle of the experts" to resolve;

      (f)     Overcoming a dearth of precedent on the issue of the divesture remedy; and

      (g)     Overcoming the fact that no private *consumer* class action has ever resulted in a divestiture remedy.

---

[4] Class Members from 1997 through 2001 who previously relied on tolling principles available for their Sherman Act claims (*i.e.* fraudulent concealment, continuing violation, etc.) would recover nothing, even in the event of a total victory, because these tolling provisions are not available with respect to the Section 7 claim.

[5] This Court has not conducted this analysis regarding Plaintiffs' product or geographic market definitions for a Section 7 claim.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

104.   As the Supreme Court said when it authorized private suits in 1989, "Dissolution could be considerably more awesome... [D]issolution was a judgment ... of corporate death, which represented the extreme rigor of the law." *California v. American Stores*, 495 U.S. at 289, quoting *People v. North River Sugar Refining Co.*, 121 N.Y. 582, 608 (1890). Even if divestiture was appropriate, it would not necessarily be fashioned in terms of splitting up BAR/BRI. Since BAR/BRI's purchase of West Bar's assets was limited to some intellectual property, divestiture might only mean requiring BAR/BRI to give up intellectual property rights to materials that are ten years old. In addition, there remained a risk that the claims against BAR/BRI, including the Section 7 claim, would be decided adversely on summary judgment.

105.   Given these hurdles a substantial cash settlement coupled with significant additional relief, including termination of the very agreement which was the catalyst of the lawsuit, is fair, adequate, reasonable, and in the best interest of the Class.

### (ii) The Bifurcation Motion Is Improper, Lacks Merit and is Denied

106.   Bifurcating the Section 7 claim from the Sherman Act claims, as requested by the Objecting Plaintiffs, would create further obstacles and be a waste of time and resources. Not only is the "conditional motion" for bifurcation premature and improper (as the motion before the Court is for final approval of a Settlement, which, if granted, moots any such motion), it defies logic.

107.   Courts have discretion to order a separate trial of any claim "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed.R.Civ.P. 42(b); *Hayden v. Chalfant Press, Inc.*, 281 F.2d 543, 544 (9th Cir. 1960). "It is the interest of efficient judicial administration that is to be controlling under the rule, rather than the

1   wishes of the parties." Wright & Miller, Federal Practice and Procedure, § 2388

2   (2d ed. pkt part 2006). The moving party has the "burden of proving that the

3   bifurcation will promote judicial economy and avoid inconvenience or prejudice to

4   the parties." *Spectra-Physics Lasers, Inc. v. Uniphase Corp.,* 144 F.R.D. 99, 101

5   (N.D. Cal. 1992); *see also Ebay, Inc. v. Bidder's Edge, Inc.,* 2000-2 Trade Cases P

6   73,039, 56 U.S.P.Q.2d 1856 *4 (C.D. Cal. July 25, 2000); *Burton v. Mountain West*

7   *Farm Bureau Mut. Ins. Co.,* 214 F.R.D. 598 (D. Mont. 2003).

8        108.   That burden cannot be met as bifurcation belies judicial

9   economy here. The Objecting Plaintiffs concede that "the only difference between

10  the Section 7 and Sherman Act claims is the damages." Furthermore, the proposal

11  to try the Section 7 claim first, even if granted, may recover damages for Class

12  Members only in the four years before the filing of the Initial Complaint. Class

13  Members from 1997 through 2001 who previously relied on tolling principles

14  available for their Sherman Act claims (*i.e.* fraudulent concealment, continuing

15  violation, etc.) could recover nothing, even in the event of a total victory, because

16  the application of those tolling provisions to a Section 7 claim is uncertain. To

17  recover anything for these Class Members, the Sherman Act claims would still

18  need to be tried and proven, requiring use of largely the same evidence and

19  witnesses, regardless of the result of the Section 7 claim. This would result in a

20  duplication of time and effort that squanders judicial resources.  The rules do not

21  permit a plaintiff to try causes of action *seriatim*, starting with whatever claim it

22  may think is strongest. *See, e.g., In re Bendectin Litigation,* 857 F.2d 290, 307 (6th

23  Cir. 1988) ("The piecemeal trial of separate issues in a single suit is not to be the

24  usual course").

25

26

27

28

(3)   **The $49 Million Settlement Fund is Fair, Reasonable and Adequate in Light of the Strengths and Weakness in Plaintiffs' Case**

109.   Nine Class Members, as well as the Objecting Plaintiffs, argue that the $49 million is inadequate or that their individual shares will be insufficient. None of these Objectors, however, provide the Court with any cogent analysis or evidence showing that the $49 million is inadequate.

110.   Plaintiffs' experts estimated damages for all claims as being in the range of $158 million to $168 million. Defendants' expert opined that the Class suffered no damages with respect to both the Section 2 claim under the Sherman Act and the Section 7 claim under the Clayton Act, and, at most, suffered damages of $7 million with respect to the Section 1 claim under the Sherman Act. Thus, the $49 million represents approximately 30% of Plaintiffs' expert's estimated damages, and 700% of Defendants' expert's estimated damages.[6]

111.   When evaluated against other settlements approved, the $49 million is fair, reasonable and adequate. *See In re Cendant Corp. Litig.*, 264 F.3d at 241 (noting that recoveries can range from 1.6% to 14% and affirming settlement representing 36% of recovery); *Newman v. Stein*, 464 F.2d 689 (2d Cir.1972) (approving settlement representing 14% of potential recovery); *Nichols v. Smithkilne Beecham Corp*, No. Civ. A.00-6222, 2005 WL 950616 at *16 (approving settlement that represented between 9.3% and 13.0% of claimed damages); *see also Phemister v. Harcourt Brace Jovanovich*, No. 77 C 39, 1984 WL 21981 at *11 (N.D. Ill. September 14, 1984) ("Many antitrust settlements that

---

[6] One Objector argues that the Settlement "smells of collusion" because Disner believes that the damages are up to ten times more than the Settlement Fund. There is absolutely no evidence in the record showing any signs of collusion. To the contrary, the record, including the declaration of the Honorable Daniel Weinstein, shows that the settlement negotiations were hard-fought at all times.

