Ryan Rodriguez et al v. West Publishing Corporation et al Doc. 524



Eliot G. Disner, Esq. (SBN: CA 068832)
A Professional Corporation
*edisner@disnerlaw.com*
Joel R. Bennett, Esq. (SBN: CA 042162)
*rbennett@disnerlaw.com*
Fredricka Ung, Esq. (SBN: 253794)
*fung@disnerlaw.coms*
DISNER LAW CORPORATION
2029 Century Park East, 19th Floor
Los Angeles, California 90067-2901
Tel: (310) 286-0600
Fax: (310) 282-2585

Alan Harris, Esq. (SBN: CA 146079)
HARRIS & RUBLE
5455 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
Tel: (323) 931-3777 Fax (323) 931-3366
la@harrisandruble.com

*Attorneys for Prospective Intervenors, Stephen Stetson, Shane LaVigne, Christine Leigh Brown-Roberts, Valentin Yuri Karpenko, and Jake Jeremiah Fathy*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN RODRIGUEZ, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>WEST PUBLISHING CORPORATION, et al.,<br><br>Defendants. | CASE NO. CV 05-3222-R<br><br>CLASS ACTION<br><br>[Assigned to the Hon. Manuel Real]<br><br>***STETSON* PLAINTIFFS' REPLY TO DEFENDANT WEST PUBLISHING CORPORATION'S OPPOSITION TO THEIR *EX PARTE* APPLICATION TO INTERVENE AND TO MODIFY THE STIPULATION AND PROTECTIVE ORDER; DECLARATION OF FREDRICKA UNG**<br><br>Date: None Set<br>Time: None Set<br>Place: Courtroom 8 |
| AND CONSOLIDATED ACTIONS | |

Dockets.Justia.com

## I. INTRODUCTION

Defendant's Opposition to the *Stetson* Plaintiffs' Ex Parte Application is wrong on both the facts and the law. Thus, contrary to what West counsel claims the *Stetson* Plaintiffs do not deem themselves to be intervenors, rather seek that status here. The vehicle chosen to intervene, via an ex parte application, is also proper. The law in the Ninth Circuit provides that no *motion* to intervene is required at all. Moreover, courts routinely hear ex parte applications to intervene.

The record here also reflects that *Stetson* counsel was grossly misled by West's counsel. Now, it is evident that counsel for the *Stetson* Plaintiffs was clear and above board throughout. It is Defendants who should now be explaining why they have so misled the Court repeatedly and why, therefore, it is West's counsel, not *Stetson* Plaintiffs' counsel, that should now be sanctioned. In any event, as will be shown in greater detail below, Defendant's position cannot withstand the Court's scrutiny. Accordingly, the *Stetson*'s plaintiffs' Application should be granted.

## II. THE *STETSON* RECORD

The Court should consider the series of events which fomented West's counsel's "tempest in a teapot" over Stetson's counsel's inclusion of a single BAR/BRI document in its Opposition to Motion to Dismiss. First, West's counsel filed its Motion to Dismiss the *Stetson* case, which Motion went beyond the scope allowed by Fed. R. Civ. P. 12(b)(6), implicitly and explicitly making "factual" assertions from well beyond the four corners of the complaint. The Motion to Dismiss was thus procedurally improper from the start.

Worse yet, the majority of these improper "factual" assertions were simply untrue. Out of whole cloth, West's counsel manufactured plausible-sounding, but disingenuous, denials, and explanations to undermine the laundry list of antitrust abuses alleged in the *Stetson* Plaintiffs' complaint. In so doing, West's counsel showed disdain for the *Stetson* Plaintiffs. West's counsel presented these

misrepresentations with the enthusiasm and faux-earnestness that comes from the comfortable shelter of a Protective Order, behind which West's counsel calculated it could confidently hide the truth while it presented many unfounded refutations of the assertions in the *Stetson* plaintiffs' Complaint.

In retrospect, it is possible that West's counsel intended all along to create this tempest in a teapot. It filed a Motion to Dismiss, well aware of Eliot G. Disner's and Alan Harris's associations with the *Rodriguez* case, thus perhaps expecting Stetson's counsel to oppose the Motion by resorting, out of necessity, to the document in question, the BAR/BRI "Competitive Defense" Power Point, that undercuts West's position. The possibility is worth consideration that, in Machiavellian fashion, West's Motion to Dismiss was a trap, baited with falsehoods which Stetson's counsel could not refute but by resort to a competitive defense-type document, all accomplished within the short time they had to oppose.