1    achieve substantially less than single damages for the class are considered fair and
2    adequate settlements").

3        (4)   **Courts Do Not Evaluate Settlements in Light of the Treble**
4                  **Damages That Might Be Available After a Successful Trial.**

5        112.   The Court rejects the Objecting Plaintiffs' argument that the
6    monetary portion of the Settlement is inadequate because the Section 7 claim is
7    worth $360 million. Objecting Plaintiffs arrive at this figure by trebling Plaintiffs'
8    expert's estimated damages of $146 million since 2001 and then multiplying that
9    figure by their estimated chances of winning at trial.

10       113.   This analysis is flawed as it presupposes that Plaintiffs will
11   succeed at trial. Evaluating the Settlement in light of the treble damages available
12   at the end of a successful trial is purely speculative. Courts do not consider such
13   damages when calculating a reasonable range of recovery. *See e.g., City of Detroit*
14   *v. Grinnel Corp.*, 495 F.2d 448, 458 (2d Cir. 1974) ("[T]he vast majority of courts
15   which have approved settlements in this type of case . . . have given their approval
16   to settlements which are traditionally based on an estimate of single damages
17   only"); *In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03-0085 FSH,
18   2005 WL 30098808 at *9 (D. N.J. Nov. 9, 2005) ("[i]n order to evaluate the
19   propriety of an antitrust class action settlement's monetary component, a court
20   should compare the settlement to the estimated single damages"); *In re Warfarin*,
21   212 F.R.D. 231, 257 (D. Del. 2002) (citing *In re Lorazaepam & Clorazepate*
22   *Antitrust Litig.*, 205 F.R.D. 369, 376 (D.D.C. 2002). None of the Objectors has
23   cited any authority to the contrary.

24       (5)   **Defendants' Ability to Pay More Is Irrelevant**
25

26       114.   The Court rejects the argument by certain Objectors that since
27   BAR/BRI is profitable and therefore has the ability to pay more, the $49 million
28   Settlement is inadequate. Courts have repeatedly rejected this argument. *See In re*

-39-
FINDINGS OF FACT AND CONCLUSIONS OF LAW

*Nasdaq*, 187 F.R.D. at 478 (stating that the defendants' ability to pay a very substantial judgment does not militate against settlement); *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) ("the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate").

### (6)    The Amount Sought In the FAC Is Immaterial

115.    The Court rejects the argument by two groups of Objectors that the $49 million Settlement Fund is inadequate because it is substantially less than the amount sought in the FAC ($900 million). The amount sought in the FAC, however, was based on the recovery of treble damages before discovery was taken and before Plaintiffs' experts provided an estimate of the damages. The Court considers the $49 million Settlement Fund in light of the time of settlement.

### (7)    The Present Value of a BAR/BRI Course Is Irrelevant

116.    The Court rejects the argument by one Objector that the $49 million Settlement Fund is inadequate because Class Members will only get a pro-rata share of $145.70, which he claims is equivalent to 5% of the present value of his course ($2700). The present value of a BAR/BRI course has nothing to do with the amount of alleged overcharges to the Class. Further, the amount each Class Member will receive under the Settlement depends on the number of Class Members who file valid Claim Forms, among other things, as set forth in the Plan of Allocation.

### (8)    The Objectors Miscalculate the Risks Going Forward

117.    The Court rejects the argument by certain of the Objectors that the $49 million Settlement Fund is inadequate because of the limited risk in the Action. For instance, they argue that there is a low risk of decertification and that

future costs are limited because discovery is complete. These conclusory

Objections, however, ignore the myriad of risks identified and discussed at length

by Settling Plaintiffs, including the further costs of going to trial and the risks

associated with establishing damages.

### (9)    The Lack of Provisions Prohibiting Future Misconduct or Dissolution Do Not Render the Settlement Inadequate

118.   The Court rejects the argument by certain Objectors that the

non-monetary relief is either illusory or insufficient because it does not prohibit

Defendants from engaging in anticompetitive or unlawful conduct in the future.

Courts are reluctant to sustain such objections, finding that the "best assurance

against future antitrust violations by defendants is the persistent threat of litigation

by any class member." *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 337

(N.D. Ga. 1993) (approving settlement as fair, reasonable and adequate despite the

absence of injunctive relief prohibiting the defendant from engaging in future

misconduct).