**III. INTERVENTION DOES NOT REQUIRE A FORMAL MOTION. IT MAY EVEN BE ACCOMPLISHED EX PARTE**

We could find no law prohibiting a "motion to intervene" from being filed along with an ex parte application. To the contrary, we quickly located two cases decided in this district, among many out there, which ex parte applications to intervene were considered and granted as though routine. *Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) (Ex Parte Application to Intervene granted); *Telemundo of Los Angeles v. City of Los Angeles*, 283 F. Supp. 2d 1095 (C.D. Cal. 2003) (same).

In Defendant West Publishing Corporation's Opposition to Ex Parte Application ("Opposition to Ex Parte"), West's counsel miscites *Beckman Industries, Inc. v. International Ins. Co,* 996 F.2d 470, for the proposition that "intervention requires a formal motion to intervene." However, *Beckman Industries* says no such thing. Instead, it pointedly tempers strict application of Fed. R. Civ. P, 24(c), holding "where, as here, the movant describes the basis for intervention with sufficient

specificity to allow the District Court to rule, its failure to submit a pleading is not grounds for reversal."[1] 966 F.2d at 475. Thus, a motion to intervene is not required to accomplish that task. The *Beckman* intervenors did "not ask the district [court] to rule on additional claims or seek to become parties to the action. They ask the court only to exercise that power which it already has, *i.e.*, the power to modify the protective order." *Id.* at 473. This is exactly the request of the *Stetson* plaintiffs here.

Either West's counsel has erred badly in its analysis of case law or, knowing that the clock is ticking against Stetson's counsel in writing this Reply, it is deliberately trying to mislead the Court, once again, claiming that *Beckman Industries* stands for the proposition that, "intervention requires formal motion to intervene," which is actually the *opposite* of what that Ninth Circuit held. *Beckman Industries* clearly, and enthusiastically, stands for the proposition that intervention does *not* require a formal motion to intervene.[2]

Fed. R. Civ. P. 24(c), as interpreted by the Ninth Circuit, thus does not require a party seeking to intervene in an action to use any particular words to do so, nor does it require that the *Stetson* plaintiffs *must* file two *separate* applications – one to intervene and one to modify the protective order. Moreover, the court in *SEC v. Clayton*, 2007 U.S. App. Lexis 25843 *7 (10th Cir. 2007) (emphasis in original) held:

> [Although] neither [motion] was formally titled "motion to intervene," each did state the grounds on which Mr. Wolfson sought to intervene

---

[1] The District Court had granted Appellee's implicit motion to intervene, then lifted the protective order. 966 F.2d at 471.

[2] Defendant also claims that the *Stetson* plaintiffs label themselves as "plaintiffs-in-intervention" (Opposition 4). Wrong! Here the *Stetson* plaintiffs label themselves only as "Prospective Intervenors." Defendant then goes on to state that said plaintiffs "have at no time moved to intervene." *Id.* However, the specific Ex Parte Application to do so should more than pass the "test." As pointed out above, the *Stetson* plaintiffs were under no obligation to move and ex parte applications are routinely permitted.

> in the action. . . . While this might have provided grounds for denial of the motions as procedurally inadequate, it hardly disqualified them *as motions to intervene.*

To satisfy the elements of Fed. R. Civ. P. 24(c), the *Stetson* plaintiffs' Application must have stated the grounds for their intervention, which it does. The Application also must have been accompanied by a pleading setting forth the reasons why intervention is sought, which it also does. Thus, Defendant's procedural effort to derail the *Stetson* plaintiffs' efforts here must be unavailing.

## IV. ANY AMBIGUITY IN THE MARCH 25, 2008 DECLARATION OF ELIOT DISNER WAS CLARIFIED BY THE MARCH 26, 2008 SUPPLEMENTAL DECLARATION OF ELIOT DISNER

After West's counsel brought to Stetson's counsel's attention the details of the Protective Order in this case, *Stetson*'s counsel proposed a simple compromise on the issue in an e-mail sent to all defense counsels (Ex. 1 hereto). That proposed compromise, it bears noting, would have instantly quelled any legitimate dispute here. However, that e-mail elicited no meaningful response. Now, with mock righteous indignation, Defendant West's Opposition to Ex Parte tries to make hay out of the assertion in the Declaration of Eliot Disner, filed March 25, 2008, that defense counsels made no "response" to the e-mail.