119.   The Settlement requires Defendants to terminate the agreement

Plaintiffs allege is unlawful.[7] BAR/BRI is also required to provide a clear

statement to initial enrollees that they are not contractually obligated to pay the full

amount for a BAR/BRI course should they choose not to take such a course upon

graduation from law school. Since many law students enter into a contract with

BAR/BRI in their first year of law school, Plaintiffs have argued that the obligation

to pay the full amount for the course serves as a powerful hold on these students,

---

[7] At least one Objector incorrectly argues that Plaintiffs accomplished nothing sought in the Action. Plaintiffs achieved termination of the alleged non-competitive agreement which was the catalyst of this Action. That Plaintiffs did not obtain everything sought in the FAC does not render the Settlement inadequate, as settlement is about compromise.

thereby locking-up a substantial portion of the market for a three-year period.[8]
Thus, this provision removes a significant barrier to entry into the market by
competitors, who would otherwise face the potentially overwhelming obstacle of
trying to compete in a market with few available customers for several years after
entry. Furthermore, BAR/BRI has stated that it is committed to accurate
advertising as required by the Lanham Act, the Federal Trade Commission Act, and
similar laws. Settlement Agreement at ¶¶ 38(a) and 39.

### (i)    Dissolution Does Not Benefit the Class

120.  Other Objectors criticize the Settlement because it does not
provide for the break-up of BAR/BRI. According to the Objecting Plaintiffs, "a
significant number of class members are directly interested in the future" of the bar
review industry and that BAR/BRI would be broken up if Plaintiffs instead went to
trial and prevailed on the Section 7 claim.

121.  First, a significant number of Class Members are in favor of the
Settlement and have not filed any Objections on the ground that there are no
provisions for dissolution.

122.  Second, there are no guarantees that Plaintiffs would prevail at
trial and obtain an order breaking-up BAR/BRI, as even Disner has acknowledged.
Even if Plaintiffs did prevail at trial, any verdict in their favor, including
divestiture, would be subject to appeal thereby delaying any recovery to the Class.
This is especially true here, where the Objecting Plaintiffs concede the complexity
of Section 7 and the dearth of relevant authority applying or interpreting that
section in private consumer class action cases.

---

[8] The argument that this provision is "practically self-defeating" because BAR/BRI
can rescind the statement on five days notice to Class Counsel is inaccurate. To
rescind the statement, BAR/BRI must apply to the Court on five days notice to Class
Counsel and establish "good cause." *See* Settlement Agreement at ¶ 38(b).

1

2

3
     **(ii)    Class Counsel Cannot Ensure Competition In the Bar Review Market Through the Settlement**

4    123.    The Court rejects arguments by other Objectors that the

5    Settlement does not encourage competitors into the market, require BAR/BRI to

6    lower its prices, or require Defendants to enter each other's market.

7        124.    Class Counsel cannot force competitors to enter the market

8    through the Settlement.

9        **(10)    The Scope And Contents of the Release Are Proper**

10

11        125.    The Court rejects arguments by Objectors that "settling

12    defendants are buying immunity from all claims, including those not alleged in the

13    complaint. If the settlement proponents seek a broad release, class members should

14    be more adequately compensated." This argument, too, ignores the actual terms of

15    the Settlement Agreement. The Release expressly preserves the claims in the New

16    York Actions. *See* Settlement Agreement ¶58.

17        126.    While the Release includes "all manner of claims . . .

18    concerning or relating to any conduct alleged in the Complaint in this Action, and

19    including without limitation all claims that have been asserted or could have been

20    asserted in any litigation," this language is typical and has been approved by many

21    courts, including the Ninth Circuit. *See Class Plaintiffs v. City of Seattle*, 955 F.2d

22    1284, 1287-88 (9th Cir. 1992) (noting that the weight of authority holds that

23    federal courts may release claims which are not in the complaint provided they are

24    based on the "same factual predicate"); *In re Prudential Ins. Co. America Sales*

25    *Practice Litig.*, 148 F.3d at 326 (finding it reasonable for release to include "other

26    claims" and stating that "releases may include all claims, including unpleaded

27    claims that arise out of the same conduct alleged in the case").

28

1

### (11)   The Possibility of a Cap and a Cy Pres Award Are Proper

2

3        127.   The Court rejects the argument of certain Objectors that the

4    possibility of a cap on individual recovery resulting in a *cy pres* award should

5    defeat approval of the Settlement.  Those provisions do not render the Settlement

6    inadequate.

7        128.   The Maximum Payment was a heavily negotiated term of the

8    Settlement.  Because the Net Settlement Fund is to be distributed *pro rata* among

9    the Class Members who make a valid claim, the Maximum Payment prevents a

10   small group from receiving a multi-million dollar windfall.  This 30% Maximum

11   Payment coincides with Plaintiffs' expert's estimate that the average overcharge

12   resulting from Defendants' alleged conduct was approximately 30% nationwide.

13       129.   The Maximum Payment does not create any benefit for

14   Defendants as they will not receive any money back if the Maximum Payment and

15   *cy pres* award are implicated.  In that event, this Court would determine the

16   recipient of any *cy pres* award of the undistributed funds.

### (12)   A Second Opt-Out Period Is Not Required

17

18

19       130.   In granting the Preliminary Approval Order, the Court found

20   that an additional opt-out period was unnecessary.

21       131.   A second opt-out is not required.  *See Officers for Justice*, 688

22   F.2d at 635 (citations omitted);  In re *Visa Check/Mastermoney Antitrust Litig.*, 297

23   F. Supp. 2d at 518.

### (13)   The Sealed Record Does Not Impact Approval of the Settlement

24

25

26       132.   The Court rejects the argument by certain Objectors that final

27   approval of the Settlement should be delayed and/or denied on the ground that the

28

1   Class was purportedly denied access to the pleadings filed under seal pursuant to a

2   protective order entered by the Court on January 13, 2006 (the "Protective Order").

3   These Objections are moot, untimely, and more importantly, ignore the crucial role

4   served by the Court in the class action settlement approval process.