Prior to West's counsel's filing of its Opposition to Ex Parte, however, Stetson's counsel filed the Supplemental Declaration of Eliot Disner with the Court, clarifying that West's counsel did *call* after receiving the e-mail, but made no *meaningful* response to the substance of the e-mail. Further explained in said Supplemental Declaration, that phone call gave the distinct impression of a bad faith ploy by West's counsel to delay Stetson's counsel's time-sensitive attempt to resolve the issue cooperatively and in good faith. Defendant West's Opposition to Ex Parte makes no mention of this new filing.

## V. MS. HEATHER GILHOOLY'S DECLARATION IS INACCURATE AND INCOMPLETE

Defendant West relies on Heather Gilhooly's Declaration that "Movants' counsel first raised the issue of bringing an *ex parte* application with West's counsel via telephone on the afternoon of March 24. In fact, Movant's counsel, Fredricka Ung, did not specify precisely what relief would be sought." Opposition Ex Parte Application at 6. However, Ms. Ung notified Ms. Gilhooly that the *Stetson* plaintiffs would bring an ex parte application to modify the protective order in *Rodriguez v. West Publishing Corp.*, Case No. 05-3222 R. Ung Decl., ¶ 3, filed herewith.

Moreover, Fredricka Ung:

> spoke with Heather Gilhooly over the telephone on March 25, 2008. [Ms. Gilhooly] claimed confusion about Eliot Disner's March 25, 2008 email arising from the hearing date listed on the Application to File the Plaintiffs' Opposition to Motion to Dismiss Under Seal. [Ms. Ung] accepted her view that the email was confusing because of the mistakenly specified hearing date."

Ung Decl., ¶ 4. Furthermore, after [Ms. Ung] spoke to her, [she] looked at those Rules as they regard Ex Parte Applications. . . . Therefore, [Ms. Ung is] no longer confused about Eliot G. Disner's March 25, 2008 email (attached hereto as Exhibit 1), and any confusion [she] had earlier, and confirmed by Ms. Gilhooly, was not well founded. Any uncertainty was, in fact, resolved by Mr. Disner's said email." Ung Decl., ¶¶ 6-7.

West also relies on Ms. Gilhooly's Declaration that "Ms. Ung indicated that she went ahead and filed the document despite all of the foregoing because she was "in a hurry to get the document filed." Opposition to Ex Parte Application, at 7. However, in response to Ms. Gilhooly's email on March 26, 2008, Fredricka Ung wrote:

> To clarify, I did not state that I went ahead and filed the Declaration

> despite the error. What I said this morning is that I noticed that the Declaration stated that there had been "no response" from defense counsel, but I did not realize it was an error because I was trying to file the document as soon as possible. You brought to my attention this morning that the Declaration is erroneous, which I agreed with.

See Gilhooly Decl., Ex. B filed on Mar. 26, 2008. Of course, this revelation resulted in the filing of the "Supplemental Declaration" that very day. In fact, the deviousness of West's counsel is again brought into play, as Ms. Ung further declares:

> I am somewhat troubled now because I believe Ms. Gilhooly misled me, at least, as a former clerk for Judge Real, she must have been aware of his Local Rules, even if I was unaware of them at the time.

Decl. Ung, ¶ 8.

## VI. TO THE EXTENT INCLUSION OF THE BAR/BRI DOCUMENT IN *STETSON* PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS DID VIOLATE THE PROTECTIVE ORDER, SUCH VIOLATION WAS *DE MINIMIS* IN LIGHT OF *STETSON* PLAINTIFFS' PROPOSAL TO FILE THE OPPOSITION UNDER SEAL AND TO OTHERWISE CURE THE MATTER

Although there *may have been* a violation of the Protective Order, the *Stetson* Plaintiffs were careful not to disclose to the world the one BAR/BRI document on which their counsel relied. *Stetson* Plaintiffs sought to file their Opposition to West's Motion to Dismiss under seal, a good faith precaution to prevent any disclosure of any confidential content to anyone but the Court. Indeed, since the Court is exempt from the Protective Order, there may be no violation because paragraph 26 can be read to take precedence over paragraph 13, as we have asserted previously and continue to believe.

Furthermore, the *Stetson* Plaintiffs' limited use of the BAR/BRI document in question was necessitated by Defendants' counsels' ridiculing and mischaracterizing Plaintiffs' factual allegations in Defendant's Motion to Dismiss. Plainly, that

approach, explicitly or implicitly, depended on a different set of factual assumptions made by West in said Motion[3]. If the question arises about sanctions, the Court could well decide that West should be sanctioned for hiding behind the Protective Order, not the *Stetson* plaintiffs for carefully attempting to shine a single light through West's wall of hidden facts.