5           133.   These Objections are overcome by the safeguards of the three

6   step class action settlement approval procedure being utilized here -- preliminary

7   approval, dissemination of notice, and a fairness hearing.  This procedure,

8   commonly employed by federal courts and endorsed by leading class action

9   commentators, serves the dual function of safeguarding class members' due

10  process rights and enabling the court to fulfill its role as the guardian of class

11  members' interests.  *See Newberg* at § 11.25, quoting *Manual for Complex*

12  *Litigation* (Third) § 30.41 (1995).

13          134.   These Objections disregard the fact that, in its role as guardian

14  for the Class, this Court has had access to all of the pleadings filed by the parties,

15  including those under seal pursuant to the Protective Order.  The Court's access to

16  and review of these documents throughout the pendency of this Action precludes

17  any contention that this Court is incapable of assessing the fairness, adequacy and

18  reasonableness of the Settlement.  To the contrary, this Court is intimately familiar

19  with facts and legal theories this matter.

20          135.   The Objections based upon the inaccessibility of documents are

21  untimely.  Class Members received notice of the Settlement in early April 2007,

22  and could have acted earlier to obtain access to the materials.  Instead, they waited

23  five weeks, until the Objections were due, to request a continuance of the Final

24  Settlement Hearing to permit a review the sealed documents, or in the alternative, a

25  rejection of the Settlement.  Such a tactic is inherently suspect and prejudicial to

26  the Class Members who have voiced their approval of the Settlement.

27

28

FINDINGS OF FACT AND CONCLUSIONS OF LAW

1

### (14)  Use of the Simple Claim Form Is Proper

2

3      136.   The Court rejects the argument by certain Objectors that

4   requiring use of the Claim Form should preclude the Court from approving the

5   Settlement.  The claim form process, however, is not designed to minimize

6   participation, as none of the Settlement Fund will revert back to Defendants.

7   Further, these Objections also disregard the facts of the case and the economic

8   reality that claims administration costs are paid from the Settlement Fund.  Any

9   cash distribution from a settlement fund involves costs.  The Claims Administrator

10  incurs the expenses of cutting a check for each claimant; mailing the checks;

11  canceling checks that were lost, misplaced, or never received; and reissuing checks

12  to such claimants.  All of those costs are charged to the Settlement Fund.

13      137.   While BAR/BRI has the names and addresses of the Class

14  Members in its records, these addresses go back as far as 1997.  Many Class

15  Members have moved at least once, if not numerous times, since purchasing the

16  BAR/BRI bar review course.  Also, many Class Members have changed their

17  names since taking the BAR/BRI bar review course.  Blindly mailing checks to

18  Class Members without regard for these facts would be costly, unnecessary and

19  wasteful, and would deplete the Settlement Fund without necessarily benefitting

20  Class Members. Class Counsel, based on their experience, properly considered

21  various settlement structures and concluded that a claims-made structure would

22  preserve the Settlement Fund for the benefit of Class Members who want to

23  participate in the Settlement, while at the same time ensure that cash distributions

24  reach Class Members.

25      138.   The Claim Form is relatively simple and should be self-

26  explanatory for these sophisticated Class Members.  This is demonstrated by the

27  fact that over 52,000 Claim Forms have been filed as of August 16, 2007.

28

139. Therefore, the use of a claim form in the claims process is not a reason for denying final approval. *See e.g., In re Insurance Brokerage Antitrust Litig.,* No. 04-5184 (GEB), 2007 WL 542227 at *10 (D. N.J. Feb. 16, 2007) (granting final approval of settlement which utilized a simple claim form process).[9]

### (15) The Contents of the Notice Satisfy Rule 23 and Due Process

140. The Court rejects the argument by certain Objectors that the content of the Notice, which this Court approved, is insufficient. Among the items allegedly missing are a statement that the Objecting Plaintiffs do not support the settlement and a copy of a memo authored by them, as well as information regarding the size of the Class, the amount each Class Member will receive, the average cost per Class Member, the aggregate amount of damages, and notice of any attorneys' referral agreement. None of this information is required to be included in the Notice under due process or Fed.R.Civ.P. 23.[10]

141. As set forth at length in Section V, *supra,* the Ninth Circuit

---

[9] The Court further rejects the argument that the Settlement should not be approved because it lacks provisions requiring claims processing to be completed in a reasonable time, monitoring, or reporting requirements. To the contrary, the Settlement contains a number of provisions designed to protect the Class. For instance, all parties, including the Claims Administrator, are subject to the Court's jurisdiction. *See* Settlement Agreement at ¶ 46. Additionally, Class Counsel must use their best efforts and act in good faith to effectuate and implement all terms and conditions of the Settlement, including processing of claims. *See id.* at ¶ 68. Further, before cash distributions are made, Class Counsel must apply to the Court for an order approving distribution and to the extent necessary, for a determination of all valid/invalid claims. *See id.* at ¶ 47.

[10] Further, Class Counsel dispute the content and accuracy of the Objecting Plaintiffs' nine-page memo and believe it would have been misleading, not to mention cost prohibitive, to disseminate to the Class.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

1    requires a very general description of the proposed settlement in the settlement

2    notice, which is satisfied here. *See Churchill Village, L.L.C.*, 361 F.3d at 575;

3    *Torrisi*, 8 F.3d at 1374.