## VII. WEST DOES NOT CLAIM THAT, IF THE *STETSON* PLAINTIFFS OVERCOME ITS PROCEDURAL ROAD-BLOCKS TO INTERVENE IN THIS CASE, THE COURT SHOULD STILL DENY THE SUBSTANTIVE REQUEST MADE

Defendant West does not dispute the "merits" of the *Stetson* plaintiffs' application to intervene, to the extent that would even be possible. Instead of dealing with the merits, West takes procedural swipes at the *Stetson* plaintiffs' entitlement to intervene here at all. Thus, West claims that *Kraszewski v. State Farm General Insurance Co.*, 139 F.R.D. 156 (N.D. Cal. 1991) and *Olympic Refining Co. v. Carter*, 332 F.2d 260 (9th Cir. 1964) "do not endorse [plaintiffs' position]" (Opposition 5-6 n.2).

Although *Kraszewski* and *Pines* were litigated by the same counsel, and involved some overlapping plaintiffs and the same defendant, there is no indication that the Court's decision in *Kraszewski* hinged on any of these circumstances, as West would like this Court to believe. In fact, the circumstances here fit the *Kraszewski* facts relatively well, considering both *Rodriguez* and *Stetson* are suits against West, and Eliot Disner's representation of Plaintiffs in both cases. Although the facts of *Kraszewski* may not perfectly match the instant case, the court in *Kraszewski* did not

---

[3] Opposition 5 claims "[t]he document to which Movants currently seek access is not at all necessary to a decision on the sufficiency of their *pleading*," a point the *Stetson* Plaintiffs made repeatedly in their Opposition to Motion to Dismiss. However, in its Motion to Dismiss, Defendant West never stated the law this clearly. In fact, a review of the Motion will confirm that Defendant never directly made this point at all!

hold that modification of a protective order is permissible only under those specified circumstances.

In fact, the *Kraszewski* Court borrowed the principle that a "protective order should be modified to allow use of the protected documents in the second action" from *Olympic Refining Co. v. Carter*, 332 F.2d 260 (9th Cir. 1964). *Kraszewski*, 139 F.R.D. at 159. *Olympic*, as West admits, involves a completely different set of facts from *Kraszewski*, yet the Court there also permitted modification of the protective order in effect then.

Furthermore, the facts in *Wilk v. American Medical Association, et al.*, 635 F.2d 1295 (7th Cir. 1980), involved no overlap at all between plaintiffs or counsel, yet the Court held:

> "[A]s a general proposition, pre-trial discovery must take place in the (sic) public unless compelling reasons exist for denying the public access to the proceedings." This presumption should operate with all the more force when litigants seek to use discovery in aid of collateral litigation on similar issues . . . access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process.

*Id.* at 1299 (citing *Am. Tel. and Tel. Co. v. Grady*, 594 F.2d 594, 597 (7th Cir. 1979)). However much West would like to distinguish these cases on their facts, *Kraszewski*, *Olympic Refining*, and *Wilk* all stand for the principle that:

> [W]here an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification.

*Wilk*, 635 F.2d at 1299; *Kraszewski*, 139 F.R.D. at 160; *Olympic Refining*, 332 F.2d at

265-66. It is telling that among the many reasons provided in opposition to this Application, West does not claim that it would be "tangibly" prejudiced if this Court grants the slight modification of the Protective Order sought here. In their totality, these cases readily demonstrate why the Protective Order should be modified, as the *Stetson* plaintiffs have requested.

**VIII. CONCLUSION**

It would be grossly unfair to the *Stetson* class for the Court to strike the Opposition to Motion to Dismiss in its entirety and dismiss the case because of the inclusion of a document that was *Stetson* counsel's only way to refute West's misrepresentations in their Motion to Dismiss. Thus, if there was a mistake made, it was made by *counsel*. At most, the Court should strike Exhibit 1 of the Opposition to Motion to Dismiss, and references to it, then accept the remainder. However, it remains the Court's discretion whether to rely on said Exhibit in deciding the Motion to Dismiss. Accordingly, for the reasons stated here and in our opening brief, the *Stetson* plaintiffs respectfully request that the [Proposed] Order lodged herewith be granted.