**(16)   Class Counsel Has Fulfilled Its Fiduciary Obligation to the
Class as a Whole and is Adequate Under Fed. R. Civ. P. 23**

7    142.   The Court rejects the argument by one Objector that Class

8    Counsel are inadequate due to a "rift" within McGuireWoods LLP (one of three

9    Class Counsel), allegedly because "one of the partners, Eliot Disner, has filed a

10   brief objecting to the proposed settlement...." This is inaccurate.  The record is

11   undisputed that in December of 2006, after significant consideration, all Class

12   Counsel working on the case (including Disner) agreed that the Settlement was

13   fair, adequate and reasonable.  The brief in question was filed by the Objecting

14   Plaintiffs without the authorization of Class Counsel. *See* Docket No. 281.

15   Moreover, Disner initially agreed to the Settlement and supported it at the

16   Preliminary Approval hearing.  The viability of the theories espoused in the

17   unauthorized filing by the Objecting Plaintiffs were thoroughly considered by

18   Class Counsel prior to entering the Settlement, with the ultimate decision by Class

19   Counsel as a whole (including Disner) that the Settlement was fair, adequate and

20   reasonable.  Therefore, this Court finds that Disner's subsequent reversal of

21   position and departure from McGuire Woods LLP is immaterial to this Court's

22   consideration of the fairness, reasonability, and adequacy of the Settlement.

23   143.   Class Counsel has fulfilled its fiduciary duty to the Class as a

24   whole, and the unauthorized filing by the Objecting Plaintiffs does not change that.

25   The primary responsibility of class counsel is to represent the entire class as it

26   believes appropriate. *See* Advisory Committee Note, Fed. R. Civ. P. 23(g)

27   ("Paragraph (1) . . . articulates the obligation of class counsel to represent the

28

interests of the class, as opposed to the potentially conflicting interests of individual class members."); *see also Newberg* at § 11.65 ("The general rule is that the named plaintiff and counsel bringing the action stand as fiduciaries for the entire class, commencing with the filing of a class complaint."); *Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 832 (3d Cir. 1973) ("[C]lass action counsel possess, in a very real sense, fiduciary obligations to those not before the court.").

144.   Class counsel must make their own determinations about the appropriate course of action, taking full account of their fiduciary obligation to the class as a whole. *See Olden supra*, 472 F. Supp. 2d at 939; *In re "Agent Orange" Prod. Liab. Litig.*, 800 F.2d 14, 18-19 (2d Cir. 1986); *Lazy Oil Co.*, 166 F.3d at 590.

145.   It is for this Court to determine what is in the best interests of the Class after evaluating all arguments in favor of and against the Settlement. Class Counsel have conducted themselves throughout this case to aid the Court in this evaluation by performing its fiduciary duties to the Class, and are therefore adequate under Fed. R. Civ. P. 23.

## IX.   FAIRNESS OF PLAN OF ALLOCATION

146.   "As with settlement agreements, courts consider whether distribution plans are fair, reasonable, and adequate." *Lorazepam & Clorazepate*, 205 F.R.D. at 381; *see also City of Seattle*, 955 F.2d at 1284; *In re Citric Acid Antitrust Litigation*, 145 F. Supp.2d 1152, 1154 (N.D. Cal. 2001); *Vitamins Antitrust Litig.*, No. 99197, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000). "[I]n evaluating the formula for apportioning the settlement fund, the Court keeps in mind that district courts enjoy broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members equitably." *Hammon v Barry*, 752 F. Supp. 1087, 1095 (D. D.C. 1990) (internal

quotations and citations omitted); *accord In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 179, 181 (2d Cir. 1987).

147.   The Plan of Allocation was prepared by Class Counsel and Defendants' Counsel in such a way as to fairly allocate the recovery among Class Members in accordance with Plaintiffs' theories of potential damages in the Action.

148.   Finally, in addition to the input of the experts referred to above, the Plan of Allocation was adopted only after significant arm's length discussions among Class Counsel and Defendants' counsel.

149.   For the reasons set out above, this Court finds that the Plan of Allocation is fair and reasonable.

## X.    CONCLUSION

150.   The Settlement Agreement is comprehensive in its scope, is fair and even-handed in its application, and is of substantial economic benefit to the Class.  The Court therefore approves the Settlement Agreement as fair, adequate and reasonable.

151.   The Court finds that it is in the best interests of Class Members that the Net Settlement Fund be disbursed, pursuant to the Plan of Allocation as soon as possible, and that the Settlement Agreement resolves all claims in the Action as to the Defendants.

DATED: **Aug  10**    , 2007

_____
Honorable Manuel L. Real
United States District Court Judge

FINDINGS OF FACT AND CONCLUSIONS OF LAW

1  Submitted by:

2

3

4  Sidney K. Kanazawa (SBN 84608)
   McGUIREWOODS LLP
5  1800 Century Park East, 8th Floor
6  Los Angeles, California 90067
7  Telephone: (310) 315-8200
   Facsimile: (310) 315-8210
8

9  Dan Drachler (*Pro Hac Vice*)
   ZWERLING, SCHACHTER &
10    ZWERLING, LLP
11  1904 Third Avenue, Suite 1030
   Seattle, WA 98101
12  Telephone: (206) 223-2053
13  Facsimile:  (206) 343-9631

14
   Christine Bartholomew (SBN 211425)
15  FINKELSTEIN THOMPSON, LLP
16  601 Montgomery Street, Suite 665
   San Francisco, CA 94111
17  Telephone:  (415)398-8700
18  Facsimile:  (415) 398-8704

19  Class Counsel

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

    I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1800 Century Park East, 8th Floor, Los Angeles, California 90067.