Respectfully submitted,

DATE: March 27, 2008

**THE DISNER LAW CORPORATION**

By: ______________________________
Eliot G. Disner
A Professional Corporation
Attorneys for Plaintiffs
Stephen Stetson, Shane LaVigne, Christine Leigh Brown-Roberts, Valentin Yuri Karpenko, Jake Jeremiah Fathy, and all others similarly situated

## DECLARATION OF FREDRICKA UNG

I, FREDRICKA UNG, declare:

1. I am a member in good standing of the State Bar of California, and practice law through the Disner Law Corporation ("DLC"). I am co-counsel for plaintiffs in STEPHEN STETSON, SHANE LAVIGNE, CHRISTINE LEIGH BROWN-ROBERTS, VALENTIN YURI KARPENKO, JAKE JEREMIAH FATHY and all others similarly situated v. WEST PUBLISHING CORPORATION, a Minnesota Corporation dba BAR/BRI, and KAPLAN, INC. Case No. CV 08-00810R. I am competent to make this declaration and if asked to testify, I would and could competently testify thereto.

2. I have been a member of the California bar since December 4, 2007.

3. On March 24, 2008, I notified Ms. Gilhooly over the telephone that the *Stetson* plaintiffs would bring an ex parte application to modify the protective order in *Rodriguez v. West Publishing Corp.*, Case No. 05-3222 R.

4. I spoke with Heather Gilhooly over the telephone on March 25, 2008. She claimed confusion about Eliot Disner's March 25, 2008 email (a true and correct copy is attached hereto as Exhibit 1) arising from the hearing date listed on the Application to File the Plaintiffs' Opposition to Motion to Dismiss Under Seal. I accepted her view that the email was confusing because of the mistakenly specified hearing date.

5. When I spoke with Ms. Gilhooly, I was under the impression that the hearing for the Application to File the Plaintiffs' Opposition to Motion to Dismiss Under Seal was set for April 7, 2008. I had yet to review Judge Real's Local Rules on that point.

6. After I spoke to her, I looked at those Rules as they regard Ex Parte Applications. It states the following in part: "If the Court wishes a hearing, the court clerk will contact all counsel with the date and time of the hearing."

7. Therefore, I am no longer confused about the March 25, 2008 email, and any confusion I had earlier, and confirmed by Ms. Gilhooly, was not well founded. Any uncertainty was, in fact, resolved by said email.

8. However, I am somewhat troubled now because I believe Ms. Gilhooly misled me, at least, as a former clerk for Judge Real, she must have been aware of his Local Rules, even if I was unaware of them at the time.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of March, 2008 at Los Angeles, California

FREDRICKA UNG

EXHIBIT 1

**Fredricka Ung**

---

**From:** Eliot Disner
**Sent:** Tuesday, March 25, 2008 1:27 PM
**To:** Stuart.Senator@mto.com; 'brad.phillips@mto.com'; 'Heather H. Gilhooly'; James Tallon; 'elisabeth.neubauer@mto.com'; 'wcollins@shearman.com'; 'jklein@ssbb.com'; 'jrittinger@ssbb.com'
**Cc:** Fredricka Ung; 'Alan Harris'; joelrbennett@yahoo.com; Perrin Disner
**Subject:** Stetson: Plaintiffs' Opposition to Motion to Dismiss

We have reviewed your positions regarding our filing of Plaintiffs' Opposition to Motion to Dismiss, and have come up with the following compromise, which we hope is acceptable to you. Specifically, (1) unless the Court promptly approves our Application to File the Opposition Under Seal, our Ex Parte to Modify the Rodriguez Protective Order will be limited to the one document referred to in our brief (without prejudice, of course, to our moving unconditionally to be included in the Rodriguez Protective Order at a later time); and (2) if the Application is granted, then you will proffer no objection to our Opposition being filed as is under seal.

You may also consent to our so-modified Protective Order, sparing the Court the work required to review yet another set of briefs in the Rodriguez case.

Please let us know promptly whether or not this proposal is acceptable to you, in whole or in part. We appreciate your responding to all listed counsel as well. If we missed someone on your side, please advise.

Thank you,

Eliot G. Disner
Disner Law Corporation
Suite 1900
2029 Century Park East
Los Angeles, CA 90067
Phone: 310-286-0600
Fax: 310-282-2585
Email: edisner@disnerlaw.com
Website: www.disnerlaw.com

If you received this email in error, please delete.