    On August 20, 2007, I served the following document(s) described as **[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

### SEE ATTACHED LIST

☒   **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices. (C.C.P. § 1013 (a) and 1013a(3))

☐   **BY FACSIMILE:** At approximately _____, I caused said document(s) to be transmitted by facsimile pursuant to Rule 2008 of the California Rules of Court. The telephone number of the sending facsimile machine was (310) 315-8210. The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

☐   **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder. (C.C.P. § 1013(d)(e))

☐   **BY HAND DELIVERY:** I delivered such envelope(s) by hand to the office of the addressee(s). (C.C.P. § 1011(a)(b))

☐   **BY PERSONAL SERVICE:** I personally delivered such envelope(s) to the addressee(s). (C.C.P. § 1011)

    I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

    Executed on August 20, 2007, at Los Angeles, California.

_____
Glen A. Davis

Document3

PROOF OF SERVICE

## SERVICE LIST

| | |
|---|---|
| Bradley S. Phillips, Esq.<br>Stuart N. Senator, Esq.<br>Munger Tolles & Olson LLP<br>355 S. Grand Avenue<br>35th Floor<br>Los Angeles, CA 90071-1560 | Attorneys for *Kaplan, Inc*<br><br>And via email to:<br>Brad Phillips@mto.com<br>Stuart.Senator@mto com<br>lee taylor@mto com |
| Steven F. Molo, Esq.<br>Wayne Dale Collins, Esq.<br>Shearman & Sterling, LLP<br>599 Lexington Avenue<br>New York, NY 10022-6069 | Attorneys for *West Publishing Corporation*<br><br>And via email to:<br>smolo@shearman com<br>wcollins@shearman.com |
| Edward A. Klein, Esq.<br>Heather H. Gilhooly, Esq.<br>Liner Yankelevitz Sunshine & Regenstreif LLP<br>1100 Glendon Avenue, 14th Floor<br>Los Angeles, CA 90024-3503 | Attorneys for *West Publishing Corporation*<br><br>And via email to:<br>hgilhooly@linerlaw.com<br>eklein@linerlaw.com |
| Ryan Rodriguez, Esq.<br>3943 Irvine Blvd., #330<br>Irvine, CA 92602 | And via email to:<br>ryanrodriguez7@hotmail.com |
| Lisa Gintz, Esq.<br>10725 Fontenot Road<br>Denham Springs, LA 70726 | And via email to:<br>lisagintz@hotmail.com |
| Loredana Nesci, Esq.<br>859 No. Hollywood Way, No. 206<br>Burbank, CA 91505 | And via email to:<br>invisiblejet-usa@yahoo com<br>invisiblejet usa@yahoo.com<br>loredana.nesci@sbcglobal.net |
| DISNER LAW CORPORATION<br>Eliot G. Disner<br>A Professional Corporation<br>2029 Century Park East, 19th Floor<br>Los Angeles, CA 90067 | And via email to:<br>edisner@disnerlaw.com |

## SERVICE LIST OF OBJECTING CLASS MEMBERS

Robert C. Chojnakci
Law Offices of Robert C. Chojnacki
525 Laurel Avenue
Menlo Park, CA 94025

Attorneys for:
Oriol, David (Louisiana Bar)
Tingle, Jason (Alabama Bar) and
Gutierrez, Oliver (California Bar)

And via email to:
chojnackilaw@yahoo.com


John W. Davis
Law Office of John W. Davis
4445 Eastgate Mall, 2nd Floor
San Diego, CA 92121

and

Steven F. Helfand
Helfand Law Offices
582 Market Street, Suite 1400
San Francisco, CA 94101

Attorneys for:
Feldman, David
Gharabiklou, Cameron
Grant, Emily
Lang, Jeff
McDonald, Sarah
Patton, Cara
Schwartz, Rachel
Thomas, Greg

And via email to:
john@johnwdavis.com
steven@stevenhelfand.com


Joseph J. Angersola *(pro se)*
2803 N. Wolcott, Unit D
Chicago, IL 60657

No email address


Anthony Valach *(pro se)*
4819 N. Fairfield Avenue, #2
Chicago, IL 60625

And via email to:
anthonyvalach@gmail.com


Jay M. Wolman *(pro se)*
62 S. Huntington Avenue, Unit 23
Boston, MA 02130

No email address


Joan Elizabeth Shreffler *(pro se)*
Four Embarcadero Center
Suite 3800
San Francisco, CA 94111

And via email to:
shreffl@skadden.com

Robert Gaudet, Jr. *(pro se)*
214 21st Avenue
Seattle, WA 98122

And via email to:
Robert_gaudet@yahoo.com

Sandeep Gopalan *(pro se)*
P.O. Box 877906
Tempe, AZ 85287

And via email to:
sandeepgopalan@hotmail.com

Elizabeth De Long *(pro se)*
9705 Fremont Avenue N.
Seattle, WA 98103

And via email to:
Edelong06@gmail.com

Andrea Boggio *(pro se)*
1150 Douglas Pike
Smithfield, RI 02917

And via email to:
boggio@stanfordalumni.org

J. Garrett Kendrick
C. Benjamin Nutley
Kendrick & Nutley
1055 E. Colorado Blvd., Fifth Floor
Pasadena, CA 91106

Attorneys for:
Head, Justin
Helfrich, Ryan
Schneider, George
Slomba, Jonathan
Puntumapanitch, James

And via email to:
jgk@private-ag.com
Nutley@zenlaw.com

Ronald D. Rosengarten
Rosengarten & Leven, LLP
23801 Calabasas Road, Suite 1015
Calabasas, CA 91302

Attorneys for:
Juranek, James
Juranek, Audrey
Le Blanc, Richard P., III.

And via email to:
rdresq@sbcglobal.net

Charles A. Sturm
STEELE STRUM, PLLC
1000 Louisiana, Suite 3780
Houston, TX 77002

csturm@steelestrum.com

Carmine Giardino
The Giardino Law Firm, Inc.
8626 Tesoro Drive, Suite 510
San Antonio, TX 78217

and

Douglas N. Silverstein, Esq.
Kesluk & Silverstein
9255 Sunset Blvd., Ste. 411
Los Angeles, CA 90069

Attorneys for·
Trevino, Arcelia

And via email to:

dsilverstein@californialaborlawattorney.com


Joshua R. Furman, Esq.
2228 Barry Avenue
Los Angeles, CA 90064

and

Jon M. Zimmerman
Law Offices of Jon M. Zimmerman
1420 5th Avenue, Suite 2200
Seattle, WA 89101

Attorneys for:
Lukoff, Aaron
Prendergast, John
Orange, David

And via email to:
joshua@furman.com
jrfurman@toyquest com
jonMzimmerman@gmail.com


Lawrence W. Schonbrun
Law Offices of Lawrence W. Schonbrun
86 Eucalyptus Road
Berkeley, CA 94705

Attorneys for:
Chilimidos, Daryl

And via email to:
lschon@inreach.com


Darrell Palmer, Esq.
603 North Highway 101, Ste. A
Solano Beach, CA 92075

Attorneys for:
Schafer, Daniel M.
Evans & Mullinix, P.A.
Siegel, Sarah
McElroy, Jennifer Brown

And via email to:
Darrell.palmer@cox.net

David P. Schafer (*pro se*)
Law Offices of David P. Schafer
7800 IH-10 West, Suite 830
San Antonio, TX 78230

And via email to:
david@helpingtexas.com

Kenneth E. Nelson
Nelson Law Firm, P.C.
2900 City Center Square
1100 Main Street
Kansas City, MO 64105

Attorneys for:
Evans & Mullinix, P.A.

And via email to:
kennelson@mclaw.com

Edward F. Siegel
Edward F. Siegel Co. L.P.A.
27600 Chagrin Blvd., Ste 340
Cleveland, OH 44122

Attorneys for:
Sarah Siegel

And via email to:
efsiegel@efs-law.com

Andrew H. Gilman (*pro se*)
115 Dudley Ave, 3rd Floor
Narberth, PA 19072

And via email to:

Stephen M. Vasil (*pro se*)
162 5th Avenue
Brooklyn NY 11217

And via email to:
stephenvasil@gmail.com

Alan Harris
HARRIS & RUBLE
5455 Wilshire, Ste. 1800
Los Angeles, CA 90036

Attorneys for:
Harris, David
Kamal, Kareem
Kavanaugh, Matthew
Newfield, Simon
Ricasa, Jonathan
Treanor, Abigail
Zelenski, David

And via email to:
law@harrisandruble.com

Pamela Collins Dunmore
2635 SW 35th Place, #1402
Gainesville, FL 32608

Attorneys for:
Collins, Pamela (*pro se*)

No email address

Craig J. Walenta  *(pro se)*          No email address
17 Mountainview Court
Riverdale, NJ  07457


Richard A  Bodmer  *(pro se)*          No email address
2114 Cuyler Avenue
Chicago, IL  60618

of Appeals for the Ninth Circuit from the (1) FINAL ORDER AND JUDGMENT
APPROVING SETTLEMENT [429], and (2) ORDER DENYING INCENTIVE
AWARDS TO CLASS REPRESENTATIVES [430], and (3) ORDER granting Plaintiffs'
MOTION for Order granting approval of class action settlement [271], denying Plaintiffs'
MOTION for awards to class Plaintiffs [275], and granting Class Counsel's MOTION for
Attorney Fees and Reimbursement of Expenses [278], all filed on September 11, 2007,
(4) FINDINGS OF FACT AND CONCLUSIONS OF LAW [433], filed on September
12, 2007 and (5) Order denying MOTION for Attorney fees for counsel for objectors
EVANS, SIEGEL, BROWN AND SCHAFER [478].


Dated: November 20, 2007

                              _____

                              DARRELL PALMER
                              Attorney for Objectors Evans, Siegel,
                              Brown, and Schafer

Kenneth E. Nelson (pro hac vice)
Nelson Law Firm, P.C.
2900 City Center Square
1100 Main Street
Kansas City, MO 64105
Telephone:  (816) 421-7225
Facsimile:  (816) 421-3339
Email:  kennelson@mclaw.com
Counsel for Objector Evans & Mullinix, P.A.

Edward F. Siegel (pro hac vice)
Edward F. Siegel Co., L.P.A.
27600 Chagrin Blvd., Suite 340
Cleveland OH 44122
Telephone:  (216) 831-3424
Facsimile:  (216) 831-6584
Email: efsiegel@efs-law.com

2

**AMENDED JOINT NOTICE OF APPEAL BY UNNAMED CLASS MEMBERS/OBJECTORS
EVANS, SIEGEL, BROWN AND SCHAFER**

Counsel for Objector Sarah Siegel
David P. Schafer (Texas SB# 00797865 PHV App Pending)
Law Offices of David P. Schafer
7800 IH-10 West, Suite 830
San Antonio, TX 78230
Telephone: (210) 348-0500
Facsimile: (210) 348-0520
Email: david@helpingtexas.com
Counsel for Objector Daniel M. Schafer

3

**AMENDED JOINT NOTICE OF APPEAL BY UNNAMED CLASS MEMBERS/OBJECTORS
EVANS, SIEGEL, BROWN AND SCHAFER**

Re: **RODRIGUEZ ET AL V. WEST PUBLISHING CORP. ET AL**
**USDC CENTRAL DIST CA Case no. CV-005-3222R(MCx)**
**U.S. COURT OF APPEALS DOCKET NO. 07-56649**

## DECLARATION OF SERVICE
### STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

I, Alison Paul, declare that I am employed with the Law Offices of Darrell Palmer whose address is 603 N. Highway 101, Suite A. Solana Beach, CA 92075. I am readily familiar with the business practices of this office for collection and processing of correspondence for mailing with the United States Postal Service; I am over the age of eighteen (18) and I am not a party to this action.

On November 21, 2007, I served:

**AMENDED JOINT NOTICE OF APPEAL BY UNNAMED CLASS MEMBERS/OBJECTORS EVANS & MULLINIX, P.A., SARAH SIEGEL, JENNIFER BROWN MCELROY, AND DANIEL SCHAFER**

on the parties listed on the attached service list:

by placing a copy in a separate envelope, with postage fully prepaid, for each address named above, into a US Postal Service depository on this day and/or emailing a pdf copy of the document to the email address of each recipient as listed on the service list.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at Solana Beach, California.

_Alison Paul_

DECLARATION OF SERVICE
1

1
2

## SERVICE LIST

3

Sidney K Kanazawa
Van Etten Suzumoto and Becket
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
310-315-8200
skanazawa@vsblaw.com

Robert C Chojnacki
Robert C Chojnacki Law Offices
525 Laurel Avenue
Menlo Park, CA 94025
510-282-4110
chojnackilaw@yahoo.com

4
5
6
7
8

Steven Molo
Shearman and Sterling
599 Lexington Avenue
New York, NY 10022
212-848-4700
smolo@shearman.com

Jon M Zimmerman
Law Offices of Jon M Zimmerman
1420 5th Avenue, Suite 2200
Seattle, WA 89101
206-274-5115
jonmzimmerman@gmail.com

9
10
11
12
13

Heather H Gilhooly
Liner Yankelevitz Sunshine and
Regenstreif
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3503
310-500-3500
hgilhooly@linerlaw.com

Joshua R Furman
Attorney at Law
2228 Barry Avenue
Los Angeles, CA 90064
310-231-7292
jrfurman@toyquest.com

14
15
16
17
18

Stuart N Senator
Munger Tolles & Olson
355 S Grand Ave, 35th Fl
Los Angeles, CA 90071-1560
213-683-9100
stuart.senator@mto.com

Alan Harris
Harris and Ruble
5455 Wilshire Boulevard, Suite 1800
Los Angeles, CA 90036
323-931-3777
aharris@harrisandruble.com

19
20
21
22
23

Carmine Giardino
Giardino Law firm Inc
8626 Tesoro Drive Suite 510
San Antonio, TX 78217
helpingtexas@yahoo.com

Charles A Sturm
Steele Sturm PLLC
1000 Louisiana, Suite 3780
Houston, TX 77002
713-659-2600
csturm@steelesturm.com

24
25
26
27
28

1   Ronald D Rosengarten
2   Rosengarten & Leven LLP                      Sandeep Gopalan
3   23801 Calabasas Rd, Ste 1015                 P.O. Box 877906
    Calabasas, CA 91302                          Tempe, AZ 85287-7906
4   818-225-5070                                 480-636-0710
5   rdresq@sbcglobal.net                         sandeepgopalan@hotmail.com

6   David P Schafer                              Elizabeth De Long
7   Law Offices of David P Schafer               9705 Fremont Ave. N.
    7800 IH-10 West, Suite 830                   Seattle, WA 98103
8   San Antonio, TX 78230                        206-922-3044
9   210-348-0500                                 Edelong06@gmail.com
    David@helpingtexas.com
10
                                                 Robert L Arleo
11  C. Benjamin Nutley                           Robert L Arleo Law Offices
12  Kendrick & Nutley                            164 Sunset Park Road
    1055 E Colorado Blvd, Fifth Floor            Haines Falls, NY 12436
13  Pasadena, CA 91106                           518-589-5264
14  626-204-4060                                 r.arleo@verizon.net
    Nutley@zenlaw.com
15
                                                 Pamela Collins Dunmore
16  John W. Davis                                2635 SW 35th Place, #1402
17  4445 Eastgate Mall, 2nd Fl                   Gainsville, Fl 32608
    San Diego, CA 92121                          352-222-4009
18  858-812-2976                                 Fax: 352-338-1578
19  john@johnwdavis.com
                                                 Daniel Scott Brown
20  Robert Gaudet, Jr.                           Daniel Scott Brown Law Offices
21  214 21st Avenue                              131 Lawnview Circle
    Seattle, WA 98122                            Danville, CA 94526-5107
22  206-332-1745                                 925-548-4620
23  robert_gaudet@yahoo.com                      absentprof@yahoo.com
24
    Andrea Boggio                                Office of the Clerk
25  1150 Douglas Pike                            James R. Browning Courthouse
26  Smithfield, RI 02917                         U.S. Court of Appeals
    401-232-6455                                 PO Box 193939
27  boggio@stanfordalumni.org                    San Francisco, CA 94119-3939
